**LATHAM & WATKINS LLP**
Kevin M. McDonough
Michael Lacovara (admitted *pro hac vice*)
Arthur F. Foerster (admitted *pro hac vice*)
Johanna Spellman (admitted *pro hac vice*)
885 Third Avenue
New York, New York 10022
(212) 906-1200

*ATTORNEYS FOR DEFENDANT BMW OF NORTH AMERICA, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA HU, et al., individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware corporation; and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT (BMW AG), a corporation organized under the laws of Germany, ROBERT BOSCH GMBH, a corporation organized under the laws of Germany; and ROBERT BOSCH LLC, a Delaware Limited Liability Company,<br><br>                              Defendants. | Civil Action No. 2:18-cv-04363 (KM) (JBC)<br><br>**Oral Argument Requested**<br><br>**MOTION DAY**: February 3, 2020<br><br>*Filed Electronically* |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

ARGUMENT ....................................................................................................................3

I.      PLAINTIFFS ADMIT THEY ARE INDIRECT PURCHASERS; THEY THUS
        LACK RICO STANDING................................................................................................3

II.     PLAINTIFFS LACK ARTICLE III STANDING. ..............................................................8

        A.      BMW NA Invoked the Correct Standard of Review. ................................................8
        B.      No Injury-in-Fact ................................................................................................9
                1.      Inadequate Testing of Subject Vehicles....................................................9
                2.      No Corroborating Facts To Suggest Defeat Device ................................12
                3.      No Defeat Device........................................................................................13
                4.      Unsupported, Personal Estimates of Overcharge....................................14
        C.      No Injury Traceable to BMW NA ....................................................................17

III.    THE FAC DOES NOT PLEAD RICO VIOLATIONS....................................................19

        A.      Impermissible Group Pleading Under Rule 9(b) ..................................................19
        B.      No Scheme To Defraud ....................................................................................20
        C.      No RICO Injury ................................................................................................22
        D.      No Proximate Cause ........................................................................................22

IV.     STATE LAW CLAIMS: BARRED AND DEFECTIVE ....................................................24

        A.      Failure of Standing in Unrepresented States........................................................24
        B.      Failure To Allege Consumer Fraud ....................................................................25
        C.      Failure To Satisfy Rule 9(b) ..............................................................................26
        D.      Failure To Comply with Statutory Requirements................................................28

CONCLUSION....................................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Adamson v. Ortho-McNeil Pharm., Inc.*,
  463 F. Supp. 2d 496 (D.N.J. 2006) ............................................................25

*Apple Inc. v. Pepper*,
  139 S. Ct. 1514 (2019) ...............................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................9

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
  804 F.3d 633 (3d Cir. 2015) ..................................................................6, 23

*Barnard v. Verizon Commc'ns, Inc.*,
  451 F. App'x 80 (3d Cir. 2011) .................................................................27

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................9

*Bhatt v. Commissioner of NJDOL*,
  2018 WL 623667 (D.N.J. 2018) ................................................................18

*James Bledsoe v. FCA US LLC ("Bledsoe II")*,
  No. 4:16-cv-14024 (E.D. Mich. May 14, 2018) ...................10, 15, 17, 18

*Bridge v. Phoenix Bond & Indemnity Co.*,
  553 U.S. 639 (2008) ................................................................................5, 23

*Carrol v. S.C. Johnsons & Son, Inc.*,
  2018 WL 1695421 (N.D. Ill. Mar. 29, 2018) ...........................................11

*Catrett v. Landmark Dodge, Inc.*,
  253 Ga. App. 639 (2002) ...........................................................................29

*In re Chocolate Confectionary Antitrust Litig.*,
   801 F.3d 383 (3d Cir. 2015) ......................................................................20

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab.
  Litig.*,
  No. 17-md-2777 (N.D. Cal. Sept. 29, 2017) .........................................15, 22

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab.
  Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) ...........................................7, 20, 30

*Counts v. Gen. Motors, LLC*,
    No. 16-cv-12541 (E.D. Mich. July 7, 2016) ............................................16

*Counts v. Gen. Motors, LLC*,
    237 F. Supp. 3d 572 (E.D. Mich. 2017) ................................................21

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016) .................................................................18

*Delgado v. Ocwen Loan Servicing*,
    2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ........................................28

*District 1199P Health and Welfare Plan v. Janssen, L.P.*,
    784 F. Supp. 2d 508 (D.N.J. 2011) ......................................................19

*In re Duramax Diesel Litig.*,
    No. 17-cv-11661 (E.D. Mich. Aug. 4, 2017) ........................................16

*In re Duramax Diesel Litig.*,
    2018 WL 3647047 (E.D. Mich. Aug. 1, 2018) ......................................21

*In re Duramax Diesel Litig.*,
    298 F. Supp. 3d 1037 (E.D. Mich. 2018) ........................................20, 26

*Estrada v. Johnson & Johnson*,
    2017 WL 2999026 (D.N.J. July 14, 2017) ..............................14, 15, 16

*Finkelman v. NFL*,
    810 F.3d 187 (3d Cir. 2016) ...........................................................14, 17

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) .............................................................8, 23

*Hale v. Stryker Orthopedics*,
    2009 WL 321579 (D.N.J. Feb. 9, 2009) ..............................................5, 6

*Heinold v. Perlstein*,
    651 F. Supp. 1410 (E.D. Pa. 1987) ......................................................22

*Hovermale v. Immediate Credit Recovery, Inc.*,
    2018 WL 6322614 (D.N.J. Dec. 4, 2018) .............................................25

*In re Insulin Pricing Litig.*,
    2019 WL 643709 (D.N.J. Feb. 15, 2019) ......................................*passim*

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab.*
    *Litig.*,
    903 F.3d 278 (3d Cir. 2018) ...........................................................16, 17

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
  2018 WL 4144683 (D.N.J. Aug. 29, 2018) ...............................................................27

*Lassen v. Nissan N. Am., Inc.*,
  211 F. Supp. 3d 1267 (C.D. Cal. 2016) ..................................................................14

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) .......................................................................29

*In re Lipitor Antitrust Litig.*,
  336 F. Supp. 3d 395 (D.N.J. 2018) .......................................................................28

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..............................................................................................17

*Lynch v. Capital One Bank (USA), N.A.*,
  2013 WL 2915734 (E.D. Pa. June 14, 2013) .........................................................23

*In re Magnesium Oxide Antitrust Litig.*,
  2011 WL 5008090 (D.N.J. Oct. 20, 2011) .............................................................24

*McCarthy v. Recordex Serv., Inc.*,
  80 F.3d 842 (3d Cir. 1996) ...............................................................................4, 23

*McGuire v. BMW of N. Am., LLC*,
  2014 WL 2566132 (D.N.J. June 6, 2014) ..............................................................24

*In re Mercedes-Benz Emissions Litigation ("Mercedes II")*,
  2019 WL 413541 (D.N.J. Feb. 1, 2019) ......................................................... *passim*

*In re Mercedes-Benz Tele Aid Contract Litig.*,
  257 F.R.D. 46 (D.N.J. 2009) .................................................................................23

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*,
  2019 WL 1418129 (D.N.J. Mar. 29, 2019) ...................................................... *passim*

*Petinga v. Sears, Roebuck & Co.*,
  2009 WL 1622807 (D.N.J. June 9, 2009) ..............................................................28

*Poling v. K. Hovnanian Enters.*,
  99 F. Supp. 2d 502 (D.N.J. 2000) ...........................................................................9

*In re Riddell Concussion Reduction Litig.*,
  77 F. Supp. 3d 442 (D.N.J. 2015) .........................................................................28

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002) ...................................................................................8

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir. 2012)........................................................................21

*Schmigel v. Uchal*,
    800 F.3d 113 (3d Cir. 2015)........................................................................28

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)....................................................................................28

*Skilcraft Sheetmetal, Inc. v. Kentucky Mach., Inc.*,
    836 S.W.2d 907 (Ky. Ct. App. 1992) .......................................................30

*Slukina v. 409 Edgecombe Ave. Hous. Dev. Fund Corp.*,
    2013 WL 4446914 (N.Y. Sup. Ct. N.Y. Cty. Aug. 16, 2013) .................25

*Virginia Sur. Co. v. Macedo*,
    2009 WL 3230909 (D.N.J. Sept. 30, 2009) ..............................................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    349 F. Supp. 3d 881 (N.D. Cal. 2018) .................................................16, 27

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices., & Prods. Liab. Litig.*,
    2017 WL 4890594 (N.D. Cal. Oct. 30, 2017)....................... 7, 20, 21, 28

*Wehner v. Linvatech Corp.*,
    2008 WL 495525 (D. Minn. Feb. 20, 2008) .............................................29

*Weiss v. First Unum Life Ins.*,
    2003 WL 25713970 (D.N.J. Aug. 27, 2003) ...........................................9, 19

*Young v. Johnson & Johnson*,
    2012 WL 1372286 (D.N.J. Apr. 19, 2012) ...................................14, 15, 22

## STATUTES

Iowa Code § 714H.7.........................................................................................29

Kentucky Consumer Protection Act ..............................................................30

## REGULATIONS

40 C.F.R. § 86.1805-04(c) ...............................................................................11

40 C.F.R § 1805-12(c) ......................................................................................11

## OTHER AUTHORITIES

https://ec.europa.eu/commission/presscorner/detail/en/IP_19_2008.............12

## INTRODUCTION

Oppositions to motions to dismiss come in two flavors.  Some engage on the factual and legal issues raised in the motion.  Others seek to distract from the issues framed by the moving party and generally dissemble—the hope that plaintiffs can ease over the Rule 12 bar, start discovery, and find a claim.  Plaintiffs' Opposition to Defendant BMW of North America LLC's ("BMW NA's") Motion to Dismiss is an archetype of the latter.  Replete with generalities and references to a "worldwide emissions scandal" that enveloped *other* manufacturers, the Opposition seeks to mask the FAC's absence of particularized facts *as to BMW NA*.[1]  And it never rebuts two dispositive arguments in the Motion: (1) every Plaintiff (on the face of the FAC as the Opposition admits) is an indirect purchaser, and the Third Circuit has held indirect purchasers lack RICO standing; and (2) Plaintiffs have not identified the software function or algorithm that is a defeat device.  As to the former, Plaintiffs try to shift the argument to a separate question (proximate cause); as to the latter, they continue to rely not on facts but on stubborn repetition: such devices "must exist" (they say) because other manufacturers had them and because their litigation-driven tests produced results in a few BMWs that do not conform (at least some of the time) to "standards" they made up for this case.  Mot. at 9-12, 17-20, 24-25, 35-36; Opp. at 3-7, 8-10, 19-24, 33.

The FAC rests on a self-fulfilling enterprise: a series of tests anonymous "experts" (who benefit financially if this case goes forward) applied against made-up "standards."  In that regard,

---

[1]  "FAC" refers to the First Amended Consolidated Class Action Complaint (Dkt. #65), and "CAC" refers to the Consolidated Class Action Complaint (Dkt. #26).  Citations to "Opinion" refer to the Court's June 27, 2019 opinion (Dkt. #59).  Citations to "Mot." refer to BMW NA's Memorandum of Law in Support of its Motion to Dismiss (Dkt. #68-1).  Citations to "Opp." refer to Plaintiffs' Opposition (Dkt. #73).  "Bosch" is defined collectively as Robert Bosch GmbH and Robert Bosch LLC.  "Subject Vehicles" refer to the model year 2009-2011 BMW 335d and the model year 2009-2013 BMW X5 xDrive35d.  Unless otherwise noted, internal quotation marks and citations are omitted and emphasis is supplied in all quotations.

neither the FAC nor the Opposition says that the "standards" were developed *before the testing was done.*  Given the number of rounds of pleading without clarification on this critical point, the Court should infer that Plaintiffs contrived the "standards" (nothing more than a mishmash of EPA and bespoke criteria) to fit results already observed.  Plaintiffs *still* have not tested a single one of their vehicles (or have not revealed the results of such tests), and their brief never bothers to explain whether the FAC fairly summarizes all of the vehicles tested or all test results.

The FAC also declined to follow the guidance in the Court's June 27, 2019 Opinion to cure the implausibility of the inference on which this case is based (*i.e.*, the existence of a defeat device in every BMW 335d car for model years 2009-2011 and in every BMW X5 xDrive35d light truck for model years 2009-2013).[2]  What more does the Court now know from the FAC?  Answer: Plaintiffs' "new" tests reveal that some BMWs *passed* some of Plaintiffs' contrived "standards," making even less plausible the core inference on which the FAC depends.  FAC ¶¶ 20, 194.  The FAC otherwise reprises (or in some instances lightens) previous allegations on the subjects this Court highlighted.  The FAC—

- Offers no relevant corroboration on the existence of defeat devices, by the government or anyone else, choosing instead to rehash the same European studies this Court previously considered and found lacking.  FAC ¶¶ 226-227, 328-330.

- Asks the Court to ignore inconvenient truths about its own sources, such as removing

---

[2] Contrary to Plaintiffs' assertion, BMW NA does not contend that the Opinion "created mandatory pleading requirements."  Opp. at 12-13.  In its Motion, BMW NA listed the CAC deficiencies the Court identified and noted that Plaintiffs failed to correct them.  Plaintiffs significantly overstate that which is "new" in the FAC, listing paragraphs with new numbers but little or no new content as having "not [been] in the CAC."  Opp. at 7 (citing list of "new" paragraphs).  Some of the "new" allegations are *verbatim* recitation of the CAC.  *Compare* FAC at ¶¶ 84-85, *with* CAC ¶¶ 74-75.  Other "new" allegations are *near*-verbatim copies.  *Compare* FAC at ¶ 156, *with* CAC at ¶ 146; *compare* FAC ¶ 163, *with* CAC ¶¶ 152-53; *compare* FAC ¶¶ 326-30 *with* CAC ¶¶ 275-79.

reference to the ICCT/CAFEE's city and highway PEMS road-test findings that a BMW X5 xDrive35d *passed*. FAC ¶ 168; CAC ¶ 144 n.10. (The Opposition goes so far to take the extraordinary position that BMW NA cannot cite *the same materials* that Plaintiffs quote or the materials to which those documents refer. Opp. at 22 & n.24.)[3]

- Removes reference to the qualifications of Plaintiffs' paid consultants (even as the Opposition continues to tout their "experience[]"). *Compare* CAC ¶ 142, *with* FAC ¶ 163; *see* Opp. at 2, 4.

- Pleads even less regarding the driving and maintenance histories of the tested vehicles. *Compare* CAC ¶ 141, *with* FAC ¶¶ 171-172.

- Fails to allege with any particularity a software function, algorithm, or process that *cheats* on the road, describing only observed *conditions*, which the FAC concedes do no more than *suggest* the existence of a defect device. *See* FAC ¶ 5.

The FAC is a book-length jumble of generality, irrelevance, and contrivance. It should be dismissed, and this case should end.

## ARGUMENT

## I.   PLAINTIFFS ADMIT THEY ARE INDIRECT PURCHASERS; THEY THUS LACK RICO STANDING.

In its opening brief, BMW NA made a simple argument. The Third Circuit has held that indirect purchasers lack standing to bring RICO claims. No Plaintiff purchased or leased a vehicle

---

[3] The Opposition *never denies* that the ICCT/CAFEE tested a BMW X5 xDrive35d. *See* Opp. at 23. Plaintiffs seek to suppress public facts, including deleting sources cited by the CAC that identified the ICCT/CAFEE vehicle as a BMW, but the Court may take judicial notice that the independent groups that conducted PEMS tests found no evidence of any defeat device. *See* S. Glinton, *How a Little Lab in West Virginia Caught Volkswagen's Big Cheat*, NPR (Sept. 24, 2015) (Ex. 2 to the RJN) ("In none of [ICCT's] road tests could they get their two Volkswagen cars to meet the claims, even though a *BMW they tested did fine*.").

from BMW NA, and thus no Plaintiff has RICO standing.  *See* Mot. at 17-20; *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 848, 852, 855 (3d Cir. 1996) ("Significantly, antitrust standing principles apply equally to allegations of RICO violations . . .  thereby denying RICO standing to indirect victims."); *see also In re Insulin Pricing Litig.*, 2019 WL 643709, at *11 (D.N.J. Feb. 15, 2019) (dismissing RICO claim, recognizing "the voluminous federal jurisprudence determining that courts may apply the indirect purchaser rule to RICO actions"); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at *13 n.11 (D.N.J. Mar. 29, 2019) (dismissing RICO claims because "Plaintiffs . . . failed to allege that they directly purchased the analog insulin from Defendants").

Plaintiffs' response is unsurprising, given the tenor of the Opposition: they summarily acknowledge the rule and their status as indirect purchasers, and then argue about a *different* issue. They falsely assert that BMW NA has attempted to "graft a privity requirement into RICO by means of an indirect purchaser theory" and then argue irrelevantly about proximate cause.  Opp. at 8-10.  BMW NA isn't "grafting" anything; it is relying on controlling authority that identifies a *category of persons* barred from asserting RICO claims, not a test for determining whether someone *in a different category* might have a claim.  *See McCarthy*, 80 F.3d at 848, 852; *In re Insulin*, 2019 WL 643709, at *11; *MSP Recovery*, 2019 WL 1418129, at *13.[4]

---

[4] Plaintiffs claim that BMW NA "relies on *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019)," which "concerned application of an irrelevant antitrust doctrine."  Opp. at 8.  This is wrong.  First, BMW NA cited *Apple* for its concise formulation of the indirect purchaser rule: "if manufacturer A sells to retailer B, and retailer B sells to consumer C, then C may not sue A." 139 S. Ct. at 1521; Mot. at 17.  Second, the doctrine is not "irrelevant"; as the Third Circuit explained, the same principles that gave rise to the rule for antitrust actions apply in respect of RICO claims.  *See McCarthy*, 80 F.3d at 848, 852.  The fact that the plaintiffs in *McCarthy* did not allege false misrepresentations or omissions does not alter the indirect purchaser rule or its application here.  *See id.*; Opp. at 10.

Not one Plaintiff alleges that she acquired her vehicle from BMW NA.  *See* FAC ¶¶ 31-70. The vast majority of Plaintiffs bought their vehicles *used* from independent dealers, auction houses, or private parties.  *See id.*  Only a few Plaintiffs allege they bought from an "authorized BMW dealer" and even those few admit there is no connection between Plaintiffs and BMW NA itself.  *See, e.g.*, *id.* ¶¶ 36, 40, 48, 59.  There is no dispute that each Plaintiff is at multiple stages of remove from BMW NA.  *See id.* ¶¶ 31-70.  Plaintiffs do not contest that proposition, and it is all the Court needs to dismiss the RICO claim.

After admitting the only factual predicate needed to apply the indirect purchaser rule, the Opposition dissembles.  Plaintiffs first claim that "BMW fails to cite a single case in which a court has applied the direct purchaser doctrine to RICO claims."  Opp. at 10.  This statement is false. *See* Mot. at 18 (citing *In re Insulin*, 2019 WL 643709, at *13 ("Plaintiffs' claims are barred by the indirect purchaser rule, and as such, Plaintiffs lack standing to maintain this action pursuant to RICO."); *MSP Recovery*, 2019 WL 1418129, at *16 ("[T]heir claims are barred by the indirect purchaser rule.  As such, Plaintiffs lack standing to maintain their RICO causes of action."); *Hale v. Stryker Orthopedics*, 2009 WL 321579, at *4 (D.N.J. Feb. 9, 2009) ("Plaintiffs cannot escape the bar of the 'direct purchaser' rule.  To do so, Plaintiffs would have to plead that they bought their implants directly from Defendants.  Since Plaintiffs have not so pled, they lack standing under these facts to bring their RICO claims.")).

Having given the back of their hand to ample precedent, Plaintiffs shift to an analysis of "proximate cause" via an extended discussion of *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 657-58 (2008).  *See* Opp. at 8-9.  That discussion is doubly misleading.  First, an indirect purchaser inquiry—a matter of standing—must be conducted irrespective of whether a pleading adequately alleges proximate cause.  *See MSP Recovery*, 2019 WL 1418129, at *15.  The indirect

purchaser question is about *who can sue*, not about the factual sufficiency of one of the elements of a RICO cause of action.  Put another way, Plaintiffs first must show they have the right to be on the team before they get a turn at bat.  They have not.  Moreover, the argument Plaintiffs make based on *Bridge* has been rejected, and properly so.  "*Bridge* does not concern the case of an indirect purchaser and does not stand for the proposition that plaintiffs multiple levels down the consumer chain may possess RICO standing despite the indirect purchaser rule." *Id.*; *In re Insulin*, 2019 WL 643709, at *11 ("[T]he Supreme Court's holding in *Bridge* does not preclude the application of the indirect purchaser rule to Plaintiffs' RICO claims."); *Hale*, 2009 WL 321579, at *4 ("*Bridge* has little or no bearing on the instant case.").

For the same reason, Plaintiffs' discussion of *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633 (3d Cir. 2015), is misplaced.  Plaintiffs contend that *Avandia* requires a "direct relationship between the defendant's wrongful conduct and the plaintiffs' injury."  Opp. at 9.  That might be an accurate statement of a typical proximate cause inquiry, but no such inquiry is required here, where the issue is RICO standing, not whether an element of a cause of action has been pleaded adequately.  Just as important, *Avandia* did not hold that an indirect purchaser has RICO standing, and courts interpreting that case have rejected the construction urged now by Plaintiffs.  *See, e.g.*, *MSP Recovery*, 2019 WL 1418129, at *15 ("Additionally, this Court also does not find that the Third Circuit's decision in [*Avandia*] compels the conclusion that Plaintiffs have standing because they suffered direct injury, despite the fact that they are indirect purchasers.").

Plaintiffs then note that there are defeat device cases in which RICO claims survived motions to dismiss, contending those cases did so because alleged "[o]verpayments were the intended, foreseeable and natural consequence of the fraudulent scheme."  Opp. at 9.  Plaintiffs bury the lede: *none* of those decisions addressed an indirect purchaser challenge to standing.  *See*

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 968 (N.D. Cal. 2018) ("*EcoDiesel*"); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices., & Prods. Liab. Litig.*, 2017 WL 4890594, at *3-10 (N.D. Cal. Oct. 30, 2017) ("*Volkswagen*").  Plaintiffs presumably know this, as it is explicitly discussed in cases on which BMW NA has relied.  *See MSP Recovery*, 2019 WL 1418129, at *16 n.14 (noting *Mercedes II* "was not confronted with an indirect purchaser challenge to plaintiffs' standing, and it was neither briefed on the indirect purchaser rule nor did it perform an indirect purchaser rule analysis").

Plaintiffs' final argument is just as unavailing; indeed, it ignores their own theory of harm. Plaintiffs seek to distinguish *MSP Recovery* on the basis that the plaintiffs in that case sought "pass-on damages," but Plaintiffs contend not to have done so here.  *See* Opp. at 10.  Wrong on the case and wrong on their own pleading.  *MSP Recovery* did not hold that indirect purchasers lack standing *only if* they seek "pass-on" damages; rather, it applied the straightforward rule that an indirect purchaser does not have standing – full stop, and without nuance or gloss.  There is no carve-out for "non pass-on" cases.  *See MSP Recovery*, 2019 WL 1418129, at *16 ("As Plaintiffs have failed to allege that they directly purchased the analog insulin from Defendants . . . their claims are barred by the indirect purchaser rule").  As important, even a cursory reading of the FAC shows that Plaintiffs – in all their discussion about a diesel premium and an overcharge – *seek pass-on damages.  See, e.g.*, FAC ¶¶ 31-70, 76, 133, 376, 398.  Plaintiffs allege they paid an "overcharge" for a vehicle that did not have an advertised benefit and that the overcharge is attributable to "BMW"[5] – not to BMW dealers and certainly not to the myriad, unnamed private persons, auction houses, used car dealers and anyone else from whom they acquired vehicles.  *See*

---

[5] Plaintiffs' failure to distinguish between BMW AG and BMW NA constitutes impermissible group pleading.  *See infra* at Section III.A.

FAC ¶¶ 31-70; Opp. at 25-26.  By claiming an "overcharge" attributable to BMW NA, but then choosing *not to sue* the persons or entities from which they directly acquired their vehicles, Plaintiffs necessarily are claiming that the alleged overcharge was "*passed on*" throughout the distribution chain.  The damages sought here thus are analytically inseparable from those claimed based on "inflated prices" attributable to the drug-maker at the top of the distribution chain in *MSP Recovery*.  *See* 2019 WL 1418129, at \*14.[6]  Plaintiffs allege BMW NA set prices for diesel vehicles, sold those vehicles to BMW dealers, which (for certain plaintiffs) next sold the vehicles to others, who then sold them to used car dealers or auction houses.  *See* FAC ¶¶ 31-70.  The FAC pleads "pass-on" damages.

Every Plaintiff (by admission) is an indirect purchaser.  No Plaintiff can maintain a RICO claim against BMW NA.

## II.     PLAINTIFFS LACK ARTICLE III STANDING.

### A.     BMW NA Invoked the Correct Standard of Review.

Plaintiffs muddy the applicable standard of review but fail to address that allegations of fraud—like those on which the FAC is based—must survive the heightened pleading requirements of Rule 9(b).  *See* Opp. at 12-13; *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("[T]he circumstances constituting fraud or mistake shall be stated with particularity.").  The FAC must, at a minimum, "support [its] allegations of [] fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,

---

[6] Plaintiffs' attempt to distinguish *In re Insulin* is unavailing for the same reason.  Opp. at 11.  The damages in *In re Insulin* are the same type of damages as those alleged here.  The "pass-through of the inflated price from one of the various intermediaries to the consumers," *In re Insulin*, 2019 WL 643709, at \*12, is indistinguishable from "diesel premium" allegedly imposed by "BMW" and then carried/passed-through to BMW dealers, used car sellers, auction houses, and private individuals.  *See* FAC ¶¶ 31-60.

311 F.3d 198, 217 (3d Cir. 2002).  General fraud allegations "against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed do not satisfy Rule 9(b)."  *See Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 508 (D.N.J. 2000); *Weiss v. First Unum Life Ins.*, 2003 WL 25713970, at *6 (D.N.J. Aug. 27, 2003) (same).[7]

Even construing the well-pleaded facts in favor of Plaintiffs, the FAC lacks the most basic allegations required by Rule 9(b), including not only the "what" (*see infra* at Section II.B.3 ("No Defeat Device")), but also the "who."  The FAC fails to inform BMW NA of the fraudulent acts *it* allegedly committed; it lumps together BMW NA, BMW AG, Robert Bosch GMBH and Robert Bosch LLC and refers to them collectively as the "RICO Defendants."  FAC ¶¶ 351-399.  Plaintiffs must face the consequences of their pleading decisions.

**B.      No Injury-in-Fact**

**1.      Inadequate Testing of Subject Vehicles**

In another bait and switch—akin to their treatment of the indirect purchaser inquiry— Plaintiffs attempt to create confusion about why inadequate testing of the Subject Vehicles is relevant.  *See* Opp. at 13-16.  BMW NA has not argued that Plaintiffs lack standing because their own vehicles were not tested.  *See* Opp. at 14.  Rather, the failure to test Plaintiffs' vehicles (or to disclose the results of any such tests) undermines the plausibility of the inference that any Subject Vehicle contains a defeat device.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Plausibility" requires that a plaintiff plead sufficient facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  Similarly, the lack of

---

[7] Nothing Plaintiffs cite absolves them from fraud's heightened pleading standard.  Opp. at 12-13.

testing has nothing to do with whether BMW NA has "fair notice" of Plaintiffs' claims (another straw man contrived by Plaintiffs).  *See* Opp. at 14.[8]

Plaintiffs deem each missing factual allegation "unnecessary" to allege injury-in-fact, urging the Court instead to look at the "totality of the allegations."  Opp. at 14-16; *see also* Opp. at 13 n.12 (citing cases that emphasize considering the complaint in its entirety).  BMW NA agrees with the approach, but not the outcome.  The allegations (or lack thereof), considered in totality, do not support a plausible inference that a defeat device exists.  The FAC, considered against Plaintiffs' "totality" standard, reveals that: (i) some of the subject vehicles *passed* Plaintiffs' expert-devised tests (*see* FAC ¶¶ 20, 194); (ii) no Plaintiff vehicle was tested;  (iii) no regulator has *ever* found a defeat device in a BMW vehicle at issue or even accused BMW NA of having a defeat device; and (iv) the FAC *still* does not identify the software mechanism or mode of action of the purported defeat device.

Additionally, Plaintiffs misconstrue BMW NA's reference to "driving history or maintenance record."  *See* Opp. at 16.  The fact that the FAC fails to allege the driving or maintenance histories of the Subject Vehicles has nothing to do with Rule 8 notice.  *See id.* Plaintiffs' failure to address the Subject Vehicles' histories is just another reason to question the plausibility of the inference on which the entire FAC rests: that Plaintiffs' paid-expert-devised test results suggest "defeat devices," rather than self-serving testing or (in this particular contest) unusual driving behavior or sub-par maintenance history.  *See* Opinion at 2 (discrepancy between on-road and laboratory emission levels "might have a number of explanations").

---

[8] BMW NA never suggested that standing in *Bledsoe II* "*hinged*" on testing a plaintiff's vehicle. Opp. at 15.  As BMW NA explained, the fact that plaintiffs in *Bledsoe II* actually tested vehicles owned by named plaintiffs reinforced the plausibility of inferring the existence of a defeat device. *See* Mot. at 28-29.  None of that occurred here.

Plaintiffs sow the same confusion with respect to the fact that a number of the tested vehicles passed Plaintiffs' litigation-driven PEMS tests.  *See* Opp. at 17-18.  Plaintiffs cite *Carrol v. S.C. Johnsons & Son, Inc.*, 2018 WL 1695421 (N.D. Ill. Mar. 29, 2018), for the proposition that the FAC's allegations about emissions testing are sufficiently detailed to put BMW NA on notice of Plaintiffs' claims.  Opp. at 17 n.18.  The issue, again, is not notice; it is *plausibility*: how can a defeat device be inferred if the Subject Vehicles passed even Plaintiffs' litigation-driven tests?

Multiple vehicles passed, especially if real standards are applied.  Plaintiffs try to muddle the inquiry with statements like "Plaintiffs' allegations indicate that a 50 mg/mile NOx standard applies to cars that are *close to* 50,000 miles[.]"  Opp. at 18.  That statement is wrong.  By EPA rule, "[w]here intermediate useful life exhaust emission standards are applicable, such standards are applicable for five years or 50,000 miles, whichever occurs first."  40 C.F.R. §§ 86.1805-04(c), 1805-12(c).[9]  There are no "close to" concepts, and Plaintiffs' contrary approach undermines the reliability of their proffered inferences.  Every single diesel vehicle Plaintiffs tested was more than five years old and all but one had more than 50,000 miles (*see* FAC ¶ 169, Table 1), and as the FAC's own allegations adequately describe, under the real EPA standard, *three out of five* diesels passed Plaintiffs' litigation-driven highway tests and *at least one* diesel passed Plaintiffs' litigation-driven city tests.  *See* FAC ¶¶ 192, 194, Tables 5 & 6.  Plaintiffs say that is okay because they need not present summary judgment level proof.  *See* Opp. at 17.  BMW NA never suggested they did.  The core inference of the FAC hinges on the existence of a defeat device in *every* BMW 335d car for model years 2009-2011 and in *every* BMW X5 xDrive35d light truck for model years

---

[9] Plaintiffs also deliberately misapply the EPA rules because there is no standard for PEMS—Plaintiffs inappropriately use a laboratory/dyno standard for road-based PEMS testing.  *See* Mot. at 13.  Even applying that wrongheaded and arbitrary "standard," the FAC alleges some vehicles still passed Plaintiffs' tests.  *See* FAC ¶ 20, Tables 5 & 6.

2009-2013, but Plaintiffs' tests reveal that not one, not two, but three of five vehicles pass those highway or city tests and thus undermine the necessary inference.

## 2. No Corroborating Facts To Suggest Defect Device

Plaintiffs' justification for the lack of corroborating facts in the FAC appears deliberately confusing. *See* Opp. at 19-24. Across multiple pages of scattershot argument, Plaintiffs never rebut that: (1) no regulator has ever found—or even accused BMW NA of having—defeat devices in the BMW vehicles; and (2) the European studies cited in the FAC that purportedly support the inference of a defeat device do not—as this Court previously recognized—actually apply to the Subject Vehicles. Plaintiffs continue to describe the motor vehicle industry as a whole, while omitting focused mention of BMW NA, much less the Subject Vehicles. *See* Opp. at 20-24, 33.

Plaintiffs have the temerity to suggest that BMW NA has "ignore[d] allegations that it has been identified as violating emissions standards." *See* Opp. at 20. First, nowhere does the FAC allege that *any* regulatory body found BMW NA in violation of *any* emissions standards.[10] Second, to support their statement, Plaintiffs cite an article about an antitrust investigation,[11] which (their source explains) is "separate and distinct from other ongoing investigations, including those . . . into car manufacturers and the use of illegal defeat devices to cheat regulatory testing." https://ec.europa.eu/commission/presscorner/detail/en/IP_19_2008 (cited at Opp. at 20 n.22).

---

[10] Plaintiffs repeat general information about the motor vehicle industry (and in particular, Volkswagen), apparently to support the FAC's RICO claims. *See* Opp. at 33-34. Even there, Plaintiffs offer no facts that relate to BMW NA, much less the Subject Vehicles. Moreover, the FAC contains no facts that infer a defeat device based on the mere use of the Bosch EDC17. Instead, the FAC concedes that the EDC17 is a highly malleable computer, encoded with changeable software that is unique for each manufacturer. *See* FAC ¶ 254. Thus, it cannot reasonably be inferred that an EDC17 in a BMW is the same as in any other vehicle.

[11] Plaintiffs both urge the Court to take judicial notice of a news article in this context and claim that BMW NA acted improperly in asking the Court to take note of news articles. *See generally* Opp. to RJN. They do not further explain the tendentious conflict in their positions.

Plaintiffs invoke irrelevant studies of BMW models *other* than the Subject Vehicles to support their accusations. *See* Opp. at 21. Plaintiffs rely on an Emissions Analytics ("EA") index that provides vehicle emissions ratings, but the FAC lacks any well-pleaded facts that the EA vehicles are the same as, or even materially similar to, the U.S. vehicles at issue. *See* Mot. at 23; FAC ¶¶ 328-330. And Plaintiffs rely on a Transport and Environment ("T&E") study, a curious choice, given that T&E concluded (based in part on the same EA data on which Plaintiffs rely) that several BMW models "achieve the emissions standards in normal use conditions," a fact that further calls into question the plausibility of the inference that Plaintiffs strive to draw. *See* Mot. at 24 (quoting RJN Ex. 9). Never wedded to positional consistency, Plaintiffs note that the models that achieved the emissions standards in the T&E analysis are not the Subject Vehicles, but neither are the models that Plaintiffs chose to highlight, and (of course) neither are the models from Volkswagen, FCA, Mercedes and all the other manufacturers that the FAC describes. *See* Opp. at 24, 33; *see also* FAC ¶¶ 12-14, 75, 83-85, 253-314. There is a singular and simple point to all of this: selective references to non-Subject Vehicles (*see, e.g.*, Opp. at 24) and repeated allegations about defeat devices in *other manufacturers'* vehicles (*see, e.g.*, Opp. at 20-24, 33) do not support a plausible inference of a defeat device in the Subject Vehicles.

### 3. No Defeat Device

BMW NA explained in its Motion why the FAC's allegations regarding the implementation of the Bosch EDC17 in *other manufacturers' vehicles* do not support the inference of a defeat device in the Subject Vehicles. *See* Mot. at 10-11; Opp. at 24-25; *infra* at Section III.B. Plaintiffs respond by making up facts, falsely claiming "the FAC describes how the SCR was programmed to be derated in certain driving conditions." Opp. at 25. The FAC does no such thing; all it does is describe variances in emissions observed under certain conditions. *See* FAC

¶¶ 212-219.  And again, *they* say the FAC "describes how EGR is disabled in certain temperatures as a result of software commands" (*see* Opp. at 25), but the *FAC* has no "how" at all.  It states only a "what"—that below 50°F, low pressure EGR does not function.  *See* FAC ¶ 197.  That observation does not support a conclusion that a defeat device exists.  The FAC never identifies the purported software function that does any cheating.

### 4.    Unsupported, Personal Estimates of Overcharge

Plaintiffs fail to plead injury-in-fact in respect of the FAC's subjective "overcharge" estimates.  Contrary to Plaintiffs' claims, BMW NA does not argue that the FAC must identify a precise damage amount or meet a heightened pleading standard to plead injury-in-fact.  *See* Opp. at 26 & n.29.  BMW NA, rather, observed correctly that Plaintiffs must allege *facts* sufficient to support the overcharge in the amount claimed.  *See Finkelman v. NFL*, 810 F.3d 187, 194 n.55, 200-01 (3d Cir. 2016) (stating that "standing cannot rest on mere 'legal conclusions' or 'naked assertions'"); *see also Lassen v. Nissan N. Am., Inc*., 211 F. Supp. 3d 1267, 1280 (C.D. Cal. 2016) ("It is true that both overpayment and diminution in value are theoretically cognizable . . . [b]ut, a plaintiff must still plead facts sufficient to establish these injuries-in-fact."); *Young v. Johnson & Johnson*, 2012 WL 1372286, at *4 (D.N.J. Apr. 19, 2012) (dismissing claims because plaintiff failed to "set forth allegations as to how he paid a premium").  The FAC identifies no objective criteria to support what appear to be nothing more than individuals' subjective feelings, translated into claimed overcharges (or "diesel premiums") of "at least $1500" or "in excess of $5,000."[12]  *See, e.g.*, FAC ¶¶ 55, 66; *Estrada v. Johnson & Johnson*, 2017 WL 2999026, at *15 (D.N.J. July

---

[12]  The Opposition ignores the FAC's admission that "[c]ompared to gasoline engines, diesel engines generally produce greater torque, low-end power, better drivability, and much higher fuel efficiency."  FAC ¶ 9.  That admission further suggests that any claimed "premium" tied to NOx emissions is (at best) speculative and implausible.

14, 2017) (holding complaint failed to "set forth any comparable, cheaper products to demonstrate that Baby Powder was in fact sold at a premium price").  The Opposition is silent on why the Court should credit—as facts—these varying, inconsistent, and seemingly random claimed amounts.  *See* Opp. at 25-26; Mot. at 30-31.

The Opposition's attempt to cast aside the authority invoked by BMW NA is insufficient. *See* Opp. at 26 n.28.  Plaintiffs seek to distinguish *Estrada* and *Young* by claiming that *other* plaintiffs in *other* emission-fraud cases "have pled that a misrepresentation caused them economic harm."  *Id.*  BMW NA does not quarrel with that statement, and assumes Plaintiffs would agree that *other* plaintiffs in *other* emission-fraud cases were found to have pleaded objective facts to support their allegations.  *See infra* at 15-16.  And the fact that the harm at issue in *Estrada* and *Young* was physical and not economic is accurate, but not apt: plaintiffs' claims were dismissed in those cases because their allegations regarding injury were speculative, not because of the nature of the claimed injury.  *See Estrada*, 2017 WL 2999026, at *15; *Young*, 2012 WL 1372286, at *4.

Plaintiffs' reliance on *Mercedes II* and *EcoDiesel* does not reduce the force of *Estrada* and *Young*'s teaching that "conjectural or hypothetical" allegations of overpayment are insufficient. *See Estrada*, 2017 WL 2999026, at *4, *15 n.10; *Young*, 2012 WL 1372286, at *4; Opp. at 26 n.28.  *EcoDiesel* is, however, relevant and instructive: unlike here, the allegations in *EcoDiesel* included objective criteria to support plaintiffs' allegations.  *See* Am. Compl. ¶ 191 (ECF #225), *EcoDiesel*, No. 17-md-2777 (N.D. Cal. Sept. 29, 2017) ("consumers paid between $3,120 and $5,000 more for the EcoDiesel option than for the comparable gasoline vehicles" and citing vehicle reviews from *Car and Driver*).  In other defeat device cases, allegations of overpayment were materially more detailed than the personal estimates that run through the FAC.  *See* Second Am. Compl. ¶ 39 (ECF #62), *Bledsoe II*, No. 4:16-cv-14024 (E.D. Mich. May 14, 2018) ("[Plaintiffs']

out-of-pocket loss . . . can be measured at a minimum in part by the approximately $9,000 premium paid for a diesel vehicle over a comparable gas vehicle."); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 349 F. Supp. 3d 881, 894-95 (N.D. Cal. 2018) (sufficient allegations because Plaintiffs alleged Volkswagen "charged 7 to 27 percent more for the 2.0-liter [diesel vehicles] over the non-diesel versions"); First Am. Compl. ¶ 13 (ECF #18), *Duramax*, No. 17-cv-11661 (E.D. Mich. Aug. 4, 2017) ("GM charges a premium of approximately $9,000 for diesel-equipped vehicles over comparable gas Silverados or Sierras."); Class Action Compl. ¶ 91 (ECF #1), *Counts*, No. 16-cv-12541 (E.D. Mich. July 7, 2016) ("GM charged more for its diesel car than a comparable gas car.  Depending on trim level, the premium was as much as $2,400.").[13] Nothing comparable can be found in the FAC.

The Opposition's invocation of *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018), similarly backfires.  That decision held that "[i]t would not have been enough for the plaintiffs . . . to simply allege that, although they purchased [the products] at a given price, they later wished they had not done so. . . . [O]ur precedent requires the plaintiff to do more than simply pair a conclusory assertion of money lost with a request that a defendant pay up." *Id.* at 288.  That is what the FAC does.  *See* FAC ¶¶ 31-70; Opp. at 26 ("Had Plaintiffs known the truth, 'they would not have purchased or leased the vehicles, or would have paid substantially less . . . in an amount of at least $1500.'").  No facts

---

[13] Equally unhelpful to Plaintiffs is *Mercedes II*, in which the Court found that injury-in-fact grounded on a benefit-of-the-bargain theory could be satisfied only if "(i) the plaintiffs received a defective product; or (ii) the plaintiffs pled facts sufficient for the court to conclude that they would not have purchased the product at issue but for a specific misrepresentation by the defendants." 2019 WL 413541, at *4 (D.N.J. Feb. 1, 2019) (citing *Estrada*, 2017 WL 2999026, at *9).  Here, Plaintiffs got exactly what they bargained for (*see infra* at 16-17; *see also* Mot. at 30), and fail to allege that any *BMW NA* advertisements misled them (*see infra* at Section II.C; *see also* Mot. at 7).

support the FAC's unadorned conclusion that Plaintiffs overpaid for the diesel vehicles they purchased.  *See* Opp. at 25-26.  The FAC's allegation that the vehicles emit more NOx than a "reasonable consumer" would expect is the kind of "buyer's remorse" the Third Circuit has held insufficient to plead a cognizable injury.  *See In re Johnson & Johnson*, 903 F.3d at 281.

C.     **No Injury Traceable to BMW NA**

Article III requires a plaintiff to plead "a causal connection between the injury and the conduct complained of."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The Opposition argues that Plaintiffs can claim traceable injury even if they did not see (and therefore could not have relied upon) any alleged misrepresentations about emissions.  *See* Opp. at 27-30.  Rather than impose a heightened, proximate cause requirement, all BMW NA has done is seek to hold Plaintiffs to allege, "at a minimum, that the defendant's purported misconduct [must be] a 'but for' cause of the plaintiff's injury."  *Finkelman*, 810 F.3d at 198; *see* Opp. at 27-30.[14]  The FAC does not do so.

The Opposition relies (again) on other defeat device cases that have found traceability, but it ignores the facts in those cases that distinguish them from the FAC.  *See* Opp. at 28-29.  For instance, Plaintiffs contend the allegations in *Mercedes II* that survived a traceability challenge were "nearly identical."  Not so.  *Mercedes II* alleged two key facts not present here: (1) Mercedes disseminated advertising that marketed the vehicles at issue "as environmentally friendly and fuel efficient," and (2) prior to purchasing their vehicles, the named plaintiffs viewed advertisements and representations that "touted the cleanliness of the engine system for the environment."  *Compare Mercedes II*, 2019 WL 413541, at *5, *7, *with* FAC ¶ 31.  Likewise, Plaintiffs cite

---

[14] The Opposition just ignores the fact that BMW NA maintains advertisements on its website only for current models.  Plaintiffs who purchased used vehicles could not have viewed an advertisement for their vehicles.  *See* Mot. at 33 n.34.

*Bledsoe II* for the proposition that they need not identify the specific ad to which they were exposed.  *See* Opp. at 28.  In *Bledsoe II*, however, plaintiffs alleged they purchased their trucks "on the basis of advertising from defendants that touted the trucks as more fuel efficient and environmentally friendly than other diesel trucks."  378 F. Supp. 3d 626, 631 (E.D. Mich. 2019).  Here, by contrast, every Plaintiff, save two, declines to claim she saw any ads with statements about the environment or emissions.  *See* FAC ¶¶ 31-70.  And even those two do not say which BMW entity disseminated the ads (*see* FAC ¶ 53) and fail to allege facts showing that BMW NA is vicariously liable for statements of independently-owned BMW dealers (*see* FAC ¶ 37).[15]

Plaintiffs also rely on *Bhatt v. Commissioner of NJDOL*, 2018 WL 623667, at *8 (D.N.J. 2018), a case in which plaintiff complained that she was denied unemployment benefits and required to repay a refund.  *See* Opp. at 27.  The plaintiff had failed to "state if and how those false reports led to her denial of unemployment benefits and request to pay back funds," thus defeating traceability.  *Bhatt*, 2018 WL 623667, at *8.  Likewise, here, while the FAC avers that Plaintiffs "reviewed advertisements" on "BMW's website" and "representations from [dealers] touting the efficiency, fuel economy, and power and performance of the engine," (*see* FAC ¶¶ 31-70), Plaintiffs do not allege how those purported misrepresentations led to the injury about which they

---

[15] Plaintiffs insert more confusion by claiming that "indirect purchasers have Article III standing." *See* Opp. at 30.  That is wrong and irrelevant.  For purposes of traceability, the *statements*—not the *purchase*—are the alleged misconduct.  As BMW NA explained, the FAC fails to allege that the supposedly misleading statements (to two named Plaintiffs) were made by, or under the direction of, BMW NA.  *See* Mot. at 33.  Plaintiffs cite *Davis v. Wells Fargo*, 824 F.3d 333, 347 (3d Cir. 2016) for the proposition that they need not specify "who was legally responsible."  *See* Opp. at. 30.  There, however, the defendant admitted that the perpetrator of the alleged misconduct was its subsidiary and argued that its subsidiary should have been the named defendant.  *See Davis*, 824 F.3d at 347.  Here, BMW NA has not claimed a relationship with the dealer that allegedly made a misstatement (*see* FAC ¶ 37), and BMW NA did not raise a "question of whether a plaintiff has sued the correct defendant."  *See Davis*, 824 F.3d at 347; Mot. at 31-33.

complain.  Rather, Plaintiffs' alleged injuries are premised on alleged misrepresentations about NOx emissions and the presence of undisclosed defeat devices.  *See* FAC ¶¶ 129-151.  And while the FAC alleges that "BMW did not fully disclose, and affirmatively concealed from government regulators, the presence of" a defeat device in order to obtain certificates of conformity ("COCs") (*see* FAC ¶ 262), it does not allege that any Plaintiff actually relied on the COCs and suffered a resulting injury, an absence that rebuts an inference of traceability.

## III.   THE FAC DOES NOT PLEAD RICO VIOLATIONS.

### A.   Impermissible Group Pleading Under Rule 9(b)

Acts of mail and wire fraud must be pleaded with the particularity required by Rule 9(b), including the "who, what, when and where details of the alleged fraud."  *See District 1199P Health and Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 527 (D.N.J. 2011); *see supra* at Section II.A.  Rather than point to allegations that set forth the specifics of "the who, what, when, where, and how" with respect to *BMW NA's* purported fraudulent conduct, the Opposition emphasizes the FAC's deficiency by continuing the pattern of general references of "Defendants" or "BMW."  Opp. at 31.  Plaintiffs claim that BMW NA "ignore[d] . . . examples of how Defendants used the mails and wires to implement the fraudulent scheme" and that "BMW and Bosch know which defendant used the mails or wires in those . . . examples."[16]  *See id.*  Unfortunately for Plaintiffs, an unsupported statement (in an Opposition brief) that "Defendants should know who did what" does not meet the pleading standard.  *See Weiss*, 2003 WL 25713970, at *6.  Plaintiffs never "identify with sufficient specificity which of the Defendants engaged in fraudulent activities

---

[16] Plaintiffs' singular focus on the Motion's reference to FAC ¶ 379 attempts to devalue the point. However, BMW NA raised numerous instances of impermissible group pleading.  *See* Mot. at 32-33, 35, 46.  Plaintiffs address none except FAC ¶ 379.

*through the use of the mails or wires*" in order to state their RICO claim.  *See Virginia Sur. Co. v. Macedo*, 2009 WL 3230909, at *8 (D.N.J. Sept. 30, 2009).

### B.     No Scheme To Defraud

In its Motion, BMW NA argued that the FAC lacks well-pleaded allegations sufficient to infer (i) that the process by which the BMWs at issue obtained certificates was fraudulent, or (ii) that representations made by "BMW" about the vehicles at issue being "clean" and "environmentally friendly" were false.  *See* Mot. at 35-38. Rather than rebut those arguments with reference to the FAC, the Opposition once again dissembles and distracts.

*First*, the Opposition asserts that in "other defeat-device cases, courts held that the plaintiffs adequately alleged mail and wire fraud based on virtually identical allegations," relying on *Duramax*, *EcoDiesel*, and *Volkswagen*.  *See* Opp. at 32.  Again, no.  The RICO claims in *Duramax*, *EcoDiesel*, and *Volkswagen* contain that which the FAC lacks: (i) admissions from the manufacturer, (ii) government proceedings based on the existence of defeat devices, (iii) neutral, third-party studies suggesting their existence, and/or (iv) detailed technical explanations of their nature, operation and effect.  *See In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1047 (E.D. Mich. 2018) (three specific defeat devices and several pages of "technical explanation"); *EcoDiesel*, 295 F. Supp. 3d at 975-76 (study that examined "various technical documents" and EPA notice of violation); *Volkswagen*, 2017 WL 4890594, at *1 n.1 (guilty plea admitting the existence of defeat devices).

*Second*, the Opposition asserts that BMW NA's engagement in a RICO conspiracy can be inferred because another party ("Bosch") is a defendant in other defeat device lawsuits.  *See* Opp. at 33.   The authority Plaintiffs invoke proves the contrary.  For example, *In re Chocolate Confectionary Antitrust Litig.* held allegations that "if it happened there, it could have happened here" did not suffice to state a claim.  801 F.3d 383, 403 (3d Cir. 2015).   And the FAC itself

demonstrates the vice in Plaintiffs' proffered inference: by emphasizing that the component delivered by Bosch (the EDC17) is malleable and its implementation widely variable from manufacturer to manufacturer (FAC ¶ 254), the pleading suggests there is no necessary inference about BMW NA's conduct based merely on the fact that BMWs used the EDC17.  *See supra* at Section II.B.2.  Just like the products at issue in *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 248 (3d Cir. 2012), the EDC17 had "a unique set of specifications and software code" depending on the manufacturer.  FAC ¶ 254; *see also Volkswagen*, 2017 WL 4890594, at *2 (observing the EDC17 is "not inherently a tool for deceit").

*Third*, the Opposition incorrectly invokes *Duramax* for the proposition that "BMW's" purported statements about "low emissions" and "clean" vehicles are more than puffery.[17]  *See* Opp. at 34; *see also* Opp. at 35 (citing *Mercedes II*, 2019 WL 413541, at *18, but quoting *Duramax*).  A subsequent decision in *Duramax* (ignored by the Opposition) made clear that "[s]tatements about an engine's 'low emissions' and 'great power' are inherently subjective and thus are puffery."  *In re Duramax Diesel Litig.*, 2018 WL 3647047, at *7 n.7 (E.D. Mich. Aug. 1, 2018).  And although Plaintiffs write off *Counts* because the court held that "promises of efficiency and reliability" were puffery (*see* Opp. at 35 n.38, citing *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 597 (E.D. Mich. 2017)), they ignore that the court also held that "[s]tatements of cleanliness convey inherently subjective concepts and thus constitute[ ] nonactionable opinion[s]."

---

[17] Plaintiffs fail to address that general statements that the BMW models at issue are "clean," "environmentally friendly," "protect the environment" or produce "less emissions" are not plausibly alleged to be statements regarding the amount of NOx those vehicles produce.  *See* Mot. at 37.  Instead, Plaintiffs state the logical opposite, which is irrelevant: "When NOx emissions are excessive, the vehicles plainly are not environmentally friendly . . ."  *See* Opp. at 35.  And in the one paragraph in the FAC that states that "BMW" promised in "brochures for 2013 and later" that its "emissions system reduced NOx," the FAC fails to allege that those brochures described a Subject Vehicle.  *See* FAC ¶ 144; Opp. at 35.

*See Counts*, 237 F. Supp. 3d at 597.   The FAC only quotes nonactionable "statements of cleanliness."  Opp. at 35 ("BMW" promoted vehicles as "clean and environmentally friendly[.]").

### C.     No RICO Injury

The Opposition contends the FAC pleads RICO injury by alleging that Plaintiffs overpaid for their vehicles.  *See* Opp. at 37-38.  But that generic assertion is insufficient because the FAC lacks facts suggesting that any overpayment actually exists.  *See* Mot. at 38-40.  *EcoDiesel*, the only authority Plaintiffs invoke in this regard (*see* Opp. at 37 (referencing *FCA* but quoting *EcoDiesel*)), is instructive.  In *EcoDiesel*, the plaintiffs were able  both  to  (i)  "identif[y] a specific range by which they allegedly overpaid for the Class Vehicles—between $3,120 and $5,000 more . . . than for the comparable gasoline vehicles"; and (ii) provide factual support for the premium alleged.  *See* Opp. at 37; Am. Compl. ¶¶ 191-95 (ECF #225), *EcoDiesel*, No. 17-md-2777 (N.D. Cal. Sept. 29, 2017).    Here, the FAC just posits a minimum overpayment of $1,500 and then, almost whimsically, asserts (without a single supporting fact) that overpayment is "more likely in the range of $5,000 to $20,000 per vehicle."  *See* FAC ¶¶ 31-70, 319.[18]

### D.     No Proximate Cause

The  Opposition's  response  to  BMW  NA's  arguments  regarding  proximate  cause  is confused and confusing, with Plaintiffs taking varying positions on matters as fundamental as whether this is a misstatement or an omission case.  *Compare* Opp. at 39, *with id*. at 40-41.  In its Motion, BMW NA explained that the FAC fails to allege that any Plaintiff actually relied on any

---

[18] The Opposition's attempt to distinguish the cases on which BMW NA relies is unavailing.  *See* Opp. at 38.  *Young v. Johnson & Johnson* and *Heinold v. Perlstein* both stand for the proposition that where, as here, plaintiffs do not allege more than a mere expectation that they would have paid less for a product, there is no RICO injury.  *See Young*, 2012 WL 1372286, at *4; *Heinold v. Perlstein*, 651 F. Supp. 1410, 1412 (E.D. Pa. 1987).

statement regarding the vehicles' emissions or any statement made by a BMW entity (much less BMW NA) regarding certification.  *See* Mot. at 40-42.  The Opposition deflects that issue with references to vague allegations regarding "BMW's" failure to disclose that the Subject Vehicles are not "clean diesels" and "emitted unlawfully high levels of pollutants."  Opp. at 38-39.  Such allegations cannot form the basis of a fraud claim.  *See infra* at Section IV.C; *see also, e.g.*, *Frederico*, 507 F.3d at 200 ("[T]he circumstances constituting fraud or mistake shall be stated with particularity.").  Moreover, the Opposition cites *In re Mercedes-Benz Tele Aid Contract Litig.* and *In re Warfarin Sodium Antitrust Litig.* for the proposition that Plaintiffs need not allege reliance on omissions to state a claim under RICO.  *See* Opp. at 39.  Neither *Mercedes-Benz* nor *Warfarin* is a RICO case; each holds merely that under the particular factual circumstances presented on motions for *class certification*, class members did not need to offer individualized evidence of reliance.  *See Mercedes-Benz*, 257 F.R.D. 46, 74-75 (D.N.J. 2009); *Warfarin*, 391 F.3d 516, 528-29 (3d Cir. 2004).

Finally, the Opposition asserts that allegations regarding EPA certification materials sufficiently plead RICO proximate causation.  *See* Opp. at 40-41.  The Opposition cites *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 649 (2008), for the proposition that Plaintiffs need not allege reliance, but ignore its admonition that "in most cases a plaintiff will not be able to establish even but-for cause 'without showing that someone relied on the defendant's misrepresentations.'"  *Lynch v. Capital One Bank (USA), N.A.*, 2013 WL 2915734, at *3 (E.D. Pa. June 14, 2013) (quoting *Bridge*, 553 U.S. at 659); *see also id.* (holding that "some form of reliance on the defendant's misrepresentation is necessary to properly establish proximate cause for a RICO violation based on mail or wire fraud").  Plaintiffs also cite *In re Avandia* (Opp. at 41), in which the court acknowledged that proximate cause is "lacking in RICO cases when the conduct directly

causing the harm was distinct from the actions that gave rise to the fraud." 804 F.3d at 642. Those words apply with force here, given the FAC lacks any suggestion that Plaintiffs' decision to acquire their vehicles was predicated on alleged misstatements to regulators. *See* FAC ¶ 424.

## IV.    STATE LAW CLAIMS: BARRED AND DEFECTIVE

### A.    Failure of Standing in Unrepresented States

Plaintiffs assert state-law claims for all fifty states but do not dispute that they have no representative who resides or was injured in twenty-two states. Plaintiffs do not question that the most recent holding from this District on this issue requires dismissal of those unrepresented claims. *See In re Insulin Pricing Litig.*, 2019 WL 643709, at *17 (D.N.J. Feb. 15, 2019) ("[D]istrict courts within the Third Circuit and throughout the nation have held that named plaintiffs in a class action lack standing to bring claims on behalf of putative classes under the laws of states where no named plaintiff is located and where no named plaintiff purchased the product at issue.").

The Opposition asks the Court to ignore that authority and instead join a phantom "consensus" to leave the standing inquiry for class certification. Opp. at 42-43. The Court should decline the improper invitation and follow the rule in this Circuit, which is both sensible and not the "outlier" Plaintiffs posit. *See McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *6-7 (D.N.J. June 6, 2014) (holding named plaintiff lacked standing to assert claims under laws of states in which he did not reside or suffer injury); *see also In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011).[19] No court in this District has adopted the categorical

---

[19] Plaintiffs cannot avoid *In re Magnesium* or parse its holding to carve out claims based on some "in-state effects" inquiry. *See* Opp. at 42, 43. *In re Magnesium* properly deemed the standing inquiry to be "a threshold issue that the Court must address" prior to the class certification. 2011 WL 5008090, at *10. To hold otherwise would mean "a plaintiff would be able to bring a class action complaint under the laws of nearly every state in the Union without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis." *Id.*

rule the Opposition claims, nor has the Third Circuit.  To the contrary, "[c]ourts generally decide standing issues before class certification issues because standing is jurisdictional."  *Hovermale v. Immediate Credit Recovery, Inc.*, 2018 WL 6322614, at \*2 (D.N.J. Dec. 4, 2018).  The Court should follow that rule here and dismiss Counts 54-57, 59-62, 64-65, 67-73, and 75-79.[20]

### B.   Failure To Allege Consumer Fraud

This Court observed that Plaintiffs' alleged misrepresentations fall into three categories: (1) the Subject Vehicles meet federal or state emissions standards; (2) the Subject Vehicles have "less emissions"; and (3) the Subject Vehicles are generally "environmentally friendly" and actively "protect" the environment.  *See* Opinion at 24-25.  The first category relies on the existence of a defeat device, which the FAC does not adequately allege.  *See supra* at Section II.B.3.  With respect to the second category, Plaintiffs ignore that for some components of emissions, diesel engines are substantially cleaner than gasoline-powered ones.  *See* Opp. at 43. Plaintiffs instead use BMW NA's reference to a RJN exhibit (for a simple, public fact) to claim that BMW NA presents a "factual issue" that this Court may not consider.  *Id*.  That is a weak attempt to avoid the dispositive point—the FAC lacks facts sufficient to infer knowing falsehood from generic statements that diesel vehicles create "less emissions."  Consumer fraud requires a deceptive act/omission or practice.  *See Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 501-502 (D.N.J. 2006) (dismissing claim for failure to allege deceptive act or practice). Plaintiffs' advertisements do not suggest "less emissions" was false because "less" in many

---

[20] The Opposition's argument on the FAC's claims "for notice purposes only" (Opp. at 49) is a creative fiction.  There is no practical difference between asserting claims "for notice purposes only" and naming a defendant "for notice purposes only."  *Compare* FAC ¶¶ 1181, 1379, *with Slukina v. 409 Edgecombe Ave. Hous. Dev. Fund Corp.*, 2013 WL 4446914 (N.Y. Sup. Ct. N.Y. Cty. Aug. 16, 2013).  With respect to these purported claims, Plaintiffs are not presently asserting any claim at all.  Count 54 (Alaska) and Count 78 (West Virginia) must therefore be dismissed.

instances does not even relate to NOx and because "less" is a comparison to *earlier diesel vehicles*, not another form of engine.  *See* Mot. at 43-44.

With respect to the third category, BMW NA invoked authority demonstrating that advertisements of "better fuel economy" constitute non-actionable puffery.  *See* Mot. at 44-45.  The Opposition's response is two-fold.  First, it contends the FAC provides sufficiently detailed "fuel economy" allegations.  *See* Opp. at 44.  The examples quoted, however, prove BMW NA's point—the referenced advertisements are non-actionable to the extent they even relate to fuel economy.  Second, the Opposition relies on a contrived reading of *Duramax* to argue that the advertisements are actionable.  *Duramax* does not speak to the "puffery" question at all, a point on which it was explicit: "[i]f Plaintiffs were *relying* on these advertisements as the basis for its claim of fraud, then Defendants' arguments regarding puffery . . . would become relevant."  298 F. Supp. 3d at 1084.  Here, because the alleged misrepresentations form the basis of Plaintiffs' state-law consumer fraud claims, the advertisements cited by Plaintiffs constitute non-actionable puffery.[21]

## C.      Failure To Satisfy Rule 9(b)

The FAC's state-law claims sound in fraud and must be pleaded with particularity.  *See* Mot. at 45-46 (citing cases).  The Court recognized this heightened Rule 9(b) analysis "would encompass, *inter alia*, the 'who, what, when, where, and how' of the presence of the defeat device in Plaintiffs' cars, the concealment of that fact, and so on."  Opinion at 23 n.19.  In its opening brief, BMW NA argued the FAC failed to meet this standard for three reasons: (1) the FAC engages in impermissible group pleading; (2) the misrepresentation claims fail to specify the "what, when

---

[21] Plaintiffs, moreover, do not address the fact that because no Plaintiff even claims she suffered worse-than-expected fuel economy, there can be no loss caused by the purported conduct and thus no claim for state law fraud.  *See* Mot. at 45.

and who" of statements upon which Plaintiffs relied; and (3) the concealment claims fail to specify the "who, when and how" of the purported defects. *See* Mot. at 45-47.

In response, Plaintiffs first mischaracterize argument and authority, claiming that the FAC can refer to conduct/statements of "Defendants" and "BMW" generically because *Duramax* permits them to do so. *See* Opp. at 45. Plaintiffs' reliance on *Duramax* is misguided. The Opposition states that *Duramax* included specific allegations that Bosch employees and entities blurred the legal boundaries between subsidiaries such that allegations against "Bosch" were sufficient. *See* Opp. at 45. No such allegations as between the BMW entities or between BMW NA and any Bosch entity exist here.[22] Each state law claim grounded in fraud or deception must be dismissed. *See, e.g.*, *Barnard v. Verizon Commc'ns, Inc.*, 451 F. App'x 80, 86 (3d Cir. 2011).

Plaintiffs then just reduce Rule 9(b) pleading obligations to nothing. According to the Opposition, the FAC alleges the "what, when and who" by alleging that each Plaintiff purchased a vehicle "in part, because of the diesel system as represented through advertisements and representations made by BMW" including advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine." Opp. at 45-46. That pablum shows why Rule 9(b) exists: what statements, when were they made, and by whom? *See In re Volkswagen "Clean Diesel" Mktg., Sales Practice & Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 915 (N.D. Cal. 2018) (dismissing state law claims because plaintiffs did not "identify when and where they saw this advertising, what type of advertising it was, or the specifics of what was represented").

---

[22] Plaintiffs' reliance on *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683 (D.N.J. Aug. 29, 2018) is similarly misplaced. In *Kearney*, plaintiffs specified each individual defendant's specific role in "designing, producing, marketing, and selling the Class Vehicles." *Id.* at *9. That is exactly what the FAC does not do.

Finally, the Opposition seeks to absolve Plaintiffs of their burden to identify who at *BMW NA* knew of or facilitated the alleged fraud based on reference to other manufacturers' admitted misconduct or to complaints in other cases with far greater pleading particularity than offered by the FAC. *See* Opp. at 46. In *Volkswagen*, the Defendant "had admitted to deliberately cheating on emissions tests." 2017 WL 4890594, at *2. And, both *Duramax* and *Counts* contained some degree of fact-based allegations corroborating the claim of fraud related to the use of undisclosed defeat devices, as did the pleadings in other diesel "defeat device" cases. *See* Mot. at 28-29. None of that exists here.

### D.      Failure To Comply with Statutory Requirements

The Opposition does not cure Plaintiffs' failure to comply with a range of state-law pleading and pre-filing requirements. *First*, Plaintiffs claim that FRCP 23 renders those requirements inapplicable in federal diversity cases. *See* Opp. at 48. The law in this District rejects that proposition. *See, e.g.*, *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 414-15 (D.N.J. 2018) (following "the majority of district and circuit courts" that reject the plurality in *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)). The statutory restrictions here are substantive provisions within the statutes themselves and thus define the scope of state-created rights under each statute. *See Shady Grove*, 559 U.S. at 421-29 (Stevens, J., concurring in part and concurring in judgment); *see also, e.g.*, *Delgado v. Ocwen Loan Servicing*, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017).[23]

---

[23] The treatment of Third Circuit law by Plaintiffs in this regard is cavalier. For example, *Schmigel v. Uchal*, 800 F.3d 113, 124 (3d Cir. 2015), concluded that the notice requirement in Pennsylvania's certificate merit statute is "substantive and must be applied in federal court." The Opposition, without fair citation, quotes the dissenting opinion in that case.

*Second,* the Opposition does not cure Plaintiffs' failure to plead an ascertainable loss under the NJCFA that is "definite, certain and measurable loss, rather than one that is merely theoretical." *Petinga v. Sears, Roebuck & Co.*, 2009 WL 1622807, at *5 (D.N.J. June 9, 2009). In *In re Riddell Concussion Reduction Litig.*, the court dismissed plaintiffs' NJCFA claims, even though plaintiffs alleged that they paid a "price premium" for nonexistent features, because plaintiffs failed to "specify the price paid for the product and the price of comparable products." 77 F. Supp. 3d 422, 438-39 (D.N.J. 2015). Without such details, "Plaintiff[s'] allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss." *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 541-42 (D.N.J. 2011); *see also Mercedes II*, 2019 WL 413541, at *24-25 (dismissing NJCFA claim for failure to allege ascertainable loss). Just so here: Plaintiffs do not allege how much a comparable vehicle would cost, how they arrived at the supposed $1,500 premium, or that any alleged premium would not be recovered upon trade-in or resale. Accordingly, Count 32 must be dismissed.

*Third,* Plaintiffs lack standing to seek injunctive relief under the Georgia and Minnesota deceptive trade practices acts (Counts 13 and 26, respectively). The future repairs Plaintiffs seek are speculative future damages for past conduct, not future conduct for which an injunction is necessary to prevent future harm. *See Wehner v. Linvatech Corp.*, 2008 WL 495525, at *1, *4 (D. Minn. Feb. 20, 2008) (no standing to seek injunctive relief based on past injury despite alleging need for future surgeries); *Catrett v. Landmark Dodge, Inc.*, 253 Ga. App. 639, 644 (2002).

*Fourth*, Plaintiffs cannot bring any claims under the Iowa Consumer Frauds Act ("ICFA") because "[a] class action lawsuit alleging a violation of [the ICFA] shall not be filed with a court unless it has been approved by the attorney general." Iowa Code § 714H.7. The FAC does not allege that any Plaintiff obtained attorney general approval. Plaintiffs' reliance on *In re*

*Volkswagen Timing Chain Prod. Liab. Litig.* is simply a repackaging of the flawed *Shady Grove* argument, addressed already.  *See supra* at 28; 2017 WL 1902160, at *24 (D.N.J. May 8, 2017).

*Fifth,* Plaintiffs cannot pursue claims under the Kentucky Consumer Protection Act (Count 19) because no Kentucky plaintiff alleges privity with BMW NA.  *See Skilcraft Sheetmetal, Inc. v. Kentucky Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992); *EcoDiesel*, 295 F. Supp. 3d at 1022-23 (dismissing claim for failure to allege privity). There is no exception based solely on "express representations" as the Opposition suggests.  Opp. at 50.  Mr. Avic, the Kentucky-named Plaintiff, alleges that he purchased his vehicle from a Volvo dealership and does not allege BMW NA made a warranty for his benefits; therefore, he does not allege direct privity with BMW NA or that any privity exception applies.

## CONCLUSION

For the reasons set forth above, and in the Motion, BMW NA respectfully requests that the Court dismiss the FAC with prejudice.

Dated: January 17, 2020                    Respectfully submitted,

LATHAM & WATKINS LLP

 /s/ Kevin M. McDonough            _
Kevin M. McDonough
*kevin.mcdonough@lw.com*
Michael Lacovara (admitted *pro hac vice*)
*michael.lacovara@lw.com*
Arthur F. Foerster (admitted *pro hac vice*)
*arthur.foerster@lw.com*
Johanna Spellman (admitted *pro hac vice*)
*johanna.spellman@lw.com*
885 Third Avenue
New York, New York 10022
(212) 906-1200

*Attorneys for BMW of North America, LLC*