# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA HU, et al., | Civil Action No. 2:18-cv-04363 (KM)(JBC) |
| Plaintiffs, | Motion Date: February 3, 2020 |
| v. | **ELECTRONICALLY FILED** |
| BMW OF NORTH AMERICA LLC, et al., | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

---

## DEFENDANT ROBERT BOSCH LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

---

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Jeffrey A. Rosenthal
Carmine D. Boccuzzi, Jr.
One Liberty Plaza
New York, NY 10006
(212) 225-2000

Matthew D. Slater
2112 Pennsylvania Ave., N.W.
Washington, D.C. 20037
(202) 974-1500

*Counsel for Defendant Robert Bosch LLC*

CRITCHLEY, KINUM & DENOIA, LLC

Michael Critchley, Sr.
Amy Luria
75 Livingston Avenue
Roseland, NJ 07068
(973) 422-9200

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 4

I.    PLAINTIFFS LACK ARTICLE III STANDING TO SUE BOSCH LLC. ....................... 4

    A.   No Injury-In-Fact. ................................................................................ 4

    B.   Plaintiffs' Injuries Are Not Fairly Traceable To Bosch LLC's Conduct. ................. 5

II.   PLAINTIFFS' RICO CLAIM FAILS. ................................................................. 8

    A.   Plaintiffs Impermissibly Seek To Convert An Alleged CAA Violation Into A RICO Claim. ................................................................................................ 8

    B.   Plaintiffs Do Not Satisfy Proximate Cause. ........................................... 12

    C.   Plaintiffs Have Failed To Allege A Pattern Of Racketeering Activity. ................ 15

III.  PLAINTIFFS' STATE LAW CLAIMS FAIL. ................................................... 19

CONCLUSION .............................................................................................. 22

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)................................................................................14

*Ayres v. Gen. Motors Corp.*,
    234 F.3d 514 (11th Cir. 2000) ........................................................8, 11

*Bank of Am. Corp. v. City of Miami*,
    137 S. Ct. 1296 (2017)..........................................................................13

*Bridge v. Phoenix Bond & Indemnity Co.*,
    553 U.S. 639 (2008)........................................................................12, 14

*Brown v. First Tenn. Bank Nat'l Ass'n*,
    753 F. Supp. 2d 1249 (N.D. Ga. 2009) .............................................8, 10

*Callahan v. A.E.V., Inc.*,
    182 F. 3d 237 (3d Cir. 1999)............................................................8, 10

*Chiarella v. United States*,
    445 U.S. 222 (1980)..............................................................................20

*Cleveland v. United States*,
    531 U.S. 12 (2000) .......................................................................... 16-17

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*,
    528 F.3d 1001 (8th Cir. 2008) .............................................................16

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
    746 F. Supp. 170 (D.D.C. 1990) ..........................................................12

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
    941 F.2d 1220 (D.C. Cir. 1991)..............................................................8

*Giles v. Phelan, Hallinan & Schmieg, LLP*,
    No. 11-6239 (JBS/KMW), 2013 WL 2444036 (D.N.J. June 4, 2013) ......................7

*Hemi Grp., LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010)..................................................................... 10, 13-15

*Holmes* v. *Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992) ........................................................................................ 12-13

*In re Avandia Marketing, Sales Practices & Product Liability Litigation*,
    804 F.3d 633 (3d Cir. 2015) ........................................................................ 11, 13, 15

*In re Duramax Diesel Litig.*,
    298 F. Supp. 3d 1037 (E.D. Mich. 2018) ..................................................................4

*In re Gerber Probiotic Sales Practices Litigation*,
    Civil Action No. 12-835 (JLL), 2013 WL 4517994 (D.N.J. Aug. 23, 2013) ..........................7

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*,
    903 F.3d 278 (3d Cir. 2018) ........................................................................... 5, 7

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir. 2012) ..............................................................................7

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    264 F. Supp. 3d 1040 (N.D. Cal. 2017) ...................................................................9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    MDL No. 2672 CRB (JSC), 2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ..............................13

*Koronthaly v. L'Oreal USA, Inc.*,
    374 F. App'x 257 (3d Cir. 2010) .........................................................................5

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153, 1191 (3d Cir. 1993) ................................................................... 16, 20

*Longmont United Hospital v. Saint Barnabas Corp.*,
    305 F. App'x 892 (3d Cir. 2009) ........................................................................15

*N.J. Air Nat'l. Guard v. Fed. Labor Relations Auth.*,
    677 F.2d 276 (3d Cir. 1982) ............................................................................12

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011) ...............................................................................4

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ......................................................................................16

*Salinas v. United States*,
    522 U.S. 52 (1997) .......................................................................................16

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ...........................................................................7

*St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*,
    Civil Action No. 18-2157, 2019 WL 4393112 (E.D. Pa. Sept. 13, 2019) ..............14

*Toll Bros., Inc. v. Twp. of Readington*,
    555 F.3d 131 (3d Cir. 2009)...........................................................................5

*United States v. Ferriero*,
    866 F.3d 107 (3d Cir. 2017)..........................................................................18

*Williams v. Dow Chemical Co.*,
    255 F. Supp. 2d 219 (S.D.N.Y. 2003)............................................................17

*Wyeth v. Levine*,
    555 U.S. 555 (2009)............................................................................... 11-12

**State Cases**

*LiMandri v. Judkins*,
    60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997) .......................................................19

**Federal Statutes**

18 U.S.C. § 1961 ...........................................................................................18

18 U.S.C. § 1962 ...................................................................................... 15-16

42 U.S.C. § 7401 .............................................................................................9

42 U.S.C. § 7604 ...........................................................................................11

**Other Authorities**

40 C.F.R. § 86.1803-01....................................................................................9

40 C.F.R. § 86.1844-01....................................................................................9

Robert Bosch LLC ("Bosch LLC") respectfully submits this reply brief in further support of its Motion to Dismiss, ECF No. 69 ("Bosch LLC Br."), and in response to the brief Plaintiffs filed in opposition to the Motion.[1]

## INTRODUCTION

Plaintiffs' First Amended Consolidated Class Action Complaint ("Complaint" or "FAC") should be dismissed with prejudice.  The Court dismissed an earlier iteration of the Complaint for lack of Article III standing, finding that "the Court cannot infer the existence of a defeat device for the entire vehicle class based on these allegations" and that Plaintiffs had not sufficiently identified "the right person" to bring their claims.  Opinion, ECF No. 59 at 27 ("Prior Op.").  As demonstrated in the opening briefs of Bosch LLC and BMW NA, the FAC still fails to adequately plead an injury-in-fact suffered by Plaintiffs and traceable to the conduct of Bosch LLC, which cannot be cured by further amendment.

The reply brief filed by BMW NA, ECF No. 75, refutes Plaintiffs' arguments with respect to injury-in-fact and Plaintiffs' plain violation of the indirect purchaser rule applicable to RICO claims.  To conserve the Court's resources, Bosch LLC will not repeat those and other arguments for dismissal made by BMW NA, which apply equally and *a fortiori* to Bosch LLC. Bosch LLC accordingly focuses this reply on the arguments that show that Plaintiffs' claims are particularly deficient as to Bosch LLC.

Absent from the Complaint is the necessary factual heft to state a plausible claim of improper conduct by Bosch LLC.  Having asked the Court to jump through the hoop of assuming

---

[1]     Unless otherwise stated, capitalized terms have the definitions given them in the Bosch LLC Brief.  Citations to Plaintiffs' Opposition to Defendant Robert Bosch LLC's Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint, ECF No. 72, appear as "Opp'n."

a fraud, and having further asked the Court to jump through the hoop of assuming an injury, Plaintiffs ask the Court to jump through a third hoop that is more than one too many, which is to assume the facts that would be needed to tie Bosch LLC to a legally viable claim against it.

*No Article III Standing*.  The Court previously dismissed this action for lack of a sufficiently pled injury traceable to Defendants.  But the allegations added to the FAC did not cure the defects noted by the Court, and Plaintiffs' purported injuries still have no connection to Bosch LLC.  Even if Plaintiffs could trace their alleged (and non-cognizable) injury to advertisements that misrepresented the performance of the Subject Vehicles – and BMW NA explains why they cannot – Plaintiffs have failed to allege that Bosch LLC had anything to do with those allegedly deceptive advertisements and do not show how their alleged injury – overpayment for their vehicles – is traceable to the alleged conduct of Bosch LLC.

*No RICO Claim*.  Plaintiffs' RICO claim against Bosch LLC impermissibly would convert an alleged Clean Air Act  ("CAA") violation into a treble-damages RICO claim. Plaintiffs have tied their allegations that their vehicles emitted unlawful levels of NOx or that they are equipped with illegal "defeat devices" inseparably to the regulatory regime of the CAA. The EPA and CARB, and not private plaintiffs, have the authority and expertise to set emissions standards and to determine whether emissions-relevant functions in vehicles are illegal defeat devices or legal Auxiliary Emissions Control Devices (AECDs).  Allowing Plaintiffs to move forward with their private treble-damages RICO claim would divest these agencies of their statutorily assigned primacy and undermine the carefully crafted scheme of the CAA, which does not provide even for a single-damages private right of action.

Additionally, Plaintiffs cannot meet RICO's proximate cause requirement.  Their arguments speak to but-for causation, which alone does not satisfy RICO's requirements, and to

foreseeability, which the Supreme Court has held does not satisfy proximate cause.  In addition, Plaintiffs do not adequately account for intervening acts that break the causal chain.  Their alleged injury depends on allegedly defrauding EPA and CARB into certifying the vehicles, and those agencies can be expected to remedy any purported injury they suffered as the first and primary injured parties.  The Supreme Court in *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010), instructs not to go beyond this first step.  Nor have Plaintiffs shown how Bosch LLC's conduct was a proximate cause of their alleged overpayment injury, when so many independent third parties (and Plaintiffs themselves), not Bosch LLC, were involved in price setting and negotiation.

Nor do Plaintiffs plead predicate acts by Bosch LLC, another requirement to state a RICO claim.  Binding Supreme Court precedent forecloses any argument that Bosch LLC's alleged role in a scheme to deceive the regulators into approving the sale of the Subject Vehicles can constitute predicate acts of mail or wire fraud.  And Plaintiffs identify no involvement by Bosch LLC in the marketing or sale of the Subject Vehicles in particular, which is the source of their alleged injury.  That Bosch LLC allegedly provided a component that the BMW Defendants allegedly used to get regulatory permission to sell the Subject Vehicles does not make Bosch LLC – or any other supplier – complicit in later decisions by others regarding how to market and for what price to sell the Subject Vehicles themselves.

*No Fraudulent Concealment*.  Plaintiffs' state law fraudulent concealment claims fail because Bosch LLC's alleged clean diesel marketing activities and communications with regulators did not give rise to a duty to disclose.  In opposition, Plaintiffs argue that they were not required to plead that a "special" relationship existed, but this misses the point – they have

failed to allege that there was any relationship whatsoever, special or not, between Bosch LLC and consumers.

## ARGUMENT

### I.    PLAINTIFFS LACK ARTICLE III STANDING TO SUE BOSCH LLC.

BMW NA's Reply, which Bosch LLC adopts, explains why Plaintiffs have not satisfied the requirements for Article III standing.  Bosch LLC amplifies reasons why Plaintiffs lack standing to pursue claims against Bosch LLC in particular.

#### A.    No Injury-In-Fact.

Plaintiffs contend that they have Article III standing on the basis that they paid a premium for a diesel vehicle and ask this Court to find that the bare allegation supports standing. Opp'n at 6.  But the contention lacks any factual support that makes it plausible.  For example, Plaintiffs who purchased new vehicles have not made any allegation that they compared prices between comparably equipped gasoline and diesel BMW vehicles or that their own vehicle sticker showed a line item for a diesel configuration that demonstrated they paid a premium for diesel.  Plaintiffs who purchased used vehicles likewise provide no factual allegations to support the contention that they paid any kind of diesel premium in relation to their individually negotiated purchases.  Setting aside whether the "diesel premium" allegation was adequately supported in the other diesel emissions cases on which Plaintiffs seek to rely, the Complaint in this case must stand or fall on its own allegations, and the lack of support for the bare allegation dooms Plaintiffs' standing.[2]

---

[2]    Claims that Plaintiffs would not have purchased the Subject Vehicles, would have paid less for them, or will incur future costs if BMW NA is required by regulators to modify them are all helplessly speculative and cannot satisfy injury-in-fact.  *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of 'possible future injury' are not sufficient to satisfy Article III." (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990))); *accord In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1071 (E.D. Mich. 2018) (finding that where "damages are

Plaintiffs' attempt to manufacture injury by claiming that they "in fact experienced th[e] harm" of driving vehicles that emitted excess NOx, Opp'n at 13 (emphasis omitted), is unavailing. Plaintiffs do not claim any injury from driving the vehicles; this is not among the alleged injuries the Court aptly summarized in the Prior Opinion. Prior Op. at 24. Plaintiffs' vehicles are safe and legal to drive and, as the FAC acknowledges, delivered promised fuel economy (and, accordingly, lower $CO_2$ emissions). No Plaintiff alleges that he or she was sickened or otherwise affected directly by alleged "excess" NOx emissions. Indeed, Plaintiffs' allegations of the existence of such emissions depend on litigation-driven testing. A plaintiff in such circumstances does not have standing to sue based on regret about purchasing the product or about the price paid. Mere "buyer's remorse . . . is not a cognizable injury under Article III." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 281 (3d Cir. 2018). *See also Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 258-59 (3d Cir. 2010) (holding that plaintiff who purchased lipstick containing trace amounts of lead but was not harmed by the lead in the lipstick failed to plead "injury in fact" under Article III); *Johnson & Johnson*, 903 F.3d at 290 n.15 (approving of *Koronthaly*'s reasoning).

### B.   Plaintiffs' Injuries Are Not Fairly Traceable To Bosch LLC's Conduct.

Contrary to Plaintiffs' contention, Bosch LLC's standing argument is not based on proximate cause standards. While the causal connection required for Article III standing "need not be *as close* as the proximate causation needed to succeed on the merits of a tort claim," the plaintiff still "must establish that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (emphasis added). Plaintiffs fail this standard because, even assuming

---

contingent on future, uncertain developments . . . those injuries may never occur and are thus currently unmeasurable" and therefore "cannot give rise to RICO standing.").

arguendo that they adequately pled an injury-in-fact, there is no causal connection between

Plaintiffs' alleged injury – overpayment for the Subject Vehicles – and Bosch LLC's alleged

conduct – promoting clean diesel technology in the United States.[3]

Plaintiffs contend that they can meet the traceability requirement because "every Plaintiff

alleges exposure to materially deficient messaging because each 'selected and ultimately

purchased [his or her vehicle], in part, because of the diesel system, as represented through

advertisements and representations made by BMW,' including 'advertisements on BMW's

website and representations from the dealership touting the efficiency, fuel economy, and power

and performance of the engine.'" Opp'n at 9-10 (quoting FAC ¶¶ 32-70).  But those allegations

speak, if at all, to the conduct of "BMW" or BMW dealers – third parties – and not Bosch LLC,

precisely what *Toll Bros*. says they may not do.

The only promotional messaging Plaintiffs actually attribute to Bosch LLC, as opposed to

its parent company Bosch GmbH or the amalgam "Bosch," is the general promotion of "clean

diesel" in the United States.  Bosch LLC Br. at 5.  In the Article III context, the problem is not,

as Plaintiffs argue, that Plaintiffs fail to plead reliance on specific advertisements.  *See* Opp'n at

7-11.  Rather, as the FAC shows, and Plaintiffs do not dispute, *see* Opp'n at 15-23, Plaintiffs

were wholly unaware of Bosch LLC and cannot trace their decisions to purchase the Subject

---

[3]     To the extent Plaintiffs make proximate cause arguments in the section of their
opposition regarding Article III standing, all such arguments will be addressed *infra* Part II.B.

Vehicles and to pay the supposed diesel premium to Bosch LLC's alleged promotion of clean diesel outlined in the FAC.[4]

Dismissal is therefore supported by *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 240-41 (3d Cir. 2012), and Plaintiffs' effort to distinguish this case is based on non sequiturs. *See* Opp'n at 11. As *In re Gerber Probiotic Sales Practices Litigation* explains, Article III traceability cannot be plausibly inferred from vague allegations about general marketing campaigns. Civil Action No. 12-835 (JLL), 2013 WL 4517994, at *6 (D.N.J. Aug. 23, 2013) (finding that where plaintiffs vaguely alluded to an "overall marketing campaign" in connection with the product at issue, they failed to allege "how misrepresentations in the 'advertising' caused their injuries").[5] As in *Gerber*, Plaintiffs have failed to plausibly explain how Bosch LLC's "overall marketing campaign" for the broad concept of "clean diesel technology" led to their alleged decision to purportedly overpay for their vehicles. As no Article III injury can be traced to Bosch LLC's conduct, Plaintiffs lack standing to sue and the Complaint should be dismissed against it.

---

[4]     Clean Diesel lobbying is also not inherently wrong. The phrase is non-actionable puffery, and, in any event, is not alleged to be false – modern diesel technology is indisputably cleaner than past generations. Even the Complaint admits that "NOx and PM emissions can also be reduced through expensive exhaust gas after-treatment devices, primarily catalytic converters, which . . . transform the chemical composition of a vehicle's NOx and PM emissions into ***harmless*** inert gases, such as nitrogen gas ($N_2$), water ($H_2O$) and carbon dioxide ($CO_2$)." FAC ¶ 94 (emphasis added). In addition, Bosch LLC's lobbying activities with U.S. regulators and legislators are protected speech under the *Noerr-Pennington* doctrine and cannot form the basis of a predicate act of a pattern of racketeering. *See Giles v. Phelan, Hallinan & Schmieg, LLP*, No. 11-6239 (JBS/KMW), 2013 WL 2444036, at *5 (D.N.J. June 4, 2013) (applying *Noerr-Pennington* to RICO claims); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932-33 (9th Cir. 2006) (same); Bosch LLC Br. at 16-17.

[5]     Plaintiffs' attempts to satisfy traceability based on a reference to "Bosch LLC [being] intimately involved in [the] creation of [a] component that caused [their] overpayment," Opp'n at 11, is not supported by reference to the allegations in the FAC, and in any event is legally deficient. The alleged existence of a product defect by itself does not satisfy traceability. *See Johnson & Johnson*, 903 F.3d at 283.

## II.     PLAINTIFFS' RICO CLAIM FAILS.

BMW NA's Reply, which Bosch LLC adopts, explains why Plaintiffs have not met their

obligation to plead a concrete RICO injury to business or property, without which their RICO

claim fails.[6]  Dismissal of the RICO claim is required for other independent reasons.

### A.     Plaintiffs Impermissibly Seek To Convert An Alleged CAA Violation Into A RICO Claim.

Bosch LLC's opening brief demonstrated that Plaintiffs' RICO claim impermissibly

would convert an alleged CAA violation into a treble-damages RICO claim, contrary to the

Third Circuit's controlling analysis in *Callahan v. A.E.V., Inc.*, 182 F. 3d 237 (3d Cir. 1999), as

well as comparable decisions in the D.C. and Eleventh Circuits.[7]  *Callahan* teaches that Plaintiffs

may not bring a private RICO claim for treble damages based on conduct that allegedly violates

a regulatory statute that provides its own carefully calibrated set of remedies, that does ***not***

include a private right of action, and where a violation of that statute is ***not*** a predicate act on

which the RICO statute permits a RICO claim to be based.  182 F.3d at 260.  Where the

regulatory statute underlying the claim is designed to protect the public interest – in *Callahan*,

temperance, here, clean air – the enforcement mechanisms of the regulatory statute, and not

those of RICO, should be given effect.  *Id.* at 267-68.

While Plaintiffs attempt to evade the clear holdings of *Callahan*, *Ayres*, *Danielsen*, and

*Brown* by arguing that their RICO claim rests on alleged misrepresentations to Plaintiffs,

Plaintiffs cannot get around the fact that the FAC's claims, at their core, concern regulatory

---

[6]     BMW NA's arguments regarding indirect purchasers have additional significance for Bosch LLC, which is even further removed from Plaintiffs in the purchasing chain.  *See* BMW NA Reply at 3-8.

[7]     *See Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 525 (11th Cir. 2000); *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc*., 941 F.2d 1220, 1229 (D.C. Cir. 1991); *Brown v. First Tenn. Bank Nat'l Ass'n*, 753 F. Supp. 2d 1249, 1254 (N.D. Ga. 2009).

compliance.  Quoting the FAC, Plaintiffs acknowledge the purported omission of which they complain is that their "'vehicle actually [allegedly] emitted *unlawfully* high levels of pollutants.'"  Opp'n at 7 (emphasis added).  Both the FAC and the Opposition are littered with comparable allegations of illegality, and the alleged illegality is a violation of the CAA.  *See, e.g.,* FAC at ¶¶ 259 ("the EDC-17 was used surreptitiously to evade emissions regulations"); 261 ("This workaround was illegal.  The [CAA] expressly prohibits defeat devices . . . .").

Plaintiffs make a half-hearted effort to untether their claim from the regulatory regime by asserting that their vehicles emitted more NOx than "their gasoline counterparts" or "what a reasonable consumer would expect."  Opp'n at 3.  But as BMW NA shows in their Reply, Plaintiffs have not pointed to any advertising promising lower NOx emissions than gasoline vehicles (as opposed to older diesel vehicles).  BMW NA Reply at 25-26.  And Plaintiffs have not even attempted to define their purported "reasonable consumer" standard.  Even if they had identified such a standard, enforcing standards based on consumer expectations on a case-by-case basis would undercut the CAA's goal of establishing predictable standards by creating "an anarchic patchwork of federal and state regulatory programs," and create "nightmares" for vehicle manufacturers.  *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 264 F. Supp. 3d 1040, 1049 (N.D. Cal. 2017) (citations omitted); see also 42 U.S.C. § 7401 (CAA intended to protect the broad public interest).

Given Plaintiffs' tying of their claims to "legal" and "lawful" requirements, resolution of whether or not the Subject Vehicles contain "defeat devices" is inseparable from the regulatory regime of the CAA, which distinguishes illegal defeat devices from legal emissions-altering AECDs, *see* 40 C.F.R. § 86.1803-01, and provides a mechanism for vehicle manufacturers to justify emissions-changing AECDs as part of the certification process.  *See* 40 C.F.R. § 86.1844-

01(d)(11).  Thus, Plaintiffs' allegation that they were deceived about the legality of the Subject Vehicles' emissions is entirely derivative of the claim that the Subject Vehicles violate the comprehensive regulatory regime of the CAA.  And if there was a CAA violation, it is the CAA that provides for the consequences, not civil RICO.  As Justice Ginsburg explained in her concurrence in *Hemi Group*, when an "alleged fraud is based on violations of [a comprehensive] Act[,] the nature and consequences of the fraud are properly determined solely by the scope of that Act."  *Hemi Grp.*, 559 U.S. at 19 (citation and internal marks omitted).  *See also Callahan*, 182 F.3d at 261 (finding no proximate causation where "the plaintiffs' losses are at most derivative of any injuries to the [agency's] regulatory mission").[8]

*Callahan* and the other cases on which Bosch LLC relies address exactly this point.  For example, in *Brown*, the plaintiff rested his claim on the allegation that the defendants falsely certified that they complied with federal housing and lending regulations.  753 F. Supp. 2d at 1253-54.  The court rejected the claim on grounds that apply equally here: "When Congress expresses a desire to remedy a deprivation of a federal right with administrative relief, plaintiffs may not use civil RICO claims that are premised on mail and wire fraud as an end-around legislative intent."  *Id.* at 1254, 1260 ("Though the 'duty not to lie' – which Mr. Brown alleges is the basis of his fraud claim – may not be regulatory in nature, the very lie is, in fact, rooted in the VA regulations.").

Nor can Plaintiffs distinguish their case from the rejected RICO claims in *Ayres* on the grounds that Plaintiffs "sue for fraud, not violation of the CAA, which does not provide a remedy – let alone an exclusive remedy – for such fraud."  Opp'n at 21.  Where the alleged fraud is, as

---

[8]     This same analysis explains why Plaintiffs' claims fall outside the relevant zone of interests.  RICO protects alleged victims of specified predicate acts.  Violations of the CAA are not among them.  *See* Bosch LLC Br. at 10-11.

here, reliant on allegations of a violation of a comprehensive regulatory regime, the regulatory regime controls. Contrary to the Plaintiffs' argument, individuals who truly believe they have been harmed by purported CAA violations do have a remedy under the CAA. They can bring suit – but only to compel regulatory compliance with the CAA (i.e., not for damages), and even then only when the EPA has not done so. *See* 42 U.S.C. § 7604. Had Congress intended to authorize private actions for damages for CAA violations, it would have done so. *Cf. Ayres*, 234 F. 3d at 523-24 ("Congress knew how to create a private cause of action to enforce the notification requirements and would have done so expressly if it had intended to create such a private cause of action.").

Plaintiffs' citation to *In re Avandia Marketing, Sales Practices & Products Liability Litigation* ("*In re Avandia*"), Opp'n at 18-19, is far afield. Plaintiffs in that case did not rest their RICO claim on an allegation stemming from an alleged violation of a comprehensive regulatory regime or on alleged deception of the Food and Drug Administration in approving Avandia. *In re Avandia*, 804 F.3d 633, 635 (3d Cir. 2015). Rather the plaintiffs' claims in *In re Avandia* relied on allegations that defendants had "deliberately concealed the significant safety risks associated with the use of Avandia." *Id.* at 636. The Supreme Court has observed, "a central premise of federal drug regulation [is] that the manufacturer" and not the Food and Drug Administration "bears responsibility for the content of its label at all times. It is charged both with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market." *Wyeth v. Levine,* 555 U.S. 555, 570-71 (2009). Unlike the CAA, which vests the EPA with primary adjudicative power over the purported emissions-related violations on which Plaintiffs rely, the Federal Food, Drug, and Cosmetic Act creates a

regulatory regime that "contemplates that federal juries will resolve most misbranding claims." *Id*. at 570.[9]

In these circumstances, a claim under RICO, a "general statute," must give way to the "specific and comprehensive provisions" of another statutory scheme. *See Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 746 F. Supp. 170, 174-78 (D.D.C. 1990). This is a matter of basic statutory construction, not some sort of preemption. Indeed, allowing a RICO claim such as Plaintiffs' to go forward would effectively nullify the carefully structured provisions of the CAA by giving Plaintiffs the right to privately enforce the CAA's provisions, requirements, and standards through treble-damages claims. *See, e.g.*, *N.J. Air Nat'l. Guard v. Fed. Labor Relations Auth.*, 677 F.2d 276, 282, 285 (3d Cir. 1982) (noting the need to "attempt to harmonize the two statutes that are in apparent conflict" and expressing sympathy for giving preference to "the specific over the general statute"). A complainant could circumvent those provisions, and divest EPA from its position of primacy, by pointing to a purported violation in a vehicle that has been approved by the EPA and finding someone to say he or she would have not have purchased the vehicle had they known of that purported violation. Congress did not provide for that result.

### B. Plaintiffs Do Not Satisfy Proximate Cause.

Plaintiffs' RICO claim must also be dismissed against Bosch LLC because their alleged RICO injuries were not proximately caused by Bosch LLC. RICO standing requires not just "but for" causation but also proximate causation. *See Holmes* v. *Sec. Inv'r Prot. Corp.*, 503 U.S. 258,

---

[9]     Similarly, Bosch LLC did not ignore *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), as Plaintiffs suggest. Opp'n at 20. *Bridge*, which holds that first-party reliance is not an element of RICO, 553 U.S. at 660, is not relevant to the question of whether Plaintiffs can use RICO to pursue a treble-damages claim for an alleged violation of a comprehensive regulatory regime that does not provide a private right of action for even a single-damages claim.

268 (1992); *In re Avandia*, 804 F.3d at 642.  Plaintiffs' opposition relies heavily on non-binding

decisions in other emissions cases that were decided based on different case law and different

factual allegations.  *See* Opp'n at 23-24.  Such citations do not cure the inadequacies in

Plaintiffs' pleading and do not explain how, in this matter, Bosch LLC's conduct is alleged to

have proximately caused Plaintiffs' alleged injuries.

Plaintiffs argue that "[w]ithout Bosch's knowing participation, the scheme would not

have existed at all."  *Id.* at 23 (emphasis omitted).  In this same vein, Plaintiffs allege that the

Bosch EDC-17 was an "enabler" for defeat devices and that "vehicles found or alleged to have

been manipulating emissions in the United States . . . use a Bosch EDC-17 device."  FAC ¶ 25.

But these allegations speak at best to but-for cause, which does not satisfy the RICO standard.

*See Holmes*, 503 U.S. at 268; *In re Avandia*., 804 F.3d at 642.  The EDC-17 is "not inherently a

tool for deceit; it is widely used by automakers that operate modern diesel engines."  *See In re

Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB

(JSC), 2017 WL 4890594, at *2 (N.D. Cal. Oct. 30, 2017) ("*Napleton*").

Plaintiffs' further argument, unsupported by specific facts, that "Bosch and BMW agreed

to incorporate defeat devices into the [Subject Vehicles] while knowing that they would be sold

to customers who had no idea that the defeat devices existed," Opp'n at 24 (emphasis omitted),

does not provide the missing direct connection between Bosch LLC's alleged conduct and

Plaintiffs' alleged injury.  Rather, it speaks at best to foreseeability.  As the Supreme Court has

held, "foreseeability alone does not ensure the close connection that proximate cause requires."

*Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305-06 (2017); *see also Hemi Grp.*, 559

U.S. at 12 (plurality) ("The dissent would have RICO's proximate cause requirement turn on

foreseeability, rather than on the existence of a sufficiently 'direct relationship' between the

fraud and the harm. . . . Our precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm.").[10]

Plaintiffs also fail to adequately account for intervening acts that break the causal chain. For one, even accepting as true Plaintiffs' allegations that Bosch LLC participated in the design of a "defeat device" for the Subject Vehicles that defrauded state and federal regulators (which Bosch LLC did not), *see, e.g.*, Opp'n at 24 ("[t]he very purpose of the scheme was to defraud the public and regulators"), the direct victim of such a scheme would be the federal and state regulators, the EPA and CARB.  *See Hemi Grp.*, 559 U.S. at 10; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-58 (2006); Bosch LLC Br. at 23.  Only those entities – not private plaintiffs – are charged with ensuring the integrity of the certification process.  And in furtherance of those responsibilities, the EPA and CARB "can be expected to vindicate the laws by pursuing their own claims."  *See Anza*, 547 U.S. at 460.  Indeed, they did exactly that in relation to Volkswagen's conduct, where the manufacturer admitted to using a "defeat device." Plaintiffs' continued emphasis on *Bridge* is thus misplaced, Opp'n at 25-26, because the county in *Bridge*, unlike EPA and CARB, suffered no injury at all.  *See Bridge*, 553 U.S. at 658 (noting that the lower courts found "that respondents and other losing bidders were the *only* parties injured by petitioners' misrepresentations"); *see also St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, Civil Action No. 18-2157, 2019 WL 4393112, at *5 (E.D. Pa. Sept. 13,

---

[10]     The Complaint contains allegations regarding the general commercial work divide between Bosch LLC and BMW, including for example that "software calibrations are an interactive process," that Bosch LLC employees "regularly communicated with BMW employees," and that because the EDC-17 is a "complex, highly proprietary engine management software" Bosch LLC must work in "close collaboration with the automaker from beginning to end."  *See* FAC ¶¶ 254-58.  These allegations describe ordinary commercial collaboration, not fraud.  Setting aside purely conclusory allegations, the remainder of the Complaint does not sufficiently bridge the gap between such commercial collaboration generally, and knowing participation in a scheme to defraud regulators and consumers.

2019) ("civil RICO's direct relationship requirement necessitates dismissal—even at the pleading stage—where substantial intervening factors attenuate the causal connection between a defendant's conduct and a plaintiff's injury").[11]

Separately, Bosch LLC had nothing to do with the chain of distribution that led to Plaintiffs' alleged RICO injury – the supposed "diesel premium." Bosch LLC was not responsible for pricing decisions for the Subject Vehicles, much less with the negotiation of sales prices by BMW dealers, and even less still with the privately negotiated sales of used cars by which most Plaintiffs acquired their vehicles. Plaintiffs' response is no more than *ipse dixit*. *See* Opp'n at 24. Following the Supreme Court's instruction not to go beyond the "first step" in civil RICO causation, Plaintiffs' claims therefore fail RICO's direct relationship requirement. *See Hemi Grp.*, 559 U.S. at 10.

## C.   Plaintiffs Have Failed To Allege A Pattern Of Racketeering Activity.

Plaintiffs have not alleged that Bosch LLC engaged in conduct that could be indictable as a RICO predicate act. Accordingly, Plaintiffs have not alleged that Bosch LLC conducted or participated in a RICO "enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

Plaintiffs misread 18 U.S.C. § 1962(c) to argue that "each defendant need only *participate* in the predicate acts that form the pattern of racketeering, and need not itself commit all elements of the predicate acts." Opp'n at 27. But this is incorrect. "The requirements of §

---

[11]     Likewise, in *In re Avandia*, 804 F.3d at 643-44, proximate cause was satisfied because the injury was not derivative of harm suffered by a more immediate victim of the alleged RICO predicate act. In contrast, in *Longmont United Hospital v. Saint Barnabas Corp.*, 305 F. App'x 892, 895-96 (3d Cir. 2009), where "the government was a direct victim" of the fraud (as here), the court found no proximate causation because the government "vindicated the laws by pursuing its own claims." These cases therefore support dismissal of Plaintiffs claims for lack of proximate cause.

1962(c) must be established as to each individual defendant." *Craig Outdoor Advert., Inc. v. Viacom Outdoor*, *Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008).  Plaintiffs' citation to *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), is inapposite.  Opp'n at 28.  The "narrow question" at issue in *Ernst & Young* was "the meaning of the phrase 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs.'"  507 U.S. at 177.  The case did not address the separate requirement that the participation be "through a pattern of racketeering activity."  18 U.S.C. § 1962(c).[12]

Plaintiffs' case against Bosch LLC boils down to the assertion that "Bosch" provided the BMW Defendants with a "defeat device" and related services that purportedly enabled the BMW Defendants to "evade U.S. emissions requirements in vehicles sold solely in the United States and Europe."  *See, e.g.*, Opp'n at 28 (citing FAC ¶ 74).  Even if this were true, under *Cleveland v. United States*, 531 U.S. 12 (2000), those allegations cannot state a claim for mail or wire fraud because the object of the fraud must be property in the hands of the alleged victim, but the object of the alleged fraud here – regulatory licenses – are not property while in the hands of the regulator.  531 U.S. at 26.

Plaintiffs try to distinguish *Cleveland* on the basis that "the Supreme Court held that the defendant did not commit mail fraud because it did not obtain money or property *from anyone*."  Opp'n at 30.  But that is not what *Cleveland* decided.  The defendants in *Cleveland* were charged with fraudulently obtaining video poker licenses from Louisiana.  531 U.S. at 17.  As the Supreme Court acknowledged, "video poker licensees may have property interests in their

---

[12]     Plaintiffs' citation to *Salinas v. United States*, 522 U.S. 52, 63-64 (1997), is equally unavailing.  Because Plaintiffs have failed to state a claim under § 1962(c), their claim under § 1962(d) must also fail.  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

licenses." *Id.* at 25.  And having obtained the licenses, the defendants were then able to obtain money from Louisiana gamblers.  *Id.* at 22.  But as the Supreme Court recognized, there is a distinction between "[l]icenses pre-issuance" and "expected revenue . . . ***after*** they have been issued to licensees."  *Id.*  The Supreme Court specifically rejected the Government's argument that, even if the license was not "property in the hands of the State" the indictment made out the elements of mail fraud because defendants "obtained property" through the issuance of the license.  *Id.* at 25-26 (internal quotation marks omitted).  In the Court's words, which are equally applicable here, such a reading of the mail (or wire) fraud "statute would appear to arm federal prosecutors with power to police false statements in an enormous range of submissions to state and local authorities."  *Id.* at 26.

Nor have Plaintiffs alleged that Bosch LLC engaged in predicate acts of mail or wire fraud on consumers.  Ignoring *Cleveland*, Plaintiffs argue this is irrelevant because of Bosch LLC's "knowing involvement in the creation, development, and sale of defeat devices in the BMW vehicles at issue."  Opp'n at 31.  As a result, Plaintiffs fail to meaningfully refute Bosch LLC's argument that they have failed to plead facts with particularity to support their conclusory allegation that Bosch LLC defrauded them into parting with money in exchange for the Subject Vehicles.  Bosch LLC Br. at 15.  Simply repeating their allegations about Bosch LLC's alleged role in a fraud against the regulators is not enough.[13]

---

[13]     The court's analysis in *Williams v. Dow Chemical Co.*, 255 F. Supp. 2d 219 (S.D.N.Y. 2003), is instructive.  There, as here, Plaintiffs alleged that Defendants had "engaged in mail and wire fraud in order to mislead the EPA."  *Id.* at 225-26 n.9 (internal quotation marks omitted).  The court applied *Cleveland* and held that "allegations of fraud on the EPA cannot be considered racketeering activity."  *Id.* at 226.  In addition, the court found that plaintiffs' "allegations of mail and wire fraud directed at consumers . . . also fail to support a claim."  *Id.*  As the *Dow* court's two-part analysis of plaintiffs' RICO claims suggests, *Cleveland* requires that courts independently analyze allegations of fraudulent activity directed at the regulators – which "cannot be considered racketeering activity" – and allegations of fraud against consumers.

For similar reasons, Plaintiffs are wrong to argue – without citing to any authority – that they are "not required under RICO to establish an independent duty to disclose for Bosch." Opp'n at 32.  This assumes the conclusion.  Bosch LLC cannot be liable "under RICO" absent individualized allegations of predicate acts involving the Plaintiffs – in this case of mail and wire fraud.  Nor are Plaintiffs correct that their allegations under Third Circuit law are sufficient.  *Id*. *United States v. Ferriero*, 866 F.3d 107 (3d Cir. 2017), is inapposite.  In that case, the court found that there was sufficient evidence to support a wire fraud conviction where the defendant had personally recommended to a local government official that the government use the services of a company run by his co-conspirator, who then sent a deceptive email that concealed the defendant's ownership interest in the company in response to specific questions from the local government.  *Id.* at 111-12, 120.  Bosch LLC is not alleged to have had any comparable personal knowledge or relationship with Plaintiffs, and is instead a "complete stranger" to Plaintiffs.  *Id.* at 122 n.16 (citing *Chiarella v. United States*, 445 U.S. 222, 232-33 (1980)).  In the absence of ***any*** sort of relationship, Bosch LLC cannot have a duty to disclose to consumers it never communicated with.  *See also infra* Part III.

Finally, Bosch LLC's alleged general promotion of clean diesel technology through lobbying activities is protected First Amendment speech under *Noerr-Pennington*.  Bosch LLC Br. at 16.  Plaintiffs appear to agree, and concede that they "are not asserting that Bosch's lobbying activity was unlawful."  Opp'n at 33 (citing *Napleton*, 2017 WL 4890594, at *15).  RICO's expansive list of predicate acts does not include lawful activity.  *See* 18 U.S.C. § 1961(1).  Therefore, Bosch LLC's general promotion of clean diesel technology cannot serve as the necessary predicate acts.

Because Plaintiffs have not pled with particularity that Bosch LLC engaged in any predicate acts, they have not alleged that Bosch LLC participated in the conduct of a RICO enterprise through a pattern of racketeering activity.  For this reason, and for the reasons discussed by BMW NA, their RICO claim must be dismissed.

## III.    PLAINTIFFS' STATE LAW CLAIMS FAIL.

BMW NA's opening brief and reply demonstrate that Plaintiffs' state law claims remain deficient.  As with Plaintiffs' RICO claim, Plaintiffs fail to support their claims for fraudulent concealment.  *See* Bosch LLC Br. at 19-21.

Plaintiffs concede that there can be no claim for fraudulent concealment absent a duty to disclose, but instead argue that Bosch LLC's "superior knowledge of essential facts" and "partial disclosure of relevant facts" created a duty to disclose based on Bosch LLC's "intimate involvement in the development" of the Subject Vehicles and partial disclosures "through its promotional materials and communications with U.S. regulators."[14]  Opp'n at 34-35.  Even a duty to disclose based on superior knowledge and partial disclosure, however, still requires "some other relationship between the plaintiff and defendant in which a duty to disclose can arise. . . . As a matter of common sense, such a relationship can only come into being as a result of some sort of *transaction* between the parties." *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543

---

[14]    Although Plaintiffs argue that "Bosch and BMW made affirmative representations that give rise to a duty of disclosure regardless of any special relationship between the parties," Opp'n at 34, the allegations Plaintiffs summarize and cite to in their opposition in support of that argument refer to conduct that allegedly occurred between Bosch GmbH and ***Volkswagen***, not Bosch LLC and BMW NA.  *See id.* (citing FAC ¶¶ 268-83).  Plaintiffs go so far as to cite allegations regarding development of Volkswagen's "akustikfunktion."  Volkswagen has pled guilty to criminal charges for its deliberate manipulation of that function in ways unique to it and its vehicles.  Moreover, development of a function is not an affirmative representation, and for the reasons argued in the Bosch LLC Brief, at 5 and in Part I.B., *supra*, there is no allegation that Bosch LLC was involved with BMW's marketing materials, and therefore no affirmative representation argument can be made for Bosch LLC.

(Cal. Ct. App. 1997).  Here, there was no transaction between Plaintiffs and Bosch LLC, and Plaintiffs have sued "a complete stranger."  *See Chiarella*, 445 U.S. at 232-33.  Plaintiffs' claims are additionally deficient because they are based on Bosch LLC's alleged "intimate involvement in the development" of the Subject Vehicles, yet there are no allegations to suggest that any individual Plaintiffs knew anything about Bosch LLC's purported involvement in the development of the emissions control system.  *See* FAC ¶¶ 31-70.  Further, Plaintiffs have not alleged any specific facts with regard to Bosch LLC's actual involvement in the development of the emissions control system of the Subject Vehicles and Plaintiffs' allegations regarding the general commercial work divide between Bosch LLC and BMW are insufficient.  *See* FAC ¶¶ 254-58; *supra* note 10.

State law is consistent on the point that there must be something *between* two parties, such as a communication, transaction, or other relationship, before a duty to disclose will arise. *See, e.g.*, *Lightning Lube, Inc.*, 4 F.3d at 1185 (noting that New Jersey fraudulent concealment claims require a "duty of disclosure [that] may arise from one party's having made partial disclosure *to [the] other* or from nature of transaction and relationship *between them*." (emphasis added) (citing *Berman v. Gurwicz,* 458 A.2d 1311, 1313 (N.J. Ch. 1981))).  Plaintiffs' allegations that Bosch LLC's promotional materials and communications with U.S. regulators created a relationship between Plaintiffs and Bosch LLC is likewise unavailing because Plaintiffs still fail to identify any partial disclosure Bosch LLC allegedly made *directly* to Plaintiffs or even allege that Plaintiffs were aware of Bosch LLC's purported promotions and communications.  Merely hiding a material fact is not enough—the defendant must hide that fact from the plaintiff himself. *See Lightning Lube*, 4 F.3d at 1185.

The allegations in the FAC do not sufficiently allege that any Bosch LLC promotional materials were directed at Plaintiffs or United States consumers generally, and communications with regulators are not disclosures made to Plaintiffs.  The only promotional materials Bosch LLC is alleged to have been involved with are those relating to clean diesel marketing initiatives, FAC ¶¶ 284-94, and there is nothing inherently wrongful or unlawful about clean diesel promotion.[15]  The allegations indicate certain events and conferences Bosch LLC was involved with and groups in which Bosch LLC is a member.  *Id.*  By Plaintiffs' own description of those marketing activities, they were directed at "U.S. automakers," "regulators," "industry leaders," "policymakers," "stakeholders," "journalists." "executives," and "NGOs."  FAC ¶¶ 284 ("making affected vehicles available for regulators to drive"), 285 ("a push to convince U.S. automakers"), 286 ("with the aim of providing a venue for 'stakeholders to gain insight . . . and engage with industry leaders and policymakers'"), 287 (conferences with "many regulators and legislators"), 290 (an event with a "roster of lawmakers, journalists, executives, regulators, and NGOs"),[16] 291 (membership in an advocacy group that "lobbies Congress, U.S. regulators, and CARB").  Notably absent from that list is Plaintiffs or consumers generally.

Furthermore, any allegations regarding fraudulent communications with regulators are not actionable here because (1) the Complaint does not allege with sufficient specificity which fraudulent communications Bosch LLC is alleged to have made to regulators, (2) communications from Bosch LLC to regulators are not communications made *between* Bosch

---

[15]     Paragraph 289 of the FAC quotes from a Bosch LLC press release that mentions clean diesel; however that release focuses on Audi vehicles and is entitled "Bosch Powers Audi Clean Diesel Across the U.S. and Around the World."  Nor have Plaintiffs alleged that any of the named plaintiffs saw this press release or even that it was directed at consumers.

[16]     To the extent that journalists were invited to the event, the FAC states that a Volkswagen Jetta, not any of the Subject Vehicles, was featured at the event.  FAC ¶ 290.

LLC and Plaintiffs, (3) the EPA and CARB are not parties to this action, have not made a determination that any communications were fraudulently made to them, and Plaintiffs cannot sue on the EPA's behalf, and (4) Plaintiffs have not explained with the required specificity how the communications with regulators were purportedly fraudulent.[17]  Therefore, Plaintiffs failed to establish a duty to disclose and insufficiently pled their state law claims.

## CONCLUSION

For the foregoing reasons, including those stated in Bosch LLC's opening brief and those in BMW NA's briefs, the Court should dismiss the Complaint against Bosch LLC with prejudice.

---

[17]    As BMW NA points out, "no regulator has *ever* found a defeat device in a BMW vehicle at issue or even accused BMW NA of having a defeat device."  BMW NA Reply at 10.

Respectfully Submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Dated:  January 17, 2020          By:    */s/ Jeffrey A. Rosenthal*
                                         Jeffrey A. Rosenthal
                                         Carmine D. Boccuzzi, Jr.
                                         One Liberty Plaza
                                         New York, NY 10006
                                         Tel. (212) 225-2000
                                         Fax: (212) 225-2086
                                         jrosenthal@cgsh.com

                                         Matthew D. Slater
                                         2112 Pennsylvania Avenue NW
                                         Washington, DC 20037
                                         Tel. (202) 974-1500
                                         Fax: (202) 974-1999
                                         mslater@cgsh.com

                                         CRITCHLEY KINUM & DENOIA, LLC
                                         Michael Critchley, Sr.
                                         Amy Luria
                                         75 Livingston Avenue
                                         Roseland, NJ 07068
                                         Tel. (973) 42-9200
                                         Fax: (973) 422-9700
                                         mcritchley@critchleylaw.com
                                         aluria@critchleylaw.com

                                         *Counsel for Defendant Robert Bosch LLC*