**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOSHUA HU, ET AL., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILAR SITUATED** | Civ. No. 18-4363 (KM) (JBC) |
| **Plaintiffs,** | **OPINION** |
| **v.** | |
| **BMW OF NORTH AMERICA, LLC, A DELAWARE CORPORATION; BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT (BMW AG), A CORPORATION ORGANIZED UNDER THE LAWS OF GERMANY, ROBERT BOSCH GMBH, A CORPORATION ORGANIZED UNDER THE LAWS OF GERMANY; AND ROBERT BOSCH LLC, A DELAWARE LIMITED LIABILITY COMPANY,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

The named plaintiffs, putative representatives of a class of car buyers who purchased certain BMW vehicles, bring this motion for reconsideration of my June 25, 2020 Opinion and Order (DE 79; DE 80) partially granting the motions of defendants BMW North America LLC and Robert Bosch LLC to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, plaintiffs assert that I erroneously dismissed their claims under the Federal RICO statute, 18 U.S.C. §§ 1962(c)–(d), 1964, on the ground that they had not directly purchased the vehicles from the defendants, but rather via intermediary dealerships.

For the reasons provided herein, I will deny plaintiffs' motion.

1

## I.   Summary

I write primarily for the parties and assume familiarity with the facts and procedural history.

Named plaintiffs represent a putative class of car buyers who each allegedly own a BMW X5 or BMW 335d. Plaintiffs allege that BMW installed a "defeat device" in these car models which altered the vehicles' emission control system when tested by regulators in a specific test environment. (DE 59 at 4.) They allege that the use of this defeat device concealed the fact that the X5 and 335d models emitted levels of nitrous oxide many times higher than their gasoline counterparts and in excess of what BMW advertised. (*Id.* at 4–5.)

On June 27, 2019, I dismissed plaintiffs' initial Complaint on the ground that it lacked any "straightforward allegation that an identified plaintiff bought a car which, when tested or analyzed, turned out to contain a defeat device." (*Id.* at 2.) Instead, the plaintiffs merely relied on: (1) testing of a single vehicle which revealed discrepancies between laboratory and on-road emission results, and (2) the unsupported inference that the tested vehicle was a valid exemplar demonstrating that all class members' vehicles contained a defeat device. (*Id.* at 16.) That failure of pleading convinced me that plaintiffs lacked Article III standing, although I dismissed without prejudice to allow them an opportunity to cure that defect. (*Id.* at 2.)

Plaintiffs then filed a First Amended Complaint ("1AC"). (DE 65.) Defendants filed a new motion to dismiss, which I partially granted on June 25, 2020. (DE 79.) In that opinion I concluded that plaintiffs had alleged sufficient facts to establish Article III standing; the amended complaint alleged testing of five representative vehicles which were substantially identical to those owned by the named plaintiffs and which were exemplary of the class, giving rise to a plausible inference that BMW X5s and 335ds contained defeat devices. (DE 79 at 11, 13; *see, e.g.,* 1AC ¶¶ 19, 125–28, 174, 180–85, 192.)

Nevertheless, I partially granted defendants' motion to dismiss as to several counts of the amended complaint. Relevant to this motion for

reconsideration is my dismissal of plaintiffs' Federal Civil RICO claim, which alleged that the BMW and Bosch defendants coordinated their operations through the design, manufacture, distribution, testing process, and sale of the vehicles with defeat devices. (DE 79 at 13–14.) I concluded that plaintiffs had not met the specialized standing inquiry applied to RICO claims known as the "indirect purchaser rule." Plaintiffs alleged no purchases from the BMW or Bosch defendants, but only from dealers, private parties, and auctions. (1AC ¶¶ 31–70.) Thus, I concluded, on the weight of *Illinois Brick* and various Third Circuit decisions applying it, that plaintiffs were indirect purchasers and thus lacked standing to assert RICO claims. (DE 79 at 16–19.)

Plaintiffs filed a motion for reconsideration. (DE 81-1.) My initial decision was correct, so I deny plaintiffs' motion.

## II.   Discussion

### a.   Legal standard

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i). Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Generally, reconsideration is granted in three scenarios: (1) when there has been an intervening change in the law; (2) when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal citation omitted); *see also Crisdon v. N.J. Dep't of Educ.*, 464 F. App'x 47, 49 (3d Cir. 2012) ("The purpose of a motion for reconsideration … is to correct manifest errors of law or fact or to present newly discovered evidence.") (internal citation omitted); *Carmichael v. Everson*, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004). "The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of

the matter." *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014).

That said, the court will not let stand a consequential error that is brought to its attention. Plaintiffs assert that my indirect purchaser analysis was incorrect and thus constitutes a "clear error of law." I disagree, however.

### b. The Indirect Purchaser Rule

As discussed in my prior opinion, the Supreme Court announced the indirect purchaser rule in the context of antitrust law in *Illinois Brick Company v. Illinois*. 431 U.S. 720, 737 (1977). Plaintiffs do not dispute that the *Illinois Brick* rule applies to federal Civil RICO claims just as it does to antitrust claims. (DE 86 at 2) *See McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855 (3d Cir. 1996); *Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris*, 171 F.3d 912, 932 (3d Cir. 1999); *Minnesota v. Sanofi-Aventis U.S. LLC*, 2020 WL 2394155 at *8 (D.N.J. Mar. 31, 2020).

Under the indirect purchaser rule, a purchaser that is two or more steps removed from the alleged RICO violator lacks standing to bring a claim; to reuse an example, if Smith is overcharged for an item due to a RICO violation but then sells the item to Jones, Jones has no standing to bring a RICO claim even if the overcharge was passed along to him as a result of the defendant's violation. (DE 79 at 15.) "Our decision in *Illinois Brick* established a bright-line rule that authorizes suits by *direct* purchasers but bars suits by *indirect* purchasers." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520 (2019). Thus, "'the immediate buyers from the alleged antitrust violators may maintain a suit against the antitrust violators . . . . *indirect* purchasers who are two or more steps removed from the violator in a distribution chain[, however,] may not sue." *Id.* (quoting *Kansas v. UtiliCorp United Inc.*, 497 U.S. 199, 207 (1990)).

The indirect purchaser rule set out in *Illinois Brick* is a bright-line rule that admits no exceptions. The *Apple* Court was clear: "the bright-line rule of *Illinois Brick* means that there is no reason to ask whether the rationales of *Illinois Brick* 'apply with equal force' in every individual case. We [will] not

4

engage in 'an unwarranted and counter productive exercise to litigate a series of exceptions.'" *Id.* at 1524 (quoting *UtiliCorp*, 497 U.S. at 216). Thus, while *Illinois Brick* justified its holding on the ground that barring indirect purchaser suits would (1) facilitate more effective enforcement of antitrust laws, (2) avoid complicated damages calculations, and (3) eliminate duplicative damages against defendants, courts must apply the indirect purchaser rule to all cases regardless of whether those rationales are applicable in a particular case. *Apple*, 139 S. Ct. at 1524. The indirect purchaser doctrine therefore applies regardless of whether, in an individual case, it would give rise to conflicting claims.

There are some aspects of the *Apple* decision which give pause. For instance, the *Apple* Court took the trouble to analyze Apple's assertion that permitting consumers to sue in that case could result in "conflicting claims to a common fund." *Id.* at 1524 (quoting *Illinois Brick*, 431 U.S. at 737). It also stated that "*Illinois Brick* did not purport to bar multiple liability that is unrelated to passing an overcharge down a chain of distribution." *Id.* at 1525. Both of these statements, however, were made immediately after the Court made clear that it would apply the indirect purchaser rule regardless of whether multiple liability was a significant concern in a particular case. *Id.* at 1524 ("[T]he bright-line rule of *Illinois Brick* means that there is no reason to ask whether the rationales of *Illinois Brick* 'apply with equal force' in every individual case . . . ."). The Court's discussion of the *Illinois Brick* rationales, then, was no more than dicta—reasoning in the alternative that Apple lost even on its own, incorrect interpretation of the law. *Id.* ("But even if we engage with this argument, we conclude that the three *Illinois Brick* rationales—whether considered individually or together—cut strongly in the plaintiffs' favor here, not Apple's.").

The Third Circuit affirmed these principles in *Warren General Hospital v. Amgen, Inc.*, 643 F.3d 77 (3d Cir. 2011). There, the Court considered a hospital's class action lawsuit against Amgen, a pharmaceutical manufacturer.

*Id.* at 80. The hospital alleged that Amgen used its market power to impair competition for Red Blood Cell Growth Factor drugs. *Id.* The hospital, however, purchased Amgen's drugs through an independent middleman wholesaler known as AmerisourceBergen. *Id.* at 82. The hospital nevertheless insisted that it should be treated as a direct purchaser because it negotiated purchase requirements and prices directly with Amgen, communicated directly with Amgen regarding costs and issues with the drugs, negotiated prices with Amgen at the hospital, and received service on its contracts by an Amgen representative, among other things. *Id.* at 87.

The Third Circuit was unconvinced. It concluded that "the hospital is 'the immediate buyer from AmerisourceBergen, and does not purchase directly from [Amgen,] the 'alleged antitrust violator[].'" *Id.* at 88 (quoting *UtiliCorp.*, 497 U.S. at 207). It noted that Warren General placed its order through AmerisourceBergen, was charged by that company, and physically took delivery of the drug shipments from AmerisourceBergen. *Id.* at 88. It thus concluded that "[i]n light of this record, there is no way of getting around the conclusion that Warren General is the *second* purchaser in the chain of distribution" and is thus barred by the indirect purchaser rule. *Id.* The court went on to reiterate the holding in *UtiliCorp* that "whether all of the policy rationales underpinning *Illinois Brick* are exactly replicated in the case before us is not dispositive" since "even assuming that any economic assumptions underlying the *Illinois Brick* rule might be disproved in a specific case, we find it an unwarranted and counterproductive exercise to litigate a series of exceptions." *Id.* at 96 (quoting *UtiliCorp*, 497 U.S. at 216–17).

The *Warren General* court considered the plaintiff's argument that "*Illinois Brick*—and the policies underlying the direct purchaser rule—confer standing on the first *harmed* direct purchaser, not just the direct purchaser." *Id.* at 91. The court rejected that argument as confusing the specialized standing inquiry under *Illinois Brick* with the more general question of whether the plaintiff had suffered an, concluding that the "question in this case is

whether Warren General is a direct purchaser." *Id.* at 92. It noted that the Supreme Court's jurisprudence has never "resolve[d] what party was a direct purchaser by calculating exactly where the harm lay" and noted that "the Court's discussion in those cases of the policy rationales underpinning the rule manifests the Court's intent to *avoid* linking direct purchaser status to injury calculations and determinations." *Id.*

The analyses in *Apple* and *Warren General* require that I dismiss plaintiffs' civil RICO claims because they are not direct purchasers. Plaintiffs acknowledge that their BMWs were all purchased from dealerships or third parties. That makes them indirect purchasers. The bright line rule of *Illinois Brick* thus bars their claim.

Plaintiffs argue that the indirect purchaser standing rule does not apply because, under the individual circumstances of their case, there is no dueling claim to a common fund. (Motion to Reconsider (DE 81-1 ("MTR") at 2–3.) By that, they mean that their claims as consumers would not overlap with any claim brought by BMW dealers. (*Id.* at 3–8.) As *Apple* and *Warren General* make clear, however, there are no exceptions to the indirect purchaser rule, including any exception based on the absence of a common fund. While Plaintiffs rely on cases that predate *Apple* and *Warren General* in support of that exception, I can only conclude that those cases are no longer binding, to the extent they support the plaintiffs' position at all.[1]

Plaintiffs also assert that the indirect purchaser rule applies only to indirect *victims.* They allege that they are direct victims, defrauded by the defendants' marketing materials, and that the dealers cannot be considered fraud victims at all. (Plaintiffs' Reply (DE 86) at 2.) A similar argument was

---

[1] For instance, although *In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1164 (3d Cir. 1993) appeared to credit the argument that *Illinois Brick* applies only where the plaintiffs would recover from a common fund, *Warren General* made clear that the rule applies regardless of whether the rationales from *Illinois Brick* are implicated in any particular case. 643 F.3d at 96 (quoting *UtiliCorp*, 497 U.S. at 216). And, as noted, the Supreme Court reiterated the same point in *Apple,* just last year.

explicitly rejected in *Warren General*: there is no "direct-harm" exception to the indirect purchaser rule. 643 F.3d at 91.

Finally, plaintiffs assert that my decision in *Albers v. Mercedes-Benz USA, LLC,* Civ. No. 16-881, 2020 WL 1466359 at *7 (D.N.J. Mar. 25, 2020) requires that I find an exception to the indirect purchaser rule in this case. (MTR at 1.) That decision, however, consisted of nothing more than my ruling as to one defendant, in which I adhered to the law of the case as already decided by (now-retired) Chief Judge Linares with respect to the other defendants.

## III.   Conclusion

As noted, the indirect purchaser rule is a policy-based, bright-line limit on standing; the appellate courts have forewarned lower courts, like this one, that they are not to create exceptions. For the reasons set forth above, then, I will deny plaintiffs' motion (DE 81-1) for reconsideration.

An appropriate order follows.

Dated: February 2, 2021

/s/ Kevin McNulty

_____
**Kevin McNulty**
**United States District Judge**