## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSHUA HU, *ET AL.*, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA LLC, *ET AL.*,<br><br>Defendants. | Civ. No. 18-4363 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Now before the Court is the plaintiffs' motion (DE 106) for certification of an order for interlocutory appeal under 28 U.S.C. § 1292(b) or, in the alternative, entry of partial final judgment under Federal Rule of Civil Procedure 54(b). As I write for the parties, this opinion assumes familiarity with the facts of the case and my prior opinions and orders partially granting defendants' motion to dismiss (DE 79, 80) and denying plaintiffs' motion for reconsideration of that decision (DE 102, 103.)

Plaintiffs seek to immediately appeal the issue of whether their federal RICO claim is subject to the "indirect purchaser" rule most recently construed by the United States Supreme Court in *Apple v. Pepper*, 139 S. Ct. 1514 (2019), either via certification of my prior order for immediate appeal pursuant to 28 U.S.C. § 1292(b) or via entry of partial final judgment pursuant to Federal Rule of Civil Procedure 54(b). I conclude that this is not one of the unusual cases in which such procedures are warranted. I thus deny their request.

I.      **DISCUSSION**

A.      **Certification for Interlocutory Appeal**

A district court may, within its discretion, certify an interlocutory order for immediate appeal:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). *See also Simon v. United States,* 341 F.3d 193, 199 (3d Cir. 2003). Thus, to certify an order for appeal, the court must find "(1) that the order of appealability involves a controlling question of law, (2) as to which there is a substantial ground for a difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *Ensey v. Gov't Employers Ins. Co.*, No. CV 12-7669 (JEI/KMW), 2014 WL 12613400, at *2 (D.N.J. Aug. 18, 2014) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 753 (3d Cir. 1974)). "A 'controlling question of law' is one in which either: (1) if decided erroneously, would lead to reversal on appeal; or (2) [it] is 'serious to the conduct of the litigation either practically or legally.'" *Hall v. Wyeth, Inc.*, 2010 WL 4925258 at *1 (D.N.J. Dec. 2, 2010); *see also Ensey*, 2014 WL 12613400 at *2. A "substantial ground for difference of opinion" exists where "courts that have examined an issue reach 'conflicting and contradictory opinions . . . upon the particular question of law.'" *Ensey*, 2014 WL 12613400 at *2 (quoting *Kolbeck v. General Motors Corp.*, 702 F. Supp. 532, 542 (E.D. Pa. 1988)); *see also Cuttic v. Crozer–Chester Med. Ctr.*, 806 F. Supp. 2d 796, 804–05 (E.D. Pa. 2011) ("[S]ubstantial grounds for difference of opinion exist where there is general doubt or conflicting precedent as to the correct legal standard."). Less commonly, some courts have found that even an issue of first impression, though not the subject of conflicting opinions, may present such a debatable issue. *See CFPB v. Navient Corp.*, 2021 WL 772238 at *3

2

(M.D. Pa. Feb. 26, 2011) ("Questions of first impression can present substantial grounds for difference of opinion.").

Certification is never mandatory, however. I may exercise my discretion to decline certification of a question for immediate appeal even if the three criteria are met. *Ensey*, 2014 WL 12613400 at *2 (citing *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976); *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 358 (2001)).

Plaintiffs identify the following as an appeal-worthy "controlling question":

> Whether indirect purchasers lack standing to bring RICO claims.
> (DE 106-1 at 7.)

I will assume this is, or could be, a "controlling" question. I do not, however, find that there are sufficient "grounds for difference of opinion" as to the answer. Plaintiffs fail to cite any cases which raise a significant doubt as to my previous decision.

Whether the indirect purchaser rule applies to bar plaintiffs' claims really depends on three sub-component questions:

(1) Does the indirect purchaser rule apply to RICO claims?

(2) Does the indirect purchaser rule apply to plaintiffs' claims here?

(3) Do any exceptions apply to save plaintiffs' claims from the application of the rule?

The answers to each question are uncontroversially decided by controlling precedent as: (1) yes; (2) yes; and (3) no.

### i.    Does the Indirect Purchaser Rule Apply to RICO Claims?

As background, the indirect purchaser rule states that in antitrust cases, as a matter of standing, a purchaser that is two or more steps removed from an alleged violator cannot bring a claim, even if he suffered an overcharge passed along by the direct purchaser as a result of the defendant's violation. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 737 (1977)); *see also Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 207 (1990). Thus, while "the immediate buyers from the alleged antitrust violators may maintain a suit against the antitrust

violators . . . . indirect purchasers who are two or more steps removed from the violator in a distribution chain may not sue." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520 (2019).

The Third Circuit has been clear that "antitrust standing principles apply equally to allegations of RICO violations," and in particular that the "precepts taught by *Illinois Brick* and *Utilicorp* apply to RICO claims, thereby denying RICO standing to indirect victims." *McCarthy v. Recordex Service, Inc.*, 80 F.3d 842, 855 (3d Cir. 1996) (citing *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 270 (1992)); *see also Wooten v. Loshbough*, 951 F.2d 768, 770 (7th Cir. 1991); *County of Oakland v. City of Detroit*, 866 F.2d 839, 751 (6th Cir. 1989). Though *McCarthy* was decided twenty-five years ago, courts in this district continue to apply it to dismiss RICO claims. *See Minnesota by Ellison v. Sanofi-Aventis U.S. LLC*, 2020 WL 2394155 at *8 (D.N.J. Mar. 31, 2020) ("'Only the purchaser immediately downstream from the alleged [RICO violator]' possesses standing to pursue an action") (quoting *McCarthy*, 80 F.3d at 848); *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis US LLC*, 2019 WL 1418129 at *16 (D.N.J. Mar. 29, 2019); *In re Insulin Pricing Litig.*, 2019 WL 643709 at *7–13 (D.N.J. Feb. 15, 2019); *see also In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 164 (3d Cir. 2017) (citing *McCarthy* favorably). These decisions have provided numerous opportunities for the Third Circuit to clarify the continued vitality of *McCarthy*, and its silence is telling.[1]

Plaintiffs cite a number of United States Supreme Court and Third Circuit cases which, they claim, establish that the indirect purchaser rule does not apply in RICO cases. *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 528 (1992); *St. Luke's Health Network, Inc. v.*

---

[1]     Until the filing of this motion, plaintiffs themselves agreed that *McCarthy* was controlling.. (DE 86 at 2 ("As the Third Circuit has held, the 'precepts taught by *Illinois Brick* and *Utilicorp* apply to RICO claims, thereby denying RICO standing to indirect victims.") (citing *McCarthy*, 80 F.3d at 855 (cleaned up).) What plaintiffs really seek is a change to the law, not vindication of precedent.

*Lancaster General Hospital*, 967 F.3d 295, 300–03 (3d Cir. 2020); *Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, 791 Fed. Appx. 301, 306 (3d Cir. 2019); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 641–46 (3d Cir. 2015); *The Knit With v. Knitting Fever, Inc.*, 625 Fed. Appx. 27, 34 (3d Cir. 2015). Those cases did not, however, express disagreement with *McCarthy*. Rather, they described proximate cause or separate RICO standing requirements without discussing the indirect purchaser rule. The same is true of the several district court decisions cited by the plaintiffs, which have the further defect of involving interpretation of the New Jersey RICO statute rather than the federal statute. *Salit Auto Sales v. CCC Info Servs.*, 2020 WL 5758008 at *5 (D.N.J. Sept. 28, 2020); *Southward v. Elizabeth Bd. of Educ.*, 2017 WL 4392038 at *12 (D.N.J. Oct. 2, 2017). *See also State v. Ball*, 141 N.J. 142, 156 (N.J. 1995) ("[A]s originally introduced in the Assembly in February 1980, the New Jersey RICO statute paralleled federal RICO. The Legislature, however, came to perceive purposes and goals to be achieved by the proposed anti-racketeering statute distinct from those of the federal statutory scheme. Consequently, in many respects our Legislature departed from the federal example.").

I cannot assume that the well-established precedent cited above has been silently overruled. None of the cited decisions give any indication that the *McCarthy* rule no longer applies in the Third Circuit.

My own decision in *Albers v. Mercedes-Benz USA, LLC*, 2020 WL 1466359 at *7 (D.N.J. Mar. 25, 2020), similarly does not indicate any doubt regarding the indirect purchaser rule, for the reasons expressed in my recent opinion in this case: *Albers,* reassigned to me after a number of rulings had already been made, was based on law-of-the-case grounds, not any substantive disagreement with the indirect purchaser doctrine. (DE 102 at 8 (*Albers* "consisted of nothing more than my ruling as to one defendant, in which I adhered to the law of the case as already decided by (now-retired) Chief Judge Linares with respect to the other defendants.").)

Moreover, the Third Circuit is far from alone in applying the indirect purchaser rule to RICO claims. Indeed, the rule set out in *McCarthy* is the majority approach among federal circuits. *See Harris County, Texas v. Eli Lilly & Co.*, 2020 WL 5803483 at *12 (S.D. Tex. Sept. 29, 2020) (noting that *McCarthy* followed the majority rule along with the Sixth Circuit in *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 616 (6th Cir. 2004) and the Seventh Circuit in *Carter v. Berger*, 777 F.2d 1173, 1177 (7th Cir. 1985)). Thus, while plaintiffs identify a few district court decisions suggesting that *McCarthy* was incorrectly decided, *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1321–22, 1324–25 (D. Kan. 2018); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 968 (N.D. Cal. 2018); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices & Products Litig.*, 2017 WL 4890594 at *9 (N.D. Cal. Oct. 30, 2017), this is not an instance of an anachronistic legal principle which finds overwhelming opposition from persuasive authority. *See Singh v. Daimler-Benz, AG*, 800 F. Supp. 260, 263 (E.D. Pa. 1992) (existence of district court opinion from outside circuit which disagreed with principle did not constitute substantial ground for disagreement); *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1003 (D.N.J. 1996) (only decision that supported plaintiff's argument was not binding on court). Furthermore, even if the persuasive authority were unanimously against *McCarthy*, that would still not be sufficient to justify certifying this question. *Cosimano v. Twp. of Union*, 2017 WL 4790381 at *2 (D.N.J. Oct. 23, 2017) ("the substantial ground for difference of opinion must be within the Third Circuit"); *PNY Techs., Inc. v. Netac Tech. Co.*, 2016 WL 544488 at *2 (D.N.J. Feb. 10, 2016) ("PNY has failed to persuade this Court that there is substantial ground for difference of opinion in the Third Circuit about these issues of Third Circuit law").

Plaintiffs may wish to argue, on any eventual appeal, that all of this law be overturned, as they are free to do. As things stand, however, there is not a

substantial question warranting immediate appeal as to the applicability of the *Illinois Brick* indirect-purchaser standing rule to RICO claims.

### ii.  Does the Indirect Purchaser Rule Apply to Plaintiffs' RICO Claims in Particular?

Since the indirect purchaser rule applies to RICO claims, I next must ask whether it applies to the specific RICO claims brought by plaintiffs in this case. I conclude that it does. As explained previously, plaintiffs obtained their vehicles (*i.e.,* the ones which they assert contained defeat devices) from private parties, dealers, and at auction. (DE 79 at 16.) None were purchased directly from BMW or Bosch, the defendants in this case. (*Id.*) The plaintiffs are thus indirect purchasers "who are two or more steps removed from the violator in a distribution chain" and thus "may not sue." (DE 102 at 4 (quoting *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520 (2019).)

### iii.  Do Any Exceptions Apply to Save Plaintiffs' Claims from the Application of the Rule?

Since the indirect purchaser rule applies to plaintiffs' RICO claims, I must consider whether any exceptions apply. As I noted previously, however, "[t]he indirect purchaser rule set out in *Illinois Brick* is a bright-line rule that admits no exceptions. The *Apple* Court was clear: 'the bright-line rule of *Illinois Brick* means that there is no reason to ask whether the rationales of *Illinois Brick* apply with equal force in every individual case. We [will] not engage in an unwarranted and counter productive exercise to litigate a series of exceptions.'" (DE 102 at 4–5 (quoting *Apple*, 139 S. Ct. at 1524).)

Plaintiffs argue that I misread *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) and *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982) to prohibit suits by indirect purchasers. (DE 106-1 at 1.) If I do, then so does the U.S. Supreme Court. *Apple Co. v. Pepper*, decided by the Supreme Court in 2019— 40 years after *McCready*—makes it clear that the indirect purchaser rule is a bright-line rule without case-by-case exceptions. In 2018, it might have been possible to argue that there were signs of relaxation of the rule's rigidity. (I, however, would still have been bound by *Warren General Hospital v. Amgen,*

*Inc.*, 643 F.3d 77 (3d Cir. 2011), which also concluded that the indirect purchaser rule admits no exceptions. *Id.* at 92, 96.) I cannot, however, sidestep the Supreme Court's recent pronouncement that it will adhere to, and not erode, the indirect-purchaser rule.

For all of the foregoing reasons, a certificate of appealability pursuant to 28 U.S.C. § 1292(b) is denied.

### B.    Partial Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b)

Federal Rule 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claims—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

"Certification under Rule 54(b) is the exception, not the norm." *Indivior Inc. v. Dr. Reddy's Labs. S.A.*, 2020 WL 4932547 at *11 (D.N.J. Aug. 24, 2020). When "the adjudicated and unadjudicated claims share significant similarities, such as involving the same parties, the same legal issues, or the same evidence, Rule 54(b) certification is disfavored," *id.* at 12, and "should be used only in the infrequent harsh case as an instrument for the improved administration of justice." *Id.* at 11. Thus, "'[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a 'dispatcher.' It is left to the sound judicial discretion of the district court to determine' when an action may be certified as final." *Id.* (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8–9 (1980)).

The first step under the rule is to determine whether I am confronted with a "judgment" that is "final" with respect to one of the claims in the case. The decision must be "a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an

ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Skoorka v. Keen University*, 2014 WL 59744 at *3 (D.N.J. Jan. 6, 2014) (quoting *Curtiss-Wright*, 446 U.S. at 8–9). Plaintiffs correctly point out that this test is met, because I dismissed their discrete federal RICO claim.

The second step is to determine whether there is no "just reason for delay" in entering partial judgment. *Elliott v. Archdiocese of New York*, 682 F.3d 213, 220 (3d Cir. 2012). This requirement "is not merely formalistic," *id.*, but rather depends on an evaluation of the following factors:

(1) the relationship between the adjudicated and unadjudicated claims;

(2) the possibility that the need for review might or might not be mooted by future developments in the district court;

(3) the possibility that the reviewing court might be obliged to consider the same issue a second time;

(4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;

(5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006).

1. Factor One — the relationship between the adjudicated and unadjudicated claims

This first factor weighs against granting partial final judgment. "Where the adjudicated and unadjudicated claims share significant similarities, such as involving the same parties, the same legal issues, or the same evidence, Rule 54(b) certification is disfavored." *Indivior*, 2020 WL 4932547 at *12 (quoting *Ortho-McNeil Pharm., Inc. v. Kali Labs, Inc.*, 2007 WL 1814080 at *3 (D.N.J. June 20, 2007)).

Though I dismissed plaintiffs' federal RICO claims, there are 78 other state-law based claims alleging fraudulent concealment and violations of the consumer protection laws of every state in the country. (DE 79 at 19–21.) Plaintiffs do not deny that these claims concern "many of the same core factual matters" as the federal RICO claim. (DE 108 at

9

11; DE 112 at 7–8.) Both the state law claims and the federal RICO claims sound in fraud and essentially allege that the defendants defrauded plaintiffs by including defeat devices inside their cars and then marketing them as complying with emissions standards. (DE 79 at 14–15, 19–20, 23–24); *Indivior*, 2020 WL 4932547 at *12 (denying Rule 54(b) motion where "legal and factual issues" are "intertwined and related"); *Zavala v. Wal-Mart Stores, Inc.*, 2007 WL 1134110 at *3 (D.N.J. Apr. 16, 2007) (denying request for partial final judgment as to RICO claim where evidence in support of claim overlapped with FLSA claim). The state law claims also share the same parties as the RICO claims.

To be sure, the RICO claim has legal elements distinct from those of the state law claims, but the two are interrelated. *Zavala*, 2007 WL 1134110 at *3 (factor weighs against partial judgment even though remaining claims had different elements). I find that this factor weighs against granting partial final judgment.

2. <u>Factor Two — the possibility that the need for review might or might not be mooted by future developments in the district court</u>

This factor is neutral; it does not counsel against entry of partial judgment.

Under this factor, I ask whether "resolution of additional issues . . . would reach back to alter or moot the rulings made thus far as to the [decision here]." *Indivior*, 2020 WL 4932547 at *13. What is to be avoided under this factor is the possibility that litigation of the fraud issues would moot some aspect of the court's RICO decision, or alternatively that a reversal of the RICO decision would moot or alter any rulings on the fraud issues.

That appears unlikely. The remaining issues in this case are severable from the issues of RICO standing. Now it is true, as defendants assert, that further development of this case could provide some additional reason to dismiss the RICO claim, rendering a single-issue

interlocutory appeal wasteful. Alternatively, say the plaintiffs, they may prove their fraud claims. Either outcome is speculative at this point. More to the point, however, such developments would be unlikely to affect the RICO indirect-purchaser standing issue one way or the other. *Id.*; *but see Zavala*, 2007 WL 1134110 at *3 (noting that court might later rule against plaintiffs on joint employment, thus giving Plaintiffs "no basis to recover damages" regardless of whether court was ultimately reversed regarding whether plaintiffs adequately pled involuntary servitude predicate for RICO claims).

3. Factors Three and Four — the possibility that the reviewing court might be obliged to consider the same issue a second time and the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final

I find both of these factors weigh somewhat in favor of granting partial final judgment, or at least do not weigh against it.

An interlocutory appeal might result in there being two appeals, rather than one. On the other hand, however, the indirect-standing issue would not likely be heard twice; if the Third Circuit were to reverse my ruling, its decision would govern the case moving forward, and no doubt would be adhered to on any appeal from a final judgment.

As for set-offs and counterclaims, the parties point to none.

4. Factor Five — miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like

I find this factor to weigh heavily—indeed, dispositively—in my discretionary decision to withhold partial final judgment at this time.

"[A] district court must take into account judicial administrative interests as well as the equities involved" when evaluating motions under Rule 54(b). *Curtiss-Wright*, 446 U.S. at 8. Such considerations are required in order to "preserve[] the historic federal policy against piecemeal appeals." *Id.* (quoting at *Sears, Roebuck & Co. v. Mackey*, 351

11

U.S. 427, 438 (1956)); *see also Amboy Bancorporation v. Jenkens & Gilchrist*, 2009 WL 4117355 at *2 (D.N.J. Nov. 18, 2009) (noting that courts will decline Rule 54(b) requests when it would be an "inefficient use of the reviewing courts' resources"). Thus, "[t]he foremost reason for delay[ing immediate appeal] is that the costs, in time and judicial economy, of appeal greatly outweigh the prospect of a successful appeal." *Zavala*, 2007 WL 1134110 at *4.

Plaintiffs urge that my indirect-purchaser ruling might be reversed on an appeal from a final judgment, potentially requiring a second trial on remand even if there is no error in the fraud case.[2] Handicapping one's chances on appeal is a treacherous exercise, and I do not dismiss the possibility that I am wrong. Nevertheless, my assessment is that reversal is unlikely, for the reasons set forth above. In light of *McCarthy*'s continued vitality, the Third Circuit's failure to overturn it despite ample opportunity to do so, and the ample persuasive authority in its favor, I believe that the Third Circuit would adhere to the indirect-purchaser rule in its current form. *See Indivior*, 2020 WL 4932547 (considering whether prospect of successful appeal was high); *Ortho-McNeil*, 2007 WL 1814080 at *5 (denying motion for entry of final judgment on grounds that appeal seemed unlikely to prevail); *Zavala*, 2007 WL 1134110 at *4 (rejecting motion where "dismissal of the RICO Counts was not a 'close call.'").

My best prediction, then, is that the effect of granting the motion would be to put this case on hold for a fruitless appeal. The result would be delay, perhaps for years, and possibly two appeals, the first on an incomplete record. In light of the Third Circuit's longstanding policy disfavoring piecemeal appeals, *Sussex Drug Prods. v. Kanasco, Ltd.*, 920 F.2d 1150, 1153 (3d Cir. 1990), I will not grant the motion.

---

[2]    The silver lining, I suppose, is that a final appeal will also correct any errors committed in the litigation of the fraud claims, so any remand can encompass both in a comprehensive fashion.

**CONCLUSION**

For the reasons stated above, plaintiffs' motion for certification of an interlocutory order or for partial final judgment (DE 106) is denied.

An appropriate order follows.

Dated: March 24, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**