## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

GARNER RICKMAN, et al.,

      Plaintiffs,

      v.

BMW OF NORTH AMERICA LLC,
BAYERISCHE MOTOREN WERKE
AKTIENGESELLSCHAFT, ROBERT
BOSCH GMBH, and ROBERT BOSCH
LLC,

      Defendants.

Civ. No. 18-04363 (KM) (JBC)

**OPINION**

---

**KEVIN MCNULTY, U.S.D.J.:**

This is a putative class action brought by consumers who purchased BMW diesel vehicles. Plaintiffs assert state-law consumer protection and fraud claims arising from alleged misrepresentations regarding the vehicles' emissions. Plaintiffs assert these claims against (1) Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), the manufacturer, based in Germany; (2) BMW of North America ("BMW NA"), BMW AG's American distributor, based in New Jersey; (3) Robert Bosch LLC, the developer of certain technologies used in the vehicles, based in Michigan; and (4) Robert Bosch GmbH, the parent of Bosch LLC, based in Germany. BMW AG and Bosch GmbH move to dismiss the claims against them for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). (DE 99, 100.)[1] For the following reasons, BMW AG's motion (DE 99) is **DENIED**, and Bosch GmbH's motion (DE 100) is **GRANTED**.

---

[1]    Certain citations to the record are abbreviated as follows:

DE = docket entry

1AC = First Amended Consolidated Class Action Complaint or "Amended Complaint" (DE 65)

Löwa Decl. = Declaration of Ronny Löwa (DE 99-2)

## I. BACKGROUND

This case has already spawned five opinions and thousands of paragraphs of allegations. My opinions dismissing the original consolidated complaint, *Rickman v. BMW of N. Am.*, Civ. No. 18-4363, 2019 WL 2710068 (D.N.J. June 27, 2019) ("*MTD I*"), and dismissing the amended (and now operative) complaint's claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *Rickman v. BMW of N. Am.*, Civ. No. 18-4363, 2020 WL 3468250 (D.N.J. June 25, 2020) ("*MTD II*"), provide a full background. I recount here only what is relevant for the present motions.

### A. Facts

#### 1. BMW Defendants

This case concerns two car models, the BMW X5 xDrive35d ("X5") and BMW 335d. (1AC ¶ 1.) Plaintiffs allege that they purchased these vehicles because of false representations of lower emissions. (*E.g.*, *id.* ¶¶ 1, 129.)

What the average consumer may think of as an entity called "BMW" is actually a complex, multinational family of business entities. (*See* Löwa Decl. ¶¶ 17–18.) BMW AG is, in essence, the mother entity that develops and manufactures the products. (*See id.* ¶ 18; 1AC ¶ 73.) BMW is based in Germany and organized under German law. (Löwa Decl. ¶ 6.) BMW AG manufactures the 335d in Germany. (*Id.* ¶ 24.) The X5, however, is manufactured by a different entity in South Carolina. (*Id.*)

BMW AG does not have a physical or operational presence in the United States. (Löwa Decl. ¶ 7–13.) Rather, BMW NA, an indirect subsidiary of BMW AG, "markets, distributes, sells, and warrants new BMW vehicles in the United States." (*Id.* ¶ 15.) BMW NA is organized under Delaware law and has its principal place of business in New Jersey. (Löwa Decl. ¶ 14.)

---

Hardy Decl. = Declaration of Trudy Hardy (DE 99-3)

BMW AG Mot. = BMW AG's Brief in Support of its Motion to Dismiss (DE 99-1)

Opp. = Plaintiffs' Opposition to BMW AG's and Bosch GmbH's Motions to Dismiss (DE 101)

The U.S. market is important to BMW AG. BMW AG board members stated that 20% of BMW sales are made in the U.S. (DE 101-4 at 2; DE 101-7 at 2.) In the years immediately before marketing the models at issue, BMW AG touted that it would "invest[] one billion dollars in the growth and expansion of our business in the US." (DE 101-4 at 2.)

This attention to the U.S. encompassed an attention to the high American demand for environmentally friendly vehicles. At a global level, BMW AG developed an "Efficient Dynamics" strategy to engineer and market emissions-reducing vehicles, including the "Clean Diesel" models at issue here. (*Id.*; DE 101-2 at 17.) The chairman of BMW AG stated that introducing diesel vehicles into the U.S. market in particular would create a "surge" and "meet the different and challenging environmental requirements in all 50 American states." (DE 101-2 at 17; *see also* DE 101-3 at 17 (statement by the chairman that "[w]e have exactly the type of environmentally-friendly, efficient premium vehicles Americans need").) Indeed, those models garnered popularity and market share in the U.S., so BMW AG board members stated publicly that they would develop more diesel models "for the US market." (DE 101-4 at 2.)

Nonetheless, according to declarations submitted by BMW AG, BMW NA "was exclusively responsible" for promotional materials directed at American consumers and dealerships. (Hardy Decl. ¶ 14.) BMW NA also maintains the BMW website that is accessible to American consumers. (*Id.* ¶ 18.) BMW NA did not need or obtain approval from BMW AG for marketing materials. (*Id.* ¶ 14.) Still, BMW NA's website and brochures used the "Efficient Dynamics" and "Clean Diesel" name and logos, which were developed by BMW AG. (DE 101-6 at 23–26; DE 101-12 at 2.)

## 2. Bosch Defendants

This case also concerns technologies used in the vehicles to game emissions testing by government regulators ("defeat devices"). (1AC ¶¶ 8, 25.) Thanks to these defeat devices, Plaintiffs allege, diesel-car manufacturers were

able to falsely promote their products as compliant with emissions standards. (*Id.* ¶¶ 75, 268–83.)

According to Plaintiffs, Bosch GmbH and Bosch LLC developed these defeat devices and supplied them to "BMW." (*Id.* ¶¶ 77–78.) Bosch GmbH is headquartered in Germany and organized under German law. (*Id.* ¶ 77.) Bosch LLC is Bosch GmbH's American subsidiary, organized under Delaware law and headquartered in Michigan. (*Id.* ¶ 78.)

The Amended Complaint does not allege that either Bosch entity had any direct relationship with consumers. Rather, both Bosch entities promoted their technologies mostly to regulators and automakers. (*Id.* ¶¶ 282–94.) The Bosch entities also generally promoted the improved "cleanliness" of diesel cars. (*Id.*)

### 3. Plaintiffs

Plaintiffs hail from a host of states; two of them, William Berbaum and Charles Chapman, are New Jersey residents. (*Id.* ¶¶ 52–53.) Their claims resemble those of the other plaintiffs. Berbaum purchased a used 335d from a dealership in North Carolina and a used X5 from a dealership in New Jersey. (*Id.* ¶ 52.) He purchased the vehicles based on advertisements on "BMW's website" and "representations from the dealership." (*Id.*) Chapman purchased a used X5 from a New Jersey dealership. (*Id.* ¶ 53.) He, too, relied on "BMW's website" and "representations from the dealership." (*Id.*)

## B. Procedural History

Plaintiffs sued the four defendants, asserting claims under RICO and the laws of Plaintiffs' home states. *MTD I*, 2019 WL 2710068, at *2, 7. BMW NA and Bosch LLC moved to dismiss for lack of standing and failure to state a claim. *Id.* at *1–2. BMW AG and Bosch GmbH, however, did not join in the motion to dismiss, because they had not yet been served. *Id.* at *2 n.2. I dismissed the complaint without prejudice on standing grounds. *Id.* at *1.

Plaintiffs filed an Amended Complaint. (1AC.) BMW NA and Bosch LLC again moved to dismiss. *MTD II*, 2020 WL 3468250, at *1. BMW AG and Bosch GmbH still had not been served. (*See* DE 78.) I dismissed the RICO claim with

prejudice as against the movants, BMW NA and Bosch LLC. *MTD II*, 2020 WL 3468250, at *1.

BMW AG and Bosch GmbH were then served, and the parties agreed that the prior dismissal of the RICO claim would apply to them as well. The parties further agreed that those two could move to dismiss the remaining state-law claims against them for lack of personal jurisdiction. (DE 94.) BMW AG and Bosch GmbH so moved. (DE 100, 101.)

Plaintiffs then moved to appeal from the dismissal of the RICO claim, either by certification of an order for interlocutory appeal under 28 U.S.C. § 1292(b) or entry of partial final judgment under Fed. R. Civ. P. 54(b). (DE 106.) BMW NA and BMW AG jointly filed a brief in opposition. (DE 108.) In a footnote, BMW AG stated that, by joining, it did not waive its objection to personal jurisdiction or otherwise consent to jurisdiction. (*Id.* at 1 n.1.) Bosch LLC and Bosch GmbH filed a notice joining in the opposition brief, with Bosch GmbH similarly stating that it did not waive its objection to personal jurisdiction. (DE 109 at 1 n.1.) I denied Plaintiffs' motion to authorize an interlocutory appeal. (DE 113.)[2]

---

[2]    I must assure myself that BMW AG and Bosch GmbH have not waived a personal jurisdiction defense. A defendant must raise that defense in its first response, *i.e.*, its answer or a Rule 12(b) motion. Fed. R. Civ. P. 12(h). Even so, a defendant may waive the defense if it "actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum," such as by "request[ing] affirmative relief and rulings from a court." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 105–06 (3d Cir. 2019). This is true even if "the parties also express an intent to preserve the defense." *Id.* at 107.

Besides their Rule 12(b)(2) motions, BMW AG and Bosch GmbH (1) stipulated with Plaintiffs that the dismissal of the RICO claim would apply to them, and (2) joined in opposition briefs to Plaintiffs' § 1292(b)/Rule 54(b) motion.

The stipulation, although it allowed BMW AG and Bosch GmbH to benefit from a merits ruling, was more an agreement between the parties, not an independent motion to dismiss (in which the personal jurisdiction defense would need to have been included). Further, the deficiency in the RICO claim was plaintiff-side: Plaintiffs were indirect purchasers who cannot recover under RICO. *MTD II*, 2020 WL 3468250, at *9–10. So the RICO claim would have been dismissed anyway, had BMW AG and Bosch

## II.	STANDARD OF REVIEW

On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing sufficient facts to show that jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). Initially, a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Where factual allegations are disputed, however, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) (citation omitted). If the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

## III.	DISCUSSION

The only issue presented is personal jurisdiction. A federal court may exercise personal jurisdiction over a defendant to the extent authorized by state law. Fed. R. Civ. P. 4(k)(1)(A). New Jersey provides for jurisdiction coextensive with constitutional due process. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4). Due process allows for general or specific jurisdiction. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948

---

GmbH formally moved to dismiss it in a Rule 12 motion. I cannot fault the parties for their salutary efforts to streamline this case by avoiding needless motion practice.

The opposition briefs, to be sure, contained substantive argument that touched on the merits, *i.e.*, whether other courts could agree with my dismissal of the RICO claim. (DE 108 at 5–7.) But the briefs were primarily addressed to procedure, and were a response to Plaintiffs—not a formal or affirmative response to the Amended Complaint. Finally, the briefs were not filed solely by BMW AG and Bosch GmbH. Courts have found that "the mere participation in . . . a motion," especially "in the context of a pressing procedural matter," does not waive personal jurisdiction. *Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 86, 91 (D. Del. 2002).

For all these reasons, I find that BMW AG and Bosch GmbH have not waived personal jurisdiction.

F.3d 124, 129 (3d Cir. 2020). Plaintiffs do not argue that the Court has general jurisdiction (*see* Opp. at 5–7), so I focus on specific jurisdiction.[3]

A court has specific jurisdiction when the defendant has sufficient contacts with the forum, and plaintiff's claims "arise out of or relate to" those contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (citation omitted). To unpack and apply that principle, the Third Circuit uses a three-part test, requiring the plaintiff to show that (1) the defendant purposefully available itself of the forum, (2) the claims arise out of or relate to at least one of the defendant's activities, and (3) exercising personal jurisdiction comports with fair play and substantial justice. *O'Connor*, 496 F.3d at 317. I discuss each of those prongs in turn.

## A. Purposeful Availment

To start, the plaintiff must show that the defendant took "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford*, 141 S. Ct. at 1024 (citation omitted). "[W]hat is necessary is a deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317. "[R]andom, isolated, or fortuitous" contacts with the forum will not do. *Ford*, 141 S. Ct. at 1024 (citation omitted). "Each defendant's contacts with the forum state must be assessed individually." *Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 184 (3d Cir. 2000) (citation omitted). So I address BMW AG, and then Bosch GmbH.

### 1. BMW AG

Viewed singularly, BMW AG has not purposefully availed itself of the privilege of doing business in New Jersey. BMW AG does not itself have any

---

[3]     In any event, the Court lacks general jurisdiction over BMW AG and Bosch GmbH. A court may exercise general jurisdiction over a corporation when the corporation has "continuous and systematic contacts with the forum state" such that it is "essentially at home" there. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (quotation marks and citation omitted). A corporation is "at home" at least, and usually only, where it is incorporated or has its principal place of business. *Id.* (citation omitted)). BMW AG and Bosch LLC are both organized under German law and headquartered in Germany. (Löwa Decl. ¶ 6; 1AC ¶ 78.)

presence in New Jersey; rather, BMW AG operates out of Germany. The harder question is whether BMW AG's relationship with BMW NA constitutes purposeful availment. BMW NA is headquartered in New Jersey and, from there, directs distribution and marketing for BMW AG-manufactured products throughout the United States. There is no dispute that this Court has jurisdiction over BMW NA—and general jurisdiction at that. *See* note 3, *supra.* So the question becomes whether the parent-subsidiary or manufacturer-distributor relationship between BMW AG and BMW NA constitutes purposeful availment by BMW AG of the opportunity to do business in New Jersey.

There is no clear approach to determining if a non-resident corporation is subject to jurisdiction in the forum where its subsidiary or distributor is located. *See* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.4 (4th ed. April 2021 Update). The Supreme Court has gone this far: it has held that even if subsidiary is "at home" in the forum, its parent is not automatically and equally subject to *general* jurisdiction there. *Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2014). The Third Circuit, however, holds that "if a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise controls the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018). That view is hard to square with *Daimler*, which disfavored an agency approach to general jurisdiction. *See* 571 U.S. at 135–36. Indeed, multiple courts have interpreted *Daimler* as having "voided [an] agency approach for imputing contacts for the purpose of general jurisdiction." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017); *see also E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 298 n.2 (5th Cir. 2020); *Shujauddin v. Berger Bldg. Prods., Inc.*, Civ. No. 19-876, 2019 WL 9102043, at *1 n.2 (E.D. Pa. June 18, 2019).

The door remains open, however, as to specific jurisdiction. *Daimler* acknowledged that corporate relationships "may be relevant to the existence of

*specific* jurisdiction." 571 U.S. at 135 n.13. Picking up from there, courts have held that corporate relationships can be used to show that the parent purposefully availed itself of the subsidiary's forum. *E. Concrete*, 948 F.3d at 298 & n.3; *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 531–32 (5th Cir. 2014); *see Cunningham v. Cap. Advance Sols., LLC*, Civ. No. 17-13050, 2018 WL 6061405, at *9 (D.N.J. Nov. 20, 2018). Some courts employ specific tests to decide whether a resident entity is an "agent" or "alter ego" of the parent. *E.g.*, *Baker v. LivaNova, LLC*, 210 F. Supp. 3d 642, 650 (M.D. Pa. 2016). Such tests, however, may needlessly complicate the jurisdictional analysis. *See O'Connor*, 496 F.3d at 320 (stating that, for personal jurisdiction, the Court avoids any "bright-line test").

Indeed, Plaintiffs do not press an agent/alter ego theory, so I do not address it. Rather, Plaintiffs' theory of purposeful availment is more common-sense: New Jersey-based BMW NA serves as BMW AG's gateway to the United States, such that BMW AG's products and publicity campaigns "invariably flowed through the New Jersey forum." (Opp. at 10.) In other words, BMW AG develops the product and associated marketing concepts, and uses BMW NA to bring them to the American market, a market of particular importance to BMW AG.

Plaintiffs' position finds support in case law. *See, e.g.*, *Levy v. Jaguar Land Rover N. Am., LLC.*, Civ. No. 19-13497, 2020 WL 563637, at *6 (D.N.J. Feb. 4, 2020) (British car manufacturer's establishment of an entity in New Jersey to direct marketing and distribution in the U.S. at least "tie[d] the [ ] brand at large to New Jersey"); *Phila. Contrib. Ship Ins. Co. v. Neoteric Sols. Inc.*, Civ. No. 14-3836, 2016 WL 791427, at *2 (D.N.J. Feb. 5, 2016) (jurisdictional discovery warranted when foreign manufacturer had an authorized New Jersey-based distributor), *report & recommendation adopted*, 2016 WL 780570 (Feb. 24, 2016); *Lewis v. Mercedes-Benz USA, LLC*, --- F. Supp. 3d ----, ----, No. 19-CIV-81220, 2021 WL 1216897, at *36 (S.D. Fla. Mar. 30, 2021) (collecting cases where courts held that a foreign manufacturer's use of an American

subsidiary to direct American distribution and marketing subjects the manufacturer to jurisdiction in the state where the subsidiary is headquartered).

In particular, *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d Cir. 2009), is instructive. That court held that a Swiss aircraft manufacturer could be subject to jurisdiction in the forum where its American subsidiary/distributor was located. *Id.* at 109. The Court reasoned that the subsidiary's function was to "enable[] [the manufacturer] to reach the large United States market," a critical component of its global business. *Id.*[4]

The same can be said here. BMW AG serves the American market through BMW NA. There are no BMW AG-made cars on American roads save those that are here by virtue of the BMW AG/BMW NA relationship. BMW NA was established by BMW AG, which entailed a deliberate choice to enter New Jersey. Given the intense focus and investment BMW AG puts on the American market, significant coordination between the two is plausible. Because BMW NA is in New Jersey, BMW AG cannot say that its contacts with New Jersey are "random, isolated, or fortuitous." *Ford*, 141 S. Ct. at 1024 (citation omitted).[5]

---

[4] Two points on *D'Jamoos*: First, *D'Jamoos* applied Tenth Circuit law. The Third Circuit, however, has since relied on *D'Jamoos* when deciding whether a court in this Circuit had personal jurisdiction. *Shuker*, 665 F.3d at 780–81. Second, as to the parent and subsidiary, *D'Jamoos* employed an agency theory of general jurisdiction, which, as I have stated, is currently suspect. *See Daimler*, 571 U.S. at 135 n.13; *Chinese-Manufactured Drywall*, 753 F.3d at 531–32. Agency theories remain relevant to purposeful availment, however, so *D'Jamoos* is nevertheless instructive.

[5] BMW AG cites district-court cases finding no jurisdiction over BMW AG, but none of them arose in New Jersey, the location of BMW NA, which is the critical factor here. (BMW AG Mot. at 18 n.4.) Only one court in this District has addressed whether BMW AG is subject to jurisdiction in New Jersey. *Kearney v. Bayerische Motoren Werke Aktiengesellschaf*, Civ. No. 17-13544, 2021 WL 1207476 (D.N.J. Mar. 31, 2021). There, Judge Arleo found no jurisdiction because (1) there was no agency relationship to establish general jurisdiction, and (2) the claims did not relate to BMW AG's contacts with BMW NA or New Jersey. *Id.* at *3–5. I deal here with different issues. First, Plaintiffs here do not rely on a strict agency theory of general jurisdiction. Second, Judge Arleo, for reasons particular to that case, did not reach the issue of purposeful availment. *Id.* at *5.

Nonetheless, BMW AG argues that it does not direct BMW NA's operations and that the two entities are distinct. (BMW AG Mot. at 14–15.) It is true that courts have considered whether the parent controls the subsidiary and how distinct the two entities are. *Transp. Ins. Co. v. Am. Harvest Baking Co., Inc.*, Civ. No. 15-663, 2015 WL 9049273, at *4 (D.N.J. Dec. 16, 2015). But those facts are not dispositive. *See Lewis*, 2021 WL 1216897, at *36. Moreover, BMW AG has not provided enough evidence to sketch out the contours of its relationship with BMW NA. For example, BMW AG has not even admitted that it supplies cars to BMW NA, although this seems very likely. At this pre-discovery juncture, I construe any factual disputes in Plaintiffs' favor, and Plaintiffs' burden is relatively light. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). Plaintiffs' allegations and its own evidence show that BMW AG has a significant relationship with BMW NA. That relationship must have entailed contacts with BMW NA in New Jersey, and thus an awareness that New Jersey was the either the gateway or focal point for BMW AG's access to the American market.

Thus, at least for present purposes, there is a sufficient showing that BMW AG purposefully availed itself of the privilege of doing business in New Jersey.

### 2. Bosch GmbH

Bosch GmbH stands on a different footing. Although the Amended Complaint alleges that Bosch GmbH and Bosch LLC, like the BMW defendants, coordinated with one another, Bosch LLC's headquarters are in Michigan. (1AC ¶¶ 77–78.) Even fully crediting the allegations that Bosch GmbH managed and controlled Bosch LLC,[6] Bosch GmbH's contacts with Bosch LLC would be contacts with Michigan—not New Jersey. Plaintiffs proffer a few bases for jurisdiction over Bosch GmbH, but none is persuasive.

First, Plaintiffs allege that Bosch GmbH supplied its device to "BMW" and worked with "BMW" to defeat U.S. emissions tests. (*Id.* ¶¶ 77, 254–56.) From

---

[6]      Bosch GmbH did not provide evidence in support of its motion to dismiss.

those allegations, Plaintiffs reason that Bosch GmbH's "role in the scheme . . . necessarily involved the New Jersey forum." (Opp. at 12.) I cannot make that jump on the current record. Even though I must credit Plaintiffs' allegations, conclusory allegations will not do, and Plaintiffs' theory of jurisdiction must be plausible. *Peterson v. HVM LLC*, Civ. No. 14-1137, 2016 WL 845144, at *3 (D.N.J. Mar. 3, 2016).

There is nothing in the Amended Complaint to plausibly allege that Bosch GmbH worked directly with *BMW NA*, which would necessarily involve the New Jersey forum. Rather, the Amended Complaint paints a picture of Bosch GmbH and BMW AG working to implement the defeat devices, inferably in Germany. (*See* 1AC ¶¶ 255–56.) True, the Amended Complaint alleges that Bosch GmbH designed the defeat devices with an eye to defeating U.S. emissions tests, and joined lobbying and marketing campaigns to promote diesel technologies in the U.S. (1AC ¶¶ 284–94, 309–14.) But these allegations do not speak to whether Bosch GmbH worked directly with BMW NA (which is not the manufacturer) in New Jersey. Anyway, general efforts to target a U.S. market do not suffice to demonstrate deliberate targeting of New Jersey in particular. *D'Jamoos*, 566 F.3d at 103–04. At most, one could infer that, somewhere among the efforts of the four defendants, there could have been some contact with Bosch GmbH and BMW LLC. But given the generalized and conclusory allegations, I cannot go so far as to infer "deliberate targeting" of BMW AG in New Jersey beyond "isolated contacts." *O'Connor*, 496 F.3d at 317; *Ford*, 141 S. Ct. at 1024.

Alternatively, Plaintiffs invoke a "conspiracy theory" of jurisdiction. (Opp. at 14–18.) Plaintiffs assert that they have alleged a conspiracy among the four defendants, and that because one defendant was New Jersey-based, the others are subject to jurisdiction here. (*Id.* at 16–17.) That theory fails for two reasons.

First, the parties assume that the viability of the conspiracy theory is a question of state law; even if that is so (which I doubt, *see infra*), New Jersey has not clearly recognized that theory. The Third Circuit has stated as much,

albeit in a non-precedential opinion. *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 478 (3d Cir. 2011) ("[W]e predict the New Jersey Supreme Court would decline to adopt such a theory of personal jurisdiction."). At the state level, only two precedential Appellate Division opinions have even referred to the theory, and neither one adopted it. *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 786, 795–96 (N.J. Super. Ct. App. Div. 2006); *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., L.L.C.*, 160 A.3d 44, 89–90 (N.J. Super. Ct. App. Div. 2017). The *McCormac* court "did not explicitly adopt the [conspiracy] theory," noting it only in "dicta" to "buttress [a] conclusion" based on separate reasoning. *Roy v. Brahmbhatt*, Civ. No. 07-5082, 2008 WL 5054096, at *7 n.3, 8 (D.N.J. Nov. 26, 2008) (citing *McCormac*, 904 A.2d at 795–96). The *Fairfax* court rejected a "blanket" conspiracy rule and held that each defendant's contacts with New Jersey still require individual analysis to comport with due process. 160 A.3d at 90. Thus, New Jersey courts have never adopted the theory and, in fact, have rejected applying it as Plaintiffs propose here.

*Fairfax* brings me to the second reason the theory fails: It is not consistent with federal due process—which is what really matters. The Third Circuit stated non-precedentially that the conspiracy theory of jurisdiction is a matter of state law. *LaSala*, 410 F. App'x at 478. That view derives from another non-precedential opinion, written by Judge Scirica. *Miller Yacht Sales*, 384 F.3d at 102 n.8 (Scirica, C.J., concurring in part and dissenting in part). Then-Chief Judge Scirica cited *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992), for that proposition, but *Stauffacher* does not actually relegate the entire issue to a decision under state law; what it actually held was that "[w]hether personal jurisdiction can be obtained *under a state long-arm statute* on a conspiracy rationale at all is a question of state law." *Id.* (emphasis added). New Jersey's long-arm statute authorizes jurisdiction coextensive with *federal* constitutional due process. *Miller Yacht Sales*, 384 F.3d at 96 (majority op.). So the question of whether a conspiracy theory is cognizable collapses into

a question of federal law. *See Fairfax*, 160 A.3d at 89–90. Regardless, even if New Jersey courts or statutes recognized the theory, it could extend no further than the limits of federal due process. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992); *see also Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*, 589 F. Supp. 2d 490, 500 (D. Del. 2008) (concluding that defendants satisfied test for conspiracy jurisdiction under Delaware law and processing to analyze whether exercising jurisdiction comported with federal due process). No matter which way one looks at it, the theory rises and falls with federal due process.

And federal due process does not square with the conspiracy-jurisdiction theory. Purposeful availment must be analyzed individually to assure that *each* defendant deliberately targeted this State. *Nicholas*, 224 F.3d at 184; *O'Connor*, 496 F.3d at 317. As I have explained, the record does not show such deliberate targeting for Bosch GmbH. Plaintiffs cannot rely on the work-around of "[i]mputation of the acts of others in a forum state" via a conspiracy. *Roy*, 2008 WL 5054096, at *8. Absent more specific showings that Bosch GmbH took some actions with respect to BMW NA in New Jersey, Plaintiffs have not shown that Bosch GmbH availed itself of New Jersey.[7]

* * *

Plaintiffs have met their burden on the purposeful availment prong as to BMW AG but not Bosch GmbH. I proceed to the remaining prongs but limit the analysis to BMW AG.

## B. Connection to Claims

Even if the defendant has sufficient contacts with a forum, the plaintiffs' claims must "arise out of or relate to" those contacts. *Ford*, 141 S. Ct. at 1025 (citation omitted). What that means is in flux, requiring a bit of discussion of the standard before I apply it to BMW AG.

---

[7]     Plaintiffs also rely on the conspiracy theory as a basis for jurisdiction over BMW AG. (Opp. at 16–17.) Because I conclude that BMW AG is plausibly subject to jurisdiction on other grounds, the failure of the conspiracy theory is inconsequential as to BMW AG.

### 1. **Standard**

Initially, I must clarify the applicable standard by deciding whether recent Supreme Court precedent abrogates the Third Circuit's prior understanding of "arise out of or relate to."

The Supreme Court had long held that claims must "arise out of or relate to" a defendant's contacts, but—until recently—did not provide any more precise elaboration. *O'Connor*, 496 F.3d at 318. Filling the gap, the Third Circuit held that "arise out of or relate to" requires causation, with the level of causation depending on the claim. *O'Connor*, 496 F.3d at 320. For contract claims, the plaintiff must show that "the defendant's contacts with the forum [must have been] *instrumental* in either the formation of the contract or its breach." *Danziger*, 948 F.3d at 130 (citation omitted). For tort claims, the contacts and the claims must have "a closer and more direct causal connection" than but-for causation. *Id.*

More recently, in *Ford,* the Supreme Court rejected the idea that "only a strict causal relationship between the defendant's in-state activity and the litigation will do." 141 S. Ct. at 1026. Rather, said the Court, "some relationships will support jurisdiction without a causal showing." *Id.* The Court did not describe more generally what such relationships might be. *Id.* at 1033 (Alito, J., concurring in the judgment). The Court did hold, however, that the claims before it, that a Ford car was defective when it crashed in the forum, were sufficiently related to Ford's extensive marketing in the forum. *Id.* at 1027 (majority op.).

No court in this Circuit has addressed whether *Ford* abrogates or modifies the Third Circuit's causation standard. One court avoided the issue by resolving the case on purposeful-availment grounds. *Hardwick v. Consumer Guardian Specialists, LLC,* Civ. No. 20-60, 2021 WL 1152739, at *3 n.4 (W.D. Pa. Mar. 26, 2021). In another case, Judge Arleo acknowledged that *Ford* rejected a "strict causal nexus" standard but found its facts distinguishable.

*Kearney v. Bayerische Motoren Werke Aktiengesellschaf*, Civ. No. 17-13544, 2021 WL 1207476, at *5 n.12 (D.N.J. Mar. 31, 2021).

The issue is squarely presented here. I hold that the Third Circuit's causation requirement cannot be reconciled with *Ford*. The Third Circuit held that causation is a *minimum* requirement, *O'Connor*, 496 F.3d at 322–23; *Ford,* however, held that causation is not a requirement, 141 S. Ct. at 1026.[8] In this scenario, the Supreme Court case, though later, nevertheless controls. *E.g., Camden Cnty. Hist. Soc'y v. Dep't of Transp.*, 371 F. Supp. 3d 187, 191 (D.N.J. 2019); *see U.S. Airways, Inc. v. McCutchen*, 663 F.3d 671, 678 (3d Cir. 2011) ("While we recognize that the District Court may have considered itself bound by [previous Third Circuit precedent], each [case] came before the Supreme Court's decisions . . . which . . . undermined the reasoning and holdings of our prior decisions . . . . These cases are therefore inapposite in light of the Supreme Court's intervening decisions."), *vacated on other grounds*, 569 U.S. 88 (2013). Indeed, other district courts have held that *Ford* voided their Circuit's causation requirement. *Israel v. Alfa Laval, Inc.*, No. 20-cv-2133, 2021 WL 1662770, at *4 (M.D. Fla. Apr. 28, 2021); *Lewis*, 2021 WL 1216897, at *35; *James Lee Constr., Inc. v. Gov't Emps. Ins. Co.*, No. 20-68, 2021 WL 1139876, at *2 (D. Mont. Mar. 25, 2021). Accordingly, I will apply a relatedness standard as articulated by *Ford*.

### 2. Application

Plaintiffs claim that advertisements, BMW's website, other promotional materials, statements from dealerships, and "standard and uniform material

---

[8] The concurring opinions confirm that the Court abrogated causation standards adopted by the Courts of Appeals, without citing, *e.g., O'Connor* in particular. *See Ford*, 141 S. Ct. at 1033 (Alito, J., concurring in the judgment) ("[T]he Court recognizes a new category of cases in which personal jurisdiction is permitted: those in which the claims do not 'arise out of' (*i.e.,* are not caused by) the defendant's contacts but nevertheless sufficiently 'relate to' those contacts in some undefined way."); *id.* at 1034 (Gorsuch, J., concurring in the judgment) (explaining that Courts of Appeals had used a causation requirement but "[n]ow . . . the Court pivots away from this understanding").

provided with each car" were misleading; they falsely presented the cars as low-emission vehicles, and wrongfully failed to disclose the existence of the defeat device. (*E.g.*, 1AC ¶¶ 1, 52–53, 400–01, 859, 875.) Plaintiffs further allege that this campaign was developed at high levels by BMW NA at New Jersey headquarters with input and supervision by BMW AG. (*Id.* ¶¶ 71–73.) The alleged unlawful conduct thus occurred, to a great degree, in New Jersey. *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 217 (D.N.J. 2020); *Sawadogo v. Zap Lube & Car Wash, Inc.*, Civ. No. 20-1196, 2020 WL 6689826, at *3 n.3 (D.N.J. Nov. 13, 2020). Some resulting injuries also occurred in New Jersey, because two named plaintiffs viewed the materials and purchased vehicles here. (1AC ¶¶ 52–53.)

Contradicting the Amended Complaint, BMW AG provides declarations stating that BMW NA "was exclusively responsible" for advertisements, promotional materials, and online statements directed at American consumers and dealerships. (Hardy Decl. ¶ 14, 18.) In response, Plaintiffs provide public statements by the BMW AG chairman and board members tending to show that BMW AG developed the "Efficient Dynamics" and "Clean Diesel" branding and products, which were then marketed in the U.S. through BMW NA.

This is where *Ford*'s jettisoning of a strict causation requirement makes a difference. BMW AG, at bottom, argues that Plaintiffs cannot show that any of the *particular* statements they relied on came from BMW AG, as opposed to BMW NA. (Opp. at 20.) This argument bears a close family resemblance to one rejected in *Ford*. There, plaintiffs were injured in accidents involving Ford cars in Minnesota and Montana. 141 S. Ct. at 1023. Ford, invoking a causation standard, argued that plaintiffs had to show that "the company had designed, manufactured, or . . . sold in the State the particular vehicle involved in the accident." *Id.* The Court, however, looked to facts showing that Ford extensively served the market in Minnesota and Montana. *Id.* at 1028. Accordingly, the Supreme Court held that Ford's contacts in the forums (promoting and selling cars there) were sufficiently related to the claims (arising from an accident

involving a Ford car). *Id.* Ford's requirement that the *particular* car have a connection to the forum, said the Court, was too stringent. *Id.* at 1029.[9]

Likewise, here, BMG AG's conduct is sufficiently related to the claims, even if Plaintiffs have not located the precise source of the particular statements they relied on. Plaintiffs' evidence tends to show that BMW AG developed the "Efficient Dynamics" and "Clean Diesel" concepts that lie at the center of this case. This was a top-down initiative which BMW AG deployed with the American market in mind. Even assuming that the particular statements upon which these plaintiffs relied originated from BMW NA, BMW NA did not fashion them from whole cloth. It strains reason to think, as BMW AG would have it, that BMW NA was completely independent from BMW AG when marketing the vehicles here. What is more plausible, based on the allegations and Plaintiffs' evidence, is that BMW AG developed the concepts and then, at a minimum, provided them to marketing managers at BMW NA headquarters in New Jersey to tailor to and deploy in the U.S. market.[10]

At this point, plausibility is all that Plaintiffs need. When "[b]oth sides offer[] evidence on the personal jurisdiction issue," but "there has not been discovery or an evidentiary hearing, the plaintiff receives the benefit of what

---

[9]     By weakening the required connection between the contacts and the particular claims at issue, *Ford* may have eroded the distinction between general and specific jurisdiction to some degree. *See Ford*, 141 S. Ct. at 1034, 1038–39 (Gorsuch, J., concurring in the judgment). That distinction may someday give way, perhaps in favor of a single, more general test, *see id.*, and for some, perhaps, that day cannot come too soon. Nevertheless, it has not yet come, and this Court will attempt to apply the law as it stands currently.

[10]     *Kearney*, the only post-*Ford* case on which BMW AG relies, is distinguishable. There, plaintiffs alleged that BMW NA and BMW AG concealed defective sunroofs. 2021 WL 1207476, at *1–2. Judge Arleo concluded that the claims did not relate to BMW AG's contacts with BMW NA because the record, developed after discovery, only showed a few communications between the two entities asking and answering questions about the sunroof. *Id.* at *6. Here, however, Plaintiffs' evidence—without the benefit of lengthy discovery—tends to show that "clean diesel" was a top-down initiative from BMW AG. The coordination between the two entities and direction from BMW AG is thus stronger.

amounts to a Rule 12(b)(6) standard." *Murphy v. Eisai, Inc.*, --- F. Supp. 3d ----, ----, Civ. No. 19-17552, 2020 WL 7022747, at *3 (D.N.J. Nov. 28, 2020). Because Plaintiffs' allegation and evidence "suggest with reasonable particularity the possible existence of the requisite contacts between [BMW AG] and the forum state, [Plaintiffs'] right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (cleaned up); *see also Shuker*, 885 F.3d at 781.

This is not to say that Plaintiffs have conclusively proven the existence of specific jurisdiction. What discovery may provide is further factual development regarding BMW AG's interactions with BMW NA's marketing team concerning promotion of the vehicles in the U.S. That suffices to permit the case to go forward, and authorizes Plaintiffs to explore how BMW AG's actions shaped the sales and marketing of the vehicles, and hence were sufficiently related to the claims.

### C. Fair Play and Substantial Justice

I conclude that jurisdictional discovery is warranted to develop facts regarding minimum contacts. I pause to consider, however, that in rare cases, "other considerations would render jurisdiction unreasonable." *Carteret*, 954 F.2d at 150 (citation omitted). So I briefly address whether considerations of fair play and substantial justice would defeat jurisdiction and thus obviate the need for jurisdictional discovery. They do not.

I consider (1) BMW AG's burden, (2) New Jersey's interest, (3) Plaintiffs' interest, (4) efficiency, and (5) other forums' interests. *Id.* Although BMW AG is a foreign company, it extensively targets the American market and chose to set up its American base in New Jersey. So it cannot complain of a substantial burden. *See Lewis*, 2021 WL 1216897, at *37; *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 327 (S.D.N.Y. 2020). New Jersey has an interest in ensuring that companies headquartered here comply with its law. That interest extends to ensuring that those from whom they take direction likewise comply. Plaintiffs have an interest in litigating here because two of

them are New Jersey residents. Moreover, Plaintiffs chose this Court, as opposed to any other district where a named plaintiff was injured, because of BMW NA's status as the headquarters for BMW's U.S. sales market and its U.S. marketing campaign. (Opp. at 2.) As to the fourth and fifth factors, the alternative to litigating here would seem to be a separate suit against BMW AG in Germany, and that is plainly inefficient for the remaining American parties. BMW AG has made no argument that Germany has a stronger interest.

Thus, there is no "compelling case" for dismissal that would moot the need for jurisdictional discovery. *See Carteret*, 954 F.2d at 150.

## IV.  CONCLUSION

For the reasons set forth above, BMW AG's motion to dismiss for lack of personal jurisdiction is denied, without prejudice to renewal after jurisdictional discovery. The extent to which jurisdictional discovery should be prioritized or conducted in tandem with merits discovery I leave to the good sense of counsel, guided by the able and experienced Magistrate Judge assigned to this case. Bosch GmbH's motion to dismiss is granted.

A separate order will issue.

Dated: May 11, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**