Kevin M. McDonough
Michael Lacovara (*pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Arthur F. Foerster (*pro hac vice*)
Johanna Spellman (*pro hac vice*)
**LATHAM & WATKINS LLP**
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700

*ATTORNEYS FOR DEFENDANT BAYERISCHE MOTOREN WERKE
AKTIENGESELLSCHAFT*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA HU, et al., individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA LLC, a Delaware corporation; and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT (BMW AG), a corporation organized under the laws of Germany, ROBERT BOSCH GMBH, a corporation organized under the laws of Germany; and ROBERT BOSCH LLC, a Delaware Limited Liability Company,<br><br>                Defendants. | Civil Action No. 2:18-cv-04363 (KM) (JBC)<br><br><br>**JURY DEMAND**<br><br><br>*Electronically Filed* |

## DEFENDANT BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Defendant Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), by and through its undersigned counsel, respectfully submits this Answer and these Affirmative Defenses to the First Amended Consolidated Class Action Complaint (the "FAC") (Dkt. No. 65), dated September 20, 2019, and hereby answers each of the numbered paragraphs of the FAC and states as set forth herein. None of BMW AG's answers or affirmative defenses is intended to admit or concede any element of Plaintiffs' claims, or that this Court properly can, on the facts alleged, exercise personal jurisdiction over BMW AG. Upon the completion of jurisdictional discovery, BMW AG intends to file a renewed motion to dismiss, as provided by this Court's order and opinion of May 11, 2021. Dkt. Nos. 128, 129.

Except to the extent expressly admitted, BMW AG denies each and every allegation in the FAC, including any allegations contained in its headings or footnotes. BMW AG does not admit that any document purportedly cited, quoted or referenced by the FAC, is accurate, relevant or admissible in this action, and BMW AG reserves all objections regarding admissibility. BMW AG also denies knowledge, information or capacity to answer any allegation in the FAC directed generically to "BMW," the "BMW Group" or "Defendants." None of "BMW," "the BMW Group," or "Defendants" refer to a recognized legal entity. This Answer and these Affirmative Defenses are submitted by BMW AG only and are limited to BMA AG's own knowledge, information and belief.

BMW AG further reserves the right to change, supplement, and amend this Answer and these Affirmative Defenses if and when new information is revealed to it. BMW AG denies that Plaintiffs are entitled to any relief.

## **ANSWER**

With respect to specific paragraphs of the FAC, BMW AG responds as follows:

## I.    INTRODUCTION

1.    This is what the BMW Group promised when selling the popular 2009-2013 BMW X5 xDrive35d ("X5") and 2009-2011 BMW 335d diesel vehicles ("Polluting BMW Vehicles"): that the vehicles "met emissions standards in all 50 states," that "BMW Efficient Dynamics" meant "Less emissions," and that its engines "protect the environment every day," were "environmentally friendly," and turned nitric oxides "into environmentally compatible nitrogen and water vapor," and offered "increased power with decreased fuel consumption and emissions."  BMW made these statements because BMW knew emissions and environmental mitigations were material to a reasonable purchaser of a diesel vehicle.  In fact, BMW knew that a major reason a typical consumer would purchase a diesel over a gas car is for the combination of environmental benefits, reduced emissions and better fuel economy.

1.    **Answer**:  Paragraph 1 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1.  BMW AG also denies the allegations in Paragraph 1 insofar as those allegations refer to advertisements and refers to the original source materials for a complete and accurate statement of their contents and context.

2.    In response to this Court's order of dismissal without prejudice, Plaintiffs have amended the complaint to allege testing of additional representative vehicles, to further allege that these vehicles are representative for all purposes of all makes and model years of the Polluting BMW Vehicles at issue here and to further allege the propriety, accuracy, and reliability of Plaintiffs' Portable Emissions Measurement System ("PEMS") testing.  Plaintiff have also provided detailed information about how the PEMs testing was conducted and the results of the testing in far more detail than before.

2.    **Answer**:  Paragraph 2 of the FAC consists of Plaintiffs' characterization of the FAC to which BMW AG need not respond.  To the extent a response is required, BMW AG admits that Plaintiffs filed an amended complaint after the Court's Order dated June 27, 2019 (Dkt. # 59), which dismissed the prior Consolidated Class Action Complaint without prejudice. BMW AG denies all remaining allegations in Paragraph 2.

3.    Plaintiffs conducted emissions testing of five vehicles that are within the proposed class (the "exemplar vehicles"), and one comparable gasoline-powered vehicle.  As explained below, the tested vehicles are representative of the emissions system for the model years at issue and Plaintiffs' testing exceeds what BMW performs to obtain Environmental Protection Agency ("EPA") approval.  When applying for a certificate of compliance from EPA, BMW used just one X5 and one 335 test vehicle to represent the entire model over the course of the class period.

3.    **Answer**:  Paragraph 3 of the FAC states legal conclusions and arguments to which BMW AG need not respond.  To the extent a response is required, BMW AG admits that, in compliance with all applicable regulations, and standards, the emissions test results from multiple X5 and BMW 335d vehicles were used when applying for a certificate of conformity for model years 2009-2011.  BMW AG denies all remaining allegations in Paragraph 3.

4.    Plaintiffs also describe in detail below the scientific basis for using a PEMS device to measure emissions and the reasons why PEMS results are reliable and used by the EPA and the California Air Resources Board ("CARB") to discover Defeat Devices.  Plaintiffs further describe the testing process in detail.

4.    **Answer**:  Paragraph 4 of the FAC consists of Plaintiffs' characterization of the FAC to which BMW AG need not respond.

5.    When the Polluting BMW Vehicles are not in a test environment, they emit nitrogen oxide ("NOx") in amounts and at levels well over the legal standard.  This difference demonstrates that the vehicle performs differently in a test environment (on the dynamometer) than in the real world (PEMS testing), which should not be the case unless the emissions system has been set up with a device to turn the system off or down during real-world driving.  Plaintiffs' test results and analysis reveal that when Defendants promised that the Polluting BMW Vehicles were "clean" and "environmentally friendly" and "complied with the emissions standards in all 50 states," they were being untruthful.

5.    **Answer**:  Paragraph 5 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies knowledge or information sufficient to form a belief as to the accuracy of any 'testing' or 'analysis' claimed to have been performed by Plaintiffs.  BMW AG avers that model year 2009-2013 BMW X5 xDrive35d and model year 2009-2011 BMW 335d vehicles (the "BMW Vehicles") complied with all applicable emissions regulations when first leased or sold by an authorized BMW dealer.  BMW AG denies the allegations in Paragraph 5 insofar as those allegations refer to advertisements and respectfully refers the Court to those advertisements (to the extent it is possible to identify them from the cursory descriptions in the FAC) for a complete and accurate description of their contents.

6.     As explained in detail below, BMW's representations were misleading for failure to disclose its emissions manipulations, namely that while the vehicles may have passed federal and state emissions testing in a test environment, software in the vehicles senses when test conditions are not present, and materially reduces or turns off emissions controls in real world driving conditions.  In contrast to BMW's promises, scientifically valid emissions testing of the same type used to uncover the VW scandal and by the EPA to recall 500,000 Fiat Chrysler Automobiles ("FCA") vehicles for emissions issues, has revealed that the Polluting BMW Vehicles emit levels of NOx many times higher than (i) their gasoline counterparts; (ii) what a reasonable consumer would expect; (iii) what BMW had advertised; (iv) the EPA's and certain states' maximum standards; (v) the levels set for the vehicles to obtain a certificate of compliance, which allows them to be sold in the United States; and (vi) what gas powered comparable BMW's produce.  Further, the Polluting BMW Vehicles' promised power, fuel economy, and efficiency are obtained only by turning off or turning down emission controls when the software in these vehicles senses that they are not in an emissions testing environment.

6.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

7.     In the last two years, there have been major scandals involving diesel vehicles made by all of the leading diesel manufacturers, including Volkswagen, Audi, Porsche, GM, Mercedes, and Fiat Chrysler Automobiles (FCA).  Volkswagen pled guilty to criminal violations of the Clean Air Act, Mercedes is under investigation by the Department of Justice, and EPA has sued FCA for violating the Clean Air Act for improper emissions in tens of thousands of 2014–2016 Dodge Ram 1500 and Jeep Grand Cherokee EcoDiesels.  General Motors is the subject of a lawsuit with a sustained racketeering claim concerning the emissions in its Silverado and Sierra trucks.  The diesel vehicles made by all these manufacturers all have a common flaw:  they evade emissions standards with the help of certain software (all made by Bosch) that turns off or turns down emission controls when the vehicles sense that they are not in a test environment.

7.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers

that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this

action.

8.     BMW is no different than the above mentioned cheating manufacturers.  BMW's top selling diesel vehicles often emit far more pollution on the road than in the emissions-certification testing environment, and more than comparable gas BMWs.  In fact, BMW knew that a major reason a typical consumer would purchase a diesel vehicle over a gas vehicle is for environmental reasons, reduced emissions, and better fuel economy.  These vehicles exceed federal and state emission standards and employ "defeat devices" to turn down the emission controls when each vehicle senses that it is not in the certification test cycle.  As used herein, a defeat device means an auxiliary emission control device that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in

normal vehicle operation and use.  In modern vehicles with electronic engine controls, defeat devices are almost always activated by illegal software in the vehicle's engine control module (ECM)—the computer that controls the operation of the engine and emission control devices.

8.      **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

9.      How and why did all of these manufacturers cheat?  Diesel engines pose a difficult challenge to the environment because they have an inherent trade-off between power, fuel efficiency, and emissions.  Compared to gasoline engines, diesel engines generally produce greater torque, low-end power, better drivability, and much higher fuel efficiency.  But these benefits come at the cost of much dirtier and more harmful emissions.

9.      **Answer**:  Paragraph 9 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG admits that torque, low-end power, drivability and fuel efficiency are some of the benefits of diesel engines.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

10.     One byproduct of diesel combustion is NOx, which generally describes two primary compounds comprised of nitrogen and oxygen atoms, nitric oxide, and nitrogen dioxide. These compounds are formed in the cylinder of the engine during the high-temperature combustion process.  NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone.  Exposure to these pollutants has been linked with serious health dangers, including serious respiratory illnesses and premature death due to respiratory-related or cardiovascular-related effects.  The U.S. government, through the EPA, has passed and enforced laws designed to protect U.S. citizens from these NOx and certain other chemicals and agents known to cause disease in humans.  NO2, which is the pollutant that NOx is converted to in the atmosphere, is one of the seven criteria pollutants that the Clean Air Act establishes as "wide-spread pollutants that were considered harmful to the public and environment."  The National Ambient Air Standards, which form the backbone of the clean air regulations designed to protect human health and the environment from criteria pollutants, regulate these criteria pollutants.  Regulation of NOx from diesel engines is one way that the EPA controls ambient concentrations of this harmful pollutant.

10.     **Answer**:  Paragraph 10 of the FAC states legal conclusions and argument and relates to other persons or entities, to which BMW AG need not respond.  To the extent a response

5

is required, BMW AG admits that NOx is a byproduct of diesel, gasoline, and other fuel combustion and that NOx can interact with other compounds to form ozone under certain circumstances. BMW AG also admits that NOx can be harmful under certain circumstances at certain levels. To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action. BMW AG denies the allegations in Paragraph 10 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

11.     The Energy Independence and Security Act (EISA) of 2007 mandated a 40% increase in fuel economy by 2020. Tougher fuel economy standards were set to start for model year 2011 vehicles. Likewise, in Europe new stricter standards were also looming. Automobile manufacturers began planning to meet these standards. Auto manufacturers saw that the stricter standards could be met through electric, hybrid, or diesel vehicles, and saw a market for tens of millions of cars that could be marketed as vehicles that met the new standards. In response to this enormous market, almost all of the major automobile manufacturers rushed to develop "clean diesel" vehicles and promoted these new diesel vehicles as "environmentally friendly" and "clean." Bosch helped coin and market the phrase "clean diesel" or "clean diesel technologies." All of these manufacturers also marketed diesel vehicles as having better fuel economy than their gasoline counterparts. BMW, Volkswagen, Mercedes, Audi, General Motors, and FCA also began marketing diesel cars and trucks as more "powerful" than their gasoline counterparts, but also as an environmentally friendly alternative to gasoline vehicles. And the marketing worked, as over two million diesel vehicles were purchased between 2007 and 2016 in the United States and over ten million in Europe.

11.     **Answer**: Paragraph 11 of the FAC states legal conclusions and argument and relates to other persons or entities, to which BMW AG need not respond. To the extent the allegations relate to vehicles other than the BMW Vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action. BMW AG also denies the allegations in Paragraph 11 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

12.     The green bubble with respect to diesel vehicles began to burst on September 18, 2015, when the EPA issued a Notice of Violation of the Clean Air Act (the "First NOV") to Volkswagen Group of America, Audi AG, and Volkswagen America for installing illegal "defeat devices" in 2009–2015 Volkswagen and Audi diesel vehicles equipped with 2.0-liter diesel engines.  A defeat device, as defined by the EPA, is any apparatus that unduly reduces the effectiveness of emission control systems under conditions a vehicle may reasonably be expected to experience on the road.  The EPA found that the Volkswagen/Audi defeat devices allowed the vehicles to pass emissions testing, while in the real world these vehicles polluted far in excess of emissions standards.  CARB also announced that it had initiated an enforcement investigation of Volkswagen pertaining to the vehicles at issue in the First NOV.

12.     **Answer**: Paragraph 12 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG also denies the allegations in Paragraph 12 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

13.     On September 22, 2015, Volkswagen announced that 11 million diesel vehicles worldwide were installed with the same defeat device software that had evaded emissions testing by U.S. regulators.  Volkswagen pled guilty to criminal charges, paid billions in fines, and settled civil class actions for over ten billion dollars.[1]

13.     **Answer**: Paragraph 13 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

14.     Volkswagen wasn't alone—soon, government agencies began to reveal that many manufacturers, both in the United States and in Europe, had produced dozens of models that were exceeding emissions standards.  On December 2, 2016, certain of Plaintiffs' counsel in this case, based on the same type of expert testing and investigation conducted in this case, filed a class action alleging that FCA's Dodge Ram and Jeep Grand Cherokee EcoDiesels were exceeding emissions standards and producing emissions beyond that a reasonable consumer would expect to be produced by "Eco" vehicles.  On January 12, 2017, essentially confirming the work of Plaintiffs' counsel and expert testing, the EPA issued a Notice of Violation to FCA because it had

---

[1] Nathan Bomey, *Volkswagen Emission Scandal Widens: 11 Million Cars Polluting*, USA TODAY (Sept. 22, 2015), http://www.usatoday.com/story/money/cars/2015/09/22/volkswagen-emissions-scandal/72605874/.

cheated on its emissions certificates for its Dodge Ram and Jeep Grand Cherokee EcoDiesel vehicles.  And on May 23, 2017, the United States filed a civil suit in the Eastern District of Michigan against FCA alleging violations of the Clean Air Act (*United States v. FCA US LLC*, No. 17-cv-11633 (E.D. Mich.)).  Many of the defeat devices listed in the Notice of Violation were identified by Plaintiffs' counsel ahead of the EPA's notice.  In January 2019, FCA agreed to pay a fine of $300 million and to settle a consumer class action for $280 million.  In Europe, watchdog groups, NGOs, and government agencies have cited virtually every manufacturer, including BMW, for violating the lower European emissions standards.

14.    **Answer**:  Paragraph 14 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG also denies the allegations in Paragraph 14 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

15.    To appeal to environmentally emissions conscious consumers, compete with rival and top-selling vehicles sold by Volkswagen and Audi, and to comply with new emissions regulations that became effective in 2010, BMW marketed its diesel vehicles as having "low emissions," and "clean" diesel technology coupled with high fuel economy.

15.    **Answer**:  Paragraph 15 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG also denies the allegations in Paragraph 15 insofar as those allegations refer to advertisements, laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

16.    Plaintiffs' on-road PEMS testing has confirmed that BMW's diesel vehicles produce NOx emissions in an amount demonstrating that they are not the "cleanest X5 diesel" or vehicles that "meet emission standards"; rather, BMW has programmed the vehicles so that in a wide range of common driving conditions, the emissions systems are powered down, producing NOx far in excess of emissions standards, and in excess of comparable BMW gas vehicles. Reasonable consumers would not expect their BMW diesel vehicle to spew unmitigated NOx in this fashion while driving in the city or on the highway, nor would reasonable consumers expect

that fuel economy was achieved in part by turning off or derating the emission systems; nor would reasonable consumers expect that if the emissions were as promised, the advertised fuel economy and performance could not be achieved.

16.     **Answer**:  Paragraph 16 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 16 and avers that, to the best of its knowledge, no BMW Vehicle was "programmed"

in the manner suggested or failed to comply with applicable regulations.  BMW AG also avers that

phrases such as "spew unmitigated NOx" are false, and (if made in any context other than

litigation) defamatory.  No further response to the allegations in this paragraph is required.

17.     Five diesel-powered BMWs were tested to measure their emissions performance for comparison with certification testing and certification standards.  On-road, real world emissions were measured with a PEMS.  Laboratory emissions were measured with a Code of Federal Regulations ("CFR") compliant chassis dynamometer running the applicable city driving test, and highway certification cycles, two of the main cycles used to certify the vehicles with CARB and EPA.  In addition, on-road testing was also performed on an equivalent gasoline vehicle for comparison with the diesel vehicles.

17.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

18.     The diesel vehicles were found to have a defeat device that causes a dramatic increase in NOx emissions when operating at ambient temperatures less than 68°F, which happens to be the lower allowable laboratory temperature limit for the certification test cycles.  At low ambient temperatures, NOx levels are as high as 2,365 mg/mile, or 34 times the standard.  The increases in NOx are the result of software algorithms designed to intentionally reduce or disable the performance of the Exhaust Gas Recirculation ("EGR"), and Selective Catalyst Reduction ("SCR") systems as the ambient temperature decreases.  The low pressure EGR system is completely disabled at temperatures below 50°F.  The high pressure EGR system is completely disabled at temperatures below 10°F.  At all temperatures below 68°F, the performance of the SCR system is reduced compared to the performance observed in the certification temperature window. By comparison, testing of the gasoline powered BMW showed NOx emissions to be at or well below the standard across the same ambient temperature range, suggesting no temperature adjustments in the control algorithms.  Disabling of the EGR and SCR is only possible through coding of the software that was jointly developed by Mercedes and Bosch.

18.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

19.     In city driving conditions, NOx emission results for the diesel vehicles are 1.4 to 7.5 times the 50 mg/mile emission standard for the Federal Test Procedure 75 ("FTP-75"). The FTP-75 certification cycle is designed to reflect emissions in city driving conditions. Maximum emissions for city driving conditions range from 454 mg/mile to 3,664 mg/mile, or 9 to 73 times the standard. Furthermore, emission results on the road were found to be well over the results found on the chassis dynamometer for the same conditions for all five diesel vehicles. On-road testing using the FTP certification test cycle indicates the diesel vehicles can detect that they are being driven on the certification test cycle. By contrast, the gasoline BMW was found to meet the emission standard over a wide range of city conditions, demonstrating that it is possible to achieve the laboratory certification standard performance during real world on-road driving if a manufacturer chooses to do so.

19.     **Answer**: BMW AG incorporates by reference the answer set forth in Paragraphs 5 and 16 as if restated herein. BMW AG also denies the allegations in Paragraph 19 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

20.     In highway driving conditions, NOx emission results for four of the five diesel vehicles are 1.3 to 3.4 times the 70 mg/mile emission standard for the Highway Fuel Economy Test ("HWFET"), the cycle used to simulate highway driving conditions for certification. Only one of the five diesel vehicles met the highway standard in on-road testing. Maximum emissions for highway driving conditions range from 269 mg/mile to 2,365 mg/mile, or 3.8 to 34 times the standard. For all five diesel vehicles, on-road emissions were found to be substantially higher compared to laboratory chassis dynamometer testing when operating in the same conditions. The gasoline powered BMW was found to meet the HWFET standard over a wide range of operating conditions; in fact, NOx emissions for the gas vehicle were well under the standard across all operating conditions tested. All five diesel powered vehicles showed a very high sensitivity to road grade, with NOx emissions more than double the standard at road grades as low as 1.0%. The gasoline powered BMW was found to be insensitive to road grade, with NOx emissions below the standard even with grades above 3.0%.

20.     **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein. BMW AG also denies the allegations in Paragraph 20 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

21.     Finally, all five diesel vehicles were found to have active diesel particulate filter (DPF) regeneration rates higher than the levels submitted in the applications for certification.  As a result, there is a significant increase in NOx and a loss in overall fuel economy.  For the X5 diesels, the overall increase in NOx as a result of active regeneration is some 4.5 to 11 times higher than the levels indicated by the certification application; for the 335 diesels, the increase in NOx as a result of active regeneration is some 2.5 to 4 times higher than the value indicated in the application for certification.

21.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

22.     All five BMW diesels use a diesel particulate filter (DPF) to control diesel particulate matter (soot, or PM) emissions.  In normal operation, these DPFs burn off trapped PM using passive oxidation, a catalytic process that occurs at normal diesel exhaust temperatures.  However, if the passive regeneration performance is insufficient to remove collected PM, the engine must rely on a process called "active regeneration."  During active regeneration, the engine heats the exhaust to a temperature of approximately 600°C to remove the collected PM without the need for a catalyst.  These events are generally undesirable because they increase fuel consumption and result in very high tailpipe NOx emissions.  By design, active regenerations are supposed to be infrequent events because of their emissions and fuel economy impacts.  Regulators account for the increase in overall NOx attributed to active regeneration using an Infrequent Regeneration Adjustment Factor (IRAF), often called an Upward Adjustment Factor (UAF), and this active regeneration is far in excess of the permissible frequency.

22.     **Answer**:  Paragraph 22 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG admits that model year 2009-2013 BMW X5 xDrive35d and model year 2009-2001 BMW 335d vehicles utilize a diesel particulate filter.  BMW AG denies all remaining allegations in Paragraph 22.

23.     BMW promoted these vehicles as having "exemplary fuel economy."  However, active regeneration materially impacts fuel economy, up to 17.9% to 36% in city driving for the X5's and 25% to 30.4% in highway driving.  Defendants knew of and failed to disclose this impact on fuel economy.

23.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraphs 5 and 16 as if restated herein.

24.     Thus, the findings of the PEMS testing is summarized as follows:  The BMW diesels demonstrate deliberate adjustments of emissions controls and a resulting increase in NOx emissions under conditions of low ambient temperature, mild to moderate road grades, and in general operation outside the conditions of the testing laboratory.  These behaviors indicate the presence of defeat devices and are inconsistent with vehicles promised to be "better for the

environment," "clean," and emissions compliant.  The diesels also demonstrate diesel particulate filter regeneration frequencies that are significantly greater than those reported in the certification documents and allowed by law.  This increased regeneration frequency contributes to yet more excess NOx emissions as well as an increase in fuel consumption.  There was no disclosure to consumers of the frequency of active regeneration or its effect on fuel performance.  Unlike the diesel BMWs, testing of an analogous gasoline-powered BMW showed it is possible to achieve emissions performance at or below the standards over a wide range of real-world driving conditions.

24.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

25.   BMW did not act alone.  At the heart of the diesel scandal in the United States and Europe are Robert Bosch GmbH ("Bosch GmbH") and Robert Bosch LLC ("Bosch LLC") (sometimes referred together as "Bosch").  In the mid to late 2000s, like the vehicle manufacturers, the Bosch entities saw a huge market for diesel vehicles in Europe and the United States.  Bosch became a critical player in the diesel market in its role as a supplier of emissions software for almost all diesel car manufacturers.  Bosch GmbH and Bosch LLC were active and knowing participants in the scheme to evade U.S. emissions requirements.  Bosch GmbH and Bosch LLC developed, manufactured, and tested the electronic diesel control (EDC) that allowed BMW (and Ford, GM, Volkswagen, Mercedes, and FCA) to implement defeat devices.  The Bosch EDC-17 is a perfect enabler for the used "defeat devices" as it enables the software to detect conditions when emission controls can be manipulated—*i.e.*, conditions outside of the emissions test cycle. Almost all of the vehicles found or alleged to have been manipulating emissions in the United States (including vehicles by Mercedes, FCA, Volkswagen, Audi, Porsche, and General Motors) use a Bosch EDC-17 device.  As part of its efforts to falsely promote "clean diesel," Bosch, as a member of the "Diesel Technology Forum," helped send out dozens of statements to the public and regulators about "clean diesel," and while secretly knowing all of its diesel manufacturing clients were not producing "clean diesel vehicles."

25.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW

AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual

consequence in this action.  BMW AG also denies the allegations in Paragraph 25 insofar as those

allegations refer to statements to the public and/or regulators, and refers to the original source

materials for a complete and accurate statement of their contents and context.

26.   Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of the Polluting BMW Vehicles.  Plaintiffs seek damages, injunctive relief, and equitable relief for Defendants' misconduct related to the design, manufacture, marketing, sale, and lease of the Polluting BMW Vehicles, as alleged in this Complaint.

26.   **Answer**:  Paragraph 26 of the FAC consists of Plaintiffs' characterization of the FAC, to which BMW AG need not respond.  To the extent a response is required, BMW AG admits that Plaintiffs purport to assert claims individually and on behalf of all other current and former owners or lessees of 2009-2013 BMW X5 xDrive35d and 2009-2011 BMW 335d diesel vehicles that reside in the states represented by Plaintiffs.  BMW AG denies that any such claims have merit and denies that Plaintiffs are entitled to any relief.  BMW AG denies that class treatment of Plaintiffs' claims is appropriate.  BMW AG denies all remaining allegations in Paragraph 26.

## II.   JURISDICTION

27.   This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the RICO Act, 18 U.S.C. § 1962.  The Court also has diversity jurisdiction because Plaintiffs and Defendants reside in different states.  The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

27.   **Answer**:  Paragraph 27 of the FAC states legal conclusions and argument and relates to other persons or entities, to which BMW AG need not respond.  To the extent a response is required, BMW AG denies this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 because Plaintiffs' claims under the RICO Act have been dismissed with prejudice.  BMW AG denies that the Court has diversity jurisdiction over this action.

28.   This Court also has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1), as modified by the Class Action Fairness Act of 2005, because Plaintiffs and Defendants are citizens of different states; there are more than 100 members of the Class (as defined herein); the aggregate amount in controversy exceeds $5 million, exclusive of attorneys' fees, interest, and costs; and Class members reside across the United States.  The citizenship of each party is described further below in the "Parties" section.

28.   **Answer**:  Paragraph 28 of the FAC states legal conclusions and argument and relates to other persons or entities, to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 28.  BMW AG denies that class treatment of Plaintiffs' claims is appropriate.

29.     This Court has personal jurisdiction over each Defendant pursuant to 18 U.S.C. § 1965(b) & (d).   This Court has personal jurisdiction over Defendants because they have minimum contacts with the United States, this judicial district, and this State, and they intentionally availed themselves of the laws of the United States and this State by conducting a substantial amount of business throughout the State, including the design, manufacture, distribution, testing, sale, lease, and/or warranty of BMW vehicles in this State and District.   At least in part because of Defendants' misconduct as alleged in this lawsuit, the Polluting BMW Vehicles ended up on this State's roads and in dozens of franchise dealerships.

29.     **Answer**:   Paragraph 29 of the FAC states legal conclusions and argument and relates to other persons or entities, to which BMW AG need not respond.   To the extent a response is required, BMW AG avers that it is a corporation organized and existing under the laws of the Federal Republic of Germany, with its principal place of business and corporate headquarters in Munich, Germany, and  that BMW AG is not incorporated or qualified to do business in any state in the United States, has no general agent for service of process anywhere in the United States, is not a taxpayer in the United States or any of its states, and does not design, manufacture, sell, or distribute any vehicles in the United States.   BMW AG denies that this Court properly can, on the facts alleged, exercise jurisdiction over it.   Upon the completion of jurisdictional discovery, BMW AG intends to file a renewed motion to dismiss, as provided by this Court's order and opinion of May 11, 2021.   Dkt. Nos. 128, 129.   BMW AG denies all remaining allegations in Paragraph 29.

### III.     VENUE

30.     Venue is proper in this Court under 28 U.S.C. § 1391 because (i) Defendants conduct substantial business in this District and have intentionally availed themselves of the laws and markets of the United States and this District; and/or (ii) many of the acts and transactions giving rise to this action occurred in this District, including, *inter alia*, BMW's promotion, marketing, distribution, and sale of the Polluting BMW Vehicles in this District.   Defendant BMW sells a substantial number of automobiles in this District, has dealerships located throughout this District, and the misconduct occurred in part in this District.   Venue is also proper under 18 U.S.C. § 1965(a) because Defendants are subject to personal jurisdiction in this District, as alleged in the preceding paragraph, and Defendants have agents located in this District.

30.     **Answer**:   Paragraph 30 of the FAC states legal conclusions and argument and relates to other persons or entities, to which BMW AG need not respond.   To the extent a response

14

is required, BMW AG admits that venue in the District of New Jersey is proper.  BMW AG denies

all remaining allegations in Paragraph 29.

## IV.   PARTIES

**A.   Plaintiffs**

      **1.   Alabama Plaintiffs**

          **a.   Joshua Hu**

      31.   Plaintiff Joshua Hu (for the purpose of this paragraph, "Plaintiff") is an individual residing in Vestavia Hills, Alabama.  On or around April 13, 2014, Mr. Hu purchased a used 2011 BMW 335d from Benton Nissan of Bessemer in Bessemer, Alabama.  Mr. Hu paid approximately $31,000 for the vehicle and paid a diesel premium of at least $1500.  Mr. Hu purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Hu out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Hu, so Mr. Hu purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Hu selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Hu recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Hu would not have purchased the vehicle or would have paid less for it.  Mr. Hu and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Hu or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

      31.   **Answer**:  Paragraph 31 of the FAC states legal conclusions and argument to which

BMW AG need not respond, and makes allegations and addresses claims dismissed by the Court's

June 25, 2020 Order, and reconsideration of that dismissal was denied by Order dated February 2,

15

2021.  Accordingly, BMW AG need not respond.  To the extent a response is required, BMW AG

denies the allegations in Paragraph 31.  BMW AG denies that any named Plaintiff overpaid for her

BMW vehicle and further denies that class treatment of Plaintiffs' claims is appropriate.

### b.    Charles Rogers

32.    Plaintiff Charles Rogers (for the purpose of this paragraph, "Plaintiff") is an
individual residing in Deatsville, Alabama.  On or around June 17, 2016, Mr. Rogers purchased a
used 2013 BMW X5 Diesel from CarMax of Birmingham in Birmingham, Alabama.  Mr. Rogers
paid approximately $42,333 for the vehicle and paid a diesel premium of at least $1500.
Mr. Rogers purchased and still owns this vehicle.  Unknown to him at the time the vehicle was
purchased, the vehicle only achieved its promised fuel economy and performance because it was
equipped with an emissions system that, during normal driving conditions, exceeded the allowed
level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing,
manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has
caused Mr. Rogers out-of-pocket loss in the form of overpayment at the time of purchase of at
least $1500.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission
controls during normal driving conditions, but did not disclose such facts or their effects to
Mr. Rogers, so Mr. Rogers purchased his vehicle on the reasonable but mistaken belief that his
vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions
standards, was properly EPA-certified, and would retain all of its promised fuel economy and
performance throughout its useful life.  Mr. Rogers selected and ultimately purchased his vehicle,
in part, because of the diesel system, as represented through advertisements and representations
made by BMW.   Mr. Rogers recalls that before he purchased the vehicle, he reviewed
advertisements on BMW's website and representations from the dealership touting the efficiency,
fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this
design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Rogers
would not have purchased the vehicle or would have paid less for it.  Mr. Rogers and each Class
member has suffered an ascertainable loss as a result of BMW's omissions and/or
misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW
diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine
compared to what they would have paid for a gas-powered engine, out-of- pocket losses by
overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers,
or other representatives, or Bosch informed Mr. Rogers or Class members of the existence of the
unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting
Vehicles prior to purchase.

32.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### 2.     Arizona Plaintiff

#### a.     Rickey Evans

33.     Plaintiff Rickey Evans (for the purpose of this paragraph, "Plaintiff") is an individual residing in Queen Creek, Arizona.  On or around March 18, 2017, Mr. Evans purchased a used 2011 BMW 335d from Chapman BMW in Chandler, Arizona.   Mr. Evans paid approximately $18,829.06 for the vehicle and paid a diesel premium of at least $1500.  Mr. Evans purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.   BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Evans out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon expert work in other diesel cases, expert analysis in this case will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Evans, so Mr. Evans purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Evans selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.   Mr. Evans recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Evans would not have purchased the vehicle or would have paid less for it.  Mr. Evans and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Evans or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

33.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### 3.     California Plaintiffs

#### a.     Brian Beckner

34.     Plaintiff Brian Beckner (for the purpose of this paragraph, "Plaintiff") is an individual residing in Huntington Beach, California.   On or around November 20, 2017, Mr. Beckner purchased a used 2010 BMW X5d through a private sale.  Mr. Beckner paid

approximately $13,250.00 for the vehicle and paid a diesel premium of at least $1500. Mr. Beckner purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Beckner out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases, expert analysis in this case will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Beckner, so Mr. Beckner purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Beckner selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.   Mr. Beckner recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Beckner would not have purchased the vehicle or would have paid less for it.  Mr. Beckner and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Beckner or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

34.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### b.    Chad Maccanelli

35.    Plaintiff Chad Maccanelli (for the purpose of this paragraph, "Plaintiff") is an individual residing in Winnetka, California.  On or around May 20, 2015, Mr. Maccanelli purchased a used 2011 BMW 335d from VW of Puente Hills in Puente Hills, California. Mr. Maccanelli paid approximately $23,500 for the vehicle and paid a diesel premium of at least $1500.  Mr. Maccanelli purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Maccanelli out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other expert analysis in diesel cases, expert analysis in this case will show overpayment in excess of $5,000.  BMW and Bosch knew about,

or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Maccanelli, so Mr. Maccanelli purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Mr. Maccanelli selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW. Mr. Maccanelli recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine. Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Maccanelli would not have purchased the vehicle or would have paid less for it. Mr. Maccanelli and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase. Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Maccanelli or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

35. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

### c. Ellis Goldfrit

36. Plaintiff Ellis Goldfrit (for the purpose of this paragraph, "Plaintiff") is an individual residing in Santa Cruz, California. On or around October 19, 2011, Mr. Goldfrit purchased a new 2011 BMW 335d from Stevens Creek BMW, an authorized BMW dealership in San Jose, California. Mr. Goldfrit paid approximately $46,624 for the vehicle and paid a diesel premium of at least $1500. Mr. Goldfrit purchased and still owns this vehicle. Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Goldfrit out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the time of expert disclosures. BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Goldfrit, so Mr. Goldfrit purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Mr. Goldfrit selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW. Mr. Goldfrit recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine. Had

BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Goldfrit would not have purchased the vehicle or would have paid less for it.  Mr. Goldfrit and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Goldfrit or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

36.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### d.    Werner Rogmans

37.    Plaintiff Werner Rogmans (for the purpose of this paragraph, "Plaintiff") is an individual residing in East Palo Alto, California.  On or around September 27, 2017, Mr. Rogmans purchased a used 2011 BMW X5 Diesel from M Sport Motors, located in Walnut Creek, California.  Mr. Rogmans paid approximately $19,367 for the vehicle and paid a diesel premium of at least $1500.  Mr. Rogmans purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Rogmans out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis in this case will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Rogmans so Mr. Rogmans purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Rogmans selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Rogmans recalls that he relied on the dealership's labeling and representations regarding the car's emissions, fuel economy, and power and performance of the engine as part of his purchasing decision, as well as doing a significant amount of individual research on BMW vehicles.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Rogmans would not have purchased the vehicle or would have paid less for it.  Mr. Rogmans and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Rogmans or Class members of the existence of

the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

37.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

### e.     Eric Sanchez

38.     Plaintiff Eric Sanchez (for the purpose of this paragraph, "Plaintiff") is an individual residing in West Covina, California.  On or around March 2015, Mr. Sanchez purchased a used 2010 BMW X5 Diesel from West Coast Rovers, located in Lake Forest, California.  Mr. Sanchez paid approximately $21,000 for the vehicle and paid a diesel premium of at least $1500. Mr. Sanchez purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Sanchez out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis in this case will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Sanchez so Mr. Sanchez purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Sanchez selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Sanchez recalls that before he purchased the vehicle, he reviewed representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Sanchez would not have purchased the vehicle or would have paid less for it.  Mr. Sanchez and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Sanchez or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

38.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

### 4. Colorado Plaintiffs

#### a. Jeffrey Price

39.     Plaintiff Jeffrey Price (for the purpose of this paragraph, "Plaintiff") is an individual residing in Ridgway, Colorado.  On or around December 20, 2016, Mr. Price purchased a used 2009 BMW X5 Diesel from Autonation in Centennial, Colorado.  Mr. Price paid approximately $17,000 for the vehicle and paid a diesel premium of at least $1500.  Mr. Price purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Price out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis in this case will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Price, so Mr. Price purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Price selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Price recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Price would not have purchased the vehicle or would have paid less for it.  Mr. Price and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles once the repair to the emissions system is made.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Price or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

39.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

#### b. Garner Rickman

40.     Plaintiff Garner Rickman (for the purpose of this paragraph, "Plaintiff") is an individual residing in Hayden, Colorado.  On or around May 20, 2015, Mr. Rickman purchased a used 2012 BMW X5 Diesel from Schomp BMW, an authorized BMW dealer in Highlands Ranch, Colorado.  Mr. Rickman paid approximately $43,000 for the vehicle, and paid a diesel premium

of at least $1,500.  Mr. Rickman purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Rickman out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the time of expert disclosures.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Rickman, so Mr. Rickman purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Rickman selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Rickman recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from BMW's authorized dealer touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Rickman would not have purchased the vehicle or would have paid less for it, by at least $1,500.  Mr. Rickman and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Rickman or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

40.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

**5.     Georgia Plaintiffs**

**a.     Darshan Patel**

41.     Plaintiff Darshan Patel (for the purpose of this paragraph, "Plaintiff") is an individual residing in Suwanee, Georgia.  On or around April 2013, Mr. Patel purchased a new 2013 BMW X5 Diesel from Athens BMW, located in Athens, Georgia.  Mr. Patel paid approximately $62,000 for the vehicle and paid a diesel premium of at least $1500.  Mr. Patel purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.   BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Patel out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the

23

time of expert disclosures.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Patel so Mr. Patel purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Patel selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Patel recalls that before he purchased the vehicle, he reviewed representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Patel would not have purchased the vehicle or would have paid less for it.  Mr. Patel and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Patel or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase

41.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### b.    Charles Campbell

42.    Plaintiffs Charles Campbell (for the purpose of this paragraph, "Plaintiff") is individual residing in Iva, South Carolina.  On or around June 2014, Charles Campbell purchased a used 2011 BMW X5 Diesel from Atlanta Luxury Motors, located in Atlanta, Georgia.  Charles Campbell paid approximately $36,000 for the vehicle and paid a diesel premium of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000.  Unknown to Plaintiffs at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment at the time of purchase.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Campbell so Mr. Campbell purchased his vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA- certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Plaintiffs selected and ultimately purchased the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Plaintiffs recalls that before he purchased the vehicle, they reviewed representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the

vehicle or would have paid less for it.  Plaintiff and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Plaintiffs or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

42.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### c.    Dr. Alexander VanDamme

43.    Plaintiff Dr. Alexander VanDamme (for the purpose of this paragraph, "Plaintiff") is an individual residing in Pittsford, New York.  On or around June 7, 2016, Dr. VanDamme purchased a used 2013 BMW X5 Diesel from Executive Auto, located in Loganville, Georgia.  Dr. VanDamme paid approximately $27,737 for the vehicle and paid a diesel premium of at least $1500.  Dr. VanDamme purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Dr. VanDamme out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Dr. VanDamme so Dr. VanDamme purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Dr. VanDamme selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Dr. VanDamme recalls that before he purchased the vehicle, he reviewed representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Dr. VanDamme would not have purchased the vehicle or would have paid less for it.  Dr. VanDamme and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Dr. VanDamme or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

43.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### 6.    Illinois Plaintiffs

#### a.    Christine Griffith

44.    Plaintiff Christine Griffith (for the purpose of this paragraph, "Plaintiff") is an individual residing in Chicago, Illinois.  On or around April 20, 2017, Ms. Griffith purchased a used 2011 BMW X5 Diesel from Luxury Automaxx in Chicago, Illinois.  Ms. Griffith paid approximately $19,500 for the vehicle and paid a diesel premium of at least $1500.  Ms. Griffith purchased and still owns this vehicle.  Unknown to her at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Ms. Griffith out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Ms. Griffith, so Ms. Griffith purchased her vehicle on the reasonable but mistaken belief that her vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Ms. Griffith selected and ultimately purchased her vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Ms. Griffith recalls that before she purchased the vehicle, she reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Ms. Griffith would not have purchased the vehicle or would have paid less for it.  Ms. Griffith and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Ms. Griffith or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

44.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

#### b.    Gene Quint

45.    Plaintiff Charles Rogers (for the purpose of this paragraph, "Plaintiff") is an individual residing in Deatsville, Alabama.  On or around June 17, 2016, Mr. Rogers purchased a

used 2013 BMW X5 Diesel from CarMax of Birmingham in Birmingham, Alabama. Mr. Rogers paid approximately $42,333 for the vehicle and paid a diesel premium of at least $1500. Mr. Rogers purchased and still owns this vehicle. Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Rogers out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500. BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Rogers, so Mr. Rogers purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Mr. Rogers selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW. Mr. Rogers recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine. Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Rogers would not have purchased the vehicle or would have paid less for it. Mr. Rogers and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase. Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Rogers or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

45.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

**7.    Indiana Plaintiff**

**a.    Jacob Biggins**

46.   Plaintiff Jacob Biggins (for the purpose of this paragraph, "Plaintiff") is an individual residing in Fort Wayne, Indiana. On or around January 31, 2017, Mr. Biggins purchased a used 2009 BMW 335d from Unlimited Motors in Indianapolis, Indiana. Mr. Biggins paid approximately $15,000 for the vehicle and paid a diesel premium of at least $1500. Mr. Biggins purchased and still owns this vehicle. Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Biggins out-of-pocket loss in the form of overpayment at the time of purchase of at

least $1500. BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Biggins, so Mr. Biggins purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Mr. Biggins selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW. Mr. Biggins recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine. Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Biggins would not have purchased the vehicle or would have paid less for it. Mr. Biggins and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase. Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Biggins or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

46.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### 8.     Kentucky Plaintiff

#### a.     Razmir Avic

47.     Plaintiff Razmir Avic (for the purpose of this paragraph, "Plaintiff") is an individual residing in St. Louis, Missouri. On or around May 11, 2016, Mr. Avic purchased a used 2011 BMW X5 Diesel from Volvo of Louisville in Louisville, Kentucky. Mr. Avic paid approximately $23,000 for the vehicle and paid a diesel premium of at least $1500. Mr. Avic purchased and still owns this vehicle. Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Avic out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500. BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Avic, so Mr. Avic purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Mr. Avic selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW. Mr. Avic recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.

Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Avic would not have purchased the vehicle or would have paid less for it.  Mr. Avic and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Avic or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

47.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

**9.     Louisiana Plaintiff**

**a.     Tarrah Pee**

48.     Plaintiff Tarrah Pee (for the purpose of this paragraph, "Plaintiff") is an individual residing in Lake Charles, Louisiana.  On or around March 2017, Ms. Pee purchased a used 2011 BMW X5 Diesel from Herrin-Gear Toyota, 6100 N Frontage Rd # I-55, Jackson, MS 39211.  Ms. Pee paid approximately $36,760.64 for the vehicle and paid a diesel premium of at least $1500.  Ms. Pee purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Ms. Pee out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Ms. Pee, so Ms. Pee purchased her vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Ms. Pee selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Ms. Pee recalls that before she purchased the vehicle, she reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Ms. Pee would not have purchased the vehicle or would have paid less for it.  Ms. Pee and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed

Ms. Pee or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

48.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

**10.    Maryland Plaintiff**

**a.    Ziwen Li**

Plaintiff Ziwen Li (for the purpose of this paragraph, "Plaintiff") is an individual residing in Ocala, Florida. On or around April 27, 2015, Mr. Li purchased a used 2011 BMW X5 Diesel from Passport BMW, an authorized BMW dealer in Camp Springs, Maryland. Mr. Li paid approximately $27,000 for the vehicle and paid a diesel premium of at least $1500. Mr. Li purchased and still owns this vehicle. Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Li out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000. BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Li, so Mr. Li purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Mr. Li selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW. Mr. Li recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from BMW's authorized dealer touting the efficiency, fuel economy, and power and performance of the engine. Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Li would not have purchased the vehicle or would have paid less for it. Mr. Li and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase. Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Li or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

**Answer**: BMW AG avers that the FAC has not numbered the paragraph relating to Plaintiff Li. As its answer to that unnumbered paragraph, BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

11.     **Minnesota Plaintiff**

    a.     **Irving Cohen**

49.     Plaintiff Irving Cohen (for the purpose of this paragraph, "Plaintiff") is an individual residing in Eden Prairie, Minnesota.  On or around August 2013, Mr. Cohen purchased a 2013 BMW X5 Diesel from Auto Source, Inc., which at that time was located in Eden Prairie, Minnesota.  Mr. Cohen paid approximately $ 51,000 for the vehicle and paid a diesel premium of at least $1500.  Mr. Cohen purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Cohen out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the time of expert disclosures.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Cohen so Mr. Cohen purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Cohen selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Cohen recalls that before he purchased the vehicle, he reviewed representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Cohen would not have purchased the vehicle or would have paid less for it.  Mr. Cohen and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Cohen or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

49.     <u>**Answer**</u>:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

12.     **Mississippi Plaintiff**

    a.     **Angela Hughes**

50.     Plaintiff Angela Hughes (for the purpose of this paragraph, "Plaintiff") is an individual residing in Heidelberg, Mississippi.  On or around January 9, 2018, Ms. Hughes purchased a used 2012 BMW X5 35d from Specialty Auto in Gulf Coast, Mississippi.  Ms. Hughes

paid approximately $15,595.00 for the vehicle and paid a diesel premium of at least $1500.  Ms. Hughes purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Ms. Hughes out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Ms. Hughes, so Ms. Hughes purchased her vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Ms. Hughes selected and ultimately purchased her vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.   Ms. Hughes recalls that before she purchased the vehicle, she reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Ms. Hughes would not have purchased the vehicle or would have paid less for it.  Ms. Hughes and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 35d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Ms. Hughes or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

50.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### 13.    Montana Plaintiff

#### a.    Carlos Buendia

51.    Plaintiff Carlos Buendia (for the purpose of this paragraph, "Plaintiff") is an individual residing in Belgrade, Montana.  On or around November 2016, Mr. Buendia purchased a used 2010 BMW X5 Diesel from Billion Auto Group, in Bozeman, Montana.  Mr. Buendia paid approximately $17,500 for the vehicle and paid a diesel premium of at least $1500.  Mr. Buendia purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.    BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Buendia out-of-pocket loss in the form of overpayment at the time of purchase of at

least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Buendia so Mr. Buendia purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Buendia selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.   Mr. Buendia recalls that before he purchased the vehicle, he reviewed representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Buendia would not have purchased the vehicle or would have paid less for it.   Mr. Buendia and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Buendia or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

51.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

**14.**   **New Jersey Plaintiffs**

**a.**   **William Berbaum**

52.    Plaintiff William Berbaum (for the purpose of this paragraph, "Plaintiff") is an individual residing in Bloomfield, New Jersey.  On or around May 14, 2013, Mr. Berbaum purchased a used 2011 BMW 335d from Crown BMW in Greensboro, North Carolina. Mr. Berbaum paid approximately $35,000 for the vehicle and paid a diesel premium of at least $1500.  On or around May 6, 2016, Mr. Berbaum purchased a used 2010 BMW X5 Diesel from John Johnson Dodge LLC in Hackettstown, New Jersey.  Mr. Berbaum paid approximately $15,000 for the vehicle and paid a diesel premium of at least $1500.  Mr. Berbaum purchased and still owns these vehicles.  Unknown to him at the time these vehicles were purchased, the vehicles only achieved their promised fuel economy and performance because they were equipped with emissions systems that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing these vehicles without proper emission controls has caused Mr. Berbaum out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500 for each vehicle, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Berbaum, so Mr. Berbaum purchased his vehicles on the reasonable but mistaken belief that his vehicles were "clean diesels" and/or "low emission diesels," that they complied with U.S.

emissions standards, they were properly EPA-certified, and would retain all of their promised fuel economy and performance throughout their useful lives.  Mr. Berbaum selected and ultimately purchased his vehicles, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Berbaum recalls that before he purchased the vehicles, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Berbaum would not have purchased the vehicles or would have paid less for them. Mr. Berbaum and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premiums for the BMW 335d engine and the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engines, out-of-pocket losses by overpaying for the vehicles at the time of purchase. Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Berbaum or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

52.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### b.    Charles Chapman

53.    Plaintiff Charles Chapman (for the purpose of this paragraph, "Plaintiff") is an individual residing in Glen Rock, New Jersey.  On or around January 21, 2011, Mr. Chapman purchased a used 2010 BMW X5 Diesel from BMW of Roxbury, an authorized BMW dealer in Kenvil, New Jersey.  Mr. Chapman paid approximately $56,657 for the vehicle and paid a diesel premium of at least $1500.  Mr. Chapman purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Chapman out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the time of expert disclosures.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Chapman, so Mr. Chapman purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Chapman selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  As a graduate of the School of Environmental Science at Ramapo College of NJ (BS Human Ecology - 1982), the "clean diesel" technologies BMW promoted in their marketing played a significant role in Mr. Chapman's decision to purchase the BMW X5 Diesel.  Mr. Chapman recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Mr. Chapman selected his vehicle

explicitly because BMW's marketing promoted their "clean diesel" and Blue Performance Technology as "using Diesel Exhaust Fluid and a diesel particulates filter to turn nitric oxides into environmentally compatible nitrogen and water vapor." BMW also clearly promoted this engine as having the power of a V8 with efficiency of a 4-cylinder engine. Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Chapman would not have purchased the vehicle or would have paid less for it. Mr. Chapman and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW X5 diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase. Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Chapman or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

53.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### 15.     New York Plaintiffs

### a.     Mark Messina

54.     Plaintiff Mark Messina (for the purpose of this paragraph, "Plaintiff") is an individual residing in Carlsbad, California. On or around August 18, 2014, Mr. Messina purchased a used 2011 BMW 335d from a private seller in Staten Island, New York. Mr. Messina paid approximately $15,000 for the vehicle and paid a diesel premium of at least $1500. Mr. Messina purchased and still owns this vehicle. Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Messina out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500. BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Messina, so Mr. Messina purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Mr. Messina selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW. Mr. Messina recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website touting the efficiency, fuel economy, and power and performance of the engine. Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Messina would not have purchased the vehicle or would have paid less for it. Mr. Messina and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not

35

limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase. Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Messina or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

54.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### b.   Jesse White

55.   Plaintiff Jesse White (for the purpose of this paragraph, "Plaintiff") is an individual residing in White House, Tennessee.  On or around September 7, 2016, Mr. White purchased a used 2011 BMW 335d from Gault Auto Sport in Endwell, New York.  Mr. White paid approximately $20,000 for the vehicle and paid a diesel premium of at least $1500.  Mr. White purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.   BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. White out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. White, so Mr. White purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. White selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. White recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. White would not have purchased the vehicle or would have paid less for it.  Mr. White and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase. Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. White or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

55.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

16.     **North Carolina Plaintiffs**

a.     **Seth Davis**

56.     Plaintiff Seth Davis (for the purpose of this paragraph, "Plaintiff") is an individual residing in Lexington, North Carolina.  On or around March 12, 2017, Mr. Davis purchased a used 2011 BMW 335d from Webber Automotive in Lexington, North Carolina.  Mr. Davis paid approximately $16,000 for the vehicle and paid a diesel premium of at least $1500.  Mr. Davis purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Davis out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Davis, so Mr. Davis purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Davis selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Davis recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Davis would not have purchased the vehicle or would have paid less for it.  Mr. Davis and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Davis or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

56.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

b.     **Miguel Fragoso**

57.     Plaintiff Miguel Fragoso (for the purpose of this paragraph, "Plaintiff") is an individual residing in Apex, North Carolina.  On or around February 4, 2013, Mr. Fragoso purchased a used 2010 BMW X5 Diesel from Leith BMW in Raleigh, North Carolina.  Mr. Fragoso paid approximately $45,249 for the vehicle and paid a diesel premium of at least $1500.  Mr. Fragoso sold this vehicle in May 2014.  On or around September 29, 2017, Mr. Fragoso purchased a used 2014 BMW 535d from Carvana.  Mr. Fragoso paid approximately $31,278 for the vehicle and paid a diesel premium of at least $1500.  Mr. Fragoso purchased and

still owns this vehicle.  Mr. Fragoso also purchased an extended warranty for the 2014 BMW 535d from Leith BMW for $4300.  Unknown to him at the time he purchased the 2010 BMW X5 Diesel and the 2014 BMW 535d, these vehicles only achieved the promised fuel economy and performance because they were equipped with emissions systems that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing these vehicles without proper emission controls has caused Mr. Fragoso out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500 for each vehicle.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Fragoso, so Mr. Fragoso purchased these vehicles on the reasonable but mistaken belief that they were "clean diesels" and/or "low emission diesels," they complied with U.S. emissions standards, were properly EPA-certified, and would retain all of their promised fuel economy and performance throughout their useful lives. Mr. Fragoso selected and ultimately purchased these vehicles, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Fragoso recalls that before he purchased the vehicles, he reviewed advertisements on BMW's website touting the efficiency, fuel economy, and power and performance of their engines.  Had BMW or Bosch disclosed this design or the fact that the vehicles actually emitted unlawfully high levels of pollutants, Mr. Fragoso would not have purchased the vehicles or would have paid less for them. Mr. Fragoso and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel and BMW 535d engines compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Fragoso or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

57.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### 17.     Ohio Plaintiffs

#### a.     Tahani Ibrahim

58.     Plaintiff Tahani Ibrahim (for the purpose of this paragraph, "Plaintiff") is an individual residing in Rocky River, Ohio.  On or around May 2016, Ms. Ibrahim purchased a used 2010 BMW X5 35d from Nick Mayer Lincoln Mercury Inc. in Westlake, Ohio.  Ms. Ibrahim paid approximately $24,000.00 for the vehicle and paid a diesel premium of at least $1500.  Ms. Ibrahim purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Ms. Ibrahim out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess

of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Ms. Ibrahim, so Ms. Ibrahim purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Ms. Ibrahim selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Ms. Ibrahim recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Ms. Ibrahim would not have purchased the vehicle or would have paid less for it.  Ms. Ibrahim and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 35d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Ms. Ibrahim or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

58.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

#### b.    Ion Niculescu

59.    Plaintiff Ion Niculescu (for the purpose of this paragraph, "Plaintiff") is an individual residing in Parma Heights, Ohio.  On or around June 29, 2010, Mr. Niculescu purchased a new 2011 BMW 335d from Ganley BMW, an authorized BMW dealer in Middleburg Heights, Ohio.  Mr. Niculescu paid approximately $55,400 for the vehicle and paid a diesel premium of at least $1500.  Mr. Niculescu purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Niculescu out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the time of expert disclosures.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Niculescu, so Mr. Niculescu purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Niculescu selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Niculescu recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the

dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Niculescu would not have purchased the vehicle or would have paid less for it.  Mr. Niculescu and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Niculescu or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

59.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### c.    Mark Smith

Plaintiff Mark Smith (for the purpose of this paragraph, "Plaintiff") is an individual residing in Columbus, Ohio.  On or around November 2013, Mr. Smith purchased a new 2012 BMW X5 35d from Dave Walter, Inc. (now known as BMW of Akron) in Akron, Ohio.  Mr. Smith paid approximately $49,500.00 for the vehicle and paid a diesel premium of at least $1500.  Mr. Smith purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Smith out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the time of expert disclosures.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Smith, so Mr. Smith purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Smith selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.   Mr. Smith recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Smith would not have purchased the vehicle or would have paid less for it.  Mr. Smith and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 35d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers,

or other representatives, or Bosch informed Mr. Smith or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

**Answer**:   BMW AG avers that the FAC has not numbered the paragraph relating to Plaintiff Smith.  As its answer to that unnumbered paragraph, BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

### 18.   Oregon Plaintiff

#### a.   Tom Hoffman

60.   Plaintiff Tom Hoffman (for the purpose of this paragraph, "Plaintiff") is an individual residing in Portland, Oregon.  On or around July 1, 2016, Mr. Hoffman purchased a used 2011 BMW 335d from Toyota of Portland in Portland, Oregon.   Mr. Hoffman paid approximately $18,500 for the vehicle and paid a diesel premium of at least $1500.  Mr. Hoffman purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.   BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Hoffman out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Hoffman, so Mr. Hoffman purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.   Mr. Hoffman selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.   Mr. Hoffman recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.   Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Hoffman would not have purchased the vehicle or would have paid less for it.   Mr. Hoffman and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Hoffman or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

60.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### 19.    Pennsylvania Plaintiff

#### a.    Gary Reising

61.    Plaintiff Gary Reising (for the purpose of this paragraph, "Plaintiff") is an individual residing in Chalfont, Pennsylvania.  On or around May 28, 2016, Mr. Reising purchased a used 2011 BMW 335d from Philly Auto in Philadelphia, Pennsylvania.  Mr. Reising paid approximately $26,000 for the vehicle and paid a diesel premium of at least $1500.  Mr. Reising purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Reising out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Reising, so Mr. Reising purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Reising selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Reising recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from BMW's authorized dealer touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Reising would not have purchased the vehicle or would have paid less for it.  Mr. Reising and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles once a repair to the emissions system is made.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Reising or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

61.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### 20. Tennessee Plaintiff

#### a. James Turner

62.     Plaintiff James Turner (for the purpose of this paragraph, "Plaintiff") is an individual residing in Franklin, Tennessee.  On or around December 2011, Mr. Turner purchased a new 2011 BMW 335d from Peoria BMW, in Peoria, Illinois.  Mr. Turner paid approximately $47,500 for the vehicle and paid a diesel premium of at least $1500.  Mr. Turner purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Turner out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the time of expert disclosures.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Turner, so Mr. Turner purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA- certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Turner selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Turner recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Turner would not have purchased the vehicle or would have paid less for it.  Mr. Turner and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Turner or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

62.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### 21. Texas Plaintiffs

#### a. Salomon Campos

63.     Plaintiff Salomon Campos (for the purpose of this paragraph, "Plaintiff") is an individual residing in Harlingen, Texas.  On or around March 2015 Mr. Campos purchased a certified pre-owned 2012 BMW X5 Diesel from BMW of Corpus Christi, located in Corpus

Christi, Texas.  Mr. Campos paid approximately $38,000 for the vehicle and paid a diesel premium of at least $1500.  Mr. Campos purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Campos out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the time of expert disclosures.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Campos so Mr. Campos purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Campos selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Campos recalls that before he purchased the vehicle, he reviewed representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Campos would not have purchased the vehicle or would have paid less for it.  Mr. Campos and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of- pocket losses by overpaying for the vehicles at the time of purchase.   Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Campos or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

63.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### b.    Brian Hembling

64.    Plaintiff Brian Hembling (for the purpose of this paragraph, "Plaintiff") is an individual residing in San Antonio, Texas.  On or around November 25, 2014, Mr. Hembling purchased a used 2011 BMW 335d from Bluebonnet Chrysler Dodge Ram in New Braunfels, Texas.  Mr. Hembling paid approximately $29,000.0 for the vehicle and paid a diesel premium of at least $1500.  Mr. Hembling purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Hembling out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the

inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Hembling, so Mr. Hembling purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.   Mr. Hembling selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.   Mr. Hembling recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.   Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Hembling would not have purchased the vehicle or would have paid less for it.   Mr. Hembling and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.   Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Hembling or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

64.   **Answer**:   BMW AG incorporates by reference the answer set forth in Paragraph 31 as if restated herein.

### c.   Dean Werner

65.   Plaintiff Dean Werner (for the purpose of this paragraph, "Plaintiff") is an individual residing in Panhandle, Texas.   On or around July 28, 2014, Mr. Werner purchased a 2011 BMW X5 Diesel from Momentum BMW, located in Houston, Texas.   Mr. Werner paid approximately $32,900 for the vehicle and paid a diesel premium of at least $1500.   Mr. Werner purchased and still owns this vehicle.   Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.   BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Werner out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000.   BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Werner so Mr. Werner purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.   Mr. Werner selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.   Mr. Werner recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.   Had BMW or Bosch disclosed this

design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Werner would not have purchased the vehicle or would have paid less for it.  Mr. Werner and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Werner or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

65.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### d.     Lukas Wildner

66.     Plaintiff Lukas Wildner (for the purpose of this paragraph, "Plaintiff") is an individual residing in Palos Hills, Illinois.  On or around April 2012, Mr. Wildner purchased a used 2011 BMW 335d from Insurance Auto Auctions Inc. in Austin, Texas.  Mr. Wildner paid approximately $27,000.00 for the vehicle and paid a diesel premium of at least $1500.  Mr. Wildner purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Wildner out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Wildner, so Mr. Wildner purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Wildner selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Wildner recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Wildner would not have purchased the vehicle or would have paid less for it.  Mr. Wildner and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Wildner or Class members of the existence of the

unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

66.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

**22.    Virginia Plaintiff**

**a.    Alfredo Arias**

67.    Plaintiff Alfredo Arias (for the purpose of this paragraph, "Plaintiff") is an individual residing in Midlothian, Virginia.  On or around May 1, 2015, Mr. Arias purchased a certified pre-owned 2012 BMW X5 35d from Richmond BMW in Midlothian, Virginia. Mr. Arias paid approximately $38,000.00 for the vehicle and paid a diesel premium of at least $1500.  Mr. Arias purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants, such as NOx.  BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Arias out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the time of expert disclosures.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Arias, so Mr. Arias purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Arias selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Arias recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Arias would not have purchased the vehicle or would have paid less for it. Mr. Arias and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 35d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Arias or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

67.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

### 23.    Washington Plaintiffs

#### a.    Kyle Kern

68.    Plaintiff Kyle Kern (for the purpose of this paragraph, "Plaintiff") is an individual residing in Bonney Lake, Washington.  On or around March 2016, Mr. Kern purchased a certified pre-owned 2012 BMW X5 Diesel from Definitive Motors, located in Bellevue, Washington.  Mr. Kern paid approximately $35,000 for the vehicle and paid a diesel premium of at least $1500.  Mr. Kern purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx.   BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Kern out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the time of expert disclosures.  BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Kern so Mr. Kern purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Mr. Kern selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Mr. Kern recalls that before he purchased the vehicle, he reviewed representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine. Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Kern would not have purchased the vehicle or would have paid less for it.  Mr. Kern and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Kern or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

68.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

#### b.    John Saviano

69.    Plaintiff John Saviano (for the purpose of this paragraph, "Plaintiff") is an individual residing in Hermon, Maine.  On or around June 30, 2016, Mr. Saviano purchased a used 2011 BMW 335d from Roy Robinson Chevrolet in Marysville, Washington.  Mr. Saviano paid approximately $21,685.00 for the vehicle and paid a diesel premium of at least $1500.  Mr. Saviano purchased and still owns this vehicle.  Unknown to him at the time the vehicle was purchased, the vehicle only achieved its promised fuel economy and performance because it was equipped with

an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Mr. Saviano out-of-pocket loss in the form of overpayment at the time of purchase of at least $1500, and based upon other diesel cases expert analysis will show overpayment in excess of $5,000. BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Mr. Saviano, so Mr. Saviano purchased his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Mr. Saviano selected and ultimately purchased his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW. Mr. Saviano recalls that before he purchased the vehicle, he reviewed advertisements on BMW's website and representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine. Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Mr. Saviano would not have purchased the vehicle or would have paid less for it. Mr. Saviano and each Class member has suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW 335d engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase. Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Mr. Saviano or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase.

69.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

24.   **Wisconsin Plaintiffs**

a.   **Erica Olson and Eric Stenglein**

70.   Plaintiffs Erica Olson and Eric Stenglein (for the purpose of this paragraph, "Plaintiffs") are individuals residing in DeForest, Wisconsin. On or around August 2013, Ms. Olson and Mr. Stenglein jointly leased a 2013 BMW X5 Diesel from Zimbrick BMW, located in Madison, Wisconsin. Unknown to Plaintiffs at the time the vehicle was leased, the vehicle only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. BMW's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiffs out-of-pocket loss in the form of overpayment during the time of the lease. BMW and Bosch knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiffs so Plaintiffs leased the vehicle on the reasonable but mistaken belief that the vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its

promised fuel economy and performance throughout its useful life.  Plaintiffs selected and ultimately leased the vehicle, in part, because of the diesel system, as represented through advertisements and representations made by BMW.  Plaintiffs recall that before they leased the vehicle, they reviewed representations from the dealership touting the efficiency, fuel economy, and power and performance of the engine.  Had BMW or Bosch disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiffs would not have leased the vehicle or would have paid less for it, and based upon analysis of similar cases overpayment damages will exceed $10,000 at the time of expert disclosures.  Plaintiffs and each Class member have suffered an ascertainable loss as a result of BMW's omissions and/or misrepresentations and Defendants' operation of a RICO enterprise associated with the BMW diesel engine system, including but not limited to a high premium for the BMW X5 Diesel engine compared to what they would have paid for a gas-powered engine and out-of-pocket losses by overpaying for the vehicles at the time of purchase or lease.  Neither BMW nor any of its agents, dealers, or other representatives, or Bosch informed Plaintiffs or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the Polluting Vehicles prior to purchase or lease.

70.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 31

as if restated herein.

## B.   Defendants

### 1.   BMW North America LLC ("BMW USA")

71.   BMW USA is a corporation doing business in all 50 states and the District of Columbia, and is organized under the laws of the State of Delaware, with its principal place of business in Woodcliff Lake, New Jersey.

71.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 71

of BMW of North America, LLC's ("BMW NA") Answer as if restated herein.  Dkt. No. 110.

72.   At all times relevant to this action, BMW USA manufactured, sold, and warranted the Polluting BMW USA Vehicles throughout the United States.  BMW USA and BMW AG and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the diesel engine systems on the Polluting BMW Vehicles.  BMW USA also developed and disseminated the owner's manuals, supplements, warranty booklets, advertisements, and other promotional materials relating to the Polluting BMW Vehicles.  BMW USA, with the consent of BMW AG, provided these to its authorized dealers for the express purpose of having these dealers pass such materials to potential purchasers at the point of sale.  BMW USA and BMW AG also created, designed, and disseminated information about the quality of the Polluting BMW Vehicles to various agents of various publications for the express purpose of having that information reach potential consumers.

72.   **Answer**:  Paragraph 72 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG admits that it

designed the emissions control systems in the BMW Vehicles and that it manufactured the BMW

335d vehicles.  BMW AG incorporates by reference the answer set forth in Paragraph 72 of BMW

NA's Answer as if restated herein.  Dkt. No. 110.  BMW AG further avers that BMW NA is solely

responsible for selling or otherwise distributing new BMW Vehicles in the United States and that

product statements regarding the BMW Vehicles that are specific to the United States are made or

handled by BMW NA.  BMW AG denies all remaining allegations in Paragraph 72.

### 2.   Bayerische Motoren Werke Aktiengessellschaft

73.   Bayerische Motoren Werke Aktiengessellschaft (BMW AG), based in Munich,
Germany, is the parent company of the BMW Group.  BMW AG is a German company with its
principal place of business at Petuelring 130, 80809 Munich, Germany.  The general purpose of
BMW AG is the development, production and sale of engines, engine-equipped vehicles, related
accessories and products of the machinery and metal-working industry as well as the rendering of
services related to the aforementioned items.  The BMW Group is sub-divided into the
Automotive, Motorcycles, Financial Services and Other Entities segments (the latter primarily
comprising holding companies and Group financing companies).  The BMW Group operates on a
global scale and is represented in more than 150 countries worldwide.  BMW AG supervised the
manufacturing and advertisements of BMW polluting vehicles in the USA.

73.   **Answer**:  Paragraph 73 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG admits that it is a

corporation organized and existing under the laws of the Federal Republic of Germany, with its

principal place of business and corporate headquarters at Petuelring 130, 80809 Munich, Germany.

BMW AG denies all remaining allegations in Paragraph 73.

74.   From at least 2005 until 2015, Robert Bosch GmbH, Robert Bosch LLC, and
currently unnamed Bosch employees (together, "Bosch") were knowing and active participants in
the creation, development, marketing, and sale of illegal defeat devices specifically designed to
evade U.S. emissions requirements in vehicles sold solely in the United States and Europe.  These
vehicles include the BMW vehicles in this case and the Dodge Ram 1500 EcoDiesel and Jeep
Grand Cherokee EcoDiesel, as well as models made by Volkswagen, Audi, Porsche, General
Motors, and Mercedes.

74.   **Answer**:  Paragraph 74 of the FAC relates largely to other persons or entities, and as such, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  To the extent a response is required, BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  BMW AG also denies the allegations in Paragraph 74 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

75.   The following is a list, excluding the Polluting BMW Vehicles in this case, of all diesel models in the United States with Bosch-supplied software whose emissions exceed federal and California emission standards and whose emissions are beyond what a reasonable consumer would expect from vehicles marketed as "clean" or "low emission":



75.    **Answer**:  Paragraph 75 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG also denies the allegations in Paragraph 75 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

76.    The Bosch entities participated not just in the development of the defeat device, but also in the scheme to prevent U.S. regulators from uncovering the device's true functionality.  Moreover, each Bosch entities' participation was not limited to engineering the defeat device (in a collaboration described as unusually close).  Rather, Bosch GmbH and Bosch LLC marketed "clean diesel" in the United States and communicated itself or through trade organizations, with the public and U.S. regulators about the benefits of "clean diesel," another highly unusual activity for a mere supplier.  This promotional activity helped create the demand for diesel vehicles and the premium sum vehicles commanded.  These marketing efforts, taken together with evidence of each Bosch entities' actual knowledge that its software could be operated as a defeat device and participation in concealing the true functionality of the device from U.S. regulators, can be interpreted only one way under U.S. law:  each Bosch entity was a knowing and active participant in a massive conspiracy with BMW, Volkswagen, Audi, Mercedes, Ford, General Motors, and others to defraud U.S. consumers, regulators, and diesel car purchasers or lessees.  Bosch had a powerful motive in doing so.  With new environmental regulations effective in 2009, Bosch saw the enormous potential of a Clean Diesel movement in the United States, and needed a tool to motivate as many manufacturers as possible to use Bosch as a supplier.  Bosch was hugely successful.  Bosch GmbH and Bosch LLC have enabled approximately two million polluting diesel vehicles to be on the road in the United States polluting at levels that exceed emissions standards and which use software that manipulate emission controls in a manner not expected by a reasonable consumer, and as many as 20 million cars in Europe.  Bosch's complicity has contributed to respiratory illness and death.

76.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG also denies the allegations in Paragraph 76 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

77.    Robert Bosch GmbH is a German multinational engineering and electronics company headquartered in Gerlingen, Germany.  Robert Bosch GmbH is the parent company of Robert Bosch LLC.  Robert Bosch GmbH, directly and/or through its North American subsidiary, Robert Bosch LLC, at all material times, designed, manufactured, and supplied elements of the defeat device to BMW for use in the Polluting BMW Vehicles.  Bosch GmbH is subject to the personal jurisdiction of this Court because it has availed itself of the laws of the United States through its management and control over Bosch LLC and over the design, development, manufacture, distribution, testing, and sale of hundreds of thousands of the defeat devices installed in the Polluting BMW Vehicles sold or leased in the United States.  Employees of Bosch GmbH and Bosch LLC have collaborated in the emissions scheme with BMW in this judicial district and have been present in this district.

77.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

78.    Robert Bosch LLC is a Delaware limited liability company with its principal place of business located at 38000 Hills Tech Drive, Farmington Hills, Michigan.  Robert Bosch LLC is a wholly owned subsidiary of Robert Bosch GmbH.  Robert Bosch LLC, directly and/or in conjunction with its parent Robert Bosch GmbH, at all material times, designed, manufactured, and supplied elements of the defeat device to BMW for use in the Polluting BMW Vehicles.

78.    **Answer**:  Paragraph 78 of the FAC states legal conclusions and argument and relates to other persons or entities, to which BMW AG need not respond.

79.    Both Bosch GmbH and Bosch LLC (collectively, "Bosch") operate under the umbrella of the Bosch Group, which encompasses some 340 subsidiaries and companies.  The "Bosch Group" is divided into four business sectors:  Mobility Solutions (formerly Automotive Technology), Industrial Technology, Consumer Goods, and Energy and Building Technology.  The Mobility Solutions sector, which supplies parts to the automotive industry, and its Diesel Systems division, which develops, manufacturers and applies diesel systems, are particularly at issue here and include the relevant individuals at both Bosch GmbH and Bosch LLC.  Bosch's sectors and divisions are grouped not by location, but by subject matter.  Mobility Solutions includes the individuals involved in the RICO enterprise and conspiracy at both Bosch GmbH and Bosch LLC.  Some individuals worked at both Bosch LLC and Bosch GmbH during the course of the RICO conspiracy.  The acts of individuals described in this Complaint have been associated with Bosch GmbH and Bosch LLC whenever possible.  Regardless of whether an individual works for Bosch LLC in the United States or Bosch GmbH in Germany, the individuals often hold themselves out as working for "Bosch."  This collective identity is captured by Bosch's mission statement:  "We are Bosch," a unifying principle that links each entity and person within the Bosch Group.[2]  Bosch documents and press releases often refer to the source of the document as "Bosch"

---

[2] Bosch 2014 Annual Report, available at
http://www.bosch.com/en/com/bosch_group/bosch_figures/publications/archive/archive-cg12.php.

without identifying any particular Bosch entity.  Thus, the identity of which Bosch defendant was the author of such documents and press releases cannot be ascertained with certainty until Bosch GmbH and Bosch LLC respond to discovery requests in this matter.

79.     **Answer**:  Paragraph 79 of the FAC relates exclusively to other persons or entities,

states legal conclusions and argument, and makes allegations and addresses claims dismissed by

the Court's June 25, 2020 Order, and reconsideration of that dismissal was denied by Order dated

February 2, 2021.  Accordingly, BMW AG need not respond.

80.     Bosch holds itself out to the world as one entity:  "the Bosch Group."  The Diesel Systems division, which developed the EDC-17, is described as part of the Bosch Group.  In the case of the Mobility Solutions sector, which oversees the Diesel Systems Group, the Bosch Group competes with other large automotive suppliers.[3]

80.     **Answer**:  Paragraph 80 of the FAC relates exclusively to persons or entities other

than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and

of neither legal nor factual consequence in this action.

81.     The Bosch publication *Bosch in North America* represents that "Bosch supplies . . . clean-diesel fuel technology for cars and trucks."  Throughout the document describing its North American operations, the company refers to itself as "Bosch" or "the Bosch Group."[4]

81.     **Answer**:  Paragraph 81 of the FAC relates exclusively to persons or entities other

than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and

of neither legal nor factual consequence in this action.

82.     The *Bosch in North America* document proclaims that Automotive Technology is "Bosch's largest business sector in North America."  In this publication, Bosch never describes the actions of any separate Bosch legal entity, like Bosch LLC, when describing its business, but always holds itself out as "the Bosch Group."[5]

---

[3] Bosch's 2016 Annual Report at 23, available at
https://assets.bosch.com/media/global/bosch_group/our_figures/pdf/bosch-annual-report-2016.pdf.

[4] *Bosch in North America* at 2 (May 2007), available at
http://www.bosch.us/content/language1/downloads/BINA07.pdf.

[5] *Id.* at 5.

82.   **Answer**:  Paragraph 82 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

83.   German authorities are now investigating Bosch GmbH and the role in the emissions scandal and are focusing on certain Bosch employees:[6]

> **Three Bosch Managers Targeted as German Diesel Probe Expands**
>
> A German probe into whether Robert Bosch GmbH helped Volkswagen AG cheat on emissions tests intensified as Stuttgart prosecutors said they were focusing on three managers at the car-parts maker.
>
> While Stuttgart prosecutors didn't identify the employees, the step indicates that investigators may have found specific evidence in the probe.  Previously, prosecutors have said they were looking into the role "unidentified" Bosch employees may have played in providing software that was used to cheat on emission tests.
>
> "We have opened a probe against all three on suspicions they aided fraud in connection to possible manipulation in emissions treatments in VW cars," Jan Holzner, a spokesman for the agency, said in an emailed statement.  "All of them are managers with the highest in middle management."
>
> Bosch, which is also being investigated by the U.S. Department of Justice, has been caught up in the VW diesel scandal that emerged in 2015 over allegations its employees may have helped rig software that helped the carmaker to cheat emission tests.  Earlier this year, Stuttgart prosecutors opened a similar probe into Bosch's role in connection with emission tests of Daimler cars.
>
> A spokesman for Bosch said that while he can't comment on individual employees, the company 'takes the overall allegations in diesel cases seriously and has been cooperating fully from the beginning of the probes."
>
> The Stuttgart probe is running parallel to the central criminal investigation in Braunschweig, closer to VW's headquarters.  That

---

[6] *Three Bosch Managers Targeted as German Diesel Probe Expands*, Bloomberg (June 29, 2007), https://www.bloomberg.com/news/articles/2017-06-29/three-bosch-managers-targeted-as-german-diesel-probe-expands.

investigation is targeting nearly 40 people on fraud allegations related to diesel-emission software, including former VW Chief Executive Officer Martin Winterkorn.

Prosecutors' interest extends to multiple units in the VW family -- including luxury brands Audi and Porsche.  In addition, Stuttgart prosecutors are also reviewing a third case related to Bosch's cooperation with Fiat Chrysler Automobiles NV on software for diesel engines.

83. **Answer**:  Paragraph 83 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG also denies the allegations in Paragraph 83 insofar as those allegations refer to a news article and refers to the original source materials for a complete and accurate statement of their contents and context.

84. As reported by Bloomberg on September 16, 2017, U.S. prosecutors are examining Bosch's role in supplying its EDC-17 to manufacturers other than Bosch:

U.S. prosecutors are investigating whether Germany's Robert Bosch GmbH, which provided software to Volkswagen AG, conspired with the automaker to engineer diesel cars that would cheat U.S. emissions testing, according to two people familiar with the matter.

Among the questions the Justice Department is asking in the criminal probe, one of them said, is whether automakers in addition to VW used Bosch software to skirt environmental standards.  Bosch, which is also under US. Civil probe and German inquiry, is cooperating in investigations and can't comment on them, said spokesman Rene Ziegler.

The line of inquiry broadens what is already the costliest scandal in US. automaking history.  Wolfsburg-based VW faces an industry-record $16.5 billion, and counting, in criminal and civil litigation fines after admitting last year that its diesel cars were outfitted with a "defeat device" that lowered emissions to legal levels only when it detected the vehicle was being tested.

More than a half dozen big manufacturers sell diesel-powered vehicles in the U.S.  The people familiar with the matter declined to say whether specific makers are under scrutiny.

84.     **Answer**:  Paragraph 84 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG also denies the allegations in Paragraph 84 insofar as those allegations refer to a news article and refers to the original source materials for a complete and accurate statement of their contents and context.

85.     Recently, researchers from Rohr-Universität in Bochum, Germany, and University of California-San Diego uncovered Bosch's role in connection with the manipulation of emission controls in certain Volkswagen and FCA vehicles.  The researchers found no evidence that Volkswagen and FCA wrote the code that allowed the operation of defeat devices.  All the code they analyzed was found in documents copyrighted by Robert Bosch GmbH.  These researchers found that in the "function sheets" were copyrighted by Robert Bosch GmbH, the code to cheat the emissions test was labeled as modifying the "acoustic condition" of the engine, a label that helped the cheat fly under the radar.  Given that BMW vehicles have a Bosch EDC-17, as did the cheating Volkswagen, General Motors, Mercedes, Ford, and FCA vehicles, and given testing by Plaintiffs' experts described below that reveals defeat devices in BMW vehicles, it is plausible to allege that Bosch was a participant in the scheme to hide the true emissions of BMW Polluting Vehicles, and supplied a similar "function sheet" to BMW to enable a similar emission deception.

85.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

## V.     FACTUAL ALLEGATIONS

**A.     The environmental challenges posed by diesel engines and the U.S. regulatory response thereto**

86.     The U.S. government, through the EPA, has passed and enforced laws designed to protect U.S. citizens from pollution and, in particular, certain chemicals and agents known to cause disease in humans.  Automobile manufacturers must abide by these laws and must adhere to EPA rules and regulations.

86.     **Answer**:  Paragraph 86 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG admits that automobile manufacturers are subject to various laws and regulations in the United States.  BMW

AG denies all remaining allegations in Paragraph 86. BMW AG also denies the allegations in Paragraph 86 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

87.     The Clean Air Act has strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity.

87.     **Answer**: Paragraph 87 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG admits that automobile manufacturers are subject to various laws and regulations in the United States, including with respect to the requirement that certain vehicle model types sold in the United States must obtain Certificates of Conformity from the EPA prior to lawful sale. BMW AG denies all remaining allegations in Paragraph 87. BMW AG also denies the allegations in Paragraph 87 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

88.     There is a very good reason that these laws and regulations exist, particularly in regards to vehicles with diesel engines: in 2012, the World Health Organization declared diesel vehicle emissions to be carcinogenic and about as dangerous as asbestos.

88.     **Answer**: Paragraph 88 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 88 insofar as those allegations refer to a statement by the World Health Organization and refers to the original source materials for a complete and accurate statement of their contents and context.

89.     Diesel engines pose a particularly difficult challenge to the environment because they have an inherent trade-off between power, fuel efficiency, and NOx emissions—the greater the power and fuel efficiency, the dirtier and more harmful the emissions.

89.     **Answer**: BMW AG denies the allegations in Paragraph 89.

90.     Instead of using a spark plug to combust highly refined fuel with short hydrocarbon chains, as gasoline engines do, diesel engines compress a mist of liquid fuel and air to very high temperatures and pressures, which causes the diesel to spontaneously combust.  This causes a more powerful compression of the pistons, which produces greater engine torque—*i.e.*, more power.

90.     **Answer**: BMW AG admits that gasoline engines use spark plugs to combust fuel, while diesel engines use pressure to combust fuel.  BMW AG also admits that diesel engines sometimes produce greater engine torque than gasoline vehicles.  BMW AG denies all remaining allegations in Paragraph 90.

91.     The diesel engine is able to do this both because it operates at a higher compression ratio than a gasoline engine and because diesel fuel contains more energy than gasoline.

91.     **Answer**:  BMW AG admits that diesel engines sometimes have a higher compression ratio than other types of engines.  BMW AG also admits that diesel fuel often contains more energy than other types of fuel.  BMW AG denies all remaining allegations in Paragraph 91.

92.     But this greater energy and fuel efficiency comes at a cost:  diesel produces dirtier and more dangerous emissions.  One byproduct of diesel combustion is a combination of nitric oxide and nitrogen dioxide, collectively called NOx, compounds that form at high temperature in the cylinder during combustion.

92.     **Answer**: BMW AG admits that one byproduct of diesel, gasoline combustion is NOx, avers that diesel combustion also produces lower levels of other byproducts (including CO2) than gasoline combustion, and therefore denies the accuracy of the blanket statement that diesel engines are associated necessarily with "dirtier and more dangerous emissions."  BMW AG denies all remaining allegations in Paragraph 92.

93.     NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone.  Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illnesses serious enough to send people to the hospital.  Ozone and particulate matter exposure have been associated

with premature death due to respiratory-related or cardiovascular-related effects.  Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.  As a ground level pollutant, NO2, a common byproduct of NOx reduction systems using an oxidation catalyst, is highly toxic in comparison to nitric oxide (NO).  If overall NOx levels are not sufficiently controlled, then concentrations of NO2 levels at ground level can be quite high, where they have adverse acute health effects.

93.     **Answer**:  BMW AG admits that NOx might be a byproduct of diesel combustion,

which can interact with volatile compounds to form ozone under certain circumstances.  BMW

AG also admits that NOx can be harmful under certain circumstances at certain levels.  BMW AG

denies all remaining allegations in Paragraph 93.

94.     Though more efficient, diesel engines come with their own set of challenges, as emissions from diesel engines can include higher levels of NOx and particulate matter (PM) or soot than emissions from gasoline engines due to the differences in fuel combustion and how the resulting emissions are treated following combustion.  NOx emissions can be reduced through exhaust gas recirculation (EGR), whereby exhaust gases are routed back into the intake of the engine and mixed with fresh incoming air.  Exhaust gas recirculation lowers NOx by reducing the available oxygen, increasing the heat capacity of the exhaust gas mixture, and by reducing maximum combustion temperatures; however, EGR can also lead to an increase in PM as well.  NOx and PM emissions can also be reduced through expensive exhaust gas after-treatment devices, primarily catalytic converters, which use catalyzed chemical reactions to transform the chemical composition of a vehicle's NOx and PM emissions into harmless inert gases, such as nitrogen gas (N2), water (H2O) and carbon dioxide (CO2).

94.     **Answer**:  BMW AG admits that exhaust gas recirculation ("EGR") involves

returning a portion of exhaust gas to the engine's combustion chamber after it has been mixed with

incoming intake air.  BMW AG denies all remaining allegations in Paragraph 94.

95.     Diesel engines thus operate according to this trade-off between price, NOx, and PM; and for the EPA to designate a diesel car as a "clean" vehicle, it must produce both low PM and low NOx.  In 2000, the EPA announced stricter emissions standards requiring all diesel models starting in 2007 to produce drastically less NOx and PM than years prior.  Before introducing affected vehicles into the U.S. stream of commerce (or causing the same), BMW was required to first apply for, and obtain, an EPA-administered certificate of conformity (COC) certifying that the vehicle comported with the emissions standards for pollutants enumerated in 40 C.F.R. §§ 86.1811-04, 86.1811-09, and 86.1811-10.  The Clean Air Act expressly prohibits automakers, like BMW, from introducing a new vehicle into the stream of commerce without a valid COC from the EPA.  Moreover, vehicles must be accurately described in the COC application "in all material respects" to be deemed covered by a valid COC.  California's emission standards are even more stringent than those of the EPA.  The California Air Resources Board (CARB), the State of California's regulator, requires a similar application from automakers to obtain an Executive Order

confirming compliance with California's emission regulations before allowing the vehicle onto California's roads.

95.     **Answer**:  Paragraph 95 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG admits that 2009-2013 BMW X5 xDrive35d and 2009-2011 BMW 335d diesel vehicle models were issued EPA certificates of conformity and CARB executive orders prior to their introduction into United States commerce.  BMW AG denies all remaining allegations in Paragraph 95.  BMW AG also denies the allegations in Paragraph 95 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

96.     The United States has two sets of parallel standards that affect fuel economy: (1) the corporate average fuel economy (CAFE) standards adopted by the National Highway Traffic Safety Administration (NHTSA), an agency within the Department of Transportation (DOT); and (2) greenhouse gas (GHG) emissions standards adopted by the EPA.  The first CAFE standards were adopted in the 1970s in response to the Arab oil embargo.  The first GHG emission standards became effective in model year 2012.

96.     **Answer**:  BMW AG denies the allegations in Paragraph 96 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

97.     The Energy Policy Conservation Act of 1975 established the first CAFE standards for light-duty vehicles.  Separate sets of standards were adopted for cars and for light trucks.  For cars, the standards aimed to double the average fuel economy from 13.6 miles per gallon (mpg) in 1974 to 27.5 mpg by 1985.  Vehicle manufacturers almost met this target, reaching 27.0 mpg by 1985.  While the CAFE program remained in force for a number of years, its fuel economy target for cars stagnated at 27.5 mpg through 2010.

97.     **Answer**:  BMW AG denies the allegations in Paragraph 97 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the

applicable original source materials for a complete and accurate statement of their contents and context.

98.    In 2007, the stage was set for more progressive fuel economy and GHG emission regulations. The Energy Independence and Security Act (EISA) of 2007 mandated a 40% increase in fuel economy by 2020. Tougher fuel economy standards were to be set starting with model year 2011, until the standards achieve a combined average fuel economy of 35 mpg for model year 2020.

98.    **Answer**: Paragraph 98 of the FAC states legal conclusions and argument and relates to other persons or entities, to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 98 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

99.    In April 2010, NHTSA and EPA finalized new, harmonized CAFE and GHG emission rules for model year 2012–2016 light-duty vehicles. These rules have been designed to result in an average CAFE fuel economy of 34.1 mpg (6.9 L/100 km) and CO2 emissions of 250 mg/mile in model year 2016 vehicles.

99.    **Answer**: BMW AG denies the allegations in Paragraph 99 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

100.    These new model year 2011 rules presented manufacturing with obstacles and opportunity. The opportunity was capturing new markets by promoting technology that complied with new emission regulations. Manufacturers adopted several strategies, including the introduction of electric and diesel models.

100.    **Answer**: BMW AG denies the allegations in Paragraph 100, and insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

**B.** **Both the X5 and 335d share a common diesel engine and were promoted by BMW as providing a better emissions footprint and fuel economy.**

101.    To meet the EPA emissions requirements applicable to model year 2011 vehicles, BMW introduced a diesel X5 and 335D in 2009, an in-line 6-cylinder, 3.0-liter engine with an internal designation code "M57."

101.    **Answer**: Paragraph 101 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG admits that certain 2009 X5 xDrive35d and 335d vehicles possessed in-line 6-cylinder, 3.0 liter engines and were internally designated with code "M57".  BMW AG denies all remaining allegations in Paragraph 101.

102.    BMW announced the introduction of these vehicles with fanfare, claiming the vehicles would meet the "strict exhaust emissions requirements of the North American automobile market" and would have "exemplary fuel economy":

> **BMW X5 xDrive35d and BMW 335d to Make US Debut**
> Woodcliff Lake, N.J. – 01/02/2008
>
> **BMW Advanced Diesel with BluePerformance**
>
> Entering a new era in the company's mission to deliver ultimate driving machines that combine superior performance **with exemplary fuel economy**, the BMW Group will debut two vehicle models equipped with the BMW Advanced Diesel with BluePerformance at the 2008 North American International Auto Show (NAIAS) in Detroit – the X5 xDrive35d and the 335d.
>
> <u>Successfully meeting the strict exhaust emissions requirements of the North American automobile market</u>, BMW Advanced Diesel – slated to hit US roadways in late 2008 – will be available in all 50 states. The wide availability of these vehicles marks a significant milestone in the BMW EfficientDynamics strategy, which <u>seeks to offer customers in automobile markets around the world maximum driving pleasure with minimum fuel consumption and emissions</u>.
>
> BMW Advanced Diesel technology is being introduced into the US market in the form of the 3.0-liter inline-six featuring Variable Twin Turbo Technology – an engine widely acknowledged as the unchallenged benchmark for sporting performance, motoring refinement and superior efficiency in other markets around the world.  At the 2008 NAIAS, BMW is presenting this 265-hp high

performance diesel engine in both the BMW X5 xDrive35d and the BMW 335d.  To ensure full compliance with the demanding emission standards in California and other US states, <u>BMW uses SCR technology to reduce nitric oxides</u> (NOX), enabling nationwide introduction of BMW Advanced Diesel with BluePerformance as a 50-state model (BIN5).

**Leading the way:**
**BMW diesel competence for the US.**

The history of BMW diesel engines began in 1983 when the BMW 524td was introduced as the fastest diesel in the world.  From that starting point, BMW has spent 25 years continuously developing diesel technology.  Today's BMW Diesels are characterized by dramatically improved power and performance, fuel consumption and emissions levels – reflecting the principle of BMW EfficientDynamics in every respect.

Through their superior motoring refinement alone, BMW diesel engines have helped to significantly eliminate any reservations regarding the acoustic properties of a diesel engine.  Indeed, great demand for BMW diesel engines has helped BMW achieve increased market share not just in Europe, but in regions across the world.  Today no less than 67 percent of all new BMWs delivered to customers in Europe are powered by a diesel engine.

<u>While diesel engines of today represent an impressive standard for fuel efficiency and emissions on the whole</u>, BMW Advanced Diesel engines take this a step further, setting the standard for torque and pulling power that could never be achieved by a similar displacement gasoline engine – <u>while consuming 25 percent less fuel on average than an equally powerful gasoline engine</u>.

102.   **Answer**:  BMW AG denies the allegations in Paragraph 102 insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.

103.   BMW in its announcement touted its SCR catalyst with "AdBlue injection," a technology BMW claimed allowed a reduction of NOx into "environmentally compatible nitrogen and vapor":

**Most advanced exhaust gas management:  SCR catalyst with AdBlue injection.**

> To optimize emission management, Advanced Diesel with
> BluePerformance incorporates an oxidation catalyst placed just
> downstream of the exhaust manifold, a diesel particulates filter
> housed in the same unit and an SCR catalyst with the urea
> injection.  In addition to filtering out even the smallest particles
> from the flow of exhaust gases, this combination ensures effective
> reduction of nitric oxides (NOX) by way of a chemical reaction
> within the exhaust system initiated by the injection of a small dose
> of urea referred to as AdBlue.  The ammonia (NH3) generated in
> this process within the SCR catalyst subsequently converts the
> nitric oxides (NO and, respectively, NO2) in the exhaust gas into
> environmentally compatible nitrogen (N2) and vapor (H2O).

103.    **Answer**:  BMW AG denies the allegations in Paragraph 103 insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.

104.    Both the X5 and 335d shared the use of a two-tank system to allegedly control dosing and ultimately emissions:

> To introduce AdBlue technology into the car, BMW has developed
> a two-tank system ensuring convenient use of this new technology
> with all the benefits and ease required by the customer.  The
> amount of AdBlue required in each case is injected from the active
> tank (approximately 1.6 gallons in volume) by means of a dosage
> pump.  And since the urea solution would freeze at a temperature
> of 12.2°F, this active tank, as well as the dosage pipes, are heated.
>
> The active tank is connected to a second reservoir, referred to as
> the passive tank.  With its additional capacity of approximately 4.5
> gallons, this passive tank offers a plentiful supply of the urea
> solution.  The average range provided with this supply capacity is
> indeed sufficient to have the tank system replenished only when
> the driver needs to change the engine oil.  Hence, the large amount
> of AdBlue stored in the reservoir enables the customer to enjoy
> continuous driving, without having to change his/her service
> intervals.  <u>The driver therefore benefits from the advantages of this
> environmentally friendly emission technology throughout the
> entire running life of the car,</u> without any additional service or
> visits to the workshop.  Since all BMWs sold in the US benefit
> from The BMW Maintenance Program, the refilling of the AdBlue
> tanks will be a no-charge service for 4 years or 50,000 miles.
>
> AdBlue from the active tank is delivered to the dosing valve and
> atomize into the exhaust system.  Consistent distribution of

AdBlue within the flow of exhaust is ensured by the SCR mixer. The ammonia generated in the hot exhaust flow subsequently acts as a reduction agent in the SCR catalyst and converts environmentally harmful nitric oxides into nitrogen and water vapor in a process referred to as a selective catalytic reaction (SCR). This process gives the special SCR catalyst its name.

The control of the SCR system is masterminded by BMW's powerful engine management computer. A nitric oxide sensor downstream of the SCR catalyst provides feedback on the concentration of NOX in the exhaust emissions.

104.  **Answer**: BMW AG denies the allegations in Paragraph 104 of the FAC insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.

105.  In the above quoted announcement, BMW called out the fact that its two-tank system allowed the driver to change the urea only when an engine oil change is needed.  As discussed below, this is true only because as part of its deceptive conduct, BMW and Bosch programmed the use of less urea to allow for greater emissions outside test conditions.

105.  **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  BMW AG also denies the allegations in Paragraph 105 of the FAC insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.

67

106.    The critical emission control components in the BMW engines are as follows:



106.    **Answer**:  BMW AG admits that model year 2009-2013 BMW X5 xDrive35d and model year 2009-2001 BMW 335d vehicles, utilize a urea tank, dosing module, mixer, SCR-Catalyst, NOx-Sensor and Engine Control Unit.  BMW AG denies all remaining allegations in Paragraph 106.

### 1.    Injection timing and in-cylinder controls

107.    Fuel is metered into the engine during the power stroke using an injector with an electronic controller.  Fuel can be delivered either before the piston reaches the top of its stroke (top dead center, or "TDC"), which is called "advanced timing" at the top of the stroke, or after TDC, which is called "retarded timing."  Furthermore, fuel delivered to the cylinder is often delivered in distinct pulses rather than a single pulse, with the goal being to reduce emissions and improve efficiency.  Generally speaking, advanced timing will increase NOx emissions and reduce particulate matter (PM) emissions (but improve fuel economy), while retarded timing will reduce NOx emissions and increase PM emissions.  In-cylinder controls like injection timing play a critical role in the overall NOx emissions performance of the engine, as the emissions coming out of the cylinder must be low enough that the other emission control systems aren't pushed beyond their technical limits.  If engine-out emissions of NOx are too high, the EGR and SCR systems may not be able to reduce NOx sufficiently to meet the standard.

107.    **Answer**:  BMW AG denies the allegations in Paragraph 107.

108.    The fuel system is also capable of injecting fuel very late in the combustion cycle, up to 140 degrees after engine top dead center.  This late cycle fuel injection allows fuel to leave the cylinder unburned so it can react over the DOC to provide hot exhaust for the purpose of regenerating the DPF.

108.    **Answer**:  BMW AG denies the allegations in Paragraph 108.

### 2.    EGR – Exhaust Gas Recirculation

109.    Exhaust gas recirculation is used to reduce NOx emissions by introducing part of the exhaust exiting the engine back into the engine intake.  Since oxides of nitrogen form in oxygen rich, high temperature environments, introducing exhaust gases back into the intake air charge reduces the amount of these compounds that form primarily by reducing the oxygen concentration and increasing the overall heat capacity of the combustion gas mixture.  EGR results in lower peak temperatures during combustion and, in turn, lower NOx concentrations.  Exhaust gas recirculation is not a new technology and has been regularly used on diesel and gasoline engines for many years.  Generally, the higher the EGR rate the greater the reduction in NOx emissions, though PM emissions are also generally increased, which causes the DPF to "fill up" more frequently and complicates the overall emission control strategy.

109.    **Answer**:  BMW AG admits that exhaust gas recirculation systems present in some diesel engines can work by returning a portion of exhaust gas to the engine's combustion chamber, after mixing the exhaust with intake air.  BMW AG denies all remaining allegations in Paragraph 109.

110.    The M57 engine employs both high and low pressure EGR strategies for the X5, pictured below.  In high pressure EGR, exhaust from the manifold is routed through an EGR cooler and into the intake manifold.  High pressure EGR rate is controlled by an EGR valve downstream of the cooler.  Similarly, low pressure EGR is routed from the exit of the DPF through a cooler, and into the suction side of the turbo-charger.  Low pressure EGR rate is also controlled by an EGR valve.  The 335d does not use low pressure EGR because of its lower weight.



2 - Air intake and exhaust system - M57(KITS) US engine

110.   **Answer**:  BMW AG admits that the M57 engine employs both high and low pressure EGR strategies for the X5.  BMW AG admits that the 335d does not use low pressure EGR.  BMW AG denies all remaining allegations in Paragraph 110.

### 3.   DOC – Diesel Oxidation Catalyst

111.   The diesel oxidation catalyst converts hydrocarbons and carbon monoxide into water and carbon dioxide through an oxidization reaction.  The DOC also converts nitric oxide to nitrogen dioxide to generate favorable conditions for the reduction of NOx in the SCR system downstream of the DOC.  The nitrogen dioxide generated by the DOC is also critical for proper function of the DPF, as nitrogen dioxide is used to remove captured PM from the DPF in a process called passive regeneration.  If insufficient nitrogen dioxide is available for passive regeneration, the engine may be forced to perform an active regeneration, a process that negatively impacts fuel economy and performance.  Higher nitrogen dioxide levels are also important in the SCR system for higher SCR conversion rate.

111.   **Answer**:  BMW AG admits that diesel oxidation catalysts present in some diesel engines work by converting certain substances through an oxidization process.  BMW AG denies all remaining allegations in Paragraph 111.

112.     Also, the DOC is used to oxidize late cycle injected fuel in order to provide heat to assist in active DPF regeneration.

112.     **Answer**:  BMW AG admits that diesel oxidation catalysts present in some diesel

engines work by converting certain substances through an oxidization process.  BMW AG denies

all remaining allegations in Paragraph 112.

### 4.     DPF – Diesel Particulate Filter

113.     After exiting the DOC, the exhaust travels through the diesel particulate filter (DPF), where particulate matter (soot) is trapped and stored.  The captured material is cleaned through a process known as regeneration, which is divided into two strategies.  *First*, passive regeneration occurs any time the vehicle is being operated, provided nitrogen dioxide concentrations are relatively high and the exhaust gas temperature is high enough.  If those two conditions are met, nitrogen dioxide ($NO_2$) will react with captured PM and oxidize it to $CO_2$, thus cleaning out the DPF.  It is a continuously occurring process, meaning that it occurs any time the conditions are met under normal operation, but the rate of regeneration is limited by the exhaust temperature and the concentration of $NO_2$.  Ideal DPF operation relies almost entirely on passive regeneration.  Very low $NO_2$ concentrations or very low exhaust temperatures can prevent passive regeneration from occurring.  *Second*, active regeneration occurs only when the engine senses that the DPF needs to be cleaned as the DPF is approaching maximum capacity and generating too much exhaust backpressure (usually as a result of insufficient passive regeneration).  During this process, the primary injection timing is retarded, which causes higher temperature exhaust to leave the cylinder.  These higher temperatures then pre-heat the DOC such that the late cycle fuel will react and generate sufficient heat for regeneration, approximately 600°C.  This process creates very high temperatures that allow captured PM to oxidize in the DPF without the use a catalyst or $NO_2$, thus "cleaning out" the DPF.  This process is called "active regeneration."  Active regeneration dramatically reduces fuel economy since fuel is being used for purposes other than moving the vehicle.  For this reason, it is generally desirable to reduce the need for active regeneration and create conditions that are favorable for passive regeneration.  Higher exhaust temperatures are also detrimental to the SCR catalyst as they can cause hydrothermal degradation of the catalyst over time.  Thus, it is desirable to have relatively high $NO_2$ (and, as a result, high NOx) concentrations entering the DPF to maximize the amount of passive regeneration.

113.     **Answer**:  BMW AG denies the allegations in Paragraph 113.

### 5.     DEF Injector

114.     Diesel exhaust fluid (DEF) is an integral part of the SCR system, as it provides the necessary reactant to allow the SCR system to reduce NOx.  DEF is injected upstream of the SCR. DEF is composed of 32.5% urea, its active ingredient, distilled water, and a very small amount of additives.  DEF is required for the selective catalytic reduction process to occur.  The heat of the exhaust and reactions on the SCR catalyst convert the DEF into ammonia, which in turn reacts with NOx in the SCR system.  Generally speaking, within the design limits of the SCR system, higher DEF injection rates lead to larger reductions in NOx over the SCR system.

71

114.   **Answer**:  BMW AG admits that certain SCR systems require diesel exhaust fluid ("DEF"), which is composed of urea, distilled water, and additives.  BMW AG denies all remaining allegations in Paragraph 114.

### 6.   SCR – Selective Catalytic Reduction

115.   Once DEF is added to the exhaust, it travels through the selective catalytic reduction catalyst.  Here, oxides of nitrogen (NOx) are converted to nitrogen gas ($N_2$) and water ($H_2O$) by means of a reduction reaction.  The SCR system significantly reduces NOx emissions which allows for more freedom in the calibration of the engine.  The drawback of SCR is its increased complexity and the need to carry and replenish the DEF.

115.   **Answer**:  BMW AG admits that in certain diesel engines, DEF travels through the selective catalytic reduction catalyst, which converts NOx to nitrogen gas.  BMW AG denies all remaining allegations in Paragraph 115.

### 7.   U.S. NOx Emissions Standards

116.   The purpose of the Clean Air Act and its implementing regulations was to protect human health and the environment by, among other things, reducing emissions of pollutants from new motor vehicles, including nitrogen oxides ("NOx").

116.   **Answer**:  BMW AG denies the allegations in Paragraph 116 insofar as those allegations refer to laws, regulations, and/or published emissions standards and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

117.   The Clean Air Act requires the U.S. Environmental Protection Agency ("EPA") to promulgate emissions standards for new motor vehicles.  The EPA established standards and test procedures for light-duty motor vehicles sold in the United States, including emission standards for NOx.

117.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 116 as if restated herein.

118.   The Clean Air Act prohibits manufacturers of new motor vehicles from selling, offering for sale, introducing or delivering for introduction into U.S. commerce, or importing (or causing the foregoing with respect to) any new motor vehicle unless the vehicle complied with

U.S. emissions standards, including NOx emissions standards, and was issued an EPA certificate of conformity.

118.   **Answer**:  BMW AG admits that automobile manufacturers are subject to various laws and regulations in the United States, including with respect to the requirement that certain vehicle model types sold in the United States must obtain Certificates of Conformity from the EPA prior to lawful sale.  BMW AG denies all remaining allegations in Paragraph 118.  BMW AG also denies the allegations in Paragraph 118 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

119.   To obtain a certificate of conformity, a manufacturer is required to submit an application to the EPA for each model year and for each test group of vehicles that it intended to sell in the United States.  The application is required to be in writing, to be signed by an authorized representative of the manufacturer, and to include, among other things, the results of testing done pursuant to the published Federal Test Procedures that measure NOx emissions, and a description of the engine, emissions control system, and fuel system components, including a detailed description of each Auxiliary Emission Control Device ("AECD") to be installed on the vehicle.

119.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 116 as if restated herein.

120.   The EPA will not certify motor vehicles equipped with defeat devices. Manufacturers could not sell motor vehicles in the United States without a certificate of conformity from the EPA.

120.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 116 as if restated herein.

121.   CARB (together with the EPA, "U.S. regulators") issued its own certificates, called executive orders, for the sale of motor vehicles in the State of California.  To obtain such a certificate, the manufacturer is required to satisfy the standards set forth by the State of California, which were equal to or more stringent than those of the EPA.

121.   **Answer**:  Paragraph 121 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG admits that automobile manufacturers are subject to various laws and regulations in the United States,

including with respect to the requirement that certain vehicle model types sold in the State of California must obtain Executive Orders from CARB prior to lawful sale. BMW AGA denies all remaining allegations in Paragraph 121. BMW AG also denies the allegations in Paragraph 121 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

122.    As part of the application for a certification process, manufacturers often worked in parallel with the EPA and CARB. To obtain a certificate of conformity from the EPA, manufacturers are required to demonstrate that the light-duty vehicles were equipped with an on-board diagnostic ("OBD") system capable of monitoring all emissions-related systems or components.

122.    **Answer**: BMW AG admits that automobile manufacturers are subject to various laws and regulations in the United States. BMW AG denies all remaining allegations in Paragraph 122. BMW AG also denies the allegations in Paragraph 122 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

123.    Manufacturers could demonstrate compliance with California OBD standards in order to meet federal requirements. CARB reviews applications from manufacturers, including BMW, to determine whether their OBD systems were in compliance with California OBD standards, and CARB's conclusion would be included in the application the manufacturer submitted to the EPA.

123.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 122 as if restated herein.

124.    In 1998, the United States established new federal emissions standards that would be implemented in separate steps, or Tiers. Tier II emissions standards, including for NOx emissions, were significantly stricter than Tier I. For light-duty vehicles, the regulations required manufacturers to begin to phase in compliance with the new, stricter NOx emissions standards in 2004 and required manufacturers to fully comply with the stricter standards for model year 2007. These strict U.S. NOx emissions standards were applicable specifically to vehicles in the United States.

124.   Answer:  BMW AG incorporates by reference the answer set forth in Paragraph 122 as if restated herein.

125.   An emissions test cycle defines a protocol that enables repeatable and comparable measurements of exhaust emissions to evaluate compliance.  The protocol specifies all conditions under which the engine is tested, including lab temperature and vehicle conditions.  Most importantly, the test cycle defines the vehicle speed over time that is used to simulate a typical driving scenario.  An example of a driving cycle is shown in Figure A.  This graph represents the FTP-75 (Federal Test Procedure) cycle that has been created by the EPA and is used for emission certification and fuel economy testing of passenger vehicles in the United States.  The cycle simulates an urban route with frequent stops, combined with both a cold- and a hot-start transient phase.  The cycle lasts 1,877 seconds (about 31 minutes) and covers a distance of 11.04 miles (17.77 km) at an average speed of 21.2 mph (34.12 km/h).



125.   **Answer**:  BMW AG denies the allegations in Paragraph 125 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

126.   To assess conformance, these tests are carried out on a chassis dynamometer, a fixture that holds a car in place while allowing its driven wheels to turn with varying resistance meant to simulate the actual load on the engine during on-road driving.  Emissions are measured during the test and compared to an emissions standard that defines the maximum pollutant levels that can be released during such a test.  In the United States, emissions standards are managed on a national level by the EPA.  In addition, California has its own emissions standards that are

defined and enforced by CARB.  California standards are also adopted by a number of other states ("Section 177" states).[7]  Together with California, these states cover a significant fraction of the U.S. market, making them a de facto second national standard.

126.   **Answer**:  Paragraph 126 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG admits that federal

certification testing for certain vehicles is performed on a chassis dynamometer.  BMW AG denies

all remaining allegations in Paragraph 126.  BMW AG also denies the allegations in Paragraph

126 insofar as those allegations refer to laws, regulations, and/or published emissions standards,

and refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

127.   The FTP-75 is the primary dynamometer cycle used to certify light- and medium-duty passenger cars/trucks.  This cycle is primarily a dynamic cycle, with rapid changes in speed and acceleration meant to reflect city driving along with some steadier higher speed sections meant to account for some highway driving.

127.   **Answer**:  BMW AG admits that the FTP-75 testing cycle is a cycle used to certify

certain vehicle model types.  BMW AG denies all remaining allegations in Paragraph 127.  BMW

AG also denies the allegations in Paragraph 127 insofar as those allegations refer to laws,

regulations, and/or published emissions standards, and refers to the applicable original source

materials for a complete and accurate statement of their contents and context.

128.   One critically important thing to understand about the FTP-75 is that it's a "cold start" cycle.  That means the vehicle starts the cycle with the engine having been off for at least eight hours and in a completely cold state.  The "cold start" portion of the test is challenging for diesel engines like the BMW engine employing SCR because catalysts meant to control emissions are not yet at temperatures where they work (*i.e.*, above their "light-off" temperature).  The FTP-75 also includes a "hot start" phase, which has similar issues resulting from cool down of catalysts before this phase begins.

---

[7] Those states are: Connecticut, Maine, Maryland, Massachusetts, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, Delaware, Georgia, and North Carolina.

128.   **Answer**:  Paragraph 128 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 128.  BMW AG also denies the allegations in Paragraph 128 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

**C.    BMW promoted the X5 and 355d vehicles as clean and environmentally friendly because BMW knew the environment and fuel economy are material to a reasonable consumer of a diesel car.**

129.   BMW understood that a diesel vehicle's pollution footprint and fuel economy are factors in a reasonable consumer's decision to purchase a diesel vehicle.  The only advantage of a diesel versus gas car is a better pollution footprint and improved fuel economy.  Thus, BMW, in press releases, owner's manuals, and brochures that it intended to reach the eyes of consumers, promoted the X5 and 335d engine as delivering reduced NOx or having "reduced NOx emissions," or as a "clean vehicle."  These promotional materials were distributed to BMW dealers for distribution to prospective buyers or were disseminated directly to potential consumers.

129.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.  BMW AG denies all remaining allegations in Paragraph 129.

130.   BMW also understood that fuel economy was material to the average consumer and was a material feature for prospective diesel buyers because of claims that diesels obtain better mileage than gas cars.

130.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.  BMW AG denies all remaining allegations in Paragraph 130.

131.   In 2009, BMW announced the introduction of the BMW "Advanced Diesel Models" for the United States that included the 335d model and the X5 xDrive35d model.  According to a 2009 BMW press release, the models would be "50 state emission compliant":

> **BMW Group Diesel in the U.S.**
> **Technology and Market situation**
>
> In 2009, the BMW Group presented more proof of its EfficientDynamics engineering philosophy with the introduction of two BMW Advanced Diesel models for the U.S.  The 335d and the X5 xDrive35d models feature a 50 state emission complaint

> version of BMW's award winning sequential-turbo 3.0 liter diesel
> engine.  This is the first performance-oriented Advanced Diesel
> engine in BMW's North American model line and is the basis for
> the most fuel efficient internal-combustion vehicle BMW has ever
> sold in the United States.

131.    **Answer**: BMW AG denies the allegations in Paragraph 131 insofar as those

allegations refer to a press release and refers to the original source materials for a complete and

accurate statement of their contents and context.

132.    According to the BMW release, the "Advanced Diesels vehicles BluePerformance
Technology" allowed for dramatically "improved fuel performance," "fuel consumption," and
improved "emissions levels":

> **Leading the way:**
> **BMW diesel competence for the US**
>
> Today's BMW Diesels are characterized by dramatically improved
> power and performance; fuel consumption and emissions levels –
> reflecting the principle of BMW EfficientDynamics in every
> respect.
>
> Through their refinement alone, BMW diesel engines have helped
> to significantly eliminate reservations regarding the acoustic
> properties of a diesel engine.  In fact, great demand for BMW
> diesel engines has helped BMW achieve increased market share
> not just in Europe, but in regions all around the world.  In 2009 no
> less than 63 percent of all new BMWs delivered to customers in
> Europe are powered by a diesel engine.
>
> BMW Advanced Diesel engines take this a step further, setting the
> standard for torque and pulling power that could never be achieved
> by a similar displacement gasoline engine – while consuming 25
> percent less fuel on average than an equally powerful gasoline
> engine.

132.    **Answer**:  BMW AG denies the allegations in Paragraph 132 insofar as those

allegations refer to a press release and refers to the original source materials for a complete and

accurate statement of their contents and context.

133.    BMW also claimed its technology allowed for "minimum emissions" with an
"environmentally compatible" byproduct:

**New generation of diesel technology:
Maximum responsiveness, <u>minimum emissions</u>.**

Maximum power, outstanding efficiency:  The first BMW Advanced Diesel with BluePerformance is particularly well-suited to combine the driving dynamics and refinement of a premium automobile <u>with the most current and demanding standards for preserving resources and reducing emissions</u>.  Featuring exceptional power and torque, the 3.0 liter inline-six diesel is one of the most fuel-efficient engines in its class.  (emphasis added.)

**Most advanced exhaust gas management:
Selective Catalytic Reduction.**

To optimize emission management, Advanced Diesel with BluePerformance incorporates an oxidation catalyst placed just downstream of the exhaust manifold with a diesel particulate filter housed in the same unit and a Selective Catalytic Reduction catalyst with urea injection.  <u>In addition to filtering out even the smallest particles from the flow of exhaust gases, this combination ensures effective reduction of nitric oxides (NOX) by way of a chemical reaction within the exhaust system initiated by the injection of a small dose of urea referred to as Diesel Exhaust Fluid</u>.  The ammonia (NH3) generated in this process within the SCR catalyst subsequently <u>converts the nitric oxides (NO and, respectively, NO2) in the exhaust gas into environmentally compatible nitrogen (N2) and water vapor (H2O)</u>.  (emphasis added.)

133.   **Answer**:  BMW AG denies the allegations in Paragraph 133 insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.

134.   In sales literature directed to consumers through BMW dealers, BMW emphasized the emissions compliance and emissions characteristics of its diesel vehicles.  BMW's promises regarding the emissions performance of BMW diesels is BMW's acknowledgement that low emissions are material to a reasonable consumer of a diesel car.

134.   **Answer**:   BMW AG denies the allegations in Paragraph 134 insofar as those allegations refer to sales literature and refers to the original source materials for a complete and accurate statement of their contents and context.

135.    Thus, for example, in the brochure for the 2010 X5, BMW promised that the X5 meets "emissions requirements in all states" and provided more "driving pleasure and less emissions":



135.    **Answer**:  BMW AG denies the allegations in Paragraph 135 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

136.    In the brochure for the 2011 BMW X5, recognizing the materiality of the emissions issue, the <u>cover page</u> promises "Less emissions":



136.    **Answer**:   BMW AG denies the allegations in Paragraph 136 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

81

137.    A reasonable consumer would believe that "less emissions" means less than a comparable gas BMW.

137.    **Answer**:  Paragraph 137 of the FAC states argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 137.

138.    And BMW promised that its "Advanced Diesel" was "cleaner, quicker and far more efficient that previous generation diesels."  "It's diesel reinvented."



138.    **Answer**:  BMW AG denies the allegations in Paragraph 138 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

139.    In its brochures BMW further promised that its diesel was "Environmentally Friendly" such that it turned "nitric oxides in the exhaust gas into environmentally compatible nitrogen and water vapor," and that it met emissions requirements in all states.



**BMW Advanced Diesel with BluePerformance Technology.**
BMW's breed of diesel power is quiet and smooth-running. Environmentally friendly, too, thanks to its use of ultra-low sulfur diesel (ULSD) fuel and BMW's BluePerformance Technology. Using Diesel Exhaust Fluid and a diesel particulate filter, it turns the nitric oxides in the exhaust gas into environmentally compatible nitrogen and water vapor. As a result, this engine meets the emissions standards in all 50 states.

**LOW CONSUMPTION. HIGH PERFORMANCE.**

139.    **Answer**:  BMW AG denies the allegations in Paragraph 139 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

140.    Continuing on the theme of decreased emissions with better fuel economy BMW brochures stated:



Engines that power innovation. Year after year, numerous BMW engines have garnered accolades for their output, refinement and high-revving ability. All are designed to deliver on BMW's EfficientDynamics philosophy: increased power with decreased fuel consumption and emissions. Choose between two gasoline-powered TwinPower Turbocharged engines, or opt for BMW's Advanced Diesel with BluePerformance Technology. Whichever you select, you'll enjoy the thrill of BMW performance while helping to protect the environment every day.

140.    **Answer**:   BMW AG denies the allegations in Paragraph 140 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

141.    The 2012 brochure on its cover page also promised "less emissions" which is a reference to a comparable BMW gas vehicle:

84



# THE BMW X5.
## PERFORMANCE HEAVEN FOR SEVEN.

**BMW EfficientDynamics**


    141.  **Answer**:  BMW AG denies the allegations in Paragraph 141 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

142.    Again, BMW promised less emissions:





142.    **Answer**:  BMW AG denies the allegations in Paragraph 142 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

86

143.   BMW understood the environment was important to consumers and stressed its commitment to sustainability and a goal of "emissions free mobility":



## BMW EFFICIENT DYNAMICS:
## VEHICLES THAT REQUIRE LITTLE AND GIVE A LOT.

BMW was one of the first automotive manufacturers to pursue efficient driving technologies – one part of our award-winning sustainability strategy. Our commitment to EfficientDynamics means we are continuously developing innovative systems that bring us closer to our long-term goal of emissions-free mobility. However, we remain equally committed to driving pleasure, which is being pursued in different ways. First, there is the continuing optimization of conventional diesel- and gasoline-powered models. Second, BMW hybrid vehicles are already on the road. Third, the first 100 percent electrically powered BMW – the BMW ActiveE – is being distributed in a field trial to customers. And fourth, the fleet of BMW Hydrogen 7 vehicles impressively demonstrated the potential for combining hydrogen drive with a combustion engine.

Since 1995 BMW has been able to reduce the $CO_2$ emissions of its entire fleet by approximately 30 percent. BMW has rolled out more than two million vehicles equipped with EfficientDynamics: 31 models already produce less than 225g of $CO_2$ per mile, and BMW intends to achieve a further 25 percent reduction by 2020. BMW EfficientDynamics represents the most comprehensive package of innovative technologies currently in production, for reducing fuel consumption and emissions while simultaneously creating The Ultimate Driving Machine.®

**Different paths to the same destination: unmistakable BMW driving pleasure.**
Under the umbrella of the BMW EfficientDynamics project, BMW is continuously developing innovative systems that will bring us closer to the goal of emissions-free mobility in the long term. This BMW program for more driving pleasure is based on several pillars:

**Eco-friendly technology.**
The development of more efficient vehicles powered by conventional diesel and gasoline engines are continuing challenges. A comprehensive technology directive enables the reduction of fuel consumption and emissions, while at the same time increasing power output and driving enjoyment. These advances are based on innovations such as BMW TwinPower Turbo technology, Brake Energy Regeneration, air curtain front apron design, and many others.

**BMW ActiveHybrid.**
With the BMW ActiveHybrid 7, BMW ActiveHybrid X6 and the BMW ActiveHybrid 5, BMW has impressive hybrid production models in its line. Soon the BMW ActiveHybrid 3 will be joining the team. All these models combine outstanding efficiency with superlative dynamic ability.

**BMW Electric Vehicles.**
The BMW ActiveE is the first 100% electric – 100% BMW vehicle. A milestone for EfficientDynamics, the BMW ActiveE achieves emissions-free mobility without compromising the performance that is a BMW trademark. Based on the 1 Series Coupe, it launched in early 2012.

The BMW i brand will launch two completely new vehicle concepts for sustainable mobility in an urban environment. Key features of the BMW i3 and BMW i8 include the use of lightweight materials such as Carbon Fiber Reinforced Plastic (CFRP), electric drive systems, powerful battery technology and eco-friendly production methods. The BMW i3 launches in 2013 and the i8 in 2014; both are an important part of BMW EfficientDynamics technologies.

↗ bmwactivatethefuture.com
↗ bmw-i-usa.com



**THE BMW X5 SAV'S
EFFICIENT DYNAMICS INITIATIVE AT A GLANCE.**

**High Precision Direct Injection.**
In the latest-generation direct fuel injection system, the piezo injectors are positioned very close to the spark plugs. They inject fuel at high pressure, with extreme precision, for very efficient combustion.

**Valvetronic.**
BMW's Valvetronic valve control system improves engine response and refinement, while also helping to reduce fuel consumption. The system helps the engine "breathe" better by providing fully variable lift adjustment of the inlet valves.

**Brake Energy Regeneration.**
In vehicles with Brake Energy Regeneration, the alternator generates electricity only when the driver takes his or her foot off the accelerator. Kinetic energy that was previously unharnessed is transformed into electrical energy, then fed into the battery. In this way, electricity is generated without consuming fuel.

**BMW Advanced Diesel with BluePerformance Technology.**
Cleaner, quicker and far more efficient than previous generation diesel, BMW Advanced Diesel with BluePerformance Technology vehicles achieve up to 36 mpg, for a range of 580 miles per tank. They emit 20 percent less $CO_2$ than conventional vehicles, while posting powerful 0-60 mph numbers. It's diesel reinvented.

**Electric Power Steering.**
Unlike conventional, hydraulic steering systems, electric power steering draws power only during actual steering movements. When the steering wheel position is constant, the electric motor is inactive.

**8-speed automatic transmission.**
This transmission provides extremely fast shifting in both automatic and STEPTRONIC shift modes. By increasing the number of gears to eight, the transmission provides a more efficient shifting sequence and improved fuel economy.

143. **Answer**:  BMW AG denies the allegations in Paragraph 143 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

144.    In brochures for 2013 and later, BMW promised its emissions system reduced NOx to environmentally compatible nitrogen and water vapor and met emissions standards in all 50 states:



**BMW Advanced Diesel with BluePerformance Technology.**
BMW's breed of diesel power is quiet and smooth-running. Environmentally friendly, too, thanks to its use of ultra-low sulfur diesel (ULSD) fuel and BMW's BluePerformance Technology. Using Diesel Exhaust Fluid and a diesel particulate filter, it turns the nitric oxides in the exhaust gas into environmentally compatible nitrogen and water vapor. As a result, this engine meets the emissions standards in all 50 states.

**LOW CONSUMPTION. HIGH PERFORMANCE.**

144.    **Answer**:  BMW AG denies the allegations in Paragraph 144 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

145.     BMW promised in its 2013 brochure that its engines helped protect the environment with "decreased fuel consumption and emissions":



**Engines that power innovation.** Year after year, numerous BMW engines have garnered accolades for their output, refinement and high-revving ability. All are designed to deliver on BMW's EfficientDynamics philosophy: increased power with decreased fuel consumption and emissions. Choose between two gasoline-powered TwinPower Turbocharged engines, or opt for BMW's Advanced Diesel with BluePerformance Technology. Whichever you select, you'll enjoy the thrill of BMW performance while helping to protect the environment every day.

145.     **Answer**:   BMW AG denies the allegations in Paragraph 145 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

146.    The same types of representations were on the 2014 brochure showing BMW's belief that environment, emissions, and fuel economy were material to consumers:





# BMW EFFICIENT DYNAMICS: MAKING A LITTLE GO A LONG WAY.

BMW was one of the first automotive manufacturers to pursue efficient driving technologies – one part of our award-winning sustainability strategy. BMW EfficientDynamics represents the most comprehensive package of innovative technologies currently in production for reducing fuel consumption and emissions. Our commitment to EfficientDynamics means we are continuously developing innovative systems that bring us closer to our long-term goal of emissions-free mobility. Since 1995 BMW has been able to reduce the $CO_2$ emissions of its entire fleet by approximately 30 percent, and intends to achieve a further 25 percent reduction by 2020. However, we remain committed to driving pleasure, which is being pursued in different ways.

**Eco-friendly technology.** The development of more efficient vehicles powered by conventional gasoline and diesel engines are continuing challenges. A comprehensive technology directive enables the reduction of fuel consumption and emissions, while at the same time increasing power output and driving enjoyment. These advances are based on innovations such as BMW TwinPower Turbo technology, Brake Energy Regeneration, Air Curtain front apron design, and many others.

**BMW ActiveHybrid.** With the BMW ActiveHybrid 7, BMW ActiveHybrid 5 and BMW ActiveHybrid 3, BMW has impressive hybrid production models in its line. All combine outstanding efficiency with superlative dynamic ability.

**BMW i.** The all-new BMW i brand is launching two completely new vehicle concepts for sustainable mobility in an urban environment, both are an important part of BMW EfficientDynamics technologies. Key features of the BMW i3 and BMW i8 include the use of lightweight materials such as carbon-fiber-reinforced plastic (CFRP), electric drive systems, powerful battery technology and eco-friendly production methods.

bmwusa.com/i
bmwusa.com/EfficientDynamics

# BMW ENGINE TECHNOLOGY: A HERITAGE OF INNOVATION. A FUTURE OF SUSTAINABLE EXHILARATION.

From its inception almost a century ago as a manufacturer of aircraft engines, Bavarian Motor Works has been a world leader in engine design. In fact, the innovations shown below were so ahead of their time, BMW engineers still incorporate this technology into today's award-winning powerplants. Over the decades, BMW engines have led to countless wins at the racetrack. Even more important, their smooth, powerful and efficient performance has won over generations of driving enthusiasts. Today, adhering to the EfficientDynamics philosophy, BMW engineers are setting even higher goals: creating an engine template that can be scaled in size and adapted to new fuel sources – all while maintaining legendary BMW performance and efficiency. It's a revolutionary concept that is now becoming reality. Welcome to the exciting future of BMW power.

**1936**



**SEMI-HEMISPHERICAL VALVE DESIGN.**
A design so advanced it helped the BMW 328 Mille Miglia win races in 1936 – and it's still in use today.

**1955**   **ALL-ALUMINUM V-8 ENGINE.**
The BMW 502 applied what is now called "intelligent lightweight engineering" to its then-awesome 160-hp V-8 engine.



146.   **Answer**:   BMW AG denies the allegations in Paragraph 146 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

147.    BMW also offered a diesel option in its 3 Series Sedan, called the 335d.  BMW promised that its "Advanced Diesel with BluePerformance" met the "emissions standards of all 50 states":[8]



147.    **Answer**:  BMW AG denies the allegations in Paragraph 147 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

---

[8] 2009 Brochure.

148.    Like the X5, BMW knew that prospective buyers of the 335d were interested in environmental and emissions issues, hence, the 2011 3 Series brochure on its cover focused on "Less emissions":





148.   **Answer**:   BMW AG denies the allegations in Paragraph 148 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

149.   BMW again promised that its 335d met emissions requirements in all states:



149.   **Answer**:   BMW AG denies the allegations in Paragraph 149 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

150.   BMW proclaimed its diesels "have never been cleaner," comparing its new engines to those that "left a trail of toxic pollution":



150.   **Answer**:   BMW AG denies the allegations in Paragraph 150 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

151.   BMW promised efficiency and low emissions:

THE BMW ADVANCED DIESEL ENGINE WITH
BLUE PERFORMANCE TECHNOLOGY. IT'S DIESEL,
THROUGH THE LENS OF BMW EFFICIENT DYNAMICS.

151.   **Answer**:  BMW AG denies the allegations in Paragraph 151 insofar as those allegations refer to a brochure and refers to the original source materials for a complete and accurate statement of their contents and context.

**D.    The BMW emission deception = emission manipulation in real world driving conditions.**

**1.    Accuracy of PEMS Testing**

152.    The vehicles were tested over a variety of conditions using a portable emission measurement system (PEMS).  As explained below, PEMS is essentially a "portable laboratory" that allows measurement of emissions outside of a laboratory setting used for certification testing.

152.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

153.    PEMS is a collection of measurement devices that has been used since the 1990s to measure real-world vehicle emissions performance outside of a laboratory.  PEMS measures oxides of nitrogen, total hydrocarbon, methane, carbon monoxide, and carbon dioxide as well as particulate matter (PM) emissions during on-road driving of light and heavy-duty vehicles.

153.   **Answer**:  BMW AG admits that PEMS is a collection of measurement devices that is capable of measuring certain emission constituents under some circumstances during on-road

driving.  BMW AG denies knowledge or information sufficient to form a belief as to the truth of all remaining allegations in Paragraph 153, and therefore denies them on that basis.

154.    PEMS systems are highly accurate when compared to chassis dynamometer-based tests used for vehicle emissions certification.  In fact, their accuracy is such that they are currently integrated into the European vehicle emission certification process to test RDE (real driving emissions).  Both EPA and CARB employ PEMS as part of the heavy duty in-use compliance program to measure emissions against the not to exceed (NTE) standards, where procedures have been codified in the code of federal regulations.  Furthermore, both CARB and EPA make wide use of PEMS to evaluate vehicles for the presence of defeat devices.  One such study, published by the Center for Alternative Fuels Engines and Emissions (CAFEE) in collaboration with CARB, made heavy use of PEMS to discover the presence of defeat devices in Volkswagen diesels.[9]

154.    **Answer**: Paragraph 154 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 154 insofar as the reliability and scientific utility of PEMS can be affected by the setup and maintenance of the system, as well as by the rigor and care in the execution of the tests themselves.  The FAC does not allege facts sufficient to conclude that Plaintiffs' PEMS tests were designed or conducted in a way that would make the results (even if accurately described) probative.  BMW AG also denies the allegations in Paragraph 154 insofar as those allegations refer to a study and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies the allegations in Paragraph 154 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 154.

155.    PEMS has been used since the 1990s to measure real-world vehicle emissions performance.  These systems are manufactured by highly respected and well-established emissions measurement equipment suppliers like AVL, Horiba, and Sensors Incorporated.  All three of these companies are leading suppliers of emissions measurement systems used for vehicle and engine certification, and they bring their experience in conventional emissions analyzers to bear in

---

[9] Thompson, Gregory J., *et. al.* "In-Use Emissions Testing of Light-Duty Diesel Vehicles in the United States," CAFEE publication, May 15, 2014.

designing PEMS.  Conventional gas analysis systems are very large and complex.  Since the years when chassis dynamometer testing was originally introduced, advances in analyzer technologies over the past three decades have allowed for the miniaturization of conventional laboratory analyzers, yielding major size and weight reductions.  The introduction of powerful laptop computers capable of controlling and capturing data from these systems was also essential their introduction.  These technological advances made it possible for high- accuracy emissions analyzers to be deployed on vehicles while driving on the road outside of the laboratory setting.

155.  **Answer**: Paragraph 155 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 155 insofar as the reliability and scientific utility of PEMS can be affected by the setup and maintenance of the system, as well as by the rigor and care in the execution of the tests themselves.  The FAC does not allege facts sufficient to conclude that Plaintiffs' PEMS tests were designed or conducted in a way that would make the results (even if accurately described) probative.  BMW AG denies all remaining allegations in Paragraph 155.

156.  Conventional emissions testing used for certification of vehicles is performed on a chassis dynamometer.  As mentioned above, the dynamometer is a "treadmill" for the driven wheels of a vehicle.  The driven wheels are placed on rollers attached to an electric motor capable of simulating the forces on the vehicle during real-world driving on the road (in certain instances, flywheels may also be used to simulate vehicle inertia).  The chassis dynamometer simulates inertial forces (*i.e.*, the resistance to acceleration or deceleration from the vehicle's weight), static friction, rolling resistance, and aerodynamic drag.  When properly calibrated, the chassis dynamometer will simulate real-world driving with a high degree of accuracy.  A "coastdown" procedure is used to verify that rolling resistance and drag are accurately simulated.  However, the inertial load simulation requires very rapid and precise response from the electric motor for high accuracy.  Slow responding systems can under-load the vehicle during acceleration.  By contrast, real-world inertial forces on the vehicle are inherent in PEMS testing since this testing is conducted on the road in normal driving.

156.  **Answer**: BMW AG admits that certification testing for certain vehicle model types is performed on a chassis dynamometer.  BMW AG denies the allegations in Paragraph 156 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 156.

157.    The analyzers used to measure gaseous emissions in the chassis dynamometer setting are accurate to within 1% of the full measurement scale.  These analyzers are calibrated before and after each emissions test to ensure they deliver a high level of accuracy and that the calibration does not appreciably change (or drift) during the emissions test.  Furthermore, analyzers undergo monthly 10-point calibrations to ensure their response is accurate throughout the measurement range of each analyzer.  These measurements are supplemented with high precision measurement of ambient temperature and relative humidity.  NOx is adjusted for those values.

157.    **Answer**:  BMW AG denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 157, and therefore denies them on that basis.

158.    PEMS analyzers are subject to the same requirements.  In fact, analyzers used by Plaintiffs' experts have an accuracy of 0.3% of full scale, well within the 1% requirement used for chassis dynamometer analyzers.  These analyzers are also subject to the same monthly 10-point calibration to ensure accuracy throughout the measurement range.  The analyzers are also calibrated before and after each test to ensure they are both accurate and free of excessive drift.  Drift has been shown to be far less than 1% even after several hours of testing.  PEMS also employs high accuracy temperature and relative humidity measurements to adjust NOx.

158.    **Answer**:  BMW AG denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 158, and therefore denies them on that basis.

159.    Put simply, the analyzers used in chassis dynamometer testing and PEMS testing have virtually identical levels of accuracy and are subject to the same strict requirements for calibration and drift.

159.    **Answer**:  BMW AG denies the allegations in Paragraph 159.

160.    Notably, because PEMS testing is designed for and is conducted on the road in actual driving, it is potentially more accurate than chassis dynamometer testing in certain respects.  The chassis dynamometer simulates inertial forces (i.e., the resistance to acceleration or deceleration from the vehicle's weight), static friction, rolling resistance, and aerodynamic drag.  When properly calibrated, the chassis dynamometer will simulate real-world driving with a high degree of accuracy.  A "coastdown" procedure is used to verify that rolling resistance and drag are accurately simulated.  However, the inertial load simulation requires very rapid and precise responses from the electric motor for high accuracy.  Slow responding systems can under-load the vehicle during acceleration.  By contrast, real-world inertial forces on the vehicle are inherent in PEMS testing since this testing is conducted on the road in normal driving.

160.    **Answer**:  BMW AG denies the allegations in Paragraph 160 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and

context.  BMW AG also denies the allegations in Paragraph 160 insofar as the reliability and scientific utility of PEMS can be affected by the setup and maintenance of the system, as well as by the rigor and care in the execution of the tests themselves.  The FAC does not allege facts sufficient to conclude that Plaintiffs' PEMS tests were designed or conducted in a way that would make the results (even if accurately described) probative.  BMW AG denies all remaining allegations in Paragraph 160.

161.    One primary difference between PEMS and chassis dynamometer emissions testing is that the latter mixes the raw exhaust with ambient air in a dilution tunnel to simulate the effects of vehicle exhaust mixing with ambient air immediately after emission from the tailpipe.  In the case of PEMS, the raw exhaust emissions are measured.  The dilution tunnel has the largest effect on particulate matter measurements, where sulfate and hydrocarbon aerosols may be formed during the dilution process, thereby increasing PM emissions.  In modern diesels using low-sulfur fuels, these effects are much less important than in the past, where hydrocarbon and sulfate formation was much higher.  The effect on gaseous pollutants, and in particular NOx, is negligible.  Therefore, the raw gas measurement of NOx taken during PEMS testing will closely match the diluted exhaust measurement taken in a dilution tunnel.

161.    **Answer**:  BMW AG denies the allegations in Paragraph 161.

162.    A wide variety of studies have been performed over the years to validate the accuracy of PEMS.  One such study, conducted by experts at Ricardo UK, one of the world's leading vehicle research and development companies, concluded that, "NOx emissions agreed within ~10% across a wide range of values."[10]  When considering that defeat devices result in emissions that are often several times, or even orders of magnitude, higher than the relevant emissions standards, this level of agreement with chassis dynamometer emissions measurement is more than sufficient to identify the presence of defeat devices and to quantify the effects.

162.    **Answer**:  BMW AG denies the allegations in Paragraph 162 insofar as those allegations refer to a study and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies the allegations in Paragraph 162.

163.    A well-designed PEMS test program can account for ambient temperature, traffic variability, relative positive acceleration (RPA—i.e., the "hardness" or "softness" of the driver's driving style), road quality, and wind speed.  The effect of wind speed, in particular, can be averaged out by conducting a large number of tests with variable wind conditions.  Tests are

---

[10] Anderson, Jon, *et. al.*, "On-Road and Chassis Dynamometer Evaluations of Emissions from Two Euro 6 Diesel Vehicles," SAE 2014-01-2826, October 2014.

typically repeated dozens of times, with careful attention paid to, among other things, the average cycle speed, ambient temperature, RPA, and road grade.  Plaintiffs' experts, who have extensive experience with chassis dynamometer and PEMS testing, took careful measures to ensure tests were conducted properly and according to best practice, with awareness of the variety of variables to be considered and factored into the interpretation of the results.

163.    **Answer**: Paragraph 163 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 163 insofar as the reliability and scientific utility of PEMS can be affected by the

setup and maintenance of the system, as well as by the rigor and care in the execution of the tests

themselves.  BMW AG denies all remaining allegations in Paragraph 163.

164.    Notably, chassis dynamometer-based testing also depends on data collected through real-world driving.  To perform chassis dynamometer testing to certify a vehicle, on-road data must be collected for each vehicle that is tested to obtain a proper model of the vehicle's rolling resistance and aerodynamic drag (called the vehicle's "road load model").  This procedure is conducted over the road and must be repeated multiple times to account for the effects of variable wind speeds and directions.  This kind of repetition is no different than that required to average out the effects of wind speed during PEMS testing.  In order for the chassis dynamometer to simulate real-world driving accurately, the testing conducted over the road to create the road load model must be generated with great care, accounting for effects like tire pressure, drive train resistance, state of maintenance, vehicle inertial load, etc.—the same issues that must be addressed when conducting PEMS tests.

164.    **Answer**: BMW AG denies the allegations in Paragraph 164.

165.    Furthermore, it is possible to re-create virtually any chassis dynamometer certification cycle over the road using a PEMS by simply following the same vehicle speed cycle in a carefully controlled setting.  Special test software has been developed by Plaintiffs' experts to allow these test cycles to be performed on the road.

165.    **Answer**: Paragraph 165 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 165.

166.    There is a weakness in chassis dynamometer testing.  As was discovered during the Volkswagen diesel scandal, the vehicle's engine control module can often detect that the vehicle is being tested on a chassis dynamometer.  In addition to being able to detect that a certification test cycle is being run, as with Volkswagen, vehicles can use various sensors to determine the vehicle is on a chassis dynamometer.  Types of algorithms used to detect a chassis dynamometer include, but are not limited to, the following:

a)     Driven wheels are moving but the front wheels are not turning, a condition only experienced on a chassis dynamometer. All modern vehicles are equipped with steering wheel angle sensors and can detect when the steering wheel is being turned.

b)     On a 2-wheel drive vehicle, the driven wheels are moving but the non-driven wheels are not, a condition only experience on a chassis dynamometer.

c)     On a vehicle equipped with GPS, the vehicle's wheels are moving while the GPS position is not changing.

166.     **Answer**: BMW AG denies the allegations in Paragraph 166.

167.     For this reason, while testing on a chassis dynamometer for defeat devices, it can never be ruled out that the vehicle can detect it is being tested on a chassis dynamometer. Therefore, results from chassis dynamometer testing may be dramatically different than those measured in real-world driving. In contrast to chassis dynamometer testing, the vehicle cannot detect the presence of a PEMS. PEMS is not only accurate for detection and quantification of defeat devices, it is essential.

167.     **Answer**: Paragraph 167 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 167 insofar as the reliability and scientific utility of PEMS can be affected by the setup and maintenance of the system, as well as by the rigor and care in the execution of the tests themselves. BMW AG denies all remaining allegations in Paragraph 167.

168.     PEMS testing was also used by CAFEE at West Virginia University to test light duty vehicles under a contract from the International Council on Clean Transportation ("ICCT"). CAFEE relied primarily on PEMs testing and in the process uncovered the fact that Volkswagen vehicles were not meeting emissions standards. The ICCT contract with CAFEE mandates that CAFEE use PEMs.

168.     **Answer**: BMW AG denies the allegations in Paragraph 168 insofar as those allegations refer to a study and refers to the original source materials for a complete and accurate statement of their contents and context.

169.     PEMS and dynamometer testing was performed on two model year 2012 BMW X5 xDrive35d's (diesel X5), one model year 2011 BMW X5 xDrive35d (diesel X5), two model year 2011 BMW 335d's (diesel 335), and one model year 2012 X5 xDrive35i (gasoline X5). The specifics for each vehicle are detailed in Table 1 below.

**Table 1:  List of Vehicles Tested**

| Vehicle ID | Year | Model | Starting Mileage | EPA/CARB Test Group |
|---|---|---|---|---|
| 2012 X5 Diesel A | 2012 | X5 xDrive35d | 58,323 | CBMXT03.0M57 |
| 2012 X5 Diesel B | 2012 | X5 xDrive35d | 60,100 | CBMXT03.0M57 |
| 2011 X5 Diesel | 2011 | X5 xDrive35d | 44,439 | BBMXT03.0M57 |
| 2011 335 Diesel A | 2011 | 335d | 70,984 | BBMXV03.0M57 |
| 2011 335 Diesel B | 2011 | 335d | 62,890 | BBMXV03.0M57 |
| 2012 X5 Gasoline | 2012 | X5 xDrive35i | 73,029 | CBMXT03.0E70 |

169.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.  BMW AG also denies the allegations in Paragraph 169 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

170.   All six of these vehicles are certified to EPA Tier 2 Bin 5 and California LEV II SULEV standards.  The NOx certification limits associated with those standards are shown in Table 2 below.  The useful life for all six vehicles is 120,000 miles.  The listed test cycles are explained in greater detail in the next section.  In general, the FTP reflects city driving while the HWFET reflects highway driving.  As can be seen, the standard is established at both 50,000 miles, which is part way through full useful life, and at 120,000.  The higher limits at full useful life allow for some degradation of the emission control system performance.

**Table 2: Tier 2 Bin5/SULEV NOx Emission Standards Applicable to All Vehicles**

| Mileage | FTP Test Cycle NOx Standard (City Driving) | HWFET Test Cycle NOx Standard (Highway Driving) |
|---|---|---|
| 50,000 | 50 mg/mile | 70 mg/mile |
| 120,000 | 70 mg/mile | 90 mg/mile |

170.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.  BMW AG also denies the allegations in Paragraph 170 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

171.    All six test vehicles were selected to be close to the 50,000 mile standard within practical limits.  The vehicles were carefully screened prior to testing to ensure they had been properly maintained according to the BMW recommended service guidelines.  The vehicles were also screened for fault codes to ensure the emission control system was operating as intended and without active faults.

171.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

172.    All six vehicles are subject to rigorous on-board diagnostics (OBD) requirements that constantly monitor the emission control system.  These standards were put in place to ensure that the vehicle can detect a degraded emission control system.  OBD standards require that the vehicle illuminate the malfunction indicator lamp (MIL) if deterioration is detected in the emission control system.  Given that the vehicles are certified to a standard at 50,000 miles, the assumption should be that any vehicle near that mileage and without any active fault codes should meet those emission standards.  The vehicles were deliberately selected with mileage near the 50,000 mile standard to ensure that direct comparison with the emission standard is valid.  Every attempt was made to select representative vehicles that were free from any potential emission control system defects.

172.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

173.    Furthermore, it should be noted that BMW used only one vehicle to certify the entire model year of each vehicle.  For the range of X5 diesels from 2009 to 2013, BMW used vehicle number LJ95006 as representative of emissions for all model years.  For the range of 335 diesels from 2009 to 2011, BMW used vehicle number A265015 as representative of emissions for all model years.[11]  So each time BMW applied for a certificate for a new model year, it used the test results from the same X5 and same 335.  It was allowed to do so if it certified there was no material change in the prior model year to the new model year.

173.    **Answer**:  Paragraph 173 of the FAC states legal conclusions and arguments to

which BMW AG need not respond.  To the extent a response is required, BMW AG admits that

the emissions test results from one BMW 335d vehicle were used when applying for a certificate

of conformity for model years 2009-2011.  BMW AG denies all remaining allegations in Paragraph

173.

---

[11] https://www.epa.gov/compliance-and-fuel-economy-data/annual-certification-data- vehicles-engines-and-equipment

## 2.   Dynamometer Testing

174.    All five of the diesel vehicles were tested over the FTP-75 and HWFET dynamometer ("dyno") test cycles used for vehicle certification using a CFR compliant laboratory. The test cycles are described below.

174.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

### a.    FTP-75

175.    The test cycle for the FTP-75, shown as target speed versus time, is shown in Figure 1.[12]  The cycle simulates an urban route with frequent stops, combined with both a cold and a hot start transient phase.  The cycle lasts 1,877 seconds (about 31 min) and covers a distance of 11.04 miles at an average speed of 21.2 mph.

175.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.  BMW AG also denies the allegations in Paragraph 175 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

176.    The cycle begins with a "Cold Start Phase" (often referred to as Phase 1) where the vehicle is tested after sitting without running until all components cool down to the test cell temperature (i.e. the engine is completely cold).  This portion of the test poses challenges from an emissions standpoint because it takes some time for the catalysts in the aftertreatment system to reach the operating temperatures needed to reduce emissions.  In the portion of the cycle before the catalysts reach their minimum operating temperature (also called the lightoff temperature), emissions of NOx and other pollutants are relatively high.  This phase of the test is meant to quantify the impact of emissions when a vehicle is started from a completely cold state.

176.    **Answer**:  BMW AG denies the allegations in Paragraph 176 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

---

[12] https://www.epa.gov/sites/production/files/2015-10/ftpdds.gif

177.    During the "Transient Phase" (Phase 2), the vehicle has achieved normal operating temperature.  The speed profile is largely reflective of stop and go traffic in city driving conditions.

177.    **Answer**:  BMW AG denies the allegations in Paragraph 177 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 177.

178.    After completion of Phase 2, the engine is turned off and the vehicle is allowed to sit for 9 to 11 minutes.  After this waiting period, the engine is started and the "Hot Start Phase" (Phase 3) begins.  The test trace for Phase 3 is identical to Phase 1.  Phase 3 is meant to quantify the emissions of starting a vehicle that is already mostly warmed up.  The challenges of a hot start are similar to a cold start, though less severe because most of the exhaust systems remain relatively hot during the 9-11 minute waiting period.

178.    **Answer**:  BMW AG denies the allegations in Paragraph 178 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 178.

179.    Regulations require that this test must be conducted at a laboratory temperature ranging from 68 to 86°F.[13]

---

[13] 40 CFR § 1066.420



Figure 1: FTP-75 emissions test cycle.

179.   **Answer**:  BMW AG denies the allegations in Paragraph 179 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 179.

**b.**   **HWFET**

180.   The HWFET (Highway Fuel Economy Test) is primarily designed to represent highway driving conditions under 60 mph, see Figure 2.[14]  Although, as the name implies, the test is used to assess highway fuel economy, vehicles are subject to emission standards on this cycle as well.  The vehicle is first preconditioned by running one HWFET cycle.  After 15 seconds of idle, the emissions test is started and the HWFET is run again.[15]

180.   **Answer**:  BMW AG denies the allegations in Paragraph 180 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the

---

[14] https://www.epa.gov/sites/production/files/2015-10/hwfetdds.gif

[15] 40 CFR § 1066.840

applicable original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 180.

181.    The cycle lasts 765 seconds (about 12.75 min) and covers a distance of 10.26 miles at an average speed of 48.3 mph.  Compared to the FTP-75, the test operates at relatively constant speed, though there are a number of small acceleration events.

181.    **Answer**:  BMW AG denies the allegations in Paragraph 181 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 181.

182.    This test can be conducted at any laboratory temperature ranging from 68 to 86°F.[13]



Figure 2: HWFET emissions test cycle.

182.    **Answer**:  BMW AG denies the allegations in Paragraph 182 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 182.

183.    The individual phase and composite results are shown on Table 3 below.  The composite result is compared to the 50,000 mile standard, which is deemed to be most relevant to

the test vehicles.  Note that dynamometer testing was not performed on the 2012 X5 gasoline vehicle.

**Table 3:  FTP-75 NOx results for five diesel BMW vehicles tested.**

| Vehicle ID | Phase 1 (mg/mile) | Phase 2 (mg/mile) | Phase 3 (mg/mile) | Composite (mg/mile) | Standard (mg/mile) |
|---|---|---|---|---|---|
| 2012 X5 Diesel A | 200 | 23 | 87 | 78 | 50 |
| 2012 X5 Diesel B | 210 | 51 | 97 | 97 | 50 |
| 2011 X5 Diesel | 134 | 28 | 22 | 37 | 50 |
| 2011 335 Diesel A | 208 | 66 | 124 | 111 | 50 |
| 2011 335 Diesel B | 163 | 18 | 50 | 57 | 50 |

183.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

184.    In general, emissions are lowest during Phase 2 when the vehicles are fully warmed up.  Emissions are highest during the cold start phase, as expected.  The hot start phase is generally second highest in emissions, as expected.  Direct comparisons are made to these various phases in later sections where testing is conducted on-road using PEMS to simulate those specific phases in real-world operation.

184.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

185.    The results from the HWFET dyno testing are presented in Table 4.  All five vehicles pass this highway test cycle, with emissions generally half the standard or less.  As with the FTP-75 testing, direct comparisons will be made to the dynamometer test results in later sections describing on-road testing with PEMS.

**Table 4:  HWFET NOx results for five diesel BMW vehicles tested.**

| Vehicle ID | Test Result (mg/mile) | Standard (mg/mile) |
|---|---|---|
| 2012 X5 Diesel A | 30 | 70 |
| 2012 X5 Diesel B | 28 | 70 |
| 2011 X5 Diesel | 10 | 70 |
| 2011 335 Diesel A | 37 | 70 |
| 2011 335 Diesel B | 6 | 70 |

185.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

111

### 3.     PEMS Testing Overview

#### a.     City Driving

186.    PEMS Testing was conducted in city driving conditions with the goal of closely approximating the speeds and aggressiveness of the FTP-75 certification cycle. Recognizing that emissions can increase if the drive style is aggressive, every attempt was made to drive the vehicle with conservative, soft accelerations. In addition, the vehicles were driven to control the average test speed to speeds approximating those in the FTP-75 test.

186.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

187.    As previously discussed, the average speed of the FTP-75 across all three phases is 21.2 mph. Great care was taken to ensure city driving speeds would closely approximate this speed in real world testing. The data was analyzed to account for changing road grades and vehicle speeds, allowing flat road results at various speeds and results on hills to be analyzed independently to account for the effects of each variable. In general, any individual data point is constrained to have a length of greater than 3.6 miles, which is the length of the shortest phase of the FTP-75 (Phases 1 and 3). Emissions over very short periods of driving can often be quite high (for example a 10-second sharp acceleration), so results are averaged over longer distances to ensure the data isn't biased toward very short-term transient events with high emissions.

187.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

188.    In addition to conducting the PEMS tests with careful control over the target average speed, the aggressiveness of the driving was carefully controlled. The aggressiveness of a driving pattern can be analyzed using a methodology called Relative Positive Acceleration (RPA)[16, 17, 18]. This methodology was used by West Virginia University in their analysis of Volkswagen diesels using PEMS. In general, the larger the RPA, the more aggressive the driving and the sharper the acceleration events. Conversely, smaller RPA values are reflective of conservative driving with relatively light accelerations. Great care was taken to ensure the RPA values in PEMS testing were controlled to values less than the FTP-75. The results from PEMS testing are therefore conservative.

---

[16] Thompson, Gregory J., et. al. "In-Use Emissions Testing of Light-Duty Diesel Vehicles in the United States," CAFEE publication, May 15, 2014.

[17] Weiss, M., Bonnel, P., Hummel, R., Manfredi, U., Colombo, R., Lanappe, G., Le Lijour, P., and Sculati, M., "Analyzing on-road emissions of light-duty vehicles with Portable Emission Measurement Systems (PEMS)," JRC Scientific and Technical Reports, EUR 24697 EN, (2011).

[18] Ericsson, E., "Variability in urban driving patterns," Transportation Research Part D, Vol. 5, pp. 337-354, (2000).

188.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG also denies the allegations in Paragraph 188 insofar as those allegations refer to a study and refers to the original source materials for a complete and accurate statement of their contents and context.

189.   The vast majority of the city driving tests are conducted with the vehicle fully warmed up and emission results from these tests are therefore most comparable to Phase 2 of the FTP-75.  Cold and hot starts are analyzed separately.

189.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.  BMW AG denies the allegations in Paragraph 189 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 189.

**4.   Highway Driving**

190.   Highway testing was generally conducted at a steady speed of 60 mph, though certain test segments cover higher speeds.  Testing was conducted in this way as a surrogate for the HWFET test cycle.  This cycle is not a constant speed cycle, though 47% of the cycle covers speeds between 50 mph and 60 mph.  There are, however, several acceleration events on the HWFET that increase the overall aggressiveness of the cycle relative to the steady speed PEMS testing. So, while PEMS testing is conducted at the upper end of the speed range for that test cycle, acceleration events during PEMS testing are limited and 60 mph is a reasonable surrogate for the HWFET cycle.

190.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.  BMW AG denies the allegations in Paragraph 190 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 190.

191.    Furthermore, steady state vehicle operation represents an ideal condition for an emission control system since no variables are changing.  In that case, emission controls are expected to be more efficient than in transient conditions where vehicle speed and load are constantly changing.  In the United States, highway speed limits range between 55 mph to 85 mph. A speed of 60 mph is considered to be conservatively low from an emissions standpoint, where drag forces are relatively low compared to higher speeds.

191.    **Answer**:  BMW AG denies the allegations in Paragraph 191 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 191.

### 5.    Overall City PEMS Results

192.    The overall PEMS results for city driving conditions are presented in Table 5.  The vast majority of the mileage accumulated in city driving tests was done with the vehicle fully warmed up and so the PEMS results are compared with Phase 2 of the FTP-75.  In all cases, the diesel PEMS results are 3 times the results found on the dynamometer during certification testing and in all cases the results exceed the emission standard.  By contrast, the gasoline X5 average NOx emission rate is 33 mg/mile, well below the 50 mg/mile standard.  Recall that all six vehicles are certified to the same Tier 2 Bin 5 standard but the real-world NOx emissions of the five diesel vehicles are consistently higher than with the gasoline counterpart.

**Table 5:  Overall city driving PEMS results for five BMW diesels and one BMW gasoline.**

| Vehicle ID | Miles Driven | PEMS NOx Average (mg/mile) | PEMS NOx Maximum (mg/mile) | FTP-75 Phase 2 NOx (mg/mile) | Standard (mg/mile) | Factor Above Standard |
|---|---|---|---|---|---|---|
| 2012 X5 Diesel A | 1,236 | 374 | 3,664 | 23 | 50 | 7.5 |
| 2012 X5 Diesel B | 498 | 152 | 875 | 51 | 50 | 3.0 |
| 2011 X5 Diesel | 455 | 152 | 1,261 | 28 | 50 | 3.0 |
| 2011 335 Diesel A | 328 | 165 | 721 | 66 | 50 | 3.3 |
| 2011 335 Diesel B | 515 | 72 | 454 | 18 | 50 | 1.4 |
| 2012 X5 Gasoline | 459 | 33 | 532 | N/A | 50 | Below Standard |

192.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

193.    In general, NOx emissions from 2012 X5 Diesel A are significantly higher than with the other vehicles, being on average 7.5 times the standard.  As will be shown, this higher number is the result of a greater number of miles driven in conditions where defeat devices with very high NOx emissions are active.

193.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

194.    Similarly, the highway PEMS results are presented in Table 6.  With the diesel vehicles, all but one exceed the 70 mg/mile highway standard in real-world PEMS testing.  The 2012 X5 Diesel A is 3.4 times the standard, with emissions much higher than the other diesels.  As with the city driving results, this number is reflective of more miles driven in conditions where higher emission defeat devices are active.  In all cases with the diesel vehicles, emissions in steady highway conditions are at least a factor of 2.8 higher than the emissions measured on the dynamometer.  The gasoline X5 not only meets the standard but the real-world NOx emissions are lower than those reported in the application for certification for the HWFET cycle.  Of the five diesel vehicles tested, only the 2011 335 Diesel B has real world highway emissions below the standard, though those emissions are 8 times higher than emissions measured on the HWFET cycle, indicating that the vehicle has higher emissions in the real-world than on the dynamometer.

**Table 6:  Overall highway driving PEMS results for five BMW diesels and one BMW gasoline.**

| Vehicle ID | Miles Driven | PEMS NOx Average (mg/mile) | PEMS NOx Maximum (mg/mile) | HWFET NOx (mg/mile) | Standard (mg/mile) | Factor Above Standard |
|---|---|---|---|---|---|---|
| 2012 X5 Diesel A | 5,167 | 240 | 2,365 | 30 | 70 | 3.4 |
| 2012 X5 Diesel B | 1,709 | 91 | 936 | 28 | 70 | 1.3 |
| 2011 X5 Diesel | 1,461 | 88 | 1,213 | 10 | 70 | 1.3 |
| 2011 335 Diesel A | 581 | 102 | 532 | 37 | 70 | 1.5 |
| 2011 335 Diesel B | 738 | 48 | 269 | 6 | 70 | Below Standard |
| 2012 X5 Gasoline | 1,820 | 26 | 85 | 52[19] | 70 | Below Standard |

194.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

---

[19] Result from the application for certification,
https://iaspub.epa.gov/otaqpub/display_file.jsp?docid=25761&flag=1.

195.    Again, it should be noted that prevailing seasonal weather conditions for all diesel vehicles except for 2012 X5 Diesel A precluded testing in conditions where the highest emission defeat devices are active.  It was not possible to test the other diesel vehicles in the cold weather conditions where real-world conditions are highest because the test campaign for the remaining four diesel vehicles was conducted in the summer months.  The real-world averages would be much higher if testing covered those colder temperature ranges.

### 6.    Ambient Temperature Defeat Device

195.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

196.    Extensive testing was conducted on 2012 X5 Diesel A and 2012 X5 gasoline across a wide variety of ambient temperature conditions ranging from 6°F to 93°F.  As can be seen in Figure 3, NOx emissions are strongly dependent on ambient temperature, with increases to levels as high as 1,518 mg/mile as the temperature drops below 68°F, the lower limit of the certification test window.  In the analysis, test segments below 3.6 miles are excluded (shorter than a phase of the FTP); emissions can be very high even in properly operating vehicles over a very short test segment.  Cold start and hot start emissions are also excluded from the analysis.  Only test segments conducted on flat roads with grades between -0.3% and 0.3% are included.  Active regenerations (discussed later), which lead to very high NOx emissions, were also excluded.



**Figure 3: NOx emissions as a function of ambient temperature in city driving conditions for 2012 X5 Diesel A. Certification limit shown in red.**

196.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

197.    The average emissions for various temperature windows are shown in Table 7, along with various parameters of the emission controls system.  As temperature decreases from the certification window, emissions increase from 190 mg/mile in the certification window to as high as 526 mg/mile on average in the window between 11 and 30°F.  The higher emissions are a result of decreasing EGR rate as temperature decreases.  In this case the EGR valve position is used as a surrogate for the actual EGR rate, though they are directly related.  With the EGR valve fully closed (0%), no exhaust gas is recirculated.  As the temperature decreases from the certification window, the high pressure EGR valve position is moved from 43.2% on average to 34.6%.  In the certification temperature window, the low pressure EGR valve position is 43.5%. Below 50°F, low pressure EGR is disabled completely, as reflected by the near-zero valve positions.  EGR can only be disabled in this fashion by software commands.

**Table 7:  PEMS results for various ambient temperatures along with emission control system operating parameters, city conditions.**

| Ambient Temperature | NOx (mg/mile) | HP EGR (%) | LP EGR (%) | Engine-Out NOx (mg/mile) | SCR (%) |
|---|---|---|---|---|---|
| < 10°F | Not tested | | | | |
| 11-30°F | 526 | 34.6 | 0.1 | 1,999 | 74% |
| 31-50°F | 286 | 43.6 | 3.5 | 1,497 | 81% |
| 50-68°F | 269 | 47.1 | 31.4 | 641 | 58% |
| 68-86°F (certification window) | 190 | 43.2 | 43.5 | 995 | 82% |
| >86°F | 97 | 46.2 | 56.6 | 448 | 65% |

197.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

198.    As a result of the decreases in EGR, engine-out emissions increase from 995 mg/mile in the certification window to 1,999 mg/mile on average between 11 and 30°F.  With decreased SCR efficiency as temperature decreases, the SCR system does not adequately reduce the higher engine-out NOx emissions and tailpipe NOx emissions increase dramatically as a result.

198.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

199.    The 2012 X5 Gasoline was tested over a range of ambient temperatures in city driving conditions from 0°F to 91°F.  As with the diesel, cold starts are excluded from the analysis. However, road grades are not; the vehicle is capable of maintaining low emissions even on hills (the diesels generally have high NOx emissions on hills, as discussed later).  The results are shown in Figure 4. For the gasoline X5, NOx emissions are not a function of temperature.  NOx emissions are maintained below the standard throughout the temperature range tested.

117



**Figure 4: NOx emissions as a function of ambient temperature in city driving conditions for 2012 X5 Gasoline. Certification limit shown in red.**

199.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

200.    The results for highway testing of 2012 X5 Diesel A are show in Figure 5 and Figure 6.  These two plots display the same data.  Figure 6 is zoomed in on the y-axis to remove the highest emission rates at low temperature to better see the trend as temperature decreases.  Cold starts, hot starts, and road grades are excluded from the analysis.  Active regenerations were also excluded.

200.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

201.    As the city driving conditions, NOx emissions are a strong function of ambient temperature, with levels as high as 2,365 mg/mile at temperatures below 10°F.  Emissions also sharply increase as the temperature exceeds the upper limit of the certification test window, 86°F. For context, the oldest publicly available certification document for a BMW dates from 1972 for the BMW model 2002.  The emission certification value for that vehicle was 2,100 mg/mile NOx.[20]

---

[20] https://ww3.arb.ca.gov/msprog/onroad/cert/pcldtmdv/1972/bmw_pc_a0010000_1d98_ta0.pdf

At temperatures below 10°F, emissions from the 2012 X5 diesel are higher than an emission standard that is nearly 50 years old.



**Figure 5: NOx emissions as a function of ambient temperature in highway driving conditions for 2012 X5 Diesel A. Certification limit shown in red.**



**Figure 6: NOx emissions as a function of ambient temperature in highway driving conditions for 2012 X5 Diesel A. Certification limit shown in red. Zoomed in compared to Figure 5 to better show trend.**

201.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

119

202.     As with the city driving conditions, the high pressure and low pressure EGR rates are systematically reduced with decreasing ambient temperature. Below 10°F, the high pressure EGR system is disabled. Below 50°F, the low pressure EGR system is disabled. As a result, engine-out NOx emissions increase with decreasing ambient temperature from 463 mg/mile in the certification temperature window to 3,356 mg/mile below 10°F. The SCR efficiency is also systemically reduced as ambient temperature decreases, from an efficiency of 81% in the certification window to 46% at temperatures below 10°F. Below 10°F, NOx emissions are 1,853 mg/mile on average, or more than 26 times the standard. In the temperature window from 11 to 30°F, the average emission rate of 499 mg/mile is 7 times the standard. In the range between 31 and 50°F, the emission rate is 221 mg/mile on average, or 3.2 times the standard.

**Table 8:  PEMS results for various ambient temperatures along with emission control system operating parameters, highway conditions.**

| Ambient Temperature | NOx (mg/mile) | HP EGR (%) | LP EGR (%) | Engine-Out NOx (mg/mile) | SCR (%) |
|---|---|---|---|---|---|
| < 10°F | 1,853 | 1.0 | 0.0 | 3,356 | 46% |
| 11-30°F | 499 | 25.1 | 0.0 | 1,800 | 74% |
| 31-50°F | 221 | 38.9 | 0.1 | 994 | 77% |
| 50-68°F | 120 | 56.6 | 16.1 | 379 | 69% |
| 68-86°F (certification window) | 85 | 35.9 | 59.7 | 463 | 81% |
| >86°F | 167 | 38.0 | 61.7 | 394 | 54% |

202.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

203.     It should be noted that this reduction in EGR cannot be due to a system malfunction. Not only is the EGR system monitored by the OBD to ensure it is operational, but the valve positions reported above are the *commanded* positions sent from the Bosch EDC-17 to the EGR valves. Each EGR valve has a position sensor that reports back the position of the EGR valve to ensure the actual EGR valve position matches up with the commanded valve position.

203.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

204.     Furthermore, the SCR system is monitored by the OBD system. The SCR system efficiency is directly related to the amount of urea injected into the SCR system, which is controlled by the EDC-17. The NOx sensors in the exhaust allow the system to perform diagnostic checks to ensure the SCR system is performing as designed.

204.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

205.   The 2012 X5 Gasoline was also tested across a broad range of ambient temperature conditions in highway testing.  The results are shown in Figure 7.  As with the city driving, hills are included with the gasoline vehicle since this vehicle's emissions are not a function of road grade (discussed later).  NOx emissions are not a function of ambient temperature for the 2012 X5 Gasoline.  In fact, emissions are well below the standard across the entire temperature range.  At temperatures below 10°F, the X5 gasoline emissions are 12 mg/mile; the diesel NOx emissions in the same temperature window are 154 times higher on average.



**Figure 7: NOx emissions as a function of ambient temperature in highway driving conditions for 2012 X5 Gasoline. Certification limit shown in red.**

205.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

**E.**    **Ambient Temperature Software Command in the Other Four BMW Diesel Cars Results in Excess Emissions and Reveals a Temperature Defeat Device.**

206.    As previously discussed, because the test campaign for the other four BMW diesel passenger cars took place in the summer, it was not possible to test the cold ambient temperature conditions where emissions were observed to be highest on the 2012 BMW X5 Diesel A.  In general, it was only possible to test temperatures from the mid-50s to low 90s Fahrenheit.

206.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

**1.**    **City Driving Conditions**

207.    The temperature dependence of 2012 X5 Diesel B, 2011 X5 Diesel, 2011 335 Diesel A, and 2011 335 Diesel B is shown in the figures below for city driving conditions.  As with previous analysis, cold start, hot start, road grades, and active regenerations are excluded from the analysis.

207.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

208.    For the 2012 X5 Diesel B, Figure 8, the emissions increase as temperatures drop below the 68°F certification window.  Emissions increase on either side of the certification temperature window (68-86°F) for the 2011 X5 Diesel, Figure 9, Figure 10, and Figure 11.



**Figure 8: NOx emissions as a function of ambient temperature in city driving conditions for 2012 X5 Diesel B. Certification limit shown in red.**



**Figure 9: NOx emissions as a function of ambient temperature in city driving conditions for 2011 X5 Diesel. Certification limit shown in red.**



**Figure 10: NOx emissions as a function of ambient temperature in city driving conditions for 2011 335 Diesel A. Certification limit shown in red.**



**Figure 11: NOx emissions as a function of ambient temperature in city driving conditions for 2011 335 Diesel B. Certification limit shown in red.**

208.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

124

### a.      Highway Driving Conditions

209.    The temperature dependence of 2012 X5 Diesel B, 2011 X5 Diesel, 2011 335 Diesel A, and 2011 335 Diesel B is shown in the figures below for highway driving conditions. As with previous analysis, cold start, hot start, road grades, and active regenerations are excluded from the analysis.

209.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

210.    The results are shown in Figure 12 through Figure 15 below.  As with the city results, because of the timing of the testing, a wide enough temperature window was not tested to show the effects of reduced EGR and SCR at temperatures outside the certification test window.



**Figure 12: NOx emissions as a function of ambient temperature in highway driving conditions for 2012 X5 Diesel B. Certification limit shown in red.**



**Figure 13: NOx emissions as a function of ambient temperature in highway driving conditions for 2011 X5 Diesel. Certification limit shown in red.**



**Figure 14: NOx emissions as a function of ambient temperature in highway driving conditions for 2011 335 Diesel A. Certification limit shown in red.**



**Figure 15: NOx emissions as a function of ambient temperature in highway driving conditions for 2011 335 Diesel B. Certification limit shown in red.**

210.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

### 2.      City Driving Comparison to Phase 2 of FTP-75

211.   As previously discussed, the vast majority of the city driving is conducted with the vehicle fully warmed up, and thus a comparison to Phase 2 of the FTP is most appropriate.  If the results are filtered to remove cold starts, hot starts, active regenerations, and road grades, the PEMS results can be compared to Phase 2 of the FTP-75 directly.  As shown in Table 9, the emissions on the road with PEMS testing under conditions that are equivalent to the FTP-75 both in terms of average speed and RPA (aggressiveness of driving) are higher than emissions measured on the FTP-75.  This indicates that the vehicles operate differently in the real world than on the dynamometer.  In all cases, emissions are at least 1.9 times higher in the real world than on the dynamometer.  Again, the higher emissions of the 2012 X5 Diesel A are explained from the additional miles driven with the ambient temperature defeat device active.

**Table 9:  Comparison of PEMS city driving to Phase 2 of the FTP-75.**

| Vehicle ID | Average Speed | PEMS NOx Average (mg/mile) | FTP-75 Phase 2 NOx (mg/mile) | Factor Increase Above FTP |
|---|---|---|---|---|
| 2012 X5 Diesel A | 22.5 | 316 | 23 | 13.7 |
| 2012 X5 Diesel B | 23.7 | 108 | 51 | 2.1 |

| 2011 X5 Diesel | 22.4 | 91 | 28 | 3.3 |
| 2011 335 Diesel A | 24.7 | 128 | 66 | 1.9 |
| 2011 335 Diesel B | 20.5 | 47 | 18 | 2.6 |

211.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

212.   BMW presented the results of the FTP-75 for the X5 at the 2007 Diesel Engine Efficiency and Emissions Research Conference in Detroit.[21]  See Figure 16 below.  The black and green curves are of particular interest here, as they present the concentration of NOx during the FTP-75 as well as the efficiency of the SCR system (i.e. the percent of the NOx that is reduced).  As previously mentioned, NOx concentrations (the black line) are particularly high during the cold start, Phase 1.  This is the first 505 seconds of the plot.  During that time, because exhaust temperatures are relatively low and the SCR catalyst is not yet active, NOx emissions are high.  Upon completion of Phase 1, the SCR efficiency (green line) is greater than 99%.  This is the case all the way through Phase 2 to 1372 seconds, where Phase 2 ends.  At about 2000 seconds, Phase 3 begins.  Again, NOx concentrations temporarily increase while the exhaust catalysts warm up, but the effect is relatively minor.  As can be seen on the test, once the exhaust system is heated up, the SCR system is capable of near 100% reduction in NOx.  The vast majority of the NOx from the test cycle comes from the cold start, as previously explained.  The resulting weighted average NOx rate is 43 mg/mile, just under the 50 mg/mile standard.

212.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

213.   In short, BMW's own technical presentations show that, once the SCR system is heated to operating temperature, the SCR system effectiveness is near 100%.  In its own training documentation, BMW states:

> "Selective catalytic reduction is currently the most effective system for reducing nitrogen oxides (NOx).  During operation, it achieves an efficiency of almost 100% and approx. 90% over the entire vehicle operating range.  The difference is attributed to the time the system requires until it is fully operative after a cold start."[22]

---

[21] Mattes, Wolfgang. "The BMW Approach to Tier 2 Bin 5," DEER Conference, Detroit, MI, 2007.

[22] "Technical Training - Product Information. Advanced Diesel with BluePerformance, 335d, Xdrive35d," BMW AG, June 2008.

213.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

214.   Simply put, the SCR can reduce NOx to meet emissions standards if the effectiveness of the SCR is not programmed to be derated.



**Figure 16: Results from TFP-75 Testing of BMW X5**

214.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

215.   Using proprietary software, plaintiffs' experts conducted the FTP-75 driving cycle on a perfectly flat and isolated road, with the emissions measured with PEMS. This testing was conducted on 2012 X5 Diesel A. The vehicle was allowed to soak for 8 hours prior to the test, and testing was conducted at a temperature at or near 68°F. During the stabilized phase, Phase 2, emissions were found to be 9 and 38 mg/mile for the two tests conducted, for an average of 24 mg/mile. This result corresponds closely with the result found on the dynamometer (23 mg/mile). This result suggests that the vehicle is capable of significant emission reductions both on the road and on the dynamometer.

215.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

216.   Testing on the FTP-75 requires following a very specific "trace" of required speed for a given time. However, when testing is conducted under conditions that have the same average

speed and RPA as Phase 2 of the FTP-75 – but a different and arbitrary test trace – emissions increase dramatically.

216.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

217.    For tests conducted *with the vehicle fully warmed up*, and average speeds between 16 and 20 mph (the average speed of Phase 2 is 16.1 mph), the emissions are 271 mg/mile on average in the temperature band near the certification temperature window.  Note that test drive lengths were *at least* 4 miles, and up to 12.1 miles, to ensure statistical significance.  Phase 2 is 3.86 miles.  RPA values were maintained at or below those levels experienced on the FTP.  In other words, when the test trace is arbitrarily changed to another trace with a similar profile, emissions increase from an average of 24 mg/mile to 298 mg/mile, or by a factor of 10.

217.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

218.    The vehicle is therefore able to detect the certification test cycle and adjust the emissions performance when it "knows" the test cycle is not being run.  When tests conducted at all stop and go speeds and all ambient temperature conditions, emissions are approximately 316 mg/mile.

218.    **Answer**  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

219.    In all cases, the high pressure EGR rates are relatively consistent from test condition to test condition.  However, compared to the FTP Phase 2 test run on the road, where the SCR NOx reduction is 93%, the reduction on a comparable (but arbitrary) test cycle is 58%.  The numbers are similar when all average cycle speeds are considered.  The vehicle detects the test trace and reduces the effectiveness of the SCR system when it detects the FTP-75 test cycle is not being run.  The amount of low pressure EGR is also reduced from the FTP Phase 2 test cycle from 53.2% to between 32% and 37% when the test cycle is changed to an arbitrary – but, again, parametrically similar – speed trace.  Significantly, for cases where the arbitrary cycle was run, the SCR reduction is nowhere near the 90% claimed by BMW in its own technical literature and demonstrated on the FTP-75.  There is no technical justification for this change in SCR performance on similar driving cycles.

**Table 10:  Comparison of on-road PEMS FTP test to other PEMS testing in city driving conditions.**

| Test Condition | NOx (mg/mile) | Average HP EGR Rate | Average LP EGR Rate | Average SCR Reduction Efficiency (%) |
|---|---|---|---|---|
| FTP Phase 2 Driven on the Road | 24 | 47.6% | 53.2% | 93% |

| | | | | |
|---|---|---|---|---|
| 16-20 mph, arbitrary cycle | 294 | 49.8% | 36.9% | 58% |
| All speeds, arbitrary cycle | 291 | 48.4% | 32.1% | 57% |

219.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

### 3.   Cold and Hot Start Emissions

220.   The vehicles were also tested in cold start conditions to simulate Phase 1 of the
FTP-75.  The vehicles were started from a completely cold state, as with the FTP-75 and the test
segments were controlled to a length of 3.6 miles, the length of Phase 1 of the FTP.  The average
speed was also controlled to approximate the average speed of Phase 1 of the FTP-75, 25.6 mph.
The results are shown in Table 11.

220.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

221.   For the three X5 diesels, cold start emissions are anywhere from 1.6 to 3.8 times
the emissions found during the cold start test on the dynamometer.  Cold start emissions are
important because trips of short duration have NOx emissions that are dominated by cold start
behavior.

221.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

222.   For the 335 diesels, the effect is less dramatic, though emissions are still 1.3 to 1.5
times the values found when tested on the dynamometer.

**Table 11:  Comparison of PEMS cold start emissions to the cold start phase of the FTP-75,
Phase 1.**

| Vehicle ID | Avg. Speed (mph) | PEMS Cold Starts (mg/mile) | FTP-75 Phase 1 (mg/mile) | Factor Above Dynamometer Result |
|---|---|---|---|---|
| 2012 X5 Diesel A | 23.9 | 667 | 200 | 3.3 |
| 2012 X5 Diesel B | 214 | 340 | 210 | 1.6 |
| 2011 X5 Diesel | 21.0 | 511 | 134 | 3.8 |
| 2011 335 Diesel A | 17.8 | 317 | 208 | 1.5 |
| 2011 335 Diesel B | 19.5 | 209 | 163 | 1.3 |

222.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

223.    Similarly, hot start emissions were analyzed for all 5 vehicles and compared to Phase 3 of the FTP-75, the hot start portion of the FTP-75.  As with Phase 1, the average speed of Phase 3 is 25.6 mph and the phase is 3.6 miles in length.  Tests were controlled to this length, and average speeds were meant to approximate Phase 3 of the FTP-75.

223.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

224.    The results are shown in the table below.  The hot start emissions for the three X5 diesels range from 2.5 to 10.9 times the result on Phase 3 of the FTP-75.  These results are particularly unusual given that, in many cases, the hot starts were performed after only a very short period of time with the engine off.  In that case, the catalysts in the exhaust stream have very little time to cool down and are close to normal operating temperature once the engine is started.

224.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

225.    The 335 diesels range anywhere from 2.5 to 5.9 times the value found on Phase 3 of the FTP-75.

**Table 12:  Comparison of PEMS hot start emissions to the cold start phase of the FTP-75, Phase 3.**

| Vehicle ID | Avg. Speed (mph) | PEMS Hot Starts (mg/mile) | FTP-75 Phase 3 (mg/mile) | Factor Above Dynamometer Result |
|---|---|---|---|---|
| 2012 X5 Diesel A | 36.4 | 468 | 87 | 5.4 |
| 2012 X5 Diesel B | 23.1 | 241 | 97 | 2.5 |
| 2011 X5 Diesel | 22.1 | 239 | 22 | 10.9 |
| 2011 335 Diesel A | 12.9 | 312 | 124 | 2.5 |
| 2011 335 Diesel B | 12 | 296 | 50 | 5.9 |

225.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

226.    These results show that BMW is employing an illegal software defeat strategy on both cold and hot start tests.  Furthermore, these results are consistent with a 2016 study by the

European group Transport and Environment in September 2016 titled, "Dieselgate:  Who? What? How?"[23]  See Figure 17.

226.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  To the extent the allegations relate to vehicles other than the BMW Vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG also denies the allegations in Paragraph 226 insofar as those allegations refer to a study and refers to the original source materials for a complete and accurate statement of their contents and context.

227.    The group finds that BMW engines deploy both "thermal window" (i.e. adjustment of emission controls outside the certification ambient temperature window) and hot start defeat devices on their Euro 6 diesel cars (a European emission standard that requires similar emissions architecture as the US Tier 2 Bin 5 standard).

## Full 'Dirty 50' list of Euro 6

| Brand | Model | Engine | Country of approval | Most suspicious test(s)[13] | Possible defeat strategy to examine |
|-------|-------|--------|---------------------|-----------------------------|-------------------------------------|
| Audi | A8 | 3.0 TDI | DE | 7 | Thermal window (TW) + Test recognition (TR) |
| BMW | 2 Series GT | 216d | DE | 2 + 7 | TW + Hot restart (HR) |
|  | 5 Series VI | 530d |  | 2 |  |
|  | 4 Series | 420d |  | 7 | TW |
|  | X3 | xDrive20d |  |  |  |

Figure 17: Excerpt from Transport and Environment report showing the use of defeat devices in Euro 6 BMW diesel vehicles.

227.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  To the extent the allegations relate to vehicles other than the BMW Vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG also denies the allegations in Paragraph 22 insofar

---

[23]

https://www.transportenvironment.org/sites/te/files/publications/2016_09_Dieselgate_report_who_what_how_FINAL_0.pdf

as those allegations refer to a study and refers to the original source materials for a complete and accurate statement of their contents and context.

### 4. Highway Driving Comparison to HWFET

228.    If cold starts, hot starts, active regenerations, and road grades are removed from the analysis (all of which lead to increased NOx emissions), the highway results at steady speed can be compared directly to the HWFET.  Again, the results of 2012 X5 Diesel A are significantly higher than with the other vehicles because of the larger ambient temperature window tested.  In all cases, the emissions in PEMS testing are higher than the emissions on the dynamometer indicating that the performance on the certification test cycle is not representative of real-world driving conditions.

**Table 13:  Comparison of PEMS testing on the highway and HWFET dynamometer results.**

| Vehicle ID | PEMS NOx Average (mg/mile) | HWFET NOx (mg/mile) | Factor Increase Above HWFET |
|---|---|---|---|
| 2012 X5 Diesel A | 266 | 30 | 8.9 |
| 2012 X5 Diesel B | 54 | 28 | 1.9 |
| 2011 X5 Diesel | 54 | 10 | 5.4 |
| 2011 335 Diesel A | 77 | 37 | 2.1 |
| 2011 335 Diesel B | 31 | 6 | 5.2 |

228.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

### 5. Influence of Road Grade

229.    The NOx emissions were tested as a function of road grade under steady speed conditions.  In the analysis below, cold starts, hot starts, and active regenerations are excluded.  Only ambient temperatures greater than 50°F are included to eliminate the compounding effect of ambient temperature.  The NOx emissions as a function of road grade are shown in Figure 18 through Figure 23.  All five of the vehicles show a very strong dependence on grade.  In general, NOx emissions increase significantly greater than about 1%.  However, the 2012 X5 Gasoline is shown to have no dependence on road grade.  NOx emissions are well below the standard for all grades measured (up to 3.1%).



**Figure 18: NOx emissions as a function of road grade for 2012 X5 Diesel A. Red line shows the emission standard.**



**Figure 19: NOx emissions as a function of road grade for 2012 X5 Diesel B. Red line shows the emission standard.**



**Figure 20: NOx emissions as a function of road grade for 2011 X5 Diesel. Red line shows the emission standard.**



**Figure 21: NOx emissions as a function of road grade for 2011 335 Diesel A. Red line shows the emission standard.**



**Figure 22: NOx emissions as a function of road grade for 2011 335 Diesel B. Red line shows the emission standard.**



**Figure 23: NOx emissions as a function of road grade for 2012 X5 Gasoline. Red line shows the emission standard.**

229.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

137

230.    These results are summarized in Table 14.  Virtually all vehicles exceed the 70 mg/mile NOx standard when the road grade rises above 0.4%.  At road grades of 2.1% or more, emissions are more than three times the standard (the only exception being 2011 335 Diesel B because very few data points were collected).  The 2012 X5 Gasoline shows no dependence at all on road grade, and NOx emissions remain quite low even with grades above 3.0%.

**Table 14:  Summary of NOx emissions as a function of road grade for all six vehicles, mg/mile.**

| Road Grade | 2012 X5 Diesel A | 2012 X5 Diesel B | 2011 X5 Diesel | 2011 335 Diesel A | 2011 335 Diesel B | 2012 X5 Gasoline |
|---|---|---|---|---|---|---|
| Flat | 110 | 54 | 54 | 77 | 31 | 28 |
| 0.4% to 1.0% | 129 | 106 | 71 | 145 | 42 | 26 |
| 1.1% to 2.0% | 164 | 149 | 233 | 257 | 147 | 25 |
| 2.1% to 3.0% | 329 | 226 | 600 | 454 | 95 | 22 |
| 3.1% + | 673 | 529 | 589 | 337 | 103 | 19 |

230.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

231.    Table 15 shows the relevant emission control system parameters as a function of road grade for the 2012 X5 Diesel A.  As road grade increases, both high pressure and low pressure EGR rates are reduced, leading to engine out emissions that increase from 325 mg/mile on flat roads to 1,485 mg/mile on roads with grades greater than 3.0%.  The relatively poor SCR efficiency leads to high tailpipe NOx emission numbers.

**Table 15:  2012 X5 Diesel A NOx emissions dependence on road grade as well as emission control system parameters.**

| Road Grade | NOx (mg/mile) | HP EGR (%) | LP EGR (%) | Engine Out NOx (mg/mile) | SCR Efficiency (%) |
|---|---|---|---|---|---|
| Flat | 110 | 39.5 | 33.8 | 325 | 52% |
| 0.4% to 1.0% | 129 | 35.2 | 42.1 | 445 | 69% |
| 1.1% to 2.0% | 164 | 24.8 | 45.9 | 594 | 72% |
| 2.1% to 3.0% | 329 | 15.0 | 34.0 | 821 | 61% |
| 3.1% + | 673 | 13.9 | 29.6 | 1485 | 56% |

231.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

232.    The same behavior is observed with 2012 X5 Diesel B, Table 16, with decreasing rates of high pressure and low pressure EGR as the road grade increases.  The engine-out NOx emissions rise dramatically from 357 mg/mile on flat roads to 1,609 mg/mile with road grades above 3.0%.  The SCR efficiency gradually decreases as well, with the result that tailpipe NOx emissions are 7.6 times the standard when the road grade exceeds 3.0%.  The emissions

138

performance on the dynamometer is expected to reflect real-world driving conditions, and this type of grade is a normally encountered road grade.

**Table 16:  2012 X5 Diesel B NOx emissions dependence on road grade as well as emission control system parameters.**

| Road Grade | NOx (mg/mile) | HP EGR (%) | LP EGR (%) | Engine Out NOx (mg/mile) | SCR Efficiency (%) |
|---|---|---|---|---|---|
| Flat | 54 | 46.5 | 64.1 | 357 | 85% |
| 0.4% to 1.0% | 106 | 33.5 | 64.0 | 499 | 77% |
| 1.1% to 2.0% | 149 | 29.7 | 58.9 | 586 | 74% |
| 2.1% to 3.0% | 226 | 17.2 | 40.1 | 1032 | 79% |
| 3.1% + | 529 | 15.7 | 39.3 | 1609 | 75% |

232.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

233.   The 2011 X5 Diesel continues the trend, Table 17.  Both high and low pressure EGR are reduced, with resulting engine-out NOx emissions increasing from 361 mg/mile to 1,226 mg/mile as the road grade increases to 3.0%.  The SCR efficiency decreases as well, leading to tailpipe NOx emissions 8.4 times the standard with a grade greater than 3.0%.

**Table 17:  2011 X5 Diesel NOx emissions dependence on road grade as well as emission control system parameters.**

| Road Grade | NOx (mg/mile) | HP EGR (%) | LP EGR (%) | Engine Out NOx (mg/mile) | SCR Efficiency (%) |
|---|---|---|---|---|---|
| Flat | 54 | 40.0 | 62.0 | 361 | 85% |
| 0.4% to 1.0% | 71 | 31.1 | 58.9 | 477 | 86% |
| 1.1% to 2.0% | 233 | 21.6 | 46.6 | 678 | 66% |
| 2.1% to 3.0% | 600 | 15.6 | 34.5 | 1279 | 54% |
| 3.1% + | 589 | 8.2 | 28.2 | 1226 | 52% |

233.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

234.   For the 335 diesels, the trend is the same.  For 2011 335 Diesel A, Table 18, the high pressure EGR is reduced as the road grade increases, leading to an increase in engine-out NOx rom 252 mg/mile to 620 mg/mile.  The SCR efficiency is reduced as road grade increases, with tailpipe NOx emissions that are 4.8 times the standard with grades higher than 3.0%.

**Table 18:  2011 335 Diesel A NOx emissions dependence on road grade as well as emission control system parameters.**

| Road Grade | NOx (mg/mile) | HP EGR (%) | Engine Out NOx (mg/mile) | SCR Efficiency (%) |
|---|---|---|---|---|
| Flat | 77 | 83.1 | 252 | 70% |

| | | | |
|---|---|---|---|
| 0.4% to 1.0% | 145 | 76.5 | 345 | 60% |
| 1.1% to 2.0% | 257 | 69.5 | 507 | 51% |
| 2.1% to 3.0% | 454 | 58.9 | 692 | 35% |
| 3.1% + | 337 | 60.2 | 620 | 46% |

234.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

235.   Finally, the results from 2011 335 Diesel B are shown in Table 19.  The operation of the emission control system is consistent with the other vehicles, however.  The high-pressure EGR rate is reduced with increasing road grade, leading to an increase in engine-out NOx emissions from 316 mg/mile to 831 mg/mile.  SCR is generally reduced as road grade increases, with the result that tailpipe NOx emissions are 2.1 times the standard for grades greater than 1.1%.

**Table 19:  2011 335 Diesel B NOx emissions dependence on road grade as well as emission control system parameters.**

| Road Grade | NOx (mg/mile) | HP EGR (%) | Engine Out NOx (mg/mile) | SCR Efficiency (%) |
|---|---|---|---|---|
| Flat | 31 | 80.5 | 316 | 90% |
| 0.4% to 1.0% | 42 | 76.3 | 398 | 90% |
| 1.1% to 2.0% | 147 | 69.3 | 649 | 79% |
| 2.1% to 3.0% | 95 | 64.6 | 770 | 88% |
| 3.1% + | 103 | 56.4 | 831 | 88% |

235.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

236.   Road grades are common on controlled access highways in the United States.  The following plot shows the road grade distribution for 127,000 miles of controlled access highways in the United States[24] and Figure **24** show the road grade distribution for the highways studied. Less than 20% of the highway mileage analyzed is flat.  Roughly 40% of highway mileage in the United States has a grade of 1.0% of more, and roughly 20% of highway mileage has a grade of 2.0% or more.

236.   **Answer**:  BMW AG denies the allegations in Paragraph 236 insofar as those

allegations refer to a study and refers to the original source materials for a complete and accurate

---

[24] Wood, Eric, et. al. "EPA GHG Certification of Medium- and Heavy-Duty Vehicles: Development of Road Grade Profiles Representative of US Controlled Access Highways," NREL Study under Contract DE-AC36-08GO28308, May 2015.

statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph

236.

237.    As described below, all of the BMW diesels used a filter to control diesel soot, and sometimes rely on a process called active regeneration to remove soot.  Active regeneration increases fuel consumption and results in high tailpipe emissions.  Regulators account for the use of active regeneration when certifying a vehicle.  All of the vehicles exceed the permissible active regeneration frequency and exceed NOx limits.

237.    **Answer**:  Paragraph 237 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG admits that model

year 2009-2013 BMW X5 xDrive35d and model year 2009-2001 BMW 335d vehicles utilize a

diesel particulate filter.  BMW AG denies the allegations in Paragraph 237 insofar as those

allegations refer to laws, regulations, and/or published emissions standards, and refers to the

applicable original source materials for a complete and accurate statement of their contents and

context.  BMW AG denies all remaining allegations in Paragraph 237.

238.    In addition to excess NOx, the active regeneration for the X5 diesels results in a decrease in fuel economy from 17.9% to 36% in city driving and 25.2% to 30.4% in highway driving, making these cars have a fuel economy almost the same as a gas car.  The same is true for the 33i diesels.  BMW did not disclose this reduction in fuel economy as a result of frequent active regeneration.

238.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

239.    Based on an analysis of road distribution, it would therefore be expected that emissions from the BMW diesels would be 147 to 257 mg/mile 40% of the time the vehicles are in operation (greater than 1.0% road grade), or 2.1 to 3.7 times the emissions standard.  Emissions would be expected to range from 95 to 600 mg/mile 20% of the time the vehicles are in operation (grade greater than 2.0%), or 1.4 to 8.6 times the emissions standard.

239.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

240.    Approximately 10% of highway mileage has a road grade of 3.0% or more, where emissions can reach levels as high as 103-673 mg/mile, depending on the vehicle, or 1.5 to 9.6 times the emissions standard.

141



**Figure 24: Distribution of road grades for 127,000 miles of controlled access highways in the United States.**

240.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

### 6.   Active Regenerations Results in High Emissions and A Reduction in Fuel Economy

241.   All five BMW diesels use a diesel particulate filter (DPF) to control diesel particulate matter (soot, or PM) emissions.  In normal operation, these DPFs burn off trapped PM using passive oxidation, a catalytic process that occurs at normal diesel exhaust temperatures. However, if the passive regeneration performance is insufficient to remove collected PM, the engine must rely on a process called "active regeneration."  During active regeneration, the engine heats the exhaust to a temperature of approximately 600°C to remove the collected PM without the need for a catalyst.   These events are generally undesirable because they increase fuel consumption and result in very high tailpipe NOx emissions.  By design, active regenerations are supposed to be infrequent events because of their emissions and fuel economy impacts.  Regulators account for the increase in overall NOx attributed to active regeneration using an Infrequent Regeneration Adjustment Factor (IRAF), often called an Upward Adjustment Factor (UAF) and testing reveals active regeneration far in excess of the permissible frequency.

241.   **Answer**:  Paragraph 241 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG admits that model

year 2009-2013 BMW X5 xDrive35d and model year 2009-2001 BMW 335d vehicles utilize a

diesel particulate filter.   BMW AG denies the allegations in Paragraph 241 insofar as those

allegations refer to laws, regulations, and/or published emissions standards, and refers to the

applicable original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 241.

242. The calculation, which is described in CFR 86.004-028 paragraph (i), amounts to a simple weighted average of emissions when active regenerations events are NOT occurring, multiplied by the fraction of time when active regeneration is not occurring, plus the emissions during active regeneration multiplied by the fraction of time active regeneration occurs.

242. **Answer**: BMW AG denies the allegations in Paragraph 242 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 242.

243. The following simple example illustrates a typical calculation:

- Normal emissions as measured on the FTP-75 without active regeneration = 37 mg/mile

- Emissions measured on the FTP-75 with active regeneration = 500 mg/mile

- Fraction of driven miles during which active regeneration occurs = 2%

243. **Answer**: BMW AG denies the allegations in Paragraph 243 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 243.

244. Emissions for certification purposes would therefore be: (37 mg/mile) x 98% + (500 mg/mile) x 2% = 46 mg/mile

244. **Answer**: Paragraph 244 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 244 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate

statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 244.

245.    The difference between the emissions as measured on the FTP-75 and the weighted average emissions that include the impact of active regeneration is called the Upward Adjustment Factor (UAF).  The UAF in this example would be (46 mg/mile – 37 mg/mile) = 9 mg/mile.  It essentially quantifies the increase in NOx due to the long-term time-weighted effect of active regenerations.

245.    **Answer**:  BMW AG denies the allegations in Paragraph 245 insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 245.

246.    When certifying a vehicle, the upward adjustment factor must be added to the emissions certification test results.  The sum of the two must be less than the emission standard.  The following table lists the FTP-75 emission result, UAF, and certification emissions for the relevant vehicle model years.  Note that the certification result is rounded to one significant digit so, for example in model year 2009, $29 + 2 = 31$ is rounded down to 30 mg/mile.  In the certification application, the same upward adjustment factor (2 mg/mile) is added to the HWFET result.

**Table 20:  UAFs for the BMW diesel vehicles.**

| Model Year | FTP-75 result | Upward Adjustment Factor (UAF) | Certification Result (Rounded to One Digit) | Standard |
|---|---|---|---|---|
| 2009 X5 | 29 | 2 | 30 | 50 mg/mile |
| 2010 X5 | 29 | 2 | 30 | 50 mg/mile |
| 2011 X5 | 37 | 2 | 40 | 50 mg/mile |
| 2012 X5 | 37 | 2 | 40 | 50 mg/mile |
| 2013 X5 | 37 | 2 | 40 | 50 mg/mile |
| 2009 335 | 34 | 2 | 40 | 50 mg/mile |
| 2010 335 | 34 | 2 | 40 | 50 mg/mile |
| 2011 335 | 34 | 2 | 40 | 50 mg/mile |

246.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

247.    The active regeneration frequency and emission rates are shown in Table 21 for all five vehicles.  For the three X5 diesels, the average active regeneration rate is 375 mg/mile.  In order to achieve the certification UAF of 2 mg/mile NOx, the regeneration frequency would need to be 0.6% for all model year X5 diesels.  Similarly, the average active regeneration emissions for the 335 diesel are 378 mg/mile.  In order to achieve the UAF of 2 mg/mile NOx, the active regeneration frequency would need to be 0.6% for all model year 335 diesels.

247.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

248.    The fraction of vehicle miles traveled with an active regen is also listed in Table 21.  The regeneration frequency ranges from 5.2% to 8.6% for the X5 diesels, well above the 0.6% frequency allowed by the certification application.  The upward adjustment for NOx ranges from 9 to 23 mg/mile NOx, well above the 2 mg/mile in the certification application.

248.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

249.    Active regeneration frequencies for the 335 diesels are also higher than the values allowed by the 2 mg/mile UAF in the certification application, ranging from 1.3% to 3.7%, with a resulting UAF of 5 to 8 mg/mile.

249.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 5

as if restated herein.

250.    The vehicles should generally have excellent passive regeneration performance when driven on the highway, where exhaust temperatures are sufficient to promote the catalytic oxidation of captured PM.  Excessive city driving can lead to the need for more frequent active regeneration.  However, as can be seen in Table 21, all vehicles were driven with a relatively high percentage of miles on the highway.  For the X5 diesels, the percent of miles drive on the highway range from 76-81%.  For the 335 diesels, that percentage ranges from 59 to 64%.

**Table 21:  Active regeneration emissions and frequency for all five BMW diesel vehicles tested.**

| Model Year | Active Regeneration Emissions | Fraction of Miles with Active Regen | NOx UAF (mg/mile) | Fraction of Miles on Highway |
|---|---|---|---|---|
| 2012 X5 Diesel A | 433 | 5.2% | 9 | 81% |
| 2012 X5 Diesel B | 355 | 8.6% | 23 | 77% |
| 2011 X5 Diesel | 336 | 8.3% | 21 | 76% |
| 2011 335 Diesel A | 484 | 1.3% | 5 | 64% |
| 2011 335 Diesel B | 273 | 3.7% | 8 | 59% |

250.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

251.   In addition to the impact on NOx, the high active regeneration frequency has a negative impact on fuel economy.   During an active regeneration, extra fuel is consumed to heat the exhaust to the temperatures required for non-catalytic removal of the collected PM.   The more frequently active regenerations occur, the greater the impact on overall fuel economy.   The reduction in fuel economy that occurs as a result of active regeneration is quantified for city and highway driving conditions for all five diesel vehicles in Table 22.   For the X5 diesel, the fuel economy reduction ranges from 17.9% to 36.0% in city driving conditions and from 25.2% to 30.4% in highway driving conditions.   In fact, during active regeneration, the fuel economy of the X5 diesels are comparable to the average fuel economy of 2012 X5 Gasoline.   The average highway fuel economy of the diesel X5s during active regeneration is 23.5 mpg, compared to an average measured fuel economy of 24.9 for the gasoline X5.   In city conditions, the average fuel economy during active regeneration is 17.8 mpg for the diesel X5s, compared to a fuel economy of 16.5 mpg for the gasoline X5.

251.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

252.   For the 335 diesels, the city fuel economy reduction ranges from 31.0% to 40.4% in city driving conditions and was measured for 2011 335 Diesel B to be 30.7% in highway driving conditions (no active regenerations were observed for 2011 335 Diesel A in highway testing).

**Table 22:  Fuel economy impact of active regenerations for all five diesel vehicles tested.**

| Model Year | City Fuel Economy, No Regen (mpg) | City Fuel Economy During Active Regen (mpg) | Percent Reduction | Highway Fuel Economy, No Regen (mpg) | Highway Fuel Economy During Active Regen (mpg) | Percent Reduction |
|---|---|---|---|---|---|---|
| 2012 X5 Diesel A | 22.4 | 18.4 | 17.9% | 31.9 | 22.2 | 30.4% |
| 2012 X5 Diesel B | 28.3 | 18.1 | 36.0% | 36.1 | 25.8 | 28.5% |
| 2011 X5 Diesel | 21.2 | 17.0 | 19.8% | 30.1 | 22.5 | 25.2% |
| 2011 335 Diesel A | 26.5 | 15.8 | 40.4% | 43.0 | No Data | N/A |
| 2011 335 Diesel B | 28.7 | 19.8 | 31.0% | 44.3 | 30.7 | 30.7% |

252.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 5 as if restated herein.

F.      **The Bosch EDC-17.**

253.    All modern engines are integrated with sophisticated computer components to manage the vehicle's operation, such as an electronic diesel control.  Bosch GmbH tested, manufactured, and sold the EDC system used by Volkswagen, FCA, Mercedes, Ford, and General Motors.  This system is more formally referred to as the Electronic Diesel Control Unit 17 ("EDC Unit 17" or "EDC-17").  Upon its introduction, EDC Unit 17 was publicly touted by Bosch as follows:[25]

> EDC-17 . . . controls every parameter that is important for effective, low-emission combustion.
>
> Because the computing power and functional scope of the new EDC-17 can be adapted to match particular requirements, it can be used very flexibly in any vehicle segment on all the world's markets.  In addition to controlling the precise timing and quantity of injection, exhaust gas recirculation, and manifold pressure regulation, it also offers a large number of options such as the control of particulate filters or systems for reducing nitrogen oxides.  The Bosch EDC-17 determines the injection parameters for each cylinder, making specific adaptations if necessary.  This improves the precision of injection throughout the vehicle's entire service life.  The system therefore makes an important contribution to observing future exhaust gas emission limits.

253.    **Answer**:  BMW AG admits that Bosch supplies certain vehicle components to auto manufacturers and that one such vehicle component is the Electronic Diesel Control Unit 17 ("EDC Unit 17").  BMW AG denies the allegations in Paragraph 253 insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG denies all remaining allegations in Paragraph 253.

254.    Bosch worked with each vehicle manufacturer that utilized EDC Unit 17 to create a unique set of specifications and software code to manage the vehicles' engine operation.

---

[25] Bosch Press Release, *The brain of diesel injection: New Bosch EDC-17 engine management system* (Feb. 28, 2006), http://www.bosch-presse.de/presseforum/details.htm?txtID=2603&locale=en.

254.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG denies all remaining allegations in Paragraph 254.

255.   The software calibrations are an interactive process between Bosch and BMW.  Bosch employees using email regularly communicated with BMW employees over various changes to various code functions such as "T-Eng" sensor faults, online dosing, and other software parameters.  Bosch employees regularly communicated with BMW employees concerning dosing rates into the SCR catalyst and the impact of such on NOx emissions.

255.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.

256.   Bosch employees regularly communicated with BMW employees about presentations to the EPA and CARB and about BMW's ability to meet emissions standards.

256.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.

257.   Bosch's EDC Unit 17 controls emissions by periodically reading sensor values, evaluating a control function, and controlling actuators based on the control signal.[26]  Sensor readings include crankshaft position, air pressure, air temperature, air mass, fuel temperature, oil temperature, coolant temperature, vehicle speed, exhaust oxygen content, as well as driver inputs such as accelerator pedal position, brake pedal position, cruise control setting, and selected gear.  Based on sensor input, EDC-17 controls and influences the fuel combustion process including, in particular, fuel injection timing, which affects engine power, fuel consumption, and the composition of the exhaust gas.[27]

257.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.

258.   All Bosch ECUs, including the EDC-17, run on complex, highly proprietary engine management software over which Bosch exerts near-total control.  In fact, the software is typically locked to prevent customers, like BMW, from making significant changes on their own.

---

[26] Moritz Contag *et al.*, How They Did It: An Analysis of Emission Defeat Devices in Modern Automobiles, p.4 (2017).

[27] *Id.*

Accordingly, both the design and implementation are interactive processes, requiring Bosch's close collaboration with the automaker from beginning to end.

258.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.  BMW AG also avers that an EDC17 is an Engine Control Unit ("ECU") which is not "locked," instead it is highly malleable, programmable, and customizable.

259.   With respect to the Polluting BMW Vehicles, the EDC-17 was used surreptitiously to evade emissions regulations.  Bosch and BMW worked together to develop and implement a specific set of software algorithms for implementation in the Polluting BMW Vehicles, including algorithms to adjust fuel levels, exhaust gas recirculation, air pressure levels, and urea injection rates in vehicles equipped with SCR systems.[28]

259.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.

260.   When carmakers test their vehicles against EPA emission standards, they place their vehicles on dynamometers (large rollers) and then perform a series of specific maneuvers prescribed by federal regulations.  Bosch's EDC Unit 17 gave BMW, Volkswagen, General Motors, BMW and other manufacturers the power to detect test scenarios by monitoring vehicle speed, acceleration, engine operation, air pressure, and even the position of the steering wheel. When the EDC Unit 17's detection algorithm detected that the vehicle was on a dynamometer (and undergoing an emission test), additional software code within the EDC Unit 17 downgraded the engine's power and performance and upgraded the emission control systems' performance by switching to a "dyno calibration" to cause a subsequent reduction in emissions to legal levels. Once the EDC Unit 17 detected that the emission test was complete, the EDC Unit would then enable a different "road calibration" that caused the engine to return to full power while reducing the emission control systems' performance, and consequently caused the vehicle to spew the full amount of illegal NOx emissions out on the road in certain conditions.[29]  This process is illustrated in the following diagram, applicable to BMW as well:

---

[28] *Engine management*, Bosch Auto Parts, http://de.bosch-automotive.com/en/parts_and_accessories/motor_and_sytems/diesel/engine_management_2/engine_control_unit_1.

[29] Russell Hotten, *Volkswagen: The scandal explained*, BBC (Dec. 10, 2015), http://www.bbc.com/news/business-34324772.



260.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.  BMW AG denies the allegations in Paragraph 260 insofar as those allegations refer to a diagram and refers to the original source materials for a complete and accurate statement of their contents and context.

261.   This workaround was illegal.  The Clean Air Act expressly prohibits defeat devices, defined as any auxiliary emission control device "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use."  40 C.F.R. § 86.1803-01; *see also id.* § 86.1809-10 ("No new light-duty vehicle, light-duty truck, medium-duty passenger vehicle, or complete heavy-duty vehicle shall be equipped with a defeat device.").  Moreover, the Clean Air Act prohibits the sale of components used as defeat devices "where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use."  42 U.S.C. § 7522(a)(3).  Finally, in order to obtain a certificate of compliance (COC), automakers must submit an application that lists all auxiliary emission control devices installed in the vehicle, a justification for each, and an explanation of why the control device is not a defeat device.

261.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.

262.     Thus, in order to obtain the COCs necessary to sell their vehicles, BMW did not fully disclose, and affirmatively concealed from government regulators, the presence of the test-detecting and performance-altering software code that it developed with Bosch, and/or the effects of this emissions manipulation on actual emissions thus making that software an illegal defeat device.  In other words, BMW, working closely with Bosch, lied to governmental agencies, its customers, its dealers, and the public at large.

262.     **Answer**:  Paragraph 262 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 262.

263.     Because the COCs were fraudulently obtained at the time they were submitted, and because the Polluting BMW Vehicles did not conform "in all material respects" to the specifications provided in the COC applications, the Polluting BMW Vehicles were never covered by a valid COC, and thus were never legal for sale, nor were they EPA- and/or CARB-compliant as represented at the time of sale.  BMW and Bosch hid the true and full facts of the emissions output from the EPA, CARB and other regulators, its dealers, and consumers, and it continued to sell and lease the Polluting BMW Vehicles to the driving public despite their illegality and with the complicity of Bosch.

263.     **Answer**:  Paragraph 263 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 263.

264.     To the extent *ex post facto* and after their sale to class members that BMW may have reached a political deal with the EPA regarding the lawfulness of BMWs conduct, does not negate the illegality of BMW's conduct at the time of sale for any sales occurring prior to said political deal.

264.     **Answer**:  Paragraph 264 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 264 insofar as they pertain to BMW AG and avers that the insinuation of a "political deal" with the EPA is false, unfounded, and would be defamatory if advanced other than in a litigation.

265.     BMW's illegal workaround was enabled by its close partnership with Bosch, which enjoyed a sizable portion of its annual revenue from manufacturing parts used in BMW's and other

151

manufacturers' diesel vehicles.[30]  Bosch was well aware that BMW was using its emission control components as a defeat device and, in fact, worked with BMW to develop the software algorithm specifically tailored for the Polluting BMW Vehicles.

265.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5, 16, and 254 as if restated herein.

266.    Because the COCs were fraudulently obtained, the Polluting BMW Vehicles were never covered by valid COCs and thus were never offered legally for sale.  BMW and Bosch jointly hid these facts from the EPA, CARB and other state regulators, and consumers, and it continued to sell and lease the Polluting BMW Vehicles despite their illegality and with the complicity of Bosch.

266.    **Answer**: Paragraph 266 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 266.

## G.    Bosch played a critical role in the defeat device scheme in many diesel vehicles in the United States, giving rise to a strong inference that Bosch played a key role in implementing the BMW emission strategy.

267.    Although this case is not about Volkswagen, Bosch's history with Volkswagen provides background and support for the plausibility of its participation in the RICO enterprise alleged herein, of which Bosch and BMW were participants.  On information and belief, Plaintiffs allege that the same level of coordination between Bosch and Volkswagen also occurred between Bosch and BMW.

267.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein and notes that the paragraph begins by conceding that "this case is

not about Volkswagen."  To the extent the allegations relate to non-BMW vehicles, BMW AG

avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence

in this action.

---

[30] Approximately 50,000 of Bosch's 375,000 employees worked in the diesel technology operations branch of Bosch, and Volkswagen was the biggest diesel manufacturer in the world. *Bosch probes whether its staff helped VW's emissions rigging*, AUTOMOTIVE NEWS (Jan. 27, 2016), http://www.autonews.com/article/20160127/COPY01/301279955/bosch-probes-whether-its-staff-helped-vws-emissions-rigging.

1.     **Volkswagen and Bosch conspire to develop the illegal defeat device.**

268.     Bosch introduced a new generation of diesel ECUs for Volkswagen.

268.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW

AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual

consequence in this action.

269.     A February 28, 2006 Bosch press release introduced the "New Bosch EDC-17 engine management system" as the "brain of diesel injection" which "controls every parameter that is important for effective, low-emission combustion."  The EDC-17 offered "[e]ffective control of combustion" and a "[c]oncept tailored for all vehicle classes and markets."  In the press release, Bosch touted the EDC-17 as follows:[31]

> **EDC-17:  Ready for future demands**
>
> Because the computing power and functional scope of the new EDC-17 can be adapted to match particular requirements, it can be used very flexibly in any vehicle segment on all the world's markets.  In addition to controlling the precise timing and quantity of injection, exhaust gas recirculation, and manifold pressure regulation, it also offers a large number of options such as the control of particulate filters or systems for reducing nitrogen oxides.  The Bosch EDC-17 determines the injection parameters for each cylinder, making specific adaptations if necessary.  This improves the precision of injection throughout the vehicle's entire service life.  The system therefore makes an important contribution to observing future exhaust gas emission limits.

269.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5, 16, and 254 as if restated herein.  To the extent the allegations relate to non-BMW vehicles,

BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual

consequence in this action.

270.     Bosch and Volkswagen worked together closely to modify the software and to create specifications for each Volkswagen vehicle model.  Indeed, customizing a road-ready ECU

---

[31] Bosch press release, *The brain of diesel injection: New Bosch EDC-17 engine management system* (Feb. 28, 2006), http://www.bosch-presse.de/presseforum/details.htm?txtID=2603&locale=en.

is an intensive three- to five-year endeavor involving a full-time Bosch presence at an automaker's facility.  Such was the case with BMW as well.

270.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

271.   All Bosch ECUs, including the EDC-17, run on complex, highly proprietary engine management software over which Bosch exerts nearly total control.  In fact, the software is typically locked to prevent customers, like Volkswagen and BMW, from making significant changes on their own.

271.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.  BMW AG also avers that an EDC17 is an Engine Control Unit ("ECU") which is not "locked," instead it is highly malleable, programmable, and customizable.

272.   Bosch's security measures further confirm that its customers cannot make significant changes to Bosch software without Bosch involvement.  Bosch boasts that its security modules protect vehicle systems against unauthorized access in every operating phase, meaning that no alteration could have been made without either a breach of that security—and no such claims have been advanced—or Bosch's knowing participation.[32]

272.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

273.   Unsurprisingly, then, at least one car company engineer has confirmed that Bosch maintains absolute control over its software as part of its regular business practices:[33]

---

[32] *Reliable Protection for ECUs*, ESCRYPT (May 12, 2016), https://www.escrypt.com/en/news-events/protection-for-ecus.

[33] Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, CAR AND DRIVER (Nov. 23, 2015), http://blog.caranddriver.com/epa-investigating-bosch-over-vw-diesel-cheater-software/.

I've had many arguments with Bosch, and they certainly own the
dataset software and let their customers tune the curves.  Before
each dataset is released it goes back to Bosch for its own
validation.

Bosch is involved in all the development we ever do.  They insist
on being present at all our physical tests and they log all their own
data, so someone somewhere at Bosch will have known what was
going on.

All software routines have to go through the software verification
of Bosch, and they have hundreds of milestones of verification,
that's the structure . . . .

The car company is never entitled by Bosch to do something on
their own.

273.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW

AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual

consequence in this action.

274.   Thus, Bosch GmbH and Bosch LLC cannot convincingly argue that the
development of the Volkswagen defeat device was the work of a small group of rogue engineers.

274.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW

AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual

consequence in this action.

275.   In fact, Volkswagen's and Bosch's work on the EDC-17 reflected a highly unusual
degree of coordination.  It was a massive project that required the work of numerous Bosch coders

for a period of more than ten years, or perhaps more.[34]  Although Bosch publicly introduced the EDC-17 in 2006, it had started to develop the engine management system years before.[35]

275.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

276.   In fact, Bosch was in on the secret and knew that Volkswagen was using Bosch's software algorithm as an "on/off" switch for emission controls when the vehicles were undergoing testing.  As noted above, it has been said the decision to cheat was an "open secret" at Volkswagen.[36]  It was an "open secret" at Bosch as well.

276.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

277.   Volkswagen and Bosch personnel employed code language for the defeat device, referring to it as the "acoustic function" (in German, "akustikfunktion").  As described above, the roots of the "akustikfunktion"—and likely the cheating—can be traced back to the late 1990s when Audi devised software called the "akustikfunktion" that could switch off certain functions when

---

[34] Approximately 50,000 of Bosch's 375,000 employees worked in the diesel technology operations branch of Bosch, and Volkswagen was the biggest diesel manufacturer in the world. *Bosch Probes Whether Its Staff Helped VW's Emissions Rigging*, AUTOMOTIVE NEWS (Jan. 27, 2016), http://www.autonews.com/article/20160127/COPY01/301279955/bosch-probes-whether-its-staff-helped-vws-emissions-rigging.

[35] Bosch press release, *The brain of diesel injection: New Bosch EDC-17 engine management system* (Feb. 28, 2006), http://www.bosch-presse.de/presseforum/details.htm?txtID=2603&locale=en.

[36] Georgina Prodham, *Volkswagen probe finds manipulation was open secret in department*, REUTERS (Jan. 23, 2016), http://www.reuters.com/article/us-volkswagen-emissions-investigation-idUSKCN0V02E7. See also Jay Ramey, *VW chairman Poetsch: Company 'tolerated breaches of rules'*, AUTOWEEK (Dec. 10, 2015), http://autoweek.com/article/vw-diesel-scandal/vw-chairman-poetsch-company-tolerated-breaches-rules (it was necessary for the "EA 189 engine to pass U.S. diesel emissions limits within the budget and time frame allotted").

the vehicle was in a test mode.[37] The "akustik" term is derived from the function's ability to modify the noise and vibration produced by the engine.  News articles report that, in 2006, Volkswagen further developed this "akustikfunktion" for the affected vehicles.[38]

277.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

278.   In sum, Bosch GmbH worked hand-in-glove with Volkswagen to develop and maintain the akustikfunktion/defeat device.  On information and belief, it did so with BMW as well.

278.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

### 2.   Volkswagen and Bosch conspire to conceal the illegal "akustikfunktion."

279.   By 2007, and likely earlier, Bosch GmbH was critical not only in developing the "akustikfunktion" but also in concealing it.

---

[37] Martin Murphy, *Dieselgate's Roots Stretch Back to Audi*, HANDELSBLATT GLOBAL (Apr. 19, 2016), https://global.handelsblatt.com/edition/413/ressort/companies-markets/article/dieselgates-roots-stretch-back-to-audi?ref=MTI5ODU1.

[38] Georgina Prodham, *Volkswagen probe finds manipulation was open secret in department*, REUTERS (Jan. 23, 2016), http://www.reuters.com/article/us-volkswagen-emissions-investigation-idUSKCN0V02E7. Volkswagen Group Chairman Hans Dieter Poetsch explained that a small group of engineers and managers was involved in the creation of the manipulating software. Jay Ramey, *VW chairman Poetsch: Company 'tolerated breaches of rules'*, Autoweek (Dec. 10, 2015), http://autoweek.com/article/vw-diesel-scandal/vw-chairman-poetsch-company-tolerated-breaches-rules. Russell Hotten, *Volkswagen: The scandal explained*, BBC (Dec. 10, 2015), http://www.bbc.com/news/business-34324772; Matt Burt, *VW emissions scandal: how Volkswagen's 'defeat device' works*, Autocar (Sept. 23, 2015), http://www.autocar.co.uk/car-news/industry/vw-emissions-scandal-how-volkswagens-defeat-device-works.

279.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

280.   Bosch GmbH was concerned about getting caught participating in the defeat device fraud.  As reported in a German newspaper, *Bild am Sonntag*, and a French publication, a Volkswagen internal inquiry found that in 2007, Bosch GmbH warned Volkswagen by letter that using the emissions-altering software in production vehicles would constitute an "offense."[39]

280.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

### 3.   Volkswagen and Bosch conspire in the United States and Germany to elude U.S. regulators who regulated not just Volkswagen diesels but all diesels.

281.   The purpose of the defeat device was to evade stringent U.S. emissions standards. Once Bosch GmbH, Bosch LLC, and Volkswagen perfected the defeat device, therefore, their attention turned to deceiving U.S. regulators not just for the benefit of Volkswagen but also for the benefit of BMW, Mercedes, General Motors, and FCA.

281.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5, 16, and 254 as if restated herein.  BMW AG also denies the allegations in Paragraph 281 of the FAC insofar as those allegations refer to advertisements, laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

---

[39] *Bosch warned VW about illegal software use in diesel cars, report says*, AUTOMOTIVE NEWS (Sept. 27, 2015), http://www.autonews.com/article/20150927/COPY01/309279989/bosch-warned-vw-about-illegal-software-use-in-diesel-cars-report-says; *VW Scandal: Company Warned over Test Cheating Years Ago*, BBC (Sept. 27, 2015), http://www.bbc.com/news/business-34373637.

282.     Bosch's North American subsidiary, Defendant Robert Bosch LLC, was also part of and essential to the fraud.  Bosch LLC worked closely with Bosch GmbH and Volkswagen in the United States and in Germany to ensure that the non-compliant affected vehicles passed U.S. emissions tests.  Bosch LLC employees frequently communicated with U.S. regulators and actively worked to ensure the affected vehicles were approved by regulators.

282.     **Answer**:  Paragraph 282 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

283.     Employees of Bosch LLC, Bosch GmbH, and IAV provided specific information to U.S. regulators about how Volkswagen's vehicles functioned and unambiguously stated that the vehicles met emissions standards.  Bosch LLC regularly communicated to its colleagues and clients in Germany about ways to deflect and diffuse questions from U.S. regulators about the affected vehicles—particularly CARB.

283.     **Answer**:  Paragraph 283 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

### 4.     Bosch keeps BMW's secret safe and pushes "clean" diesel in the United States as a concept applicable to all diesel car manufacturers.

284.     During the time of its efforts to promote "clean diesel," Bosch LLC and Bosch GmbH were each aware that BMW, General Motors, Volkswagen, Audi, Porsche, FCA, Ford and Mercedes could not meet emissions requirements without turning down or derating emission controls.  Bosch not only kept this dirty secret safe, it went a step further and actively promoted "clean diesel" in the United States, including making affected vehicles available for regulators to drive.

284.     **Answer**:  Paragraph 284 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 284 insofar as they pertain to BMW AG and avers that the phrase "dirty secret" is false, unfounded, and would be defamatory if advanced other than in a litigation.

285.     As early as 2004, Bosch announced a push to convince U.S. automakers that its diesel technology could meet tougher 2007 U.S. emission standards.[40]  Its efforts ended up being

---

[40] Edmund Chew, *Bosch boosts US diesel lobbying*, AUTONEWS (Mar. 8, 2004), http://www.autonews.com/article/20040308/SUB/403080876/bosch-boosts-us-diesel-lobbying.

a multi-year, multi-million dollar effort involving key players from both Robert Bosch GmbH in Germany and Bosch LLC in the United States.

285. **Answer**: Paragraph 285 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

286. Bosch's promotion of diesel technology specifically targeted the United States. For example, Bosch put on "California Diesel Days"[41] and "SAE World Congress in Detroit."[42] In 2008, Bosch LLC and Volkswagen America co-sponsored the "Future Motion Made in Germany-Second Symposium on Modern Drive Technologies" at the German Embassy in Washington, D.C., with the aim of providing a venue for "stakeholders to gain insight into the latest technology trends and engage in a vital dialogue with industry leaders and policymakers."[43]

286. **Answer**: Paragraph 286 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

287. Bosch LLC hosted multi-day conferences open to many regulators and legislators and held private meetings with regulators in which it proclaimed extensive knowledge of the specifics of Volkswagen technology, including calibrations necessary for the affected vehicles to comply with emissions regulations.

287. **Answer**: Paragraph 287 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

288. On October 28, 2008 Bosch North America issued a release entitled:

---

[41] *Bosch drives clean diesel in California*, Bosch, http://www.bosch.us/content/language1/html/734_4066.htm?section=28799C0E86C147799E022 26E942307F2.

[42] *Bosch Brings Innovation*, Green Technology to SAE 2009 World Congress, Bosch, http://www.bosch.us/content/language1/html/734_7432.htm?section=CDAF31A468D9483198E D8577060384B3.

[43] *Bosch: Clean Diesel is Key Part of Future Technology Mix*, Bosch, http://us.bosch-press.com/tbwebdb/bosch-usa/en-US/PressText.cfm? CFID=60452038&CFTOKEN=9c778a2564be2c9b-56CC21B6-96AB-5F79-32445B13EC121DBE&nh=00&Search=0&id=364.

**Bosch Powers Audi Clean Diesel Across the U.S. and Around the World**

288.   **Answer**:  Paragraph 288 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  To the extent a response is required, BMW AG denies the allegations in Paragraph 288 insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.

289.   The October release was much broader than the promotion of Audi.  It was a promotion of Bosch and its role in "clean diesel" in a broad sense to further the diesel conspiracies and Bosch's objective in falsely promoting "clean diesel."  The irony is glaring because Bosch knew the Audi was not clean.  Bosch, thus made the following pronouncements:

> Bosch, the worldwide leader in powertrain development, was selected by Audi to supply the common rail system that includes the electronic control unit (ECU), rail, pump and injectors, the dosing module and control unit for the Denoxtronic system, as well as various sensors for powertrain and exhaust gas aftertreatment in the Q7 3.0 TDI.  The Denoxtronic reduction-agent metering system from Bosch permits further reductions in the emissions of diesel engines.  It is a central component of the SCR system (Selective Catalytic Reduction).

> "The Audi Mileage Marathon provides opportunity for <u>people to experience torque, fuel economy and other benefits of today's clean diesel technology in action</u>," said Bernd Boisten, regional president, diesel systems North America, Robert Bosch LLC.  "We call today's diesel Good, Clean, Fun.  We wish all participants safe journeys and look forward to their reactions to clean diesel's fuel efficiency, low emissions and exceptional performance."

> Clean diesel technology combines clean diesel fuel, advanced engines and effective exhaust control technology into a complete package that is more efficient, environmentally friendly and fun to drive.  Today, a clean diesel engine is one of the "greenest" powertrain options on the market.

> Bosch has been promoting the benefits of clean diesel in anticipation of the new 50-state compliant diesel powered vehicles, such as the Audi Q7 3.0 TDI, coming to market in the U.S.

289.   **Answer**:  Paragraph 289 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  To the extent a response is required, BMW AG denies the allegations in Paragraph 289 insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.

290.   In April 2009, Bosch LLC organized and hosted a two-day "California Diesel Days" event in Sacramento, California.  Bosch invited a roster of lawmakers, journalists, executives, regulators, and NGOs[44] with the aim of changing perceptions of diesel from "dirty" to "clean."  The event featured affected vehicles as ambassadors of "clean diesel" technology, including a 2009 Volkswagen Jetta "green car."  The stated goals were to "build support for light-duty diesel as a viable solution for achieving California's petroleum and emission reduction objectives."

290.   **Answer**:  Paragraph 290 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  To the extent a response is required, BMW AG denies the allegations in Paragraph 290 insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.

291.   In 2009, Bosch also became a founding member of the U.S. Coalition for Advanced Diesel Cars.[45]  One of this advocacy group's purposes included "promoting the energy efficiency and environmental benefits of advanced clean diesel technology for passenger vehicles in the U.S.

---

[44] *Bosch drives clean diesel in California*, Bosch, http://www.bosch.us/content/language1/html/734_4066.htm?section=28799C0E 86C147799E02226E942307F2; *California Diesel Days*, The U.S. Coalition for Advanced Diesel Cars, http://www.californiadieseldays.com/.

[45] Chrissie Thompson, *New Coalition Aims To Promote Diesel Cars*, AUTOMOTIVE NEWS (Feb. 2, 2009), http://www.autonews.com/article/20090202/OEM06/302029728/new-coalition-aims-to-promote-diesel-cars.

marketplace."[46]  This group lobbies Congress, U.S. regulators, and CARB in connection with rules affecting "clean diesel" technology.[47]

291.    **Answer**:  Paragraph 291 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  To the extent a response is required, BMW AG denies the allegations in Paragraph 291 insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.

292.    In 2010, Bosch sponsored the Virginia International Raceway with the support of the 2010 Volkswagen Jetta TDI Cup Series.  This event included TDI vehicles featuring Bosch technology.[48]

292.    **Answer**:  Paragraph 292 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  To the extent a response is required, BMW AG denies the allegations in Paragraph 292 insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.

---

[46] *About the Coalition*, The U.S. Coalition for Advanced Diesel Cars, http://cleandieseldelivers.com/about/.

[47] *Id.* Letter to Chairman Mary Nichols and CARB concerning a statement made about diesel technology (Jan. 8, 2016), available at http://cleandieseldelivers.com/media/Mary-Nichols-Letter-01082016.pdf.

[48] *Volkswagen Jetta TDI Cup Drivers Take to the Track for the First Time in 2010 at VIR*, Volkswagen of America, Inc. (April 23, 2010), available at http://www.prnewswire.com/news-releases/volkswagen-jetta-tdi-cup-drivers-take-to-the-track-for-the-first-time-in-2010-at-vir-91985604.html.

293.    In 2012, Audi, BMW, Bosch, Daimler, Porsche, and Volkswagen joined to form The Clearly Better Diesel initiative.[49]  The initiative was announced in Berlin by the German Association of the Automotive Industry.  Its stated goal was to promote the sale of clean diesel vehicles in the United States.  The initiative's slogan was "Clean Diesel.  Clearly Better."

293.    **Answer**:  BMW AG denies knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 293, and therefore denies them on that basis.

294.    In its efforts to promote "clean diesel," including the affected vehicles, Bosch GmbH acted on behalf of its global group.

294.    **Answer**:  BMW AG denies knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 294, and therefore denies them on that basis.

**5.     Bosch is a recidivist cheater:  Bosch also made the EDC-17 found in FCA vehicles that pollute excessively.**

295.    To appeal to environmentally conscious consumers, FCA *vigorously* markets its "EcoDiesel" vehicles as "clean diesel" with ultra-low emissions, high fuel economy, and powerful torque and towing capacity.  FCA calls its EcoDiesel "ultra clean," "emissions compliant," and claims that "***no NOx***" exits the tailpipe.  FCA charges a premium for EcoDiesel-equipped vehicles.  For example, selecting the 3.0-liter EcoDiesel engine for the 2016 Dodge Ram 1500 Laramie adds $4,770 to the purchase price.  And the 2016 Jeep Grand Cherokee Overland EcoDiesel costs $4,500 more than its gasoline counterpart.

295.    **Answer**:  Paragraph 295 of the FAC relates exclusively to persons or entities other

than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and

of neither legal nor factual consequence in this action.

296.    These representations are deceptive and false.  FCA programmed its EcoDiesel vehicles to significantly reduce the effectiveness of the NOx reduction systems during real-world driving conditions.  The EPA has determined that the affected vehicles contain defeat devices.  After a lawsuit had already been filed by Plaintiffs' counsel in this case, on January 12, 2017, the EPA issued a Notice of Violation against FCA because FCA "failed to disclose Auxiliary Emission Control Devices (AECDs)" in the affected vehicles.[50]  The EPA identified eight specific devices

---

[49] *"Clean Diesel Clearly Better" Campaign for Clean Diesel Cars Welcomed*, Diesel Technology Forum (Dec. 12, 2012), available at http://www.prnewswire.com/news-releases/clean-diesel-clearly-better-campaign-for-clean-diesel-cars-welcomed-183261432.html.

[50] EPA's January 12, 2017 Notice of Violation to FCA, available at https://www.epa.gov/sites/production/files/2017-01/documents/fca-caa-nov-2017-01-12.pdf.

that cause the vehicle to perform effectively when being tested for compliance and then reduce the effectiveness of the emission control system during normal operation and use.

296.    **Answer**:  Paragraph 296 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

297.    "Once again," said CARB Chair Mary D. Nichols about FCA's cheating, "a major automaker made the business decision to skirt the rules and got caught."[51]

297.    **Answer**:  Paragraph 297 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  To the extent a response is required, BMW AG denies the allegations in Paragraph 297 insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.

298.    The same experts that tested the X5's performance did on-road testing of the FCA vehicles and confirmed that FCA's so-called EcoDiesel vehicles produced NOx emissions at an average of 222 mg/mile in city driving (four times the FTP standard of 50 mg/mile) and 353 mg/mile in highway driving (five times higher than the U.S. highway standard of 70 mg/mile).  In many instances, NOx values were in excess of 1,600 mg/mile, more than 20 times the standards. This testing uncovered many of the defeat devices listed in the EPA notice of violation ahead of EPA's announcement.

298.    **Answer**:  Paragraph 298 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

299.    Bosch made the EDC-17 for the polluting FCA vehicles.

---

[51] EPA News Release, *EPA Notifies Fiat Chrysler of Clean Air Act Violations* (Jan.12, 2017), available at https://www.epa.gov/newsreleases/epa-notifies-fiat-chrysler-clean-air-act-violations.

299.    **Answer**: Paragraph 299 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

### 6.    Bosch is a recidivist cheater:  Bosch GmbH also made the EDC-17 found in polluting Mercedes diesels.

300.    Plaintiffs' experts in this case tested the Mercedes diesel vehicles and made the first public disclosure of Mercedes' unlawful conduct through certain of the counsel in this case in a civil suit filed in the District of New Jersey.  Reportedly as a result of that lawsuit, Mercedes is under investigation by the Department of Justice and German authorities with respect to its BlueTEC diesel vehicles.  Over 14 Mercedes diesel models are alleged to produce emissions 8.1 to 19.7 times relevant standards.  Bosch GmbH supplied the EDC-17 in the polluting Mercedes vehicles.

300.    **Answer**: Paragraph 300 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

### 7.    Bosch is a recidivist cheater:  Bosch GmbH and Bosch LLC also made the EDC-17 found in 700,000 polluting General Motors trucks.

301.    Bosch made the EDC-17 found in the 2011–2016 General Motors Sierra 2500 and 3500 HD trucks and Chevrolet Silverado HD trucks.  These trucks are competitors with BMW's X5 trucks.

301.    **Answer**: Paragraph 301 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

302.    Bosch supplied the software and function sheets for these vehicles and enabled the vehicles to have three different cheat devices.

302.    **Answer**: Paragraph 302 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

303.    GM Defeat Device No. 1 reduces or derates the emissions system when temperatures are above the emissions certification test range (86°F).  GM Defeat Device No. 2

operates to reduce emission control when temperatures are below the emissions certification low temperature range (68°F). Testing reveals that at temperatures below 68°F (the lower limit of the certification test temperature), stop-and-go emissions are 2.1 times the emissions standard at 428 mg/mile (the standard is 200 mg/mile). At temperatures above 86°F, stop-and-go emissions are an average of 2.4 times the standard, with some emissions as high as 5.8 times the standard. Based on temperatures in the top 30 metropolitan areas, these vehicles are operating with the emissions systems derated a material amount of their vehicle miles travelled. But the emission scheme is a step more nefarious: enter GM Defeat Device No. 3, which reduces the level of emission controls after 200–500 seconds of steady speed operation in all temperature windows, causing emissions to increase on average of a factor of 4.5. Based on a study of temperatures in 30 major metropolitan areas as well as the demographics of Silverado and Sierra sales, Plaintiffs' experts estimate that due to just the temperature-triggered defeat devices, the vehicles operate at 65–70% of their miles driven with emissions that are 2.1 to 5.8 times the standard.

303.    **Answer**: Paragraph 303 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

304.    Increased sales and thus increased profits drove General Motors to use at least these three defeat devices in its Duramax diesel engines. By reversing the traditional order of the exhaust treatment components and putting the Selective Catalytic Reduction (SCR) in front of the Diesel Particulate Filter (DPF), General Motors could obtain and market higher power and fuel efficiency from its engines while still passing the cold-start emissions certification tests. This made the trucks more appealing and competitive in the marketplace, driving up sales and profits. But the reordering would have also drastically increased the need to employ Active Regeneration (*i.e.*, burning off collected soot at a high temperature) and other power- and efficiency-sapping exhaust treatment measures, reversing the very advantage gained. General Motors' solution, with the participation of Defendants Robert Bosch GmbH and Robert Bosch LLC, was to install defeat devices to purposefully reduce SCR dosing, increase NOx emissions, and thus decrease Active Regeneration. The defeat devices allowed General Motors to have its cake and it eat too. It could gain the advantage of hot exhaust going into the SCR system needed to pass cold-start tests, while avoiding the fuel- and power-robbing Active Regeneration procedure that the DPF filter requires when the SCR treatment comes first. General Motors turned a blind eye to the twofold to fivefold increase in deadly NOx emissions its scheme caused—all to drive up its sales and profits.

304.    **Answer**: Paragraph 304 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

**8.      Bosch is a recidivist cheater:  Bosch also made the EDC-17 found in 500,000 polluting Ford Trucks.**

305.     Bosch made the EDC-17 found in Ford's top selling F-250 and 350 "Super Duty" Diesel Trucks.

305.     **Answer**:  Paragraph 305 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

306.     Bosch supplied the software and function sheets for these vehicles and enabled the vehicles to use defeat devices to turn down or off emissions controls.

306.     **Answer**:  Paragraph 306 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

307.     Plaintiffs' on-road testing has confirmed that Ford's Super Duty vehicles produce NOx emissions in an amount demonstrating that they are not the "cleanest Super Duty diesel" vehicles that meet emission standards; rather, Ford has programmed the vehicles so that in a wide range of common driving conditions, the emissions systems are powered down, producing NOx far in excess of emissions standards.  A reasonable consumer would not expect their Super Duty vehicle to spew unmitigated NOx in this fashion while driving in the city or on the highway, nor would a reasonable consumer expect that fuel economy was achieved in part by turning off or derating the emission systems; nor would a reasonable consumer expect that if the emissions were as-promised, the advertised fuel economy and performance could not be achieved.

307.     **Answer**:  Paragraph 307 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

308.     In stop-and-go conditions, including those identical to the FTP-75 certification cycle, emissions are routinely as high as five times the standard.  In certain common driving conditions, such as modest uphill road grades, or with the use of a trailer that adds weight, emissions exceed the standard by 30 to 50 times.  Ford advertised these vehicles as having "best-in-class towing capabilities" and expected Super Duty trucks to pull significant loads.  Ford failed to disclose that "best-in-class towing" came with a byproduct of high NOx emissions, sometimes exceeding legal standards by 30 to 50 times.  In stop-and-go driving, testing reveals that the vehicles operate 69% of the time above the emissions standard, 45% of the time at twice the standard, and 9% of the time at five times the standard.  These vehicles should more properly have been called "Super Dirty."

308.   **Answer**: Paragraph 308 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

**H.    Bosch also played a critical role in falsely promoting clean diesel technology via the "Diesel Technology Forum."**

309.   It's not unheard of for manufacturers of dangerous products to use trade associations to cover up the danger of their products.  Tobacco companies created several trade associations to promote phony science claiming tobacco use was neither harmful nor addictive.  The opioid manufacturers did the same as did Bosch with respect to promotion of clean diesel.  Bosch was a member of the Diesel Technology Forum ("DTF") a "non-profit" dedicated "to raising awareness about the importance of diesel engines."  The DTF was formed in 2000, and its members include Bosch, Daimler, GM, and FCA.  Bosch was aware that cars made by BMW, GM, FCA, and Mercedes used cheat devices to meet emissions requirements and were not the "clean diesel" as claimed.  Despite this knowledge, Bosch, as a member of the DTF, and as part of its complicit conduct in promoting illegal diesels, authorized a steady stream of announcements about "clean diesel technology", as described below.

309.   **Answer**: Paragraph 309 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

310.   So for example, the DTF on December 12, 2012, issued a press release proclaiming "Clean Diesel.  Clearly Better" and highlighted new diesel models coming to the U.S.  The release noted that the new "Clean Diesel" campaign was announced jointly by Audi, BMW, Bosch, Daimler, Porsche, and Volkswagen.

December 12, 2012   |   Diesel Technology Forum



▶ PRESS RELEASE

# "CLEAN DIESEL. CLEARLY BETTER." CAMPAIGN FOR CLEAN DIESEL CARS WELCOMED

**Contact: Steve Hansen (301) 668-7230 shansen@dieselforum.org**

**New Effort by German Automakers to Promote Diesel Cars in U.S.**

Washington, D.C. – The first ever joint promotion campaign by German automakers to promote clean diesel vehicles in the U.S. was welcomed today with the hope that it can accelerate current market successes for domestic clean diesel vehicle sales, according to Allen Schaeffer, the Executive Director of the Diesel Technology Forum (/).

The new promotional diesel campaign was announced today in Berlin by the German Association of the Automotive Industry (http://www.vda.de/en/index.html) (VDA) and member companies – Audi, BMW, Bosch, Daimler, Porsche and Volkswagen.

"We welcome this new effort to raise awareness of American car buyers to all of the benefits of the new generation of clean diesel technology," Schaeffer said. "People who know about the new clean diesel technology are extremely impressed by the improved fuel efficiency, power and lower emissions over gasoline and hybrid autos."



The slogan "Clean Diesel. Clearly Better." was unveiled along with the promotional effort's new website – www.clearlybetterdiesel.org (http://www.clearlybetterdiesel.org/) – which includes information highlighting the advantages of modern clean diesel passenger cars over gasoline engines "in terms of cleanliness, consumption and performance," according to VDA.

"The success of diesel technology is well documented in Western Europe where 55 percent of all new auto sales are clean diesels. Even though diesels represent a more modest three percent of all new vehicle sales in the U.S., we're in the midst of a resurgence of diesel in America and can easily see this percentage doubling and tripling in the next five to 10 years," said Schaeffer.

"Today's clean diesels are fast, efficient, and clean - a far cry from previous diesels in the 1970s and 1980s. Consumers are taking to new clean diesels for their long-term green value as evidenced by diesel sales increases of 24.5 percent through November 2012 compared to 2011, according to Hybrid Cars.com and Baum and Associates. Diesel sales have increased in 27 of the past 28 months in year-over-year sales, with 24 of these months showing double-digit increases. In addition, sales increased by 20 percent or better in 20 of the past 28 months.

"The growing role that clean diesel technology will play here in the U.S. meeting federal fuel economy goals is evident by the anticipated major increase in the number of diesel offerings that will be available in the U.S. in the next 12 to 18 months," Schaeffer said.

"With higher and fluctuating fuel prices, Americans are seeking more fuel efficient cars (/index.cfm?objectid=1CDF6110-DA5D-11E0-8228000C296BA163)," Schaeffer said. "The new U.S. federal fuel efficiency standards that will required a 54.5 mpg average by 2025 will significantly boost clean diesel auto sales because diesel cars (/index.cfm?objectid=7BCD5900-B1BF-11E0-8DA1000C296BA163) are 20 to 40 percent more fuel efficient than gasoline versions."

Schaeffer said the U.S. Energy Information Administration (EIA) forecasts that compared to 2012 the price of diesel fuel will decline by about 3 percent in 2013 to $3.83/gallon.

**New Clean Diesels Coming To the U.S. Market**

Schaeffer said a number of additional diesels will be available soon in the U.S. including:

- Audi A6, A7, A8 and Q5 TDI diesels will be available in 2013 joining the Q7 and A3 TDI to bring Audi's diesel offerings to a total of six. A TDI clean diesel A4 version is also expected in 2014 or early as 2013.

- BMW announced that the U.S. market will see a 2.0-liter four cylinder diesel and 3.0-liter inline six diesel engine in the next 12 months.

- Chrysler will introduce its new Jeep Grand Cherokee Ecodiesel in 2013.

- Ford will offer a new diesel Transit full-size commercial van in 2013.

- General Motors will offer a Cadillac ATS diesel and a diesel version of the Chevrolet Cruze in 2013.

- Mazda will become the only Asian car manufacturer to sell diesel cars in the U.S. when it introduces its SKYACTIV-D 2.2-liter clean diesel engine.

- The Mercedes S350 BlueTEC marks the return of the diesel-powered Mercedes-Benz S-Class to the United States in 2012. Mercedes also plans to bring a diesel in the GLK and C-class for a total of eight diesel models by 2014.

**ABOUT THE DIESEL TECHNOLOGY FORUM**

**The Diesel Technology Forum is a non-profit national organization dedicated to raising awareness about the importance of diesel engines, fuel and technology. Forum members are leaders in clean diesel technology and represent the three key elements of the modern clean-diesel system: advanced engines, vehicles and equipment, cleaner diesel fuel and emissions-control systems. For more information visit www.dieselforum.org (/).**

https://www.dieselforum.org/news/clean-diesel-clearly-better-campaign-for-clean-diesel-cars-welcomed

310.   **Answer**:   BMW AG denies the allegations in Paragraph 310 insofar as those allegations refer to a press release and refers to the original source materials for a complete and accurate statement of their contents and context.   To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.   BMW AG denies all remaining allegations in Paragraph 310.

311.   As part of the continuing and false clean diesel promise, DTF posted on its website after the VW scandal that the new diesel technology enables emissions control systems that met "near zero" emissions standards.

### ABOUT CLEAN DIESEL
# WHY DIESEL ISN'T DIRTY

*With a higher degree of certainty than ever before, we can say that diesel is a clean technology.*



## The Clean Diesel Journey

Diesel is a technology of continuous improvement and that goes for the fuel as well. Ultra-low sulfur diesel fuel has been the standard for both on-highway and off-highway diesel engines nationwide since 2007. By cutting sulfur levels in diesel fuel by 97 percent, immediate clean air benefits accrued - through lower soot emissions from all diesel vehicles and equipment using the fuel (both old and new) by 10 percent. Reducing the sulfur content of diesel fuel is similar to removing lead from gasoline during the 1970s.

Cleaner diesel fuel is the foundation that enabled the development and introduction of a new generation of advanced engines and emission control devices to meet strict "near zero" emissions standards.

311. **Answer**: BMW AG denies the allegations in Paragraph 311 insofar as those allegations refer to a website and refers to the original source materials for a complete and accurate statement of their contents and context. To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action. BMW AG denies all remaining allegations in Paragraph 311.

312. The DTF posted on its website information about "Clean Diesel" proclaiming "near zero emissions."





ABOUT CLEAN DIESEL

# WHAT IS CLEAN DIESEL?

*Cleaner diesel fuel, advanced engines and effective emissions control technology make up a new generation of diesel. It's clean diesel.*

What is clean diesel?

What makes it different from regular diesel?

Clean diesel is the new generation of diesel technology.



Today's ultra-low sulfur diesel fuel, advanced engines and effective emissions control combine to achieve near zero emissions that is smoke free. Clean diesel has proven energy efficiency, and ability to use a wide range of renewable fuels that position diesel as a key technology for growing economies to achieve cleaner air, lower greenhouse gas emissions and a sustainable environment around the world.

Cleaner diesel fuel, advanced engines and effective emissions control make up a new generation of diesel. It's clean diesel.

312.   **Answer**:   BMW AG denies the allegations in Paragraph 312 insofar as those allegations refer to a website and refers to the original source materials for a complete and accurate statement of their contents and context.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG denies all remaining allegations in Paragraph 312.

313.   The DTF website claimed the clean diesels resulted in "Clean Diesel and Clean Air," and that the manufacturers had "Effective Emissions Controls":



## NEW CLEAN DIESEL TECHNOLOGY

FUEL
Ultra-Low Sulfur Diesel

ENGINE
Highly Efficient Diesel Engines

EMISSIONS CONTROLS
Advanced Emissions Controls

CLEAN DIESEL AND CLEAN AIR

### Cleaner Diesel Fuel

Clean diesel fuel - containing 97 percent less sulfur - is now the standard for both on-highway and off-highway diesel engines nationwide. Using this ultra-low sulfur diesel (ULSD) immediately cuts soot emissions from diesel vehicles and equipment by 10 percent. Reducing the sulfur content of diesel fuel is similar to removing lead from gasoline during the 1970s.

Cleaner diesel fuel enables the development of a new generation of advanced engines and emission control devices that can't operate effectively with higher sulfur content in diesel fuel.

### Why is diesel technology so fuel efficient?

A combination of the energy-rich properties of the fuel, and the efficiency and completeness of the combustion of fuel to create useful mechanical energy. Diesel is a petroleum-based fuel with the highest energy density among transportation fuels - that's more energy per gallon than other alternatives. The U.S. Energy Information Administration states that few transportation fuels surpass the energy density of diesel (http://www.eia.gov/todayinenergy/detail.cfm?id=9991).

Read DTF's Diesel Fuel Study - Diesel: Fueling the Future in a Green Economy (/index.cfm?objectid=346EBC1F-A348-11E0-B3DD000C296BA163).

### Advanced Engines

Diesel is the world's most efficient internal combustion engine. It provides more power and more fuel efficiency than alternatives such as gasoline, compressed natural gas or liquefied natural gas. Read more about the history of the diesel engine (/files/dmfile/DieselHistory.pdf).

Fuel combustion is the primary difference between gasoline and diesel engines. Gasoline engines ignite fuel with spark plugs, whereas diesels ignite fuel with compression. Inside the engine, the combustion of air and fuel takes place under pressure and heat created by compressing the air-fuel mixture so intensely that it combusts spontaneously, releasing energy, that is transmitted to powering the wheels on a vehicle, the piston's motion and creating mechanical energy.

Advanced new technologies such as electronic controls, common rail fuel injection, variable injection timing, improved combustion chamber configuration and turbocharging have made diesel engines cleaner, quieter and more powerful than past vehicles.

### Effective Emissions Control

Manufactures have been very innovative with the methods used to meet emission standards using a variety of aftertreatment technologies and advanced engine systems that do not involve the use of additional emissions control technology, particularly in the off-road sector.

Introduction of ultra-low sulfur diesel fuels for both on- and off-road applications is a central part of the clean diesel system designed to meet near zero emissions standards. With the introduction of lower sulfur diesel fuel came the ability to use a number of exhaust aftertreatment options such as diesel particulate filters (DPF), exhaust gas recirculation (EGR), diesel oxidation catalysts (DOC), and selective catalyst reduction (SCR) with the use of diesel exhaust fluid (DEF) that can be sensitive to the sulfur levels in the fuel.

The installation of various emission control technologies may also improve emissions from older diesel engines through retrofit capabilities. Read more about retrofit capabilities to reduce emissions from older vehicles and equipment (/retrofit).

313.   **Answer**: BMW AG denies the allegations in Paragraph 313 insofar as those allegations refer to a website and refers to the original source materials for a complete and accurate statement of their contents and context. To the extent the allegations relate to non-BMW vehicles,

174

BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual

consequence in this action.  BMW AG denies all remaining allegations in Paragraph 313.

314.    A document entitled "Diesel:  Fueling the Future in a Green Economy," by Hart
Energy Consulting, prepared for the Diesel Technology Forum, October 13, 2010,[52] was posted
on the DTF website and proclaimed that:

> P. 3 - "**Introduction of advanced diesel technology in 2007 that
> relied on ultra low sulfur clean diesel fuel has today reduced
> emissions of particulate matter and nitrogen oxides**—an ozone
> precursor— by more than 98% in heavy-duty truck applications
> compared to 2000 models.  It has enabled introduction of high
> performance diesel cars, trucks and SUVs that are cleaner, quieter
> and safer than ever."
>
> P. 9 - "**Fuel economy advantages of 20% to 35% for diesel
> fuel/engines over gasoline vehicles will also provide options for
> meeting low carbon fuel objectives and reducing GHG
> emissions**.  California has initiated a low carbon fuel initiative and
> the U.S. EPA has promulgated its first GHG control requirements
> in the form of vehicle CO2 reduction regulations.  Congress
> continues to debate on climate change and related GHG
> initiatives."
>
> P. 10 - "**These new levels of near-zero emissions are being met
> through advancements in the engine fuel and air management
> systems that dramatically improve combustion efficiency, and
> the use of ultra-low sulfur diesel fuel that enables the use of
> high efficiency exhaust control**.  As a result, new trucks and
> buses are more than 98% cleaner than 2000-era models (Figure 3).
> In fact, results from the first phases of joint government and
> industry research (Advanced Collaborative Emissions Study,
> ACES) have demonstrated that the emissions reductions from these
> technologies have actually exceeded requirements, providing
> substantially greater performance and benefits than anticipated."
>
> P. 11 - "While new engines are now on a path to near-zero
> emissions, **the widespread availability of cleaner diesel fuel has
> created new and substantial efforts to modernize and upgrade
> emissions performance of existing engines and equipment**.  A
> 2009 Report to Congress by U.S. EPA on results of the first year of
> a federal program to fund diesel retrofits (Diesel Emissions
> Reduction Program) found it to be among the most cost effective

---

[52] http://www.dieselforum.org/files/dmfile/Diesel-FuelingtheFutureinaGreenEconomy.pdf

clean air programs, yielding over $13 in environmental and public health benefits for each $1 invested."

P. 27 - "**The diesel industry is in the midst of implementing advanced engine and emissions control technology that will lower emissions from on-road vehicles and non-road machines and equipment by more than 98% relative to 2000 era technology.  Continued investments and research to further increase fuel efficiency while lowering emissions will keep diesel engines for light duty vehicles competitive with other technologies**."

314.    **Answer**:  BMW AG denies the allegations in Paragraph 314 insofar as those allegations refer to a website and refers to the original source materials for a complete and accurate statement of their contents and context.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG denies all remaining allegations in Paragraph 314.

## I.    The damage from excessive NOx.

### 1.    Environmental harm.

315.    Plaintiffs do not seek damage for the harm to the environment they have unwittingly caused.  However, it is important to understand why (1) NOx is regulated and (2) why a reasonable consumer would not want his or her vehicle to dump NOx into the air.

315.    **Answer**:  Paragraph 315 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 315.

316.    NOx contributes to ground-level ozone and fine particulate matter.  According to the EPA, "[e]xposure to these pollutants has been linked with a range of serious health effects, including increased asthma attacks and other respiratory illnesses that can be serious enough to send people to the hospital.  Exposure to ozone and particulate matter has also been associated with premature death due to respiratory-related or cardiovascular-related effects.  Children, the elderly, and people with pre-existing respiratory disease are particularly at risk for health effects of these pollutants."

316.    **Answer**:  BMW AG admits that NOx can be harmful under certain circumstances at certain levels.  BMW AG denies all remaining allegations in Paragraph 316.

317.    The EPA describes the danger of NOx as follows:

**Acid Rain** - $NO_x$ and sulfur dioxide react with other substances in the air to form acids which fall to earth as rain, fog, snow, or dry particles. Some may be carried by the wind for hundreds of miles.  Acid rain damages forests; causes deterioration of cars, buildings, and historical monuments; and causes lakes and streams to become acidic and unsuitable for many fish.



**Water Quality Deterioration** - Increased nitrogen loading in water bodies, particularly coastal estuaries, upsets the chemical balance of nutrients used by aquatic plants and animals.  Additional nitrogen accelerates "eutrophication," which leads to oxygen depletion and reduces fish and shellfish populations. $NO_x$ emissions in the air are one of the largest sources of nitrogen pollution to the Chesapeake Bay.





**Toxic Chemicals** - In the air, $NO_x$ reacts readily with common organic chemicals, and even ozone, to form a wide variety of toxic products, some of which may cause biological mutations. Examples of these chemicals include the nitrate radical, nitroarenes, and nitrosamines.

**Ground-level Ozone (Smog)** - is formed when $NO_x$ and volatile organic compounds (VOCs) react in the presence of heat and sunlight. Children, the elderly, people with lung diseases such as asthma, and people who work or exercise outside are susceptible to adverse effects such as damage to lung tissue and reduction in lung function. Ozone can be transported by wind currents and cause health impacts far from the original sources. Millions of Americans live in areas that do not meet the health standards for ozone. Other impacts from ozone include damaged vegetation and reduced crop yields.





**Particles** - $NO_x$ react with ammonia, moisture, and other compounds to form nitric acid vapor and related particles. Human health concerns include effects on breathing and the respiratory system, damage to lung tissue, and premature death. Small particles penetrate deeply into sensitive parts of the lungs and can cause or worsen respiratory disease, such as emphysema and bronchitis, and aggravate existing heart disease.



**Global Warming** - One member of the $NO_x$ family, nitrous oxide, is a greenhouse gas. It accumulates in the atmosphere with other greenhouse gases causing a gradual rise in the earth's temperature. This will lead to increased risks to human health, a rise in the sea level, and other adverse changes to plant and animal habitat.

317.   **Answer**:   BMW AG denies the allegations in Paragraph 317 insofar as those allegations refer to an EPA statement and refers to the original source materials for a complete and accurate statement of their contents and context.   BMW AG denies the allegations in Paragraph 317.

318.   A recent study published in NATURE estimates that there are 38,000 deaths worldwide due to excess NOx emissions.   And recently a study commissioned by the Federal Office for the Environment (Germany) concluded that 6,000 people died prematurely in 2014 from illnesses known to be caused or aggravated by NOx exposure.   Plaintiffs here do not seek damages to the injury to the environment, but plaintiffs did not intend to drive cars whose emissions manipulation would deliberately injure the environment.

318.   **Answer**:   Paragraph 318 of the FAC in part states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 318 insofar as those allegations refer to a study and refers to the original source materials for a complete and accurate statement of their contents and context.   BMW AG denies all remaining allegations in Paragraph 318.

## 2.     Economic harm specifically alleged here.

319.   As a result of BMW's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Polluting BMW Vehicles are not "clean" diesels, emit more pollutants than do gasoline-powered vehicles, and emit more pollutants than permitted under federal and state laws, owners and/or lessees of the Polluting BMW Vehicles have suffered losses in money and/or property.   Had Plaintiffs and Class members known of the higher emissions at the time they purchased or leased their Polluting BMW Vehicles, or had they known of the effects on fuel economy if the emissions were not manipulated, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did, in an amount of at least $1,500 and based on analysis of other emissions cases more likely in the range of $5,000 to $20,000 per vehicle.   Further, without improvements in fuel economy and emissions over gasoline vehicles, there is no reason for a consumer to purchase a diesel car over a gas powered car.   Thus, Plaintiffs would not have purchased their vehicles if Defendants had told the truth, and are damaged in the amount of the full purchase price.   In addition, Plaintiffs could not have lawfully purchased these vehicles because without the scheme these vehicles could not have been sold.   Hence, Plaintiffs' damage is the entire purchase price less some amount for use of the vehicle.

319.   **Answer**:   Paragraph 319 of the FAC states legal conclusions and argument to which BMW AG need not respond, and makes allegations related to claims dismissed by the Court's June

179

25, 2020 Order, and reconsideration of that dismissal was denied by Order dated February 2, 2021.

Accordingly, BMW AG need not respond.  To the extent a response is required, BMW AG denies

that it engaged in "unfair, deceptive, and/or fraudulent business practices" and denies all remaining

allegations in Paragraph 319.

320.    Plaintiffs have also been harmed and injured by the fact that they unwittingly drove vehicles that were not legally on the road and unwittingly drove vehicles that were polluting in volumes and manners a reasonable consumer would not expect.  This harm can be measured and precisely monetized through conjoint and economic analysis.

320.    **Answer**:  BMW AG denies the allegations in Paragraph 320.

**J.    The BMW scheme is just the latest in a worldwide diesel emissions cheating scandal that adds plausibility to the allegations here as virtually all diesel manufacturers are falsely advertising their vehicles.**

321.    As noted, the world was shocked to learn that Volkswagen had manufactured over 11 million vehicles that were on the road in violation of European emissions standards, and over 480,000 vehicles were operating in the United States in violation of EPA and state standards.  But Volkswagen was not the only manufacturer of vehicles that exceeded emissions standards.

321.    **Answer**:  Paragraph 321 of the FAC relates exclusively to persons or entities other

than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and

of neither legal nor factual consequence in this action.

322.    In the wake of the major scandal involving Volkswagen and Audi diesel vehicles evading emissions standards with the help of certain software that manipulates emission controls (called "defeat devices"),[53] scientific literature and reports and testing indicate that most of the diesel vehicle manufactures of so-called "clean diesel" vehicles emit far more pollution on the road than in lab tests.  The EPA has widened its probe of auto emissions to include, for example, the Mercedes BlueTEC diesels and FCA's Jeep Cherokees and Dodge Rams.  The results of the studies

---

[53] EPA's Sept. 18, 2015 Notice of Violation to Volkswagen Group of America, Inc., available at https://www.epa.gov/sites/production/files/2015-10/documents/vw-nov-caa-09-18-15.pdf. As detailed in the Notice of Violation, software in Volkswagen and Audi diesel vehicles detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. But otherwise, while the vehicle is running, the emissions controls are suppressed. This results in cars that meet emissions standards in the laboratory or at the state testing station, but during normal operation they emit NOx at up to 40 times the standard allowed under U.S. laws and regulations. Volkswagen has admitted to installing a defeat device in its diesel vehicles.

enhance the plausibility of the allegations here as it is unlikely only BMW would have been capable of emissions technology that did not cheat for the model years at issue.

322.    **Answer**: Paragraph 322 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

323.    In May 2015, a study conducted on behalf of the Dutch Ministry of Infrastructure and the Environment <u>found that all sixteen vehicles made by a variety of manufacturers</u>, when tested, emitted significantly more NOx on real-world trips while they passed laboratory tests.  The report concluded that "[i]n most circumstances arising in normal situations on the road, the system scarcely succeeded in any effective reduction of NOx emissions."[54]

323.    **Answer**: Paragraph 323 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  To the extent a response is required, BMW AG denies the allegations in Paragraph 323 insofar as those allegations refer to a study and refers to the original source materials for a complete and accurate statement of their contents and context.

324.    The report further remarked:[55]

It is remarkable that the NOx emission under real-world conditions exceeds the type approval value by [so much].  It demonstrates that the settings of the engine, the EGR and the SCR during a real- world test trip are such that they do not result in low NOx emissions in practice.  In other words: ***In most circumstances arising in normal situations on the road, the systems scarcely succeed in any effective reduction of NOx emissions***.

The lack of any "effective reduction of NOx emissions" is a complete contradiction of BMW's claim that its vehicles are clean.

324.    **Answer**:  BMW AG denies the allegations in Paragraph 324 insofar as those allegations refer to a report and refers to the original source materials for a complete and accurate

---

[54] *Detailed investigations and real-world emission performance of Euro 6 diesel passenger cars*, TNO (May 18, 2015), http://publications.tno.nl/publication/34616868/a1Ug1a/TNO-2015-R10702.pdf.

[55] *Id.* at 6 (emphasis added).

statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 324.

325.    Other organizations reached similar conclusions.    The Transportation and Environment (T&E) organization, a European group aimed at promoting sustainable transportation, compiled data from "respected testing authorities around Europe."  T&E stated in September 2015 that real-world emissions testing showed drastic differences from laboratory tests such that models tested emitted more pollutants on the road than in their laboratory tests.  "For virtually every new model that comes onto the market the gap between test and real-world performance leaps," the report asserts.[56]

325.    **Answer**:  BMW AG denies the allegations in Paragraph 325 insofar as those allegations refer to a statement and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 325.

326.    In a summary report, T&E graphically depicted the widespread failure of most manufacturers including BMW:[57]

---

[56] *VW's cheating is just the tip of the iceberg*, Transport & Environment (Sept. 21, 2015), http://www.transportenvironment.org/publications/vw%E2%80%99s-cheating-just-tip-iceberg.

[57] *Five facts about diesel the car industry would rather not tell you*, Transport & Environment (Sept. 2015), http://www.transportenvironment.org/sites/te/files/publications/2015_09_Five_facts_about_diesel_FINAL.pdf.



**2. The problem is endemic across the car industry – but the performance of individual models and manufacturers varies widely**

In tests by the ICCT[1] 12 out of 13 modern diesel cars failed to achieve the Euro 6 limit in on the road. The worst vehicle, an Audi, emitted 22 times the allowed limit. Emissions are highest in urban areas where most people are exposed to the pollution. On average a new diesel car emits **over** 800mg/km of nitrogen oxides driving in town compared to the limit of 80mg/km. Data obtained on around 20 modern diesel cars by T&E shows every major manufacturer is selling cars that fail to meet Euro 6 limits on the road. A minority of vehicles do meet the limits – but most don't. This is because the industry uses cheaper less effective exhaust treatment systems or fails to configure the best systems in a way that minimizes emissions. The cost of a modern diesel after treatment system is just €300.

326.   **Answer**:  BMW AG denies the allegations in Paragraph 326 insofar as those allegations refer to a report and refers to the original source materials for a complete and accurate statement of their contents and context.  To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.  BMW AG denies all remaining allegations in Paragraph 326.

327.   The T&E report found that the current system for testing vehicles in a laboratory produces "meaningless results."[58]

---

[58] *Id.*

327.   **Answer**:   BMW AG denies the allegations in Paragraph 327 insofar as those allegations refer to a report and refers to the original source materials for a complete and accurate statement of their contents and context.   BMW AG denies all remaining allegations in Paragraph 327.

328.   Emissions Analytics is a U.K. company which says that it was formed to "overcome the challenge of finding accurate fuel consumption and emissions figures for road vehicles." According to its website:

> Emissions Analytics is the leading independent global testing and data specialist for the scientific measurement of real-world emissions and fuel efficiency for passenger and commercial vehicles and non-road mobile machinery.  Emissions Analytics seeks to bring transparency to a confused market sector.  It publishes the EQUA Index of real world driving emissions, and works with clients around the world to establish accurate emissions measurement and data requirements.

328.   **Answer**:   Paragraph 328 of the FAC relates exclusively to persons or entities other than BMW AG, and, as such BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.

329.   With regard to its 2017 on-road emissions testing, the company explains:[59]

> [I]n the European market, we have found that real-world emissions of the regulated nitrogen oxides are four times above the official level, determined in the laboratory.  Real-world emissions of carbon dioxide are almost one-third above that suggested by official figures.  For car buyers, this means that fuel economy on average is one quarter worse than advertised.  This matters, even if no illegal activity is found.

329.   **Answer**:   BMW AG denies the allegations in Paragraph 329 insofar as those allegations refer to a report and refers to the original source materials for a complete and accurate

---

[59] Emissions Analytics Press Release (Sept. 28, 2015), available at http://www.abvwc.com/home/emissions-analytics.

statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph

329.

330.     Emissions Analytics publishes an "EQUA Index" in which it rates vehicles' emissions based upon real-world testing results, using "independent real world emissions data." Its testing of the BMW 2013 X5 Diesel, a car at issue here, resulted in an "H" rating, meaning the emissions were 12 times the Euro 6 emissions standard which is lower than the U.S. standard. This result by an independent laboratory, is consistent with Plaintiffs' testing.  Testing on the BMW 3 series 2012 model year resulted in a rating of "E", meaning the car did not meet the Euro 6 limit.  It is not plausible that the U.S. 2011 model could meet higher U.S. limits but somehow the next year's model could not meet the lower Euro 6 limit.  The 2018 3 series, a post VW scandal model, meets the Euro 6 limits, giving rise to an inference that BMW, under post VW scrutiny, stopped cheating.  One sees a similar pattern in the X3 Diesel.  There the 2014 received an "F" rating, or 6 to 8 times to Euro 6 standard, while the 2018 met the standard.

330.     **Answer**:  BMW AG denies the allegations in Paragraph 330 insofar as those

allegations refer to a study and refers to the original source materials for a complete and accurate

statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph

329.

331.     In June 2016, T&E issued a new report identifying the thirty most polluting vehicles in Europe, comparing road testing to the Euro 6 Standard (lower than the United States).  The T&E "Dirty 30" included two BMW models, which exceed the lower than the U.S. Euro 6 Standard. These BMW models employed a thermal window and hot restart defect devices, the same or similar defeat strategies found in Plaintiffs' testing.

331.     **Answer**:  BMW AG denies the allegations in Paragraph 331 insofar as those

allegations refer to a report and refers to the original source materials for a complete and accurate

statement of their contents and context.  To the extent the allegations relate to non-BMW vehicles,

BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual

consequence in this action.  BMW AG denies all remaining allegations in Paragraph 331.

332.     In September 2017, the International Council on Clean Transportation authored a report analyzing the real world versus lab testing emissions of many manufacturers' vehicles.

Though better than other manufacturers, the BMW 3 Series was found to emit 3 times the Euro 5 standard and the BMW X3 was polluting 12 times the Euro 6 standard.[60]

332.   **Answer**:   BMW AG denies the allegations in Paragraph 332 insofar as those allegations refer to a report and refers to the original source materials for a complete and accurate statement of their contents and context.   To the extent the allegations relate to non-BMW vehicles, BMW AG avers that the allegations are irrelevant, prejudicial, and of neither legal nor factual consequence in this action.   BMW AG denies all remaining allegations in Paragraph 332.

## VI.   TOLLING OF THE STATUTE OF LIMITATIONS

### A.   Discovery rule tolling

333.   Class members had no way of knowing about BMW's deception with respect to the comparatively and unlawfully high emissions of its BMW clean diesel engine system in the Polluting BMW Vehicles.   To be sure, BMW continues to market the Polluting BMW Vehicles as "clean" diesels that have lower emissions than gasoline vehicles and also continues to claim that the Polluting BMW Vehicles comply with EPA emissions standards.

333.   **Answer**:   BMW AG denies the allegations in Paragraph 333.

334.   Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that BMW was concealing the conduct complained of herein and misrepresenting the company's true position with respect to the emission qualities of the Polluting BMW Vehicles.

334.   **Answer**:   BMW AG denies the allegations in Paragraph 334.

335.   Plaintiffs and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that BMW did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that BMW had concealed information about the true emissions of the Polluting BMW Vehicles, which was discovered by Plaintiffs only shortly before this action was filed.   Nor in any event would such an investigation on the part of Plaintiffs and other Class members have disclosed that BMW valued profits over truthful marketing and compliance with the law.

335.   **Answer**:   BMW AG denies the allegations in Paragraph 335.

---

[60] ICCT 2017 White Paper. *Road Tested Comparative Overview of Real-World versus Type Approval NOx and CO2 Emissions from Diesel Cars in Europe.*

336.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Polluting BMW Vehicles.

336.    **Answer**: Paragraph 336 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 336.

**B.    Fraudulent concealment tolling.**

337.    All applicable statutes of limitation have also been tolled by BMW's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

337.    **Answer**: Paragraph 337 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 337 insofar as they pertain to BMW AG, and denies that it had any facts relevant to

the allegations of the FAC to conceal, fraudulently or otherwise.

338.    Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the Polluting BMW Vehicles were far worse than represented, and of its disregard of the law, BMW falsely represented that the Polluting BMW Vehicles had emissions cleaner than their gasoline-powered counterparts, complied with federal and state emissions standards, that the diesel engines were "clean," and that it was a reputable manufacturer whose representations could be trusted.  Further, BMW and Bosch have continued to conceal the emissions manipulation in the face of questions being raised by authorities on the issue of who else besides Volkswagen was cheating.

338.    **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs

5, 16, and 254 as if restated herein.

**C.    Estoppel.**

339.    BMW was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of emissions from the Polluting BMW Vehicles and of those vehicles' emissions systems.

339.    **Answer**: Paragraph 339 of the FAC states legal conclusions and argument to which

BMW AG need not respond, and makes allegations and addresses claims dismissed by the Court's

June 25, 2020 Order, and reconsideration of that dismissal was denied by Order dated February 2,

2021.  Accordingly, BMW AG need not respond.  To the extent a response is required, BMW AG

denies the allegations in Paragraph 339.

340.    BMW knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the emissions systems, and the emissions, of the Polluting BMW Vehicles, and continues to do so.  For example, in its 2016 Annual Report, BMW acknowledges the Volkswagen emissions scandal but makes no disclosure of the emissions irregularities in its Polluting BMW Vehicles.

340.    **Answer**: BMW AG denies the allegations in Paragraph 336.

341.    Based on the foregoing, BMW and Bosch are estopped from relying on any statutes of limitations in defense of this action.

341.    **Answer**: Paragraph 340 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 340.

## VII.    CLASS ALLEGATIONS

342.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (collectively, the "Class"):

> All persons who purchased or leased a model year 2009–2013
> BMW X5 or 2009–2011 BMW 335d vehicles.

342.    **Answer**: Paragraph 342 of the FAC states legal conclusions and argument to which

BMW AG need not respond, except admit that Plaintiffs purport to bring this action as a class

action.

343.    Excluded from the Class are individuals who have personal injury claims resulting from the high emissions in the Polluting BMW Vehicles.  Also excluded from the Class are BMW and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; the judge to whom this case is assigned and his/her immediate family; and Plaintiffs' counsel.  Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

343.    **Answer**: Paragraph 343 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies that this action

may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.  BMW AG denies all remaining allegations in Paragraph 343.

344.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

344.    **Answer**: Paragraph 344 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.  BMW AG denies all remaining allegations in Paragraph 344.

345.    This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

345.    **Answer**: Paragraph 345 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.  BMW AG denies all remaining allegations in Paragraph 345.

346.    **Numerosity**.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  For purposes of this complaint, Plaintiffs allege that there are in excess of an estimated 100,000 or more vehicles in the Class.  The precise number of Class members is unknown to Plaintiffs but may be ascertained from BMW's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

346.    **Answer**: Paragraph 346 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment

of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or

should be certified in this action.  BMW AG denies all remaining allegations in Paragraph 346.

347.    **Commonality and Predominance**:  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a)    Whether BMW and Bosch engaged in the conduct alleged herein;

b)    Whether BMW designed, advertised, marketed, distributed, leased, sold, or otherwise placed Polluting BMW Vehicles into the stream of commerce in the United States;

c)    Whether the BMW engine system in the Polluting BMW Vehicles emits pollutants at levels that do not make them "clean" diesels;

d)    Whether BMW and Bosch omitted material facts about emissions, fuel economy, and towing capacity;

e)    Whether BMW and Bosch knew about the comparatively high emissions and, if so, how long BMW and Bosch have known;

f)    Whether BMW and Bosch designed, manufactured, marketed, and distributed Polluting BMW Vehicles with defective or otherwise inadequate emission controls;

g)    Whether BMW and Bosch's conduct violates RICO and consumer protection statutes, and constitutes breach of contract and fraudulent concealment, as asserted herein;

h)    Whether there is an Enterprise;

i)    Whether Bosch participated in the Enterprise;

j)    Whether BMW omitted and failed to disclose material facts;

k)    Whether Plaintiffs and the other Class members overpaid for their vehicles at the point of sale; and

l)    Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

347.    **Answer**:  Paragraph 347 of the FAC states legal conclusions and argument to which

BMW AG need not respond, and makes allegations and addresses claims dismissed by the Court's

June 25, 2020 Order, and reconsideration of that dismissal was denied by Order dated February 2,

2021.  Accordingly, BMW AG need not respond.  To the extent a response is required, BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.  BMW AG denies all remaining allegations in Paragraph 347.

348.   **Typicality**: Federal Rule of Civil Procedure 23(a)(3):  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through BMW's wrongful conduct as described above.

348.   **Answer**:  Paragraph 348 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.  BMW AG denies all remaining allegations in Paragraph 348.

349.   **Adequacy**:  Federal Rule of Civil Procedure 23(a)(4):  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs' counsel have been pioneers in uncovering emissions misconduct, including doing so in the Mercedes, General Motors, and FCA emissions cases.  Plaintiffs' counsel conducted a pioneering investigation in this case spanning over eight months.  The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

349.   **Answer**:  Paragraph 349 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.  BMW AG denies all remaining allegations in Paragraph 349.

350.   **Superiority**:  Federal Rule of Civil Procedure 23(b)(3):  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are

relatively small compared to the burden and expense that would be required to individually litigate their claims against BMW, so it would be impracticable for the members of the Classes to individually seek redress for BMW's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

350.   **Answer**:  Paragraph 350 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.  BMW AG denies all remaining allegations in Paragraph 350.

## VIII.   CLAIMS

A.   **Claims brought on behalf of the Nationwide RICO Class.**

### COUNT 1

### VIOLATIONS OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) VIOLATION OF 18 U.S.C. § 1962(C), (D)

351.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

351.   **Answer**:   Paragraph 351 of the FAC makes allegations and addresses claims dismissed by the Court's June 25, 2020 Order, and reconsideration of that dismissal was denied by Order dated February 2, 2021.  BMW AG thus need not respond to the allegations of this paragraph.

352.   Plaintiffs bring this Count individually and on behalf of the Nationwide RICO Class against Defendants BMW USA and BMW AG, Robert Bosch GmbH, and Robert Bosch LLC (collectively, "RICO Defendants").

352.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

353.    The RICO Defendants are all "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

353.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

354.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  Section 1962(d), in turn, makes it unlawful for "any person to conspire to violate."

354.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

355.    For many years now, the RICO Defendants have aggressively sought to increase the sales of Polluting BMW Vehicles in an effort to bolster revenue, augment profits, and increase BMW's share of the diesel truck market.  Finding it impossible to achieve their goals lawfully, however, the RICO Defendants resorted instead to orchestrating a fraudulent scheme and conspiracy.  In particular, the RICO Defendants, along with other entities and individuals, created and/or participated in the affairs of an illegal enterprise ("BMW Diesel Fraud Enterprise") whose direct purpose was to deceive both regulators and potential consumers into believing the Polluting BMW Vehicles were "clean" and "environmentally friendly."  As explained in greater detail below, the RICO Defendants' acts in furtherance of the BMW Diesel Fraud Enterprise violate Sections 1962(c) and (d).

355.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

**1.    The members of the BMW Diesel Fraud Enterprise**

356.    Upon information and belief, the BMW Diesel Fraud Enterprise consisted of at least the following entities and individuals:  BMW USA, BMW AG, Robert Bosch GmbH, and Robert Bosch LLC.

356.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

357.    Robert Bosch GmbH and Robert Bosch LLC tested, manufactured, and sold the electronic control module (ECM) that managed the emission control system used by BMW in the Polluting BMW Vehicles.  This particular ECM is more formally referred to as the Electronic Diesel Control (EDC) Unit 17.

357.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

358.    Defendant Bosch GmbH is a multinational engineering and electronics company headquartered in Gerlingen, Germany, which has hundreds of subsidiaries and companies.  It wholly owns defendant Bosch LLC, a Delaware limited liability company headquartered in Farmington Hills, Michigan.  As explained above, Bosch's sectors and divisions are grouped by subject matter, not location.  Mobility Solutions (formerly Automotive Technology) is the Bosch sector at issue, particularly its Diesel Services division, and it encompasses employees of Bosch GmbH and Bosch LLC.  These individuals were responsible for the design, manufacture, development, customization, and supply of the defeat device to BMW for use in the Polluting BMW Vehicles.

358.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

359.    Bosch worked with BMW, Volkswagen, Mercedes, Ford, General Motors, and FCA to develop and implement a specific and unique set of software algorithms to surreptitiously evade emissions regulations.  Bosch customized their EDC Unit 17s for installation in the Polluting BMW Vehicles with unique software code to detect when it was undergoing emissions testing, as described above, and did so for other vehicles with defeat devices in BMW, Volkswagen, Mercedes, FCA, and GM vehicles.[61]

359.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

360.    Bosch's conduct with respect to Volkswagen and the other manufacturers adds plausibility to its participation in the enterprise described herein.  For example, Bosch was well aware that the EDC Unit 17 would be used by automobile manufacturers, including VW and BMW, to cheat on emissions testing.  Bosch was also critical to the concealment of the defeat device in communications with U.S. and state regulators, and went even further to actively lobby U.S. and state lawmakers on behalf of diesel manufacturers and to market "clean diesel" vehicles.  Bosch used the Diesel Technology forum as a means to further falsely promote "clean diesel," while at all times Bosch knew that the diesels it supplied the EDC-17 for were all polluting at levels that were inconsistent with any reasonable definition of "Clean Diesel."  Three vehicles included diesels made by Mercedes, VW, Audi, Ford, GM, and BMW.

---

[61] Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, CAR AND DRIVER (Nov. 23, 2015), http://blog.caranddriver.com/epa-investigating-bosch-over-vw-diesel-cheater-software/.

360.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

361.   EDC Unit 17 could not effectively lower NOx emissions to legal levels during normal operating conditions.  In order to pass the emissions test, then, EDC Unit 17 is equipped with a "defeat device," which is software that allows the vehicle to determine whether it is being operated under normal conditions or testing conditions.

361.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

362.   The EDC Unit 17 ECU was manufactured by Bosch GmbH and sold to BMW. Bosch built the ECU hardware and developed the software running in the ECU.  Bosch developed a "function sheet" that documents the functional behavior of a particular release of the ECU firmware.  All function sheets used in the BMW EDC, on information and belief, bear a "Robert Bosch GmbH" copyright.

362.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

363.   As was publicly reported, the Bosch defendants, seeking to conceal their involvement in the unlawful Volkswagen Diesels, sent a letter to Volkswagen AG in 2007 stating that Volkswagen Diesels *could not be lawfully operated* if the LNT or SCR after-treatment system was disabled.[62]  The same logic applies to the BMW Polluting BMW Vehicles—*i.e.*, they could not be lawfully operated with the defeat device.

363.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

364.   Indeed, notwithstanding their knowledge that the Volkswagen Diesels *could not be lawfully operated* if the emissions system was disabled, the Bosch defendants, driven to cement their position as a leading supplier of diesel emissions equipment, went on to sell approximately *eleven million* EDC Unit 17s to Volkswagen over an eight-year period, and sold hundreds of

---

[62] Stef Shrader, *Feds Are Now Investigating Volkswagen Supplier Bosch Over Dieselgate*, JALOPNIK (Nov. 19, 2015), http://jalopnik.com/feds-are-now-investigating-volkswagen-supplier-bosch-ov-1743624448.

thousands of EDC units to BMW for use in Polluting BMW Vehicles, as well as hundreds of thousands of units to Mercedes and FCA.[63]

364.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

365.   The persons and entities described in the preceding section are members of and constitute an "association-in-fact" enterprise.

365.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

366.   At all relevant times, the BMW Diesel Fraud Enterprise:  (a) had an existence separate and distinct from each Defendant; (b) was separate and distinct from the pattern of racketeering in which the RICO Defendants engaged; and (c) was an ongoing organization consisting of legal entities, including BMW, the Bosch defendants, and other entities and individuals associated for the common purpose of designing, manufacturing, distributing, testing, and selling the Polluting BMW Vehicles through fraudulent and/or misleading COCs and EOs, false emissions tests, deceptive and misleading marketing and materials, and deriving profits and revenues from those activities.  Each member of the BMW Diesel Fraud Enterprise shared in the bounty generated by the enterprise—*i.e.*, by sharing the benefit derived from increased sales revenue generated by the scheme to defraud consumers and franchise dealers alike nationwide.

366.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

367.   The BMW Diesel Fraud Enterprise functioned by selling vehicles and component parts to the consuming public.  Many of these products are legitimate, including vehicles that do not contain defeat devices and software capable of allowing the engine to manipulate the software such that the emissions system is turned on or off at certain times.  However, the RICO Defendants and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involves a fraudulent scheme to increase revenue for Defendants and the other entities and individuals associated in fact with the Enterprise's activities through the illegal scheme to sell the Polluting BMW Vehicles.

367.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

---

[63] Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, CAR AND DRIVER (Nov. 23, 2015), http://blog.caranddriver.com/epa-investigating-bosch-over-vw-diesel- cheater-software/.

368.     The BMW Diesel Fraud Enterprise engaged in and its activities affected interstate and foreign commerce because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement, and sale or lease of the Polluting BMW Vehicles throughout the country and the receipt of monies from the sale of the same.

368.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

369.     Within the BMW Diesel Fraud Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis.  The BMW Diesel Fraud Enterprise used this common communication network for the purpose of manufacturing, marketing, testing, and selling the Polluting BMW Vehicles to the general public nationwide.  As part of this communication system, Bosch and BMW employees conferred by wire and mail on the key software inputs that controlled the emissions software and on what disclosures would be made to CARB and the EPA.

369.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

370.     Each participant in the BMW Diesel Fraud Enterprise had a systematic linkage to each of the other participants through corporate ties, contractual relationships, financial ties, and continuing coordination of activities.  Through the BMW Diesel Fraud Enterprise, the RICO Defendants functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes of increasing their revenues and market share, and minimizing losses.

370.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

371.     The RICO Defendants participated in the operation and management of the BMW Diesel Fraud Enterprise by directing its affairs, as described herein.  While the RICO Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

371.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

372.     BMW USA and BMW AG exerted substantial control and participated in the affairs of the BMW Diesel Fraud Enterprise by:

    a)     Designing, in conjunction with Robert Bosch GmbH, the emissions system in the Polluting BMW Vehicles with defeat devices;

197

b)      Failing to correct or disable the defeat devices;

c)      Manufacturing, distributing, and selling the Polluting BMW Vehicles that emitted greater pollution than allowable under the applicable regulations;

d)      Misrepresenting and omitting (or causing such misrepresentations and omissions to be made) vehicle specifications on COC and EO applications;

e)      Introducing the Polluting BMW Vehicles into the stream of U.S. commerce without a valid COC and/or EO;

f)      Concealing the existence of the defeat devices and the unlawfully high emissions from regulators and consumers;

g)      Misleading government regulators as to the nature of the defeat devices and the defects in the Polluting BMW Vehicles;

h)      Misleading consumers as to the nature of the defeat devices and the defects in the Polluting BMW Vehicles;

i)      Designing and distributing marketing materials that misrepresented and concealed the defects and true emissions and fuel economy in the vehicles;

j)      Otherwise misrepresenting or concealing the defective nature of the Polluting BMW Vehicles from consumers and regulators; and

k)      Illegally selling and/or distributing the Polluting BMW Vehicles; collecting revenues and profits from the sale of such products; and ensuring that the other RICO Defendants and unnamed co-conspirators complied with the fraudulent scheme.

372.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

373.    Bosch also participated in, operated, and/or directed the BMW Diesel Fraud Enterprise.  Bosch participated in the fraudulent scheme by manufacturing, installing, testing, modifying, and supplying the EDC Unit 17 which operated as a "defeat device" and/or turned off or down emissions controls in the Polluting BMW Vehicles.  Bosch exercised tight control over the coding and other aspects of the emissions software and closely collaborated with BMW to develop, customize, and calibrate the emissions software.  Additionally, Bosch continuously cooperated with BMW to ensure that the EDC Unit 17 was fully integrated into the Polluting BMW Vehicles.  Bosch also participated in the affairs of the Enterprise by concealing the true operation and effects of the emissions software in documentation and in communications with U.S. regulators.  Bosch collected tens of millions of dollars in revenues and profits from the hidden defeat devices installed in the Polluting BMW Vehicles.

373.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

374.   Without the RICO Defendants' willing participation, including Bosch's active involvement in developing and supplying the critical defeat devices for the Polluting BMW Vehicles, the BMW Diesel Fraud Enterprise's scheme and common course of conduct would not have been successful.

374.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

375.   The RICO Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiffs cannot fully know at present because such information lies in the Defendants' and others' hands.

375.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

376.   The members of the BMW Diesel Fraud Enterprise all served a common purpose; namely, to promote the market for diesel vehicles and for BMW diesel vehicles and to increase their revenues through the sale of as many Polluting BMW Vehicles (including the emissions components made and sold by Bosch) as possible.  Each member of the BMW Diesel Fraud Enterprise shared the bounty generated by the enterprise—*i.e.*, by sharing the benefit derived from increased sales revenue generated by the scheme to defraud.  BMW sold more Polluting BMW Vehicles by utilizing an emission control system that was cheaper to install and allowed for generous performance and efficiency tuning, all while charging consumers a premium for purportedly "clean" and "fuel efficient" Polluting BMW Vehicles.  The Bosch defendants, in turn, sold more EDC Units because BMW manufactured and sold more Polluting BMW Vehicles.  The RICO Defendants achieved their common purpose by repeatedly misrepresenting and concealing the nature of the Polluting BMW Vehicles and the ability of the emission control systems (including the Bosch-supplied parts) to effectively reduce toxic emissions during normal operating conditions.

376.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

## 2.   The predicate acts

377.   To carry out, or attempt to carry out, the scheme to defraud, the RICO Defendants conducted or participated in the conduct of the affairs of the BMW Diesel Fraud Enterprise through a pattern of racketeering activity that employed the use of mail and wire facilities, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

377.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

378.   Specifically, the RICO Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit writings travelling in interstate or foreign commerce.

378.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

379.   The RICO Defendants' use of the mails and wires include but are not limited to the transmission, delivery, or shipment of the following by the RICO Defendants or third parties that were foreseeably caused to be sent as a result of Defendants' illegal scheme:

a)   Application for certificates submitted to the EPA on 2/22/10 X5; 2/17/10 335d; 8/19/08 X5; 8/8/11 X5; 8/27/12 X5, and to CARB;

b)   Application for certificates submitted to CARB;

c)   The Polluting BMW Vehicles themselves;

d)   Component parts for the defeat devices;

e)   Essential hardware for the Polluting BMW Vehicles;

f)   Falsified emission tests;

g)   Fraudulently or misleadingly obtained COCs and EOs;

h)   Vehicle registrations and plates as a result of the fraudulently-obtained COCs and EOs;

i)   Documents and communications that facilitated the falsified emission tests;

j)   False or misleading communications intended to lull the public and regulators from discovering the defeat devices and/or other auxiliary devices;

k)   Sales and marketing materials, including advertising, websites, product packaging, brochures, and labeling, which misrepresented and concealed the true nature of the Polluting BMW Vehicles;

l)   Emails between Bosch and BMW regarding emissions testing and software modification;

m) Documents intended to facilitate the manufacture and sale of the Polluting BMW Vehicles, including bills of lading, invoices, shipping records, reports and correspondence;

n) Documents to process and receive payment for the Polluting BMW Vehicles by unsuspecting franchise dealers, including invoices and receipts;

o) Payments to Bosch;

p) Deposits of proceeds; and

q) Other documents and things, including electronic communications.

379. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

380. The RICO Defendants, in furtherance of their scheme, used the wires and mails to apply for, or submit revisions to, certificates of compliance with the Clean Air Act of 1990. The RICO Defendants used the mails on at least the following dates for this purpose on at least August 31, 2009, September 25, 2009, March 8, 2011, August 27, 2009, September 11, 2009, June 30, 2009, July 3, 2009, June 30, 2009, July 3, 2009, June 30, 2009, July 3, 2009, March 1, 2011, March 16, 2011, March 28, 2011, September 6, 2011, March 8, 2012, and March 23, 2012.

380. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

381. As part of the operation of the Enterprise, BMW received from the EPA through the U.S. Mail, Certificates of Conformity with the Clean Air Act of 1990.

381. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

382. Although many of the documents described in the three paragraphs above were placed in the mail by BMW, not Bosch, Bosch was aware that such documentation was required for the BMW diesels to receive certificates of compliance. On information and belief, Bosch personnel obtained copies of many of these documents, including applications for certificates and COCs.

382. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

383. The RICO Defendants utilized the interstate and international mail and wires for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described therein.

383.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

351 as if restated herein.

384.   The RICO Defendants also used the Internet and other electronic facilities to carry out the scheme and conceal the ongoing fraudulent activities.  Specifically, BMW made misrepresentations about the Polluting BMW Vehicles on BMW websites, YouTube, and through online ads, all of which were intended to mislead regulators and consumers about the fuel efficiency, emissions standards, and other performance metrics.  Bosch used the internet and other electronic facilities to mislead regulators and consumers about "Clean Diesel."

384.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

351 as if restated herein.

385.   The scheme had two intended targets, each one was a necessary target.  Consumers were a primary target and a common objective of the scheme.  BMW and Bosch understood that consumers had to be convinced that the BMW diesels were "clean" and provided fuel and performance characteristics that were better than the less expensive gas cars.  And likewise the regulators had to be convinced that the BMW vehicles met emissions standards.

385.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

351 as if restated herein.

386.   The RICO Defendants also communicated by U.S. Mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships, and other third-party entities in furtherance of the scheme.

386.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

351 as if restated herein.

387.   The mail and wire transmissions described herein were made in furtherance of the RICO Defendants' scheme and common course of conduct to deceive regulators and consumers and lure consumers into purchasing the Polluting BMW Vehicles, which the RICO Defendants knew or recklessly disregarded as emitting illegal amounts of pollution, despite their advertising campaign that the Polluting BMW Vehicles were "clean" diesel vehicles or vehicles with a "remarkable reduction in emission."

387.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

351 as if restated herein.

388.   Many of the precise dates of the fraudulent uses of U.S. Mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to the RICO Defendants' books and records.  However, Plaintiffs have described the types of, and in some

202

instances, occasions on which the predicate acts of mail and/or wire fraud occurred.  They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described in the preceding paragraphs.

388.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

351 as if restated herein.

389.    The RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy.  In violation of 18 U.S.C. § 1962(d), the RICO Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein.  Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the RICO Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the RICO Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

389.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

351 as if restated herein.

390.    The RICO Defendants aided and abetted others in the violations of the above laws, thereby rendering them indictable as principals in the 18 U.S.C. §§ 1341 and 1343 offenses.

390.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

351 as if restated herein.

391.    To achieve their common goals, the RICO Defendants hid from the general public the unlawfulness and emission dangers of the Polluting BMW Vehicles and obfuscated the true nature of the emissions systems even after regulators raised concerns.  The RICO Defendants suppressed and/or ignored warnings from third parties, whistleblowers, and governmental entities about the discrepancies in emissions testing and the defeat devices present in the Polluting BMW Vehicles.

391.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

351 as if restated herein.

392.    The RICO Defendants and each member of the conspiracy, with knowledge and intent, have agreed to the overall objectives of the conspiracy and participated in the common course of conduct to commit acts of fraud and indecency in designing, manufacturing, distributing, marketing, testing, and/or selling the Polluting BMW Vehicles (and the defeat devices contained therein).

392.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

393.   Indeed, for the conspiracy to succeed, each of the RICO Defendants and their co-conspirators had to agree to implement and use the similar devices and fraudulent tactics— specifically, complete secrecy about the defeat devices in the Polluting BMW Vehicles.

393.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

394.   The RICO Defendants knew and intended that government regulators, as well as Plaintiffs and Class members, would rely on the material misrepresentations and omissions made by them about the Polluting BMW Vehicles.  The RICO Defendants knew and intended that Plaintiffs and the Class would incur costs and damages as a result.  As fully alleged herein, Plaintiffs and the Class relied upon Defendants' representations and omissions that were made or caused by them.  Plaintiffs' reliance is made obvious by the fact that:  (1) they purchased over a hundred thousand BMWs that never should have been introduced into the U.S. stream of commerce and whose worth is far less than what was paid.  In addition, the EPA, CARB, and other regulators relied on the misrepresentations and material omissions made or caused to be made by the RICO Defendants; otherwise, BMW could not have obtained valid COCs and EOs to sell the Polluting BMW Vehicles, at the time they were obtained.

394.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

395.   The RICO Defendants' conduct in furtherance of this scheme was intentional. Plaintiffs and the Class were harmed as a result of the RICO Defendants' intentional conduct. Plaintiffs, the Class, regulators, and consumers, among others, relied on the RICO Defendants' material misrepresentations and omissions.

395.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

396.   The predicate acts all had the purpose of generating significant revenue and profits for the RICO Defendants at the expense of Plaintiffs, the Class, and consumers.  The predicate acts were committed or caused to be committed by the RICO Defendants through their participation in the BMW Diesel Fraud Enterprise and in furtherance of its fraudulent scheme, and were interrelated in that they involved obtaining Plaintiffs' and Class members' funds, artificially inflating the brand and dealership goodwill values, and avoiding the expenses associated with remediating the Polluting BMW Vehicles.

396.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

397.   During the design, manufacture, testing, marketing, and sale of the Polluting BMW Vehicles, the RICO Defendants shared technical, marketing, and financial information that plainly revealed the emission control systems in the Polluting BMW Vehicles as the ineffective, illegal, and fraudulent piece of technology they were and are.  Nevertheless, the RICO Defendants shared and disseminated information that deliberately represented Polluting BMW Vehicles as "environmentally friendly" and emissions compliant in "all 50 states."

397.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

398.   By reason of and as a direct and proximate result of the conduct of the RICO Defendants, and in particular its pattern of racketeering activity, Plaintiffs and the Class have been injured in multiple ways, including but not limited to:

a)   Overpayment for Polluting BMW Vehicles, in that Plaintiffs and the Class at the time of purchase overpaid for their vehicles.  Plaintiffs would not have purchased their vehicles because they would not have done so if BMW and Bosch truthfully disclosed the vehicles were unlawfully on the road, or contained a software program that turned off or down emissions controls in real driving conditions, delivered fuel performance only as a result of emissions manipulations, and provided decreased gas mileage when the vehicles were in active regeneration.  Expert reports will demonstrate that each Plaintiff overpaid by many thousands of dollars.  Alternately, Plaintiffs would not have paid a diesel premium of up to $1,500 or more if proper disclosures had been made, and at a proper time.  Plaintiffs have also been injured because they have been unwittingly driving cars whose emissions systems from the outset are not what a reasonable consumer would expect.  This form of injury can be monetized by expert testimony using a conjoint analysis.  Plaintiffs have also been injured by BMW's misrepresentations and/or omissions as to fuel economy and miles per gallon each vehicle was represented to have as a result of decreased fuel economy during active regeneration.

b)   Plaintiffs have been wrongfully deprived of their property in that the price for their vehicles was artificially inflated by many thousands of dollars by the deliberate acts of false statements, omissions, and concealment and by the RICO Defendants' acts of racketeering.

398.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 351 as if restated herein.

399.    The RICO Defendants' violations of 18 U.S.C. § 1962(c) and (d) have directly and proximately caused injuries and damages to Plaintiffs and the Class, and Plaintiffs and the Class are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).  Each of the RICO Defendants knew, understood, and intended for members of the Class to purchase the Polluting BMW Vehicles, and knew, understood, and foresaw that revelation of the truth would injure members of the Class.

399.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

351 as if restated herein.

**B.     State law claims.**

### OMISSIONS COMMON TO ALL STATE LAW CLAIMS

400.    BMW understood that a consumer deciding between a gas BMW and a diesel BMW had to have a reason to pay more for a diesel.  For this reason BMW made numerous statements about lower emissions, the environment, and fuel economy that omitted material.  BMW made these statements because it understood that information about lower emissions, fuel economy, and performance were material to potential consumers of diesel vehicles.  The misrepresentations and omissions common to all state law claims can be summarized as follows:

> The vehicles "met emissions standards in all states."  [false];
>
> "BMW Efficient Dynamics Means Less Emissions"; [false and misleading];
>
> Its engines "protect the environment every day."  [misleading];
>
> Its engines turned nitric oxides "into environmentally friendly compatible nitrogen and water vapor."  [false and misleading];
>
> Its engines offered "increased power with decreased fuel consumption and emissions."  [misleading as in many circumstances with emissions manipulation there is no decrease in emissions.];
>
> BMW claimed its SCR catalyst ensured effective reduction of NOx, in part by urea dosing (¶ 123) [false as SCR efficiency was manipulated to allow increased emissions];
>
> BMW claimed its polluting vehicles generated "less emissions" [misleading as this is true only in certain circumstances and emissions are not less than a comparable BMW gas model].

"Exemplary fuel economy" (false and misleading as fuel economy is decreased during active regeneration, and any fuel economy advantage only occurs when the emissions system is manipulated).

"Consistent distribution of AdBlue … is ensured by the SCR mixer (false as the SCR mixer is programmed to reduce admissions control).

400.   **Answer**:  Paragraph 400 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 400 of the FAC.  BMW AG denies the allegations in Paragraph 400 of the FAC insofar as those allegations refer to advertisements, laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

401.   Defendants had a duty to disclose the omitted material facts because (1) they each made or were complicit in statements that were misleading for failure to disclose material facts; (2) Defendants knew the omitted facts were material to consumers which is why they made or were complicit in statements made about emissions, the environment and fuel economy; (3) Defendants were in a superior position and had exclusive knowledge of the true facts; and (4) these omissions related to the core function of a diesel vehicle.  As to exclusive knowledge defendants had contractual agreements requiring strict confidentiality as to the software programming used to manipulate emissions performance.

401.   **Answer**:  Paragraph 401 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 401 of the FAC.

## COUNT 2

## VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (ALA. CODE § 8-19-1 *ET SEQ.*)

402.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

402.   **Answer**:  Paragraph 402 does not require a substantive response.

403.   Plaintiffs Joshua Hu and Charles Rogers ("Plaintiffs" for the purposes of this section) bring this claim on behalf of Alabama purchasers who are members of the Class.

403.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

404.   The Alabama Deceptive Trade Practices Act (Alabama DTPA) declares several specific actions to be unlawful, including:  "engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."  ALA. CODE § 8-19-5.

404.   **Answer**:  Paragraph 404 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 404 of the FAC.  BMW AG denies the allegations in Paragraph 404 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

405.   Plaintiffs and Alabama Class members are "consumers" within the meaning of ALA. CODE. § 8-19-3(2).

405.   **Answer**:  Paragraph 405 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 405 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

406.   Plaintiffs, Alabama Class members, BMW USA, BMW AG, and Bosch are "persons" within the meaning of ALA. CODE § 8-19-3(3).

406.   **Answer**:  Paragraph 406 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 406 of the FAC insofar as those allegations refer to a statute and refers to the original

source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 406 of the FAC.

407.    Defendants were and are engaged in "trade or commerce" within the meaning of ALA. CODE § 8-19-3(8).  In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

407.    **Answer**: Paragraph 407 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 407 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 407 of the FAC.

408.    The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

408.    **Answer**: Paragraph 408 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 408 of the FAC.

409.    Pursuant to ALABAMA CODE § 8-19-10, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each plaintiff.

409.    **Answer**:  BMW AG admits that Paragraph 409 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

410.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under ALA. CODE. § 8-19-1 *et seq*.

410.   **Answer**:  BMW AG admits that Paragraph 410 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

411.   On March 21, 2018, and May 4, 2018, Plaintiffs sent letters complying with ALA. CODE § 8-19-10(e) to Defendants.

411.   **Answer**:  BMW AG admits that Plaintiffs' counsel sent letters purporting to comply with the Alabama statute on the dates alleged but otherwise denies the allegations of Paragraph 411.

## COUNT 3

## FRAUDULENT CONCEALMENT
## (BASED ON ALABAMA LAW)

412.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

412.   **Answer**:  Paragraph 412 does not require a substantive response.

413.   This claim is brought by Plaintiffs on behalf of Alabama purchasers who are members of the Class.

413.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

414.   Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

414.   **Answer**: Paragraph 414 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 414 of the FAC.  BMW AG denies the allegations in Paragraph 414 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

415.   BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

415.   **Answer**: Paragraph 415 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 415 of the FAC.  BMW AG denies the allegations in Paragraph 415 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

416.   Defendants knew these representations were false when made.

416.   **Answer**: BMW AG denies the allegations in Paragraph 416 of the FAC.

417.   The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline- powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

417.   **Answer**: Paragraph 417 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 417 of the FAC.  BMW AG denies the allegations in Paragraph 417 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their contents and context.

418.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

418.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

419.    As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

419.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

420.    The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

420.    **Answer** BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

421.    Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

421.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

422.    BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

422.    **Answer**:  Paragraph 422 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 422 of the FAC.

423.    Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

423.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

424.    Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to

such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

424.    **Answer**:  Paragraph 424 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 424 of the FAC.

425.    Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiffs and Class members.

425.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

424 as if restated herein.

426.    Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

426.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

424 as if restated herein.

427.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

427.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

424 as if restated herein.

428.    Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels

dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

428.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

424 as if restated herein.

429.  Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

429.  **Answer**:  Paragraph 429 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 429 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed

class is entitled to any relief.

430.  Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

430.  **Answer**:  Paragraph 430 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 430 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed

class is entitled to any relief.

## COUNT 4

### VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT
### (ARIZ. REV. STAT. § 44-1521 ET SEQ.)

431.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

431.  **Answer**:  Paragraph 431 does not require a substantive response.

432.    Plaintiff Rickey Evans ("Plaintiff" for the purposes of this section) brings this claim on behalf of Arizona purchasers who are members of the Class.

432.    **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and

further denies that any putative class or subclasses may or should be certified in this action.

433.    The Arizona Consumer Fraud Act (Arizona CFA) provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  ARIZ. REV. STAT. § 44-1522(A).  Defendants failed to disclose (1) that the vehicles turn off or down emissions systems during common driving conditions, (2) that the emissions systems are configured to turn emissions controls off or down in real world driving, conditions, (3) as a result the vehicles pollute far more than comparable gas cars, (3) that absent the emissions manipulation these vehicles would not have passed emissions tests, (4) that fuel economy and towing capacity was achieved by turning down or off emissions systems; and (5) that emissions and fuel economy were far worse than a reasonable consumer would expect given the premium paid for these vehicles over a comparable gas powered vehicle, and the estimated fuel and performance representation made about miles per gallon.

433.    **Answer**: Paragraph 433 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 433 of the FAC.  BMW AG denies the allegations in Paragraph 433 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

434.    BMW USA, BMW AG, Bosch, Plaintiffs, and Class members are "persons" within the meaning of the Arizona CFA, ARIZ. REV. STAT. § 44-1521(6).  Each Polluting BMW Vehicle at issue is "merchandise" within the meaning of ARIZ. REV. STAT. § 44-1521(5).

434.    **Answer**: Paragraph 434 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 434 of the FAC insofar as those allegations refer to a statute and refers to the original

source materials for a complete and accurate statement of their contents and context.  BMW AG

denies all remaining allegations in Paragraph 434 of the FAC.

435.    Defendants' conduct, as set forth above, occurred in the conduct of trade or commerce.  In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

435.    **Answer**: Paragraph 435 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 435 of the FAC insofar as those allegations refer to a statute and refers to the original

source materials for a complete and accurate statement of their contents and context.  BMW AG

denies all remaining allegations in Paragraph 435 of the FAC.

436.    The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

436.    **Answer**: Paragraph 436 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 436 of the FAC.

437.    Pursuant to the Arizona CFA, Plaintiffs seek monetary relief against Defendants in an amount to be determined at trial.  Plaintiffs also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil mind.

437.    **Answer**: BMW AG admits that Paragraph 437 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

438.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

438.   **Answer**:  BMW AG admits that Paragraph 438 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

**COUNT 5**

**FRAUDULENT CONCEALMENT**
**(BASED ON ARIZONA LAW)**

439.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

439.   **Answer**:  Paragraph 439 does not require a substantive response.

440.   This claim is brought by Plaintiff on behalf of Arizona purchasers who are members of the Class.

440.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

441.   Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles that turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

441.   **Answer**:  Paragraph 441 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 441 of the FAC.  BMW AG denies the allegations in Paragraph 441 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their contents and context.

442.    BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

442.    **Answer**: Paragraph 442 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 442 of the FAC.  BMW AG denies the allegations in Paragraph 442 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

443.    Defendants knew these representations were false when made.

443.    **Answer**:  BMW AG denies the allegations in Paragraph 443 of the FAC.

444.    The Polluting BMW Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

444.    **Answer**: Paragraph 444 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 444 of the FAC.  BMW AG denies the allegations in Paragraph 444 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

445.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher

rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

445.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

446.   As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

446.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

447.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiff and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

447.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

448.   Plaintiff and Class members reasonably relied upon Defendants' deception. They had no way of knowing that BMW's representations were false and/or misleading. As consumers, Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

448.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

449.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations. Consumers

buy diesel vehicles from BMW because they feel they are clean diesel vehicles. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Polluting BMW Vehicles are doing.

449.    **Answer**: Paragraph 449 of the FAC states legal conclusions and argument to which

BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations

in Paragraph 449 of the FAC.

450.    Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Defendants well knew, their customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions and improved fuel economy, and they paid accordingly.

450.    **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

451.    Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members. BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Class members, BMW and its partner and co-conspirator Bosch, had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiff and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. BMW represented to Plaintiff and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

451.   **Answer**: Paragraph 451 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 451 of the FAC.

452.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiff and Class members.

452.   **Answer**: Paragraph 452 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 452 of the FAC.

453.   Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

453.   **Answer**: Paragraph 453 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 453 of the FAC.

454.   Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

454.   **Answer**: Paragraph 454 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 454 of the FAC.

455.   Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiff and Class members have sustained damage

because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiff and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

455.   **Answer**:  Paragraph 455 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 455 of the FAC.

456.   Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

456.   **Answer**:  Paragraph 456 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

457.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

457.   **Answer**:  Paragraph 457 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 457 of the FAC.

## COUNT 6

## VIOLATIONS OF THE CALIFORNIA CONSUMER
## LEGAL REMEDIES ACT
## (CAL. CIV. CODE § 1750 *ET SEQ.*)

458.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

458.   **Answer**:  Paragraph 458 does not require a substantive response.

459.   Plaintiffs Brian Beckner, Chad Maccanelli, Ellis Goldfrit, Werner Rogmans, and Eric Sanchez ("Plaintiffs" for the purposes of this section) bring this claim on behalf of California purchasers who are members of the Class.

459.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

460.   California's Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750 *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

460.   **Answer**:  Paragraph 460 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 460 of the FAC.  BMW AG denies the allegations in Paragraph 460 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

461.   The Polluting Vehicles are "goods" as defined in CAL. CIV. CODE § 1761(a).

461.   **Answer**:  Paragraph 461 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 461 of the FAC insofar as those allegations refer to a statute and refers to the original

source materials for a complete and accurate statement of their contents and context.

462.    Plaintiffs and the other California Class members are "consumers" as defined in
CAL. CIV. CODE § 1761(d), and Plaintiffs, the other California Class members, and Defendants are
"persons" as defined in CAL. CIV. CODE § 1761(c).

462.    **Answer**: Paragraph 462 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 462 of the FAC insofar as those allegations refer to a statute and refers to the original

source materials for a complete and accurate statement of their contents and context.  BMW AG

denies all remaining allegations in Paragraph 462 of the FAC.

463.    As alleged above, Defendants made representations concerning the benefits,
efficiency, performance and durability of the Polluting Vehicles that were misleading.

463.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

464.    In purchasing or leasing the Polluting BMW Vehicles, Plaintiffs and the other
California Class members were deceived by Defendants' failure to disclose that the NOx reduction
system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions,
that these Polluting BMW Vehicles were defective, employed a "Defeat Device," and emitted
pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far
exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable.

464.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

465.    Defendants' conduct, as described hereinabove, was and is in violation of the
CLRA.  Defendants' conduct violates at least the following enumerated CLRA provisions:

i.      CAL. CIV. CODE § 1770(a)(2):  Misrepresenting the approval or certification
        of goods.

ii.     CAL. CIV. CODE § 1770(a)(3):  Misrepresenting the certification by another.

iii.    CAL. CIV. CODE § 1770(a)(5):  Representing that goods have sponsorship,
        approval, characteristics, uses, benefits, or quantities which they do not
        have.

      iv.    CAL. CIV. CODE § 1770(a)(7):  Representing that goods are of a particular standard, quality, or grade, if they are of another;

      v.    CAL. CIV. CODE § 1770(a)(9):  Advertising goods with intent not to sell them as advertised; and

      vi.    CAL. CIV. CODE § 1770(a)(16):  Representing that goods have been supplied in accordance with a previous representation when they have not.

465.    **Answer**:  Paragraph 465 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 465 of the FAC.

466.    Plaintiffs and the other California Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other California Class members overpaid for their Polluting BMW Vehicles and did not receive the benefit of their bargain.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

466.    **Answer**:  Paragraph 466 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 466 of the FAC.

467.    Defendants knew, should have known, that these Polluting BMW Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, and that the Polluting BMW Vehicles were not suitable for their intended use.

467.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

468.    The facts concealed and omitted by Defendants to Plaintiffs and the other California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other California Class members known about the defective nature of the Polluting BMW Vehicles, they would not have purchased or leased the Polluting BMW Vehicles or would not have paid the prices they paid.

468.   **Answer**: Paragraph 468 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 468 of the FAC.

469.   Plaintiffs' and the other California Class members' injuries were proximately caused by Defendants' unlawful and deceptive business practices.

469.   **Answer**: Paragraph 465 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 465 of the FAC.

470.   In accordance with CAL. CIV. CODE § 1780(a), Plaintiffs and the California Class seek injunctive relief for Defendants' violations of the CLRA.

470.   **Answer**: BMW AG admits that Paragraph 470 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

471.   Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs and the California Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the CLRA.  Under Cal Civ. Code § 1780(b), Plaintiffs seek an additional award against Defendants of up to $5,000 for each California Class member who qualifies as a "senior citizen" or a "disabled person" under the CLRA.  Defendant knew or should have known that their conduct was directed to one or more California Class members who are senior citizens or disabled persons.  Defendants' conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more California Class member who are senior citizens or disabled persons are substantially more vulnerable to Defendants' conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Defendants' conduct.

471.   **Answer**: BMW AG admits that Paragraph 471 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

472.   Plaintiffs have provided Defendants with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).  The notice was transmitted to Defendants on March 21,

2018, and on May 4, 2018.  Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the California Class are entitled.

472.  **Answer**:  BMW AG admits that Plaintiffs' counsel sent letters purporting to provide notice of violations of the CLRA on the dates alleged.  BMW AG also admits that Paragraph 472 outlines the relief which Plaintiffs purport to seek, but denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG otherwise denies the allegations of Paragraph 472.

## COUNT 7

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)

473.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

473.  **Answer**:  Paragraph 473 does not require a substantive response.

474.  This claim is brought by Plaintiffs on behalf of California purchasers who are members of the Class.

474.  **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

475.  California's Unfair Competition Law (UCL), CAL. BUS. & PROF. CODE § 17200 *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

475.  **Answer**:  Paragraph 475 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 475 of the FAC.  BMW AG denies the allegations in Paragraph 475 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their contents and context.

476.    Defendants' conduct, as described herein, was and is in violation of the UCL. Defendants' conduct violates the UCL in at least the following ways:

   i.    By failing to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions;

   ii.   By selling and leasing Polluting BMW Vehicles that suffer from a defective emission control system and that emit high levels of pollutants under normal driving conditions;

   iii.  By failing to disclose that fuel economy and towing capacity are achieved with manipulation of the emissions system;

   iv.   By marketing Polluting BMW Vehicles as reduced emissions vehicles possessing functional and defect-free, CARB-compliant diesel engine systems; and

   v.    By violating other California laws, including California consumer protection laws and California laws governing vehicle emissions and emission testing requirements.

476.    **Answer**: Paragraph 476 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 476 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 476 of the FAC.

477.    Defendants intentionally and knowingly misrepresented material facts regarding the Polluting BMW Vehicles with an intent to mislead Plaintiffs and the Class.

477.    **Answer**: Paragraph 477 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 477 of the FAC.

478.    In purchasing or leasing the Polluting BMW Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the emission

controls were defective, and that the Polluting BMW Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

478.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

479.   Plaintiffs were also deceived in that Defendants failed to disclose (1) that the BMW diesel vehicles turn off or down emissions systems during common driving conditions resulting in massive amounts of NOx as compared to federal and state standards, (2) that the emissions systems are configured to turn emissions controls off or down in real world driving, conditions, (3) as a result the vehicles pollute far more than comparable gas cars, (3) that absent the emissions manipulation these vehicles would not have passed emissions tests, (4) that fuel economy and towing capacity was achieved by turning down or off emissions systems; and (5) that emissions and fuel economy were far worse than a reasonable consumer would expect given the premium paid for these vehicles over a comparable gas-powered vehicle, and the estimated fuel and performance representation made about miles per gallon.

479.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

480.   Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

480.   **Answer**: Paragraph 480 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 480 of the FAC.

481.   Defendants knew or should have known their conduct violated the UCL.

481.   **Answer**: Paragraph 481 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 481 of the FAC.

482.   Defendants owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because Defendants:

a)   Possessed exclusive knowledge that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions;

b)   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c)   Made incomplete representations that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

482.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

483.   Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

483.   **Answer**:  Paragraph 483 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 483 of the FAC.

484.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Polluting BMW Vehicles.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

484.   **Answer**:  Paragraph 484 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 484 of the FAC.

485.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

485.   **Answer**:  Paragraph 485 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 485 of the FAC.

486.   Defendants' misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases or leases of their Polluting BMW Vehicles, and

to overpay.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these vehicles, would not have purchased or leased these Polluting BMW Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain defective BMW Clean Diesel engine systems that failed to comply with EPA and California emissions standards.

486.    **Answer**: Paragraph 486 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 486 of the FAC.

487.    Accordingly, Plaintiffs and the other Class members have suffered injury in fact, including lost money or property, as a result of Defendants' misrepresentations and omissions.

487.    **Answer**: Paragraph 487 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 487 of the FAC.

488.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE § 17203 and CAL. CIV. CODE § 3345; and for such other relief as may be appropriate.

488.    **Answer**: BMW AG admits that Paragraph 488 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 8

## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
## (CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*)

489.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

489.    **Answer**: Paragraph 489 does not require a substantive response.

490.    This claim is brought by Plaintiffs on behalf of California purchasers who are members of the Class.

490.    **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and

further denies that any putative class or subclasses may or should be certified in this action.

491.    CAL. BUS. & PROF. CODE § 17500 states:  "It is unlawful for any . . . corporation . . .
with intent directly or indirectly to dispose of real or personal property . . . to induce the public to
enter into any obligation relating thereto, to make or disseminate or cause to be made or
disseminated . . . from this state before the public in any state, in any newspaper or other
publication, or any advertising device, . . . or in any other manner or means whatever, including
over the Internet, any statement . . . which is untrue or misleading, and which is known, or which
by the exercise of reasonable care should be known, to be untrue or misleading." Defendants failed
to disclose (1) that the X5 vehicles turn off or down emissions systems during common driving
conditions resulting in massive amounts of NOx as compared to federal and state standards, (2)
that absent the emissions manipulation these vehicles would not have passed emissions tests, (3)
that fuel economy and towing capacity was achieved by turning down or off emissions systems;
and (4) that emissions and fuel economy were far worse than a reasonable consumer would expect
given the premium paid for these vehicles over a comparable gas- powered vehicle, and the
estimated fuel and performance representation made about miles per gallon.

491.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.  BMW AG denies the allegations in Paragraph 491 of the FAC.

BMW AG denies the allegations in Paragraph 491 of the FAC insofar as those allegations refer to

laws, regulations, and/or published emissions standards, and refers to the applicable original source

materials for a complete and accurate statement of their contents and context.

492.    Defendants caused to be made or disseminated through California and the United
States, through advertising, marketing and other publications, statements that were untrue or
misleading, and which were known, or which by the exercise of reasonable care should have been
known to Defendants, to be untrue and misleading to consumers, including Plaintiffs and the other
Class members.

492.    **Answer**:  Paragraph 492 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 492 of the FAC.

493.    Defendants have violated § 17500 because the misrepresentations and omissions
regarding the functionality, reliability, environmental-friendliness, and lawfulness of Polluting
BMW Vehicles as set forth in this Complaint were material and likely to deceive a reasonable
consumer.

233

493.   **Answer**: Paragraph 493 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 493 of the FAC.  BMW AG denies the allegations in Paragraph 493 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

494.   Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Polluting BMW Vehicles, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendants with respect to the functionality, reliability, environmental-friendliness, and lawfulness of the Polluting BMW Vehicles. Defendants' representations turned out not to be true because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and the Polluting BMW Vehicles are distributed with BMW Clean Diesel engine systems that include defective emission controls and a "Defeat Device."  Had Plaintiffs and the other Class members known this, they would not have purchased or leased their Polluting BMW Vehicles and/or paid as much for them.  Accordingly, Plaintiffs and the other Class members overpaid for their Polluting BMW Vehicles.

494.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

495.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.  Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

495.   **Answer**: Paragraph 495 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 495 of the FAC.

496.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

496. **Answer**: Paragraph 496 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 496 of the FAC.

497. Plaintiffs' and the other Class members' injuries were proximately caused by BMW's fraudulent and deceptive business practices.

497. **Answer**: Paragraph 497 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 497 of the FAC.

498. Therefore, Plaintiffs and the other Class members are entitled to equitable and monetary relief under the CLRA.

498. **Answer**: BMW AG admits that Paragraph 498 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

499. Plaintiffs have provided BMW with notice of its violations of the CLRA pursuant to CAL. CIV. CODE § 1782(a). The notice was transmitted to BMW on March 21, 2018, and on May 4, 2018. Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs and the other Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and seek an order awarding damages, punitive damages, and any other just and proper relief available under the CLRA.

499. **Answer**: BMW AG admits that Plaintiffs' counsel sent letters purporting to provide notice of violations of the CLRA on the dates alleged. BMW AG also admits that Paragraph 499 outlines the relief that Plaintiffs purport to seek, but denies that Plaintiffs or any member of the proposed class is entitled to any relief. BMW AG otherwise denies the allegations of Paragraph 499.

## COUNT 9

## FRAUDULENT CONCEALMENT
## (BASED ON CALIFORNIA LAW)

500. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

500.   **Answer**:  Paragraph 500 does not require a substantive response.

501.   This claim is brought by the California Plaintiffs on behalf of California purchasers who are members of the Class.

501.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

502.   Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with CARB emission requirements, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

502.   **Answer**:  Paragraph 502 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 502 of the FAC.  BMW AG denies the allegations in Paragraph 502 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

503.   BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

503.   **Answer**:  Paragraph 503 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 503 of the FAC.  BMW AG denies the allegations in Paragraph 503 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

504.    Defendants knew these representations were false when made.

504.    **Answer**:  BMW AG denies the allegations in Paragraph 504 of the FAC.

505.    The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

505.    **Answer**:  Paragraph 505 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 505 of the FAC.  BMW AG denies the allegations in Paragraph 505 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

506.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-CARB-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

506.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

507.    As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high

levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

507.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

508.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

508.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

509.   Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

509.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

510.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

510.   **Answer**:  Paragraph 510 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 510 of the FAC.

511.   Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were

purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

511.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

512.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

512.   **Answer**:  Paragraph 512 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 512 of the FAC.

513.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiffs and Class members.

513.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

512 as if restated herein.

514.   Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

514.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 512 as if restated herein.

515.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

515.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 512 as if restated herein.

516.    Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

516.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 512 as if restated herein.

517.    Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

517.    **Answer**:  Paragraph 517 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 517 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

518.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct

warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

518.   **Answer**: Paragraph 518 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 518 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed

class is entitled to any relief.

**COUNT 10**

**VIOLATION OF THE COLORADO**
**CONSUMER PROTECTION ACT**
**(COLO. REV. STAT. § 6-1-101 *ET SEQ.*)**

519.   Plaintiffs hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

519.   **Answer**:  Paragraph 519 does not require a substantive response.

520.   Plaintiffs Jeffrey Price and Garner Rickman (for the purposes of this section, "Plaintiffs") bring this action on behalf of themselves and Colorado purchasers who are members of the Class.

520.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and

further denies that any putative class or subclasses may or should be certified in this action.

521.   The Colorado Consumer Protection Act (Colorado CPA) prohibits deceptive practices in the course of a person's business, including but not limited to "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." COLO. REV. STAT. § 6-1-105.

521.   **Answer**: Paragraph 521 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 521 of the FAC.  BMW AG denies the allegations in Paragraph 521 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

241

refers to the applicable original source materials for a complete and accurate statement of their contents and context.

522.    BMW USA, BMW AG, and Bosch are "persons" under COLO. REV. STAT. § 6-1-102(6).

522.    **Answer**: Paragraph 522 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 522 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 522 of the FAC.

523.    Plaintiffs and Colorado Class members are "consumers" for purposes of COLO. REV. STAT § 6-1-113(1)(a).

523.    **Answer**: Paragraph 523 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 523 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

524.    Defendants' conduct, as set forth above, occurred in the conduct of trade or commerce.  In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

524.    **Answer**: Paragraph 524 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 524 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 524 of the FAC.

525.    Defendants' scheme and concealment of the true characteristics of the diesel X5 and 335d emission control system were material to Plaintiffs and the Colorado Class, as Defendants intended.  Had they known the truth, Plaintiffs and the Colorado Class would not have

purchased or leased the Polluting BMW Vehicles, or—if the Polluting BMW Vehicles' true nature had been disclosed and mitigated, and the vehicles rendered legal to sell—would have paid significantly less for them.

525.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 524 as if restated herein.

526.    Plaintiffs and Colorado Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology.  Plaintiffs and Colorado Class members did not and could not unravel Defendants' deception on their own.

526.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 524 as if restated herein.

527.    Defendants had an ongoing duty to Plaintiffs and the Colorado Class to refrain from unfair and deceptive practices under the Colorado CPA in the course of their business. Specifically, Defendants owed Plaintiffs and the Colorado Class members a duty to disclose all the material facts concerning the diesel X5 and 335d emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs and the Colorado Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

527.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 524 as if restated herein.

528.    Plaintiffs and the Colorado Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

528.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 524 as if restated herein.

529.    Defendants' violations present a continuing risk to Plaintiffs and the Colorado Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

529.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 524 as if restated herein.

530.     Pursuant to COLO. REV. STAT. § 6-1-113, Plaintiffs and the Colorado Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each plaintiff or class member.

530.     **Answer**: BMW AG admits that Paragraph 530 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

531.     Plaintiffs and the Colorado Class also seek an order enjoining Defendants' unfair, unlawful, or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper remedy under the Colorado CPA.

531.     **Answer**: BMW AG admits that Paragraph 531 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

## COUNT 11

## FRAUDULENT CONCEALMENT
## (BASED ON COLORADO LAW)

532.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

532.     **Answer**: Paragraph 532 does not require a substantive response.

533.     This claim is brought by Plaintiffs on behalf of Colorado purchasers who are members of the Class.

533.     **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any of the relief requested.  BMW AG denies that this action may or should be

maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims

is appropriate, and further denies that any putative class or subclasses may or should be certified

in this action.

534.     Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would

expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

534.    **Answer**:  Paragraph 534 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 534 of the FAC.  BMW AG denies the allegations in Paragraph 534 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

535.    BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

535.    **Answer**:  Paragraph 535 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 535 of the FAC.  BMW AG denies the allegations in Paragraph 535 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

536.    Defendants knew these representations were false when made.

536.    **Answer**:  BMW AG denies the allegations in Paragraph 536 of the FAC.

537.    The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

537.   **Answer**:  Paragraph 537 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 537 of the FAC.  BMW AG denies the allegations in Paragraph 537 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

538.   Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

538.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

539.   As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

539.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

540.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiff and Class members.

540.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

541.    Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.  Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

541.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

542.    BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

542.    **Answer**:  Paragraph 542 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 542 of the FAC.

543.    Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

543.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

544.    Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions

regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

544.   **Answer**: Paragraph 544 of the FAC states legal conclusions and argument to which

BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations

in Paragraph 544 of the FAC.

545.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiffs and Class members.

545.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

544 as if restated herein.

546.   Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

546.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

544 as if restated herein.

547.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

547.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

544 as if restated herein.

548.    Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

548.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 544 as if restated herein.

549.    Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

549.    **Answer**:  Paragraph 549 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 549 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

550.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

550.    **Answer**:  Paragraph 550 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 550 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 12

### VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
### (GA. CODE ANN. § 10-1-390 ET SEQ.)

551.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

551.    **Answer**:  Paragraph 551 does not require a substantive response.

552.    Plaintiffs Darshan Patel, Charles Campbell, and Dr. Alexander VanDamme ("Plaintiffs" for the purposes of this section) brings this claim on behalf of Georgia purchasers who are members of the Class.

552.    **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

553.    The Georgia Fair Business Practices Act (Georgia FBPA) declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE ANN. § 101-393(b), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised."  GA. CODE ANN. § 10-1-393(b).

553.    **Answer**:  Paragraph 553 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 553 of the FAC.  BMW AG denies the allegations in Paragraph 553 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

554.    Plaintiffs and Georgia Class members are "consumers" within the meaning of GA. CODE ANN. § 10-1-393(b).

554.    **Answer**:  Paragraph 554 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 554 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

555.    BMW USA, BMW AG, and Bosch engaged in "trade or commerce" within the meaning of GA. CODE ANN. § 10-1-393(b).

555.    **Answer**:  Paragraph 555 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 555 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 555 of the FAC.

556.    Pursuant to GA. CODE ANN. § 10-1-399, Plaintiffs and the Georgia Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, treble damages, and any other just and proper relief available under the Georgia FBPA.

556.    **Answer**:  BMW AG admits that Paragraph 556 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

557.    On March 21, 2018, and May 4, 2018, Plaintiffs sent letters complying with GA. CODE ANN. § 10-1-399(b) to BMW.  Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Georgia Class are entitled.

557.    **Answer**:  BMW AG admits that Plaintiffs' counsel sent letters purporting to comply with the Georgia statute on the dates alleged.  BMW AG also admits that Paragraph 557 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG otherwise denies the allegations of Paragraph 557.

**COUNT 13**

**VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(GA. CODE ANN § 10-1-370 ET SEQ.)**

558.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

558.     **Answer**:  Paragraph 558 does not require a substantive response.

559.     This claim is brought by Plaintiffs on behalf of Georgia purchasers who are members of the Class.

559.     **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

560.     Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA) prohibits "deceptive trade practices," which include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE ANN. § 10-1-393(b).

560.     **Answer**: Paragraph 560 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 560 of the FAC.  BMW AG denies the allegations in Paragraph 560 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

561.     BMW USA, BMW AG, Bosch, Plaintiffs, and Georgia Class members are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

561.     **Answer**: Paragraph 561 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 561 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 561 of the FAC.

562.    The Plaintiffs seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under GA. CODE ANN. § 10-1-373.

562.    **Answer**:  BMW AG admits that Paragraph 562 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 14

## FRAUDULENT CONCEALMENT
## (BASED ON GEORGIA LAW)

563.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

563.    **Answer**:  Paragraph 563 does not require a substantive response.

564.    This claim is brought by Plaintiffs on behalf of Georgia purchasers who are members of the Class.

564.    **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

565.    Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

253

565.   **Answer**:  Paragraph 565 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 565 of the FAC.  BMW AG denies the allegations in Paragraph 565 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

566.   BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

566.   **Answer**:  Paragraph 566 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 566 of the FAC.  BMW AG denies the allegations in Paragraph 566 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

567.   Defendants knew these representations were false when made.

567.   **Answer**:  BMW AG denies the allegations in Paragraph 567 of the FAC.

568.   The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

568.   **Answer**:  Paragraph 568 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 568 of the FAC.  BMW AG denies the allegations in Paragraph 568 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their contents and context.

569.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

569.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

570.    As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

570.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

571.    The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

571.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

572.    Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

572.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

573.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

573.   **Answer**:  Paragraph 573 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 573 of the FAC.

574.   BMW's false representations, along with Bosch's knowledge and complicity, were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.   As Defendants well knew, their customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

574.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

575.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to

256

such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

575.    **Answer**: Paragraph 575 of the FAC states legal conclusions and argument to which

BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations

in Paragraph 575 of the FAC.

576.    BMW, with Bosch's knowledge and complicity, actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiffs and Class members.

576.    **Answer**: Paragraph 576 of the FAC states legal conclusions and argument to which

BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations

in Paragraph 576 of the FAC. BMW AG denies the allegations in Paragraph 576 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

577.    Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

577.    **Answer**: Paragraph 577 of the FAC states legal conclusions and argument to which

BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations

in Paragraph 577 of the FAC.

578.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

578.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 577 as if restated herein.

579.   Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

579.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 577 as if restated herein.

580.   Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

580.   **Answer**:  Paragraph 580 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 580 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

581.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

581.   **Answer**:  Paragraph 581 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 581 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

**COUNT 15**

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ.* AND 720 ILCS 295/1A)**

582.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

582.     **Answer**:  Paragraph 582 does not require a substantive response.

583.     Plaintiffs Christine Griffith and Gene Quint ("Plaintiffs" for the purposes of this section) bring this claim on behalf of Illinois purchasers who are members of the Class.

583.     **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

584.     BMW USA, BMW AG, and Bosch are "persons" as that term is defined in 815 ILCS 505/1(c).

584.     **Answer**:  Paragraph 584 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 584 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 584 of the FAC.

585.     Plaintiffs and the Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

585.     **Answer**:  Paragraph 585 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 585 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

586.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or

259

employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2.

586.   **Answer**:  Paragraph 586 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 586 of the FAC.  BMW AG denies the allegations in Paragraph 586 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

587.   In the course of Defendants' business, Defendants willfully failed to disclose and actively concealed that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles emitted far more pollutants than gasoline powered vehicles, that the Polluting BMW Vehicles emit far more pollution than a reasonable consumer would expect in light of BMW's advertising campaign, and that the Polluting BMW Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendants engaged in unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in the conduct of trade or commerce as prohibited by the Illinois CFA.

587.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  BMW AG denies the allegations in Paragraph 587 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 587 of the FAC.

588.   In purchasing or leasing the Polluting BMW Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the emission controls were defective, and that the Polluting BMW Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

588.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

589.   Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

589.   **Answer**:  Paragraph 589 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 589 of the FAC.

590.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

590.   **Answer**:  Paragraph 590 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 590 of the FAC.

591.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

591.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 590 as if restated herein.

592.   Defendants intentionally and knowingly misrepresented material facts regarding the Polluting BMW Vehicles with an intent to mislead Plaintiffs and the Class.

592.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 590 as if restated herein.

593.   Defendants knew or should have known that their conduct violated the Illinois CFA.

593.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 590 as if restated herein.

594.    Defendants owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because Defendants:

  a)    Possessed exclusive knowledge that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions;

  b)    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

  c)    Made incomplete representations that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

594.    **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

595.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that these Polluting BMW Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on BMW's material representations that the Polluting BMW Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

595.    **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

596.    Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

596.    **Answer**: Paragraph 596 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 596 of the FAC.

597.    Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Polluting BMW Vehicles and did not receive the benefit of their bargain.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

597.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 596 as if restated herein.

598.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

598.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 596 as if restated herein.

599.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Class members seek monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or were grossly negligent.

599.    **Answer**:  BMW AG admits that Paragraph 599 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

600.    Plaintiffs also seek punitive damages, attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1, *et seq.*  A copy of this Complaint has been mailed to the Attorney General of the State of Illinois in accordance with 815 ILCS 505/10a(d).

600.    **Answer**:  BMW AG admits that Paragraph 600 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 16

## FRAUDULENT CONCEALMENT
## (BASED ON ILLINOIS LAW)

601.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

601.    **Answer**:  Paragraph 601 does not require a substantive response.

602.    This claim is brought by Plaintiffs on behalf of Illinois purchasers who are members of the Class.

602.    **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be

maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims

is appropriate, and further denies that any putative class or subclasses may or should be certified

in this action.

603.    Defendants intentionally omitted material facts concerning the NOx reduction
system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions,
that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher
level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would
expect in light of BMW's advertising campaign and the premium paid for the car, emitted high
levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had
decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless
disregard for the truth and denied Plaintiffs and the other Class members information that is highly
relevant to their purchasing decision.

603.    **Answer**: Paragraph 603 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 603 of the FAC.  BMW AG denies the allegations in Paragraph 603 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

604.    BMW, with Bosch's knowledge and complicity, further affirmatively
misrepresented to Plaintiffs in advertising and other forms of communication, including standard
and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had
no significant defects, were low emission vehicles, complied with EPA regulations, and would
perform and operate properly when driven in normal usage.

604.    **Answer**: Paragraph 604 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 604 of the FAC.  BMW AG denies the allegations in Paragraph 604 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

605.    Defendants knew these representations were false when made.

605.    **Answer**:  BMW AG denies the allegations in Paragraph 605 of the FAC.

606.    The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline- powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

606.    **Answer**:  Paragraph 606 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 606 of the FAC.  BMW AG denies the allegations in Paragraph 606 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

607.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

607.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

608.    As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA- compliant. Defendants disclosed certain details about the BMW Clean Diesel engine, but nonetheless, Defendants intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

608.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

609.     The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

609.     **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

610.     Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.  Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

610.     **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

611.     BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

611.     **Answer**: Paragraph 611 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 611 of the FAC.

612.     Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

612.     **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

613.    Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

613.    **Answer**: Paragraph 613 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 613 of the FAC.

614.    Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiffs and Class members.

614.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 613 as if restated herein.

615.    Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

615.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 613 as if restated herein.

616.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or

suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

      616.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

613 as if restated herein.

      617.   Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

      617.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

613 as if restated herein.

      618.   Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

      618.   **Answer**:  Paragraph 618 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 618 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed

class is entitled to any relief.

      619.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

      619.   **Answer**:  Paragraph 619 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 619 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed

class is entitled to any relief.

**COUNT 17**

**VIOLATION OF THE INDIANA DECEPTIVE
CONSUMER SALES ACT
(IND. CODE § 24-5-0.5-3)**

620.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

620.     **Answer**:  Paragraph 620 does not require a substantive response.

621.     Plaintiff Jacob Biggins ("Plaintiff" for the purposes of this section) brings this claim on behalf of Indiana purchasers who are members of the Class.

621.     **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and

further denies that any putative class or subclasses may or should be certified in this action.

622.     Indiana's Deceptive Consumer Sales Act (Indiana DCSA) prohibits a person from engaging in a "deceptive business practice[s]" or acts, including but not limited to "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; . . . (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; . . . (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false."

622.     **Answer**:  Paragraph 622 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 622 of the FAC.  BMW AG denies the allegations in Paragraph 622 of the FAC

269

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

623.    BMW USA, BMW AG, and Bosch are "persons" within the meaning of IND. CODE § 25-5-0.5-2(a)(2) and "suppliers" within the meaning of IND. CODE § 24-5-0.5-2(a)(3).

623.    **Answer**: Paragraph 623 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 623 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 623 of the FAC.

624.    Plaintiffs' vehicle purchases are "consumer transactions" within the meaning of IND. CODE § 24-5-0.5-2(a)(3).

624.    **Answer**: Paragraph 624 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 624 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 406 of the FAC.

625.    Defendants' conduct, as set forth above, occurred in the conduct of trade or commerce.  In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

625.    **Answer**: Paragraph 625 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 625 of the FAC.

626.    The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had

Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

626.   **Answer**:  Paragraph 626 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 626 of the FAC.

627.   Pursuant to IND. CODE § 24-5-0.5-4, Plaintiffs will monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each plaintiff, including treble damages up to $1,000 for Defendants' willfully deceptive acts.

627.   **Answer**:  BMW AG admits that Paragraph 627 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

628.   Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Defendants' conduct and an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Indiana DSCA.

628.   **Answer**:  BMW AG admits that Paragraph 628 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

629.   On March 21, 2018, and May 4, 2018, Plaintiffs sent letters complying with IND. CODE § 24-5-0.5-5(a) to Defendants.  Because Defendants failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Indiana Class are entitled.

629.   **Answer**:  BMW AG admits that Plaintiffs' counsel sent letters purporting to

comply with the Indiana statute on the dates alleged.  BMW AG also admits that Paragraph 629

outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the

proposed class is entitled to any relief.  BMW AG otherwise denies the allegations of Paragraph

629.

## COUNT 18

### FRAUDULENT CONCEALMENT
### (BASED ON INDIANA LAW)

630.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

630.    **Answer**:  Paragraph 630 does not require a substantive response.

631.    This claim is brought by Plaintiff Jacob Biggins on behalf of Indiana purchasers who are members of the Class.

631.    **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

632.    Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

632.    **Answer**: Paragraph 632 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 632 of the FAC.  BMW AG denies the allegations in Paragraph 632 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

633.    BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had

no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

633.   **Answer**: Paragraph 633 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 633 of the FAC.  BMW AG denies the allegations in Paragraph 633 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

634.   Defendants knew these representations were false when made.

634.   **Answer**:  BMW AG denies the allegations in Paragraph 634 of the FAC.

635.   The Polluting BMW Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

635.   **Answer**: Paragraph 635 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 635 of the FAC.  BMW AG denies the allegations in Paragraph 635 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

636.   Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

636.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

637.   As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

637.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

638.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiff and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

638.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

639.   Plaintiff and Class members reasonably relied upon Defendants' deception. They had no way of knowing that BMW's representations were false and/or misleading. As consumers, Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

639.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

640.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations. Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Polluting BMW Vehicles are doing.

640.  **Answer**:  Paragraph 640 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 640 of the FAC.

641.  Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

641.  **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

642.  Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiff and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiff and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

642.  **Answer**:  Paragraph 642 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 642 of the FAC.

643.  Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean

diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiff and Class members.

643. **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 642 as if restated herein.

644. Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

644. **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 642 as if restated herein.

645. Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

645. **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 642 as if restated herein.

646. Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiff and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiff and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

646. **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 642 as if restated herein.

647. Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

647.   **Answer**:  Paragraph 647 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 647 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

648.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

648.   **Answer**:  Paragraph 648 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 648 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 19

### VIOLATIONS OF THE KENTUCKY
### CONSUMER PROTECTION ACT
### (KY. REV. STAT. § 367.110 *ET SEQ.*).

649.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

649.   **Answer**:  Paragraph 449 does not require a substantive response.

650.   Plaintiff Razmir Avic ("Plaintiff" for the purposes of this section) brings this Count on behalf of the Kentucky Class members.

650.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

651.   BMW USA, BMW AG, Bosch, Plaintiff, and the Kentucky Class are "persons" within the meaning of the KY. REV. STAT. § 367.110(1).

651.   **Answer**:  Paragraph 651 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 651 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 651 of the FAC.

652.   Defendants engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

652.   **Answer**:  Paragraph 407 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 407 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 407 of the FAC.

653.   The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce …." Ky. Rev. Stat. § 367.170(1).  In the course of their business, Defendants willfully failed to disclose and actively concealed that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles emitted far more pollutants than gasoline powered vehicles, that the Polluting BMW Vehicles emit far more pollution than a reasonable consumer would expect in light of BMW's advertising campaign, and that the Polluting BMW Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendants engaged in deceptive business practices prohibited by the Kentucky CPA.

653.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  BMW AG denies the allegations in Paragraph 653 of the FAC. BMW AG denies the allegations in Paragraph 653 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

654.   In purchasing or leasing the Polluting BMW Vehicles, Plaintiff and the other Class members were deceived by Defendants' failure to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the emission

controls were defective, and that the Polluting BMW Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

654.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

655.   Plaintiff and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

655.   **Answer**:  Paragraph 655 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 655 of the FAC.

656.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

656.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

655 as if restated herein.

657.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

657.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

655 as if restated herein.

658.   Defendants intentionally and knowingly misrepresented material facts regarding the Polluting BMW Vehicles with an intent to mislead Plaintiff and the Class.

658.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

655 as if restated herein.

659.   Defendants knew or should have known that their conduct violated the Kentucky CPA.

659.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

655 as if restated herein.

660.    Defendants owed Plaintiff and the Class a duty to disclose the truth about its emissions systems manipulation because Defendants:

    a)    Possessed exclusive knowledge that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions;

    b)    Intentionally concealed the foregoing from Plaintiff and the Class; and/or

    c)    Made incomplete representations that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

660.    **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

661.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that these Polluting BMW Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on BMW's material representations that the Polluting BMW Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

661.    **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

662.    Defendants' conduct proximately caused injuries to Plaintiff and the other Class members.

662.    **Answer**: Paragraph 662 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 662 of the FAC.

663.    Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiff and the other Class members overpaid for their Polluting BMW Vehicles and did not receive the benefit of their bargain.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

663.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 662 as if restated herein.

664.    Defendants' violations present a continuing risk to Plaintiff as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

664.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 662 as if restated herein.

665.    Pursuant to KY. REV. STAT. ANN. § 367.220, Plaintiff and the Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices; awarding damages; declaratory relief; attorneys' fees; and any other just and proper relief available under KY. REV. STAT. ANN. § 367.220.

665.    **Answer**:  BMW AG admits that Paragraph 665 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 20

## FRAUDULENT CONCEALMENT
## (BASED ON KENTUCKY LAW)

666.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

666.    **Answer**:  Paragraph 666 does not require a substantive response.

667.    This claim is brought by Plaintiff on behalf of Kentucky purchasers who are members of the Class.

667.    **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

668.    Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher

level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

668.   **Answer**:  Paragraph 668 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 668 of the FAC.  BMW AG denies the allegations in Paragraph 668 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

669.   BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

669.   **Answer**:  Paragraph 669 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 669 of the FAC.  BMW AG denies the allegations in Paragraph 669 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

670.   Defendants knew these representations were false when made.

670.   **Answer**:  BMW AG denies the allegations in Paragraph 670 of the FAC.

671.   The Polluting BMW Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

671.   **Answer**:  Paragraph 671 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 671 of the FAC.  BMW AG denies the allegations in Paragraph 671 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

672.   Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

672.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

673.   As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

673.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

674.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiff and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

674.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

675.    Plaintiff and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

675.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

676.    BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

676.    **Answer**:  Paragraph 676 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 676 of the FAC.

677.    Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

677.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

678.    Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions

regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiff and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. BMW represented to Plaintiff and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

678. **Answer**: Paragraph 678 of the FAC states legal conclusions and argument to which

BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations

in Paragraph 678 of the FAC.

679. Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiff and Class members.

679. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

678 as if restated herein.

680. Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

680. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

678 as if restated herein.

681. Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

681. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

678 as if restated herein.

682.     Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiff and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiff and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

682.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 678 as if restated herein.

683.     Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

683.     **Answer**:  Paragraph 683 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 683 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

684.     Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

684.     **Answer**:  Paragraph 684 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 684 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 21

## VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (LA. REV. STAT. § 51:1401 *ET SEQ.*)

685.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

685.     **Answer**:  Paragraph 685 does not require a substantive response.

686.     Plaintiff Tarah Pee ("Plaintiff" for the purposes of this section) brings this claim on behalf of Louisiana purchasers who are members of the Class.

686.     **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

687.     BMW USA, BMW AG, Bosch, Plaintiff, and the Louisiana Class members are "persons" within the meaning of LA. REV. STAT. § 51:1402(8).

687.     **Answer**:  Paragraph 687 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 687 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 687 of the FAC.

688.     Plaintiff and Louisiana Class members are "consumers" within the meaning of LA. REV. STAT. § 51:1402(1).

688.     **Answer**:  Paragraph 688 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 688 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

689.    Defendants engaged in "trade" or "commerce" within the meaning of LA. REV. STAT. § 51:1402(9).

689.    **Answer**: Paragraph 689 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 689 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 689 of the FAC.

690.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce."  LA. REV. STAT. § 51:1405(A).  Defendants participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

690.    **Answer**: Paragraph 690 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 690 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 690 of the FAC.

691.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Polluting BMW Vehicles.

691.    **Answer**: Paragraph 691 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 691 of the FAC.

692.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

692.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 691 as if restated herein.

693.    Defendants intentionally and knowingly misrepresented material facts regarding the Polluting BMW Vehicles with intent to mislead Plaintiff and the Louisiana Class.

693.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

691 as if restated herein.

694.    Defendants knew or should have known that their conduct violated the Louisiana CPL.

694.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

691 as if restated herein.

695.    Defendants owed Plaintiff a duty to disclose the emissions in the Polluting BMW Vehicles, because Defendants:

   a)     Possessed exclusive knowledge;

   b)     Intentionally concealed the foregoing from Plaintiffs; and/or

   c)     Made incomplete representations about the emissions and performance of the Polluting BMW Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

695.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

696.    Plaintiff and the Louisiana Class suffered ascertainable loss caused by Defendants' misrepresentations and its concealment of and failure to disclose material information.

696.    **Answer**:  Paragraph 696 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 696 of the FAC.

697.    As a direct and proximate result of Defendants' violations of the Louisiana CPL, Plaintiff and the Louisiana Class have suffered injury-in-fact and/or actual damage.

697.    **Answer**:  Paragraph 697 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 697 of the FAC.

698.     Pursuant to LA. REV. STAT. § 51:1409, Plaintiff and the Louisiana Class seek to recover actual damages in an amount to be determined at trial; treble damages for Defendants' knowing violations of the Louisiana CPL; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under LA. REV. STAT. § 51:1409.

698.     **Answer**:  BMW AG admits that Paragraph 698 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

## COUNT 22

## FRAUDULENT CONCEALMENT
## (BASED ON LOUISIANA LAW)

699.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

699.     **Answer**:  Paragraph 699 does not require a substantive response.

700.     This claim is brought by Plaintiff on behalf of Louisiana purchasers who are members of the Class.

700.     **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any of the relief requested.  BMW AG denies that this action may or should be

maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims

is appropriate, and further denies that any putative class or subclasses may or should be certified

in this action.

701.     Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

701.     **Answer**:  Paragraph 701 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 701 of the FAC.  BMW AG denies the allegations in Paragraph 701 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

702.    BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

702.    **Answer**:  Paragraph 702 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 702 of the FAC.  BMW AG denies the allegations in Paragraph 702 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

703.    Defendants knew these representations were false when made.

703.    **Answer**:  BMW AG denies the allegations in Paragraph 703 of the FAC.

704.    The Polluting BMW Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

704.    **Answer**:  Paragraph 704 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 704 of the FAC.  BMW AG denies the allegations in Paragraph 704 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

705.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

705.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

706.    As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

706.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

707.    The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiff and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

707.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

708.    Plaintiff and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

708.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

709.    BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an

emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

709.   **Answer**: Paragraph 709 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 709 of the FAC.

710.   Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

710.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

711.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiff and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiff and Class members that they were purchasing or *leasing reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

711.    **Answer**:  Paragraph 711 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 711 of the FAC.

712.    Defendants actively concealed and/or suppressed these material facts, in whole or
in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean
diesel vehicles and did not or could not comply with federal and state laws governing clean air and
emissions, which perception would hurt the brand's image and cost BMW money, and it did so at
the expense of Plaintiff and Class members.

712.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

711 as if restated herein.

713.    Defendants have still not made full and adequate disclosures, and continue to
defraud Plaintiff and Class members by concealing material information regarding the emissions
qualities of the referenced vehicles.

713.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

711 as if restated herein.

714.    Plaintiff and Class members were unaware of the omitted material facts referenced
herein, and they would not have acted as they did if they had known of the concealed and/or
suppressed facts, in that they would not have purchased purportedly reduced emissions diesel
vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting
vehicles, or would have taken other affirmative steps in light of the information concealed from
them.  Plaintiff's and Class members' actions were justified.  Defendants were in exclusive control
of the material facts, and such facts were not generally known to the public, Plaintiff, or Class
members.

714.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

711 as if restated herein.

715.    Because of the concealment and/or suppression of the facts and Defendants' failure
to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the
actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues
engendered by BMW's corporate policies, Plaintiff and Class members have sustained damage
because they paid a premium for a "clean diesel" vehicle which actually polluted at levels
dramatically higher than a reasonable consumer would expect.  Had Plaintiff and Class members
been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and
Defendants' disregard for the truth and compliance with applicable federal and state law and
regulations, Plaintiff and Class members who purchased or leased new or certified previously

owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

715.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 711 as if restated herein.

716.   Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

716.   **Answer**:  Paragraph 716 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 716 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

717.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

717.   **Answer**:  Paragraph 717 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 717 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 23

### VIOLATION OF THE MARYLAND
### CONSUMER PROTECTION ACT
### (MD. CODE ANN., COM. LAW § 13-101 *ET SEQ.*)

718.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

718.   **Answer**:  Paragraph 718 does not require a substantive response.

719.   Plaintiff Ziwen Li (for purposes of this section, "Plaintiff") brings this action on behalf of himself and Maryland purchasers who are members of the Class.

719.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

720.   The Maryland Consumer Protection Act (Maryland CPA) provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good, including "failure to state a material fact if the failure deceives or tends to deceive" and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same," MD. CODE ANN., COM. LAW § 13-301, regardless of whether the consumer is actually deceived or damaged, MD. CODE ANN., COM. LAW § 13-302.

720.   **Answer**: Paragraph 720 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 720 of the FAC.  BMW AG denies the allegations in Paragraph 720 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

721.   BMW USA, BMW AG, Bosch, Plaintiff, and Maryland Class members are "persons" within the meaning of MD. CODE ANN., COM. LAW § 13-101(h).

721.   **Answer**: Paragraph 721 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 721 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 721 of the FAC.

722.   The Maryland CPA provides that a person may not engage in any unfair or deceptive trade practice in that sale of any consume good.  MD. CODE ANN., COM. LAW § 13-303.

722.   **Answer**: Paragraph 722 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 722 of the FAC insofar as those allegations refer to a statute and refers to the original

source materials for a complete and accurate statement of their contents and context.

723.    In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

723.    **Answer**: Paragraph 723 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 723 of the FAC.

724.    Defendants' scheme and concealment of the true characteristics of the diesel X5 and 335d emission control system were material to Plaintiff and the Maryland Class, as Defendants intended.  Had they known the truth, Plaintiff and the Maryland Class would not have purchased or leased the Polluting BMW Vehicles, or—if the Polluting BMW Vehicles' true nature had been disclosed and mitigated, and the vehicles rendered legal to sell—would have paid significantly less for them.

724.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

723 as if restated herein.

725.    Plaintiff and Maryland Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology.  Plaintiff and Maryland Class members did not and could not unravel Defendants' deception on their own.

725.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

723 as if restated herein.

726.    Defendants had an ongoing duty to Plaintiff and the Maryland Class to refrain from unfair and deceptive practices under the Maryland CPA in the course of their business.  Specifically, Defendants owed Plaintiff and the Maryland Class members a duty to disclose all the material facts concerning the diesel X5 and 335d emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff and the Maryland Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

726.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

723 as if restated herein.

727.     Plaintiff and the Maryland Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

727.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 723 as if restated herein.

728.     Defendants' violations present a continuing risk to Plaintiff and the Maryland Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

728.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 723 as if restated herein.

729.     Pursuant to MD. CODE ANN., COM. LAW § 13-408, Plaintiff and the Maryland Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

729.     **Answer**:  BMW AG admits that Paragraph 729 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 24

## FRAUDULENT CONCEALMENT
## (BASED ON MARYLAND LAW)

730.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

730.     **Answer**:  Paragraph 730 does not require a substantive response.

731.     This claim is brought by Plaintiff on behalf of Maryland purchasers who are members of the Class.

731.     **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims

is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

732.     Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

732.     **Answer**: Paragraph 732 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 732 of the FAC.  BMW AG denies the allegations in Paragraph 732 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

733.     BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

733.     **Answer**: Paragraph 733 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 733 of the FAC.  BMW AG denies the allegations in Paragraph 733 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

734.     Defendants knew these representations were false when made.

734.     **Answer**:  BMW AG denies the allegations in Paragraph 734 of the FAC.

735.     The Polluting BMW Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

735.     **Answer**:  Paragraph 735 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 735 of the FAC.  BMW AG denies the allegations in Paragraph 735 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

736.     Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

736.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

737.     As alleged in this Complaint, at all relevant times, BMW has held out the Polluting BMW Vehicles to be reduced emissions, EPA-compliant vehicles.  BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

737.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

738.     The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions

requirements was known only to Defendants; Plaintiff and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiff and Class members.

738.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

739.   Plaintiff and Class members reasonably relied upon Defendants' deception. They had no way of knowing that BMW's representations were false and/or misleading. As consumers, Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

739.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

740.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations. Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Polluting BMW Vehicles are doing.

740.   **Answer**: Paragraph 740 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 740 of the FAC.

741.   Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Defendants well knew, their customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

741.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

742.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive

knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members. BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiff and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. BMW represented to Plaintiff and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

742. **Answer**: Paragraph 742 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 742 of the FAC.

743. Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiff and Class members.

743. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 742 as if restated herein.

744. Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

744. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 742 as if restated herein.

745. Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

them.  Plaintiff's and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

745.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 742 as if restated herein.

746.  Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damages as a proximate result of Defendants' conduct in that Plaintiff and the other Class members overpaid for their Polluting BMW Vehicles and did not receive the benefit of their bargain.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.  Had Plaintiffs and the other Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and the other Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

746.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 742 as if restated herein.

747.  Defendants' violations present a continuing risk to Plaintiff as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

747.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 742 as if restated herein.

748.  Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

748.  **Answer**:  Paragraph 748 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 748 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

749.  Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

749.   **Answer**:  Paragraph 749 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 749 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 25

## VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68 *ET SEQ.*)

750.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

750.   **Answer**:  Paragraph 750 does not require a substantive response.

751.   Plaintiff Irving Cohen ("Plaintiff" for the purposes of this section) brings this claim on behalf of Minnesota purchasers who are members of the Class.

751.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

752.   The Minnesota Prevention of Consumer Fraud Act (Minnesota CFA) prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."  MINN. STAT. § 325F.69(1).

752.   **Answer**:  Paragraph 752 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 752 of the FAC.  BMW AG denies the allegations in Paragraph 752 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

753.     Each purchase or lease of a Polluting Vehicle constitutes "merchandise" within the meaning of MINN. STAT. § 325F.68(2).

753.     **Answer**: Paragraph 753 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 753 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

754.     In purchasing or leasing the Polluting BMW Vehicles, Plaintiff and the other Class members were deceived by Defendants' failure to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the emission controls were defective, and that the Polluting BMW Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

754.     **Answer**: Paragraph 754 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 754 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 754 of the FAC.

755.     Plaintiff and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

755.     **Answer**: Paragraph 755 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 755 of the FAC.

756.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

756.     **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 755 as if restated herein.

305

757.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

757.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 755 as if restated herein.

758.    Defendants intentionally and knowingly misrepresented material facts regarding the Polluting BMW Vehicles with an intent to mislead Plaintiff and the Class.

758.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 755 as if restated herein.

759.    Defendants knew or should have known that their conduct violated the Minnesota CFA.

759.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 755 as if restated herein.

760.    Defendants owed Plaintiff and the Class a duty to disclose the truth about its emissions systems manipulation because Defendants:

a)    Possessed exclusive knowledge that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions;

b)    Intentionally concealed the foregoing from Plaintiff and the Class; and/or

c)    Made incomplete representations that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

760.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

761.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that these Polluting BMW Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on BMW's material representations that the Polluting BMW Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

761.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

762.    Defendants' conduct proximately caused injuries to Plaintiff and the other Class members.

762.    **Answer**:  BMW AG denies the allegations in Paragraph 762 of the FAC.

763.    Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiff and the other Class members overpaid for their Polluting BMW Vehicles and did not receive the benefit of their bargain.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

763.    **Answer**: Paragraph 763 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies all remaining allegations in Paragraph 763 of the FAC.

764.    Defendants' violations present a continuing risk to Plaintiff as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

764.    **Answer**: Paragraph 764 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies all remaining allegations in Paragraph 764 of the FAC.

765.    Pursuant to MINN. STAT. § 8.31(3a), Plaintiff seek an order enjoining Defendants' unfair and/or deceptive acts or practices, awarding damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

765.    **Answer**:  BMW AG admits that Paragraph 765 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

766.    Plaintiff also seek punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights of others.

766.   **Answer**:  BMW AG admits that Paragraph 766 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

## COUNT 26

### VIOLATION OF THE MINNESOTA DECEPTIVE TRADE PRACTICES ACT
### (MINN. STAT. § 325D.43-48 *ET SEQ.*)

767.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding
paragraphs of this complaint.

767.   **Answer**:  Paragraph 767 does not require a substantive response.

768.   The Minnesota Deceptive Trade Practices Act (Minnesota DTPA) prohibits
deceptive trade practices, which include "[t]he act, use, or employment by any person of any fraud,
false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with
the intent that others rely thereon in connection with the sale of any merchandise, whether or not
any person has in fact been misled, deceived, or damaged thereby."  MINN. STAT.§ 325F.69(1).

768.   **Answer**:  Paragraph 768 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 768 of the FAC.  BMW AG denies the allegations in Paragraph 768 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

769.   In the course of their business, Defendants concealed and suppressed material facts
concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission
control devices in the Polluting BMW Vehicles that were concealed from regulators and
consumers alike.

769.   **Answer**:  Paragraph 769 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 769 of the FAC.

770.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class
members are material in that a reasonable consumer would have considered them to be important

in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

770.   **Answer**: Paragraph 770 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 770 of the FAC.

771.   Pursuant to MINN. STAT. § 8.31(3a), Plaintiff seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, awarding damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

771.   **Answer**: BMW AG admits that Paragraph 771 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

772.   Plaintiff also seeks punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights of others.

772.   **Answer**: BMW AG admits that Paragraph 772 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 27
## FRAUDULENT CONCEALMENT
## (BASED ON MINNESOTA LAW)

773.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

773.   **Answer**: Paragraph 773 does not require a substantive response.

774.   This claim is brought by Plaintiff on behalf of Minnesota purchasers who are members of the Class.

774.   **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims

309

is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

775.    Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

775.    **Answer**: Paragraph 775 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 775 of the FAC.  BMW AG denies the allegations in Paragraph 775 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

776.    BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

776.    **Answer**: Paragraph 776 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 776 of the FAC.  BMW AG denies the allegations in Paragraph 776 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

777.    Defendants knew these representations were false when made.

777.    **Answer**: BMW AG denies the allegations in Paragraph 777 of the FAC.

778.     The Polluting BMW Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline- powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

778.     **Answer**:  Paragraph 778 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 778 of the FAC.  BMW AG denies the allegations in Paragraph 778 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

779.     Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

779.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

780.     As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA- compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

780.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

781.     The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions

requirements was known only to Defendants; Plaintiff and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

781.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

782.    Plaintiff and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

782.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

783.    BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

783.    **Answer**:  Paragraph 783 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 783 of the FAC.

784.    Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, its customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

784.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

785.    Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive

knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members. BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiff and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. BMW represented to Plaintiff and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

785. **Answer**: Paragraph 785 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 785 of the FAC.

786. Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW's vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiff and Class members.

786. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 785 as if restated herein.

787. Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

787. **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 785 as if restated herein.

788. Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

them.  Plaintiff's and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

788.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

785 as if restated herein.

789.   Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiff and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiff and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

789.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

785 as if restated herein.

790.   Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

790.   **Answer**:  Paragraph 790 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 790 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed

class is entitled to any relief.

791.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

791.   **Answer**:  Paragraph 791 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 791 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed

class is entitled to any relief.

## COUNT 28

### VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT
### (MISS. CODE ANN. § 75-24-1 *ET SEQ.*)

792.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

792.    **Answer**:  Paragraph 792 does not require a substantive response.

793.    Plaintiff Angela Hughes ("Plaintiff" for the purposes of this section) brings this claim on behalf of Mississippi purchasers who are members of the Class.

793.    **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and

further denies that any putative class or subclasses may or should be certified in this action.

794.    The Mississippi Consumer Protection Act (Mississippi CPA) prohibits "unfair or deceptive trade practices in or affecting commerce."  MISS. CODE ANN. § 75-24-5(1).  Unfair or deceptive practices include but are not limited to "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have"; "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(i) Advertising goods or services with intent not to sell them as advertised."  MISS. CODE ANN. § 75-24-5(2).

794.    **Answer**:  Paragraph 794 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 794 of the FAC.  BMW AG denies the allegations in Paragraph 794 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

795.    In purchasing or leasing the Polluting BMW Vehicles, Plaintiff and the other Class members were deceived by Defendants' failure to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the emission controls were defective, and that the Polluting BMW Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

795.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

796.    Plaintiff and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

796.    **Answer**:  Paragraph 796 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 796 of the FAC.

797.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

797.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

796 as if restated herein.

798.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

798.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

796 as if restated herein.

799.    Defendants intentionally and knowingly misrepresented material facts regarding the Polluting BMW Vehicles with an intent to mislead Plaintiff and the Class.

799.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

796 as if restated herein.

800.    Defendants knew or should have known that their conduct violated the Minnesota CFA.

800.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 796 as if restated herein.

801.   Defendants owed Plaintiff and the Class a duty to disclose the truth about its emissions systems manipulation because Defendants:

a)   Possessed exclusive knowledge that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions;

b)   Intentionally concealed the foregoing from Plaintiff and the Class; and/or

c)   Made incomplete representations that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

801.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

802.   Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that these Polluting BMW Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on BMW's material representations that the Polluting BMW Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

802.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

803.   Defendants' conduct proximately caused injuries to Plaintiff and the other Class members.

803.   **Answer**:  Paragraph 803 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 803 of the FAC.

804.   Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiff and the other Class members overpaid for their Polluting BMW Vehicles and did not receive the

benefit of their bargain.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

804.  **Answer**: Paragraph 804 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 804 of the FAC.

805.  Plaintiff seeks an order enjoining Defendants' unfair and/or deceptive acts or practices and awarding damages, including restitution, and any other just and proper relief available under the Mississippi CPA.

805.  **Answer**: BMW AG admits that Paragraph 805 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 29

## FRAUDULENT CONCEALMENT
## (BASED ON MISSISSIPPI LAW)

806.  Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

806.  **Answer**: Paragraph 806 does not require a substantive response.

807.  This claim is brought by Plaintiff on behalf of Mississippi purchasers who are members of the Class.

807.  **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

808.  Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had

decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

808.   **Answer**: Paragraph 808 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 808 of the FAC.  BMW AG denies the allegations in Paragraph 808 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

809.   BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

809.   **Answer**: Paragraph 809 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 809 of the FAC.  BMW AG denies the allegations in Paragraph 809 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

810.   Defendants knew these representations were false when made.

810.   **Answer**:  BMW AG denies the allegations in Paragraph 810 of the FAC.

811.   The Polluting BMW Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

811.   **Answer**: Paragraph 811 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 811 of the FAC.  BMW AG denies the allegations in Paragraph 811 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

812.    Defendants had a duty to disclose that the NOx reduction system in the Polluting
BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting
BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher
rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a
reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other
Class members relied on Defendants' material representations or omissions of fact that the Class
Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

812.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

813.    As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge
and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant.
BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with
Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the
NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving
conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat
Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high
levels of pollutants, and were non-compliant with EPA emissions requirements, making other
disclosures about the emission system deceptive.

813.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

814.    The truth about the defective emission controls and Defendants' manipulations of
those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions
requirements was known only to Defendants; Plaintiff and the Class members did not know of
these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

814.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

815.    Plaintiff and Class members reasonably relied upon Defendants' deception.  They
had no way of knowing that BMW's representations were false and/or misleading.  As consumers,
Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

815.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

816.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

816.   **Answer**:  Paragraph 816 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 816 of the FAC.

817.   Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, its customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

817.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

818.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they

directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiff and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. BMW represented to Plaintiff and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

818.    **Answer**: Paragraph 818 of the FAC states legal conclusions and argument to which

BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations

in Paragraph 818 of the FAC.

819.    Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW's vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiff and Class members.

819.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

818 as if restated herein.

820.    Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

820.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

818 as if restated herein.

821.    Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

821.    **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

818 as if restated herein.

822.    Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the

actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiff and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiff and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

822.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 818 as if restated herein.

823.   Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

823.   **Answer**:  Paragraph 823 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 823 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

824.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

824.   **Answer**:  Paragraph 824 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 824 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 30

## VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973
## (MONT. CODE ANN. § 30-14-101 *ET SEQ.*)

825.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

825.   **Answer**:  Paragraph 825 does not require a substantive response.

826.   Plaintiff Carlos Buendia ("Plaintiff" for the purposes of this section) brings this claim on behalf of Montana purchasers who are members of the Class.

826.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

827.   The Montana Unfair Trade Practices and Consumer Protection Act (Montana CPA) makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103.

827.   **Answer**:  Paragraph 827 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 827 of the FAC.  BMW AG denies the allegations in Paragraph 827 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

828.   BMW USA, BMW AG, Bosch, Plaintiff, and Montana Class members are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

828.   **Answer**:  Paragraph 828 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 828 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 828 of the FAC.

829.   Plaintiff and Montana Class members are "consumer[s]" under MONT. CODE ANN. § 30-14-102(1).

829.   **Answer**: Paragraph 829 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 829 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

830.   The sale or lease of each Polluting Vehicle at issue occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and Defendants committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

830.   **Answer**: Paragraph 830 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 830 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 830 of the FAC.

831.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

831.   **Answer**: Paragraph 831 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 831 of the FAC.

832.   The facts concealed and omitted by Defendants from Plaintiff and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiff and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

832.   **Answer**: Paragraph 832 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 832 of the FAC.

833.    Because Defendants' unlawful methods, acts, and practices have caused Plaintiff to suffer an ascertainable loss of money and property, Plaintiff seeks from Defendants: the greater of actual damages or $500; discretionary treble damages; and reasonable attorneys' fees.

833.    **Answer**: BMW AG admits that Paragraph 833 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

834.    Plaintiff additionally seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and any other relief the Court considers necessary or proper, under MONT. CODE ANN. § 30-14-133.

834.    **Answer**: BMW AG admits that Paragraph 834 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

## COUNT 31

### FRAUDULENT CONCEALMENT
### (BASED ON MONTANA LAW)

835.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

835.    **Answer**: Paragraph 835 does not require a substantive response.

836.    This claim is brought by Plaintiff on behalf of Montana purchasers who are members of the Class.

836.    **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any of the relief requested.  BMW AG denies that this action may or should be

maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims

is appropriate, and further denies that any putative class or subclasses may or should be certified

in this action.

837.    Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high

326

levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

837.   **Answer**:  Paragraph 837 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 837 of the FAC.  BMW AG denies the allegations in Paragraph 837 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

838.   BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

838.   **Answer**:  Paragraph 838 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 838 of the FAC.  BMW AG denies the allegations in Paragraph 838 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

839.   Defendants knew these representations were false when made.

839.   **Answer**:  BMW AG denies the allegations in Paragraph 839 of the FAC.

840.   The Polluting BMW Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

840.   **Answer**: Paragraph 840 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 840 of the FAC.  BMW AG denies the allegations in Paragraph 840 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

841.   Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

841.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

842.   As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

842.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

843.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiff and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

843.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

844.    Plaintiff and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

844.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

845.    BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

845.    **Answer**:  Paragraph 845 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 845 of the FAC.

846.    Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

846.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

847.    Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions

regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiff and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiff and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

847.   **Answer**: Paragraph 847 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 847 of the FAC.

848.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW's vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiff and Class members.

848.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

847 as if restated herein.

849.   Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

849.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

847 as if restated herein.

850.   Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

850.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

847 as if restated herein.

851.     Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiff and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiff and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

851.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 847 as if restated herein.

852.     Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

852.     **Answer**:  Paragraph 852 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 852 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

853.     Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

853.     **Answer**:  Paragraph 853 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 853 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

**COUNT 32**

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. § 56:8-1 *ET SEQ.*)**

854.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

854.   **Answer**:  Paragraph 854 does not require a substantive response.

855.   Plaintiffs William Berbaum and Charles Chapman ("Plaintiffs" for purposes of this section) bring this claim on behalf of New Jersey purchasers who are members of the Class.

855.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

856.   The New Jersey Consumer Fraud Act (New Jersey CFA) makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."  N.J. STAT. ANN. § 56:8-2.  Defendants failed to disclose that the Polluting BMW Vehicles (1) turn off or down emissions systems during common driving conditions resulting in massive amounts of NOx as compared to federal and state standards, (2) that absent the emissions manipulation these vehicles would not have passed emissions tests, (3) that fuel economy and towing capacity was achieved by turning down or off emissions systems; and (4) that emissions and fuel economy were far worse than a reasonable consumer would expect given the premium paid for these vehicles over a comparable gas-powered vehicle, and the estimated fuel and performance representation made about miles per gallon.

856.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  BMW AG denies the allegations in Paragraph 856 of the FAC.  BMW AG denies the allegations in Paragraph 856 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

857.    BMW USA, BMW AG, Bosch, Plaintiffs, and New Jersey Class members are "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

857.    **Answer**: Paragraph 857 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 857 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 857 of the FAC.

858.    Defendants engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

858.    **Answer**: Paragraph 858 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 858 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 858 of the FAC.

859.    In the course of Defendants' business, Defendants willfully failed to disclose and actively concealed that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles emitted far more pollutants than gasoline powered vehicles, that the Polluting BMW Vehicles emit far more pollution than a reasonable consumer would expect in light of BMW's advertising campaign, and that the Polluting BMW Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendants engaged in unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in the conduct of trade or commerce as prohibited by the New Jersey CFA.

859.    **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  BMW AG denies the allegations in Paragraph 859 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 859 of the FAC.

860.     In purchasing or leasing the Polluting Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the emission controls were defective, and that the Polluting BMW Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

860.     **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

861.     Plaintiffs and the other Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiffs and the other Class members did not, and could not, unravel Defendants' deception on their own.

861.     **Answer**: Paragraph 861 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 861 of the FAC.

862.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

862.     **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 861 as if restated herein.

863.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

863.     **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 861 as if restated herein.

864.     Defendants intentionally and knowingly misrepresented material facts regarding the Polluting Vehicles with an intent to mislead Plaintiffs and the Class.

864.     **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 861 as if restated herein.

865.     Defendants knew or should have known that their conduct violated the New Jersey CFA.

865.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 861 as if restated herein.

866.   Defendants owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because Defendants:

a)   Possessed exclusive knowledge that it manipulated the emissions system in the Polluting Vehicles to turn off or limit effectiveness in normal driving conditions;

b)   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c)   Made incomplete representations that it manipulated the emissions system in the Polluting Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

866.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

867.   Defendants had a duty to disclose that the NOx reduction system in the Polluting Vehicles turns off or is limited during normal driving conditions, that these Polluting Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations that the Polluting Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

867.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

868.   Defendants conduct proximately caused injuries to Plaintiffs and the other Class members.

868.   **Answer**:  Paragraph 868 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 868 of the FAC.

869.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Polluting Vehicles and did not receive the benefit

of their bargain.   These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

869.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 868 as if restated herein.

870.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

870.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 868 as if restated herein.

871.   Plaintiffs are entitled to recover legal and/or equitable relief, including an order enjoining Defendants' unlawful conduct, treble damages, costs, and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19, and any other just and appropriate relief.

871.   **Answer**:  BMW AG admits that Paragraph 871 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 33

## FRAUDULENT CONCEALMENT
## (BASED ON NEW JERSEY LAW)

872.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

872.   **Answer**:  Paragraph 872 does not require a substantive response.

873.   This claim is brought by Plaintiffs on behalf of New Jersey purchasers who are members of the Class.

873.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.   BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

874.    Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

874.    **Answer**: Paragraph 874 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 874 of the FAC.  BMW AG denies the allegations in Paragraph 874 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

875.    BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

875.    **Answer**: Paragraph 875 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 875 of the FAC.  BMW AG denies the allegations in Paragraph 875 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

876.    Defendants knew these representations were false when made.

876.    **Answer**:  BMW AG denies the allegations in Paragraph 876 of the FAC.

877.    The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's

advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

877.    **Answer**: Paragraph 877 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 877 of the FAC.  BMW AG denies the allegations in Paragraph 877 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

878.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

878.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

879.    As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

879.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

880.    The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

880.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

881.   Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

881.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

882.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

882.   **Answer**:  Paragraph 882 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 882 of the FAC.

883.   BMW's false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

883.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

884.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to

339

emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

884.    **Answer**:  Paragraph 884 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 884 of the FAC.

885.    Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW's vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendants money, and it did so at the expense of Plaintiffs and Class members.

885.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

884 as if restated herein.

886.    Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

886.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

884 as if restated herein.

887.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

887.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 884 as if restated herein.

888.   Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

888.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 884 as if restated herein.

889.   Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

889.   **Answer**:  Paragraph 889 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 889 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

890.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

890.   **Answer**:  Paragraph 890 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 890 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 34

## VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW
### (N.Y. GEN. BUS. LAW §§ 349–350)

891.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

891.     **Answer**:  Paragraph 891 does not require a substantive response.

892.     Plaintiffs Mark Messina and Jesse White ("Plaintiffs" for purposes of this section) bring this claim on behalf of New York purchasers who are members of the Class.

892.     **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

893.     The New York General Business Law (New York GBL) makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. GEN. BUS. LAW § 349.

893.     **Answer**:  Paragraph 893 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 893 of the FAC.  BMW AG denies the allegations in Paragraph 893 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

894.     Plaintiffs and New York Class members are "persons" within the meaning of N.Y. GEN. BUS. LAW § 349(h).

894.     **Answer**:  Paragraph 894 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 894 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

895.    BMW USA, BMW AG, and Bosch are a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

895.    **Answer**: Paragraph 895 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 895 of the FAC insofar as those allegations refer to a statute and refers to the original

source materials for a complete and accurate statement of their contents and context.  BMW AG

denies all remaining allegations in Paragraph 895 of the FAC.

896.    In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

896.    **Answer**: Paragraph 896 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 896 of the FAC.

897.    The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

897.    **Answer**: Paragraph 897 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 897 of the FAC.

898.    Defendants' deceptive acts and practices, which were intended to mislead consumers who purchased or leased a Polluting BMW Vehicle, was conduct directed at consumers.

898.    **Answer**: Paragraph 898 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 898 of the FAC.

899.    Because Defendants' willful and knowing conduct caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; an order enjoining Defendants' deceptive conduct; and any other just and proper relief available under N.Y. GEN. BUS. LAW § 349.

899.    **Answer**: BMW AG admits that Paragraph 899 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 35

### FRAUDULENT CONCEALMENT
### (BASED ON NEW YORK LAW)

900.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

900.    **Answer**: Paragraph 900 does not require a substantive response.

901.    This claim is brought by Plaintiffs on behalf of New York purchasers who are members of the Class.

901.    **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.   BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

902.    Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

902.    **Answer**: Paragraph 902 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 902 of the FAC.  BMW AG denies the allegations in Paragraph 902 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

903.    BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

903.    **Answer**:  Paragraph 903 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 903 of the FAC.  BMW AG denies the allegations in Paragraph 903 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

904.    Defendants knew these representations were false when made.

904.    **Answer**:  BMW AG denies the allegations in Paragraph 904 of the FAC.

905.    The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

905.    **Answer**:  Paragraph 905 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 905 of the FAC.  BMW AG denies the allegations in Paragraph 905 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

906.     Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

906.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

907.     As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

907.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

908.     The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

908.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

909.     Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

909.     **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

910.     BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an

emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

910.   **Answer**: Paragraph 910 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 910 of the FAC.

911.   Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

911.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

912.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

912.   **Answer**:  Paragraph 912 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 912 of the FAC.

913.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW's vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendants money, and it did so at the expense of Plaintiffs and Class members.

913.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 912 as if restated herein.

914.   Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

914.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 912 as if restated herein.

915.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

915.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 912 as if restated herein.

916.   Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously

owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

916.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 912 as if restated herein.

917.    Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

917.    **Answer**:  Paragraph 917 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 917 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

918.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

918.    **Answer**:  Paragraph 918 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 918 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 36

## VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT
## (N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)

919.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

919.    **Answer**:  Paragraph 919 does not require a substantive response.

920.    Plaintiffs Seth Davis and Miguel Fragoso ("Plaintiffs" for purposes of this section) bring this claim on behalf of North Carolina purchasers who are members of the Class

920.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

921.   North Carolina's Unfair and Deceptive Acts and Practices Act (the North Carolina Act) broadly prohibits "unfair or deceptive acts or practices in or affecting commerce."  N.C. GEN. STAT. § 75-1.1(a).

921.   **Answer**:  Paragraph 921 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 921 of the FAC.  BMW AG denies the allegations in Paragraph 921 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

922.   BMW USA, BMW AG, and Bosch engaged in "commerce" within the meaning of N.C. GEN. STAT. § 75-1.1(b).

922.   **Answer**:  Paragraph 922 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 922 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 922 of the FAC.

923.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

923.   **Answer**:  Paragraph 923 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 923 of the FAC.

924.    The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

924.    **Answer**: Paragraph 924 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 924 of the FAC.

925.    Plaintiffs seek an order for treble their actual damages, an order enjoining Defendants' unlawful acts, costs of Court, attorney's fees, and any other just and proper relief available under the North Carolina Act, N.C. Gen. Stat. § 75-16.

925.    **Answer**: BMW AG admits that Paragraph 925 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

## COUNT 37

## FRAUDULENT CONCEALMENT
## (BASED ON NORTH CAROLINA LAW)

926.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

926.    **Answer**: Paragraph 926 does not require a substantive response.

927.    This claim is brought by Plaintiffs on behalf of North Carolina purchasers who are members of the Class.

927.    **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any of the relief requested.  BMW AG denies that this action may or should be

maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims

is appropriate, and further denies that any putative class or subclasses may or should be certified

in this action.

928.    Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions,

that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

928.    **Answer**: Paragraph 928 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 928 of the FAC.  BMW AG denies the allegations in Paragraph 928 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

929.    BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

929.    **Answer**: Paragraph 929 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 929 of the FAC.  BMW AG denies the allegations in Paragraph 929 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

930.    Defendants knew these representations were false when made.

930.    **Answer**:  BMW AG denies the allegations in Paragraph 930 of the FAC.

931.    The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline- powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

931.   **Answer**:  Paragraph 931 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 931 of the FAC.  BMW AG denies the allegations in Paragraph 931 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

932.   Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

932.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

933.   As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

933.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

934.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

934.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

935.    Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

935.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

936.    BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

936.    **Answer**:  Paragraph 936 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 936 of the FAC.

937.    Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

937.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

938.    Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions

regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

938.    **Answer**: Paragraph 938 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 938 of the FAC.

939.    Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW's vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiffs and Class members.

939.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

938 as if restated herein.

940.    Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

940.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

938 as if restated herein.

941.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

941.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

938 as if restated herein.

942.     Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

942.     **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 938 as if restated herein.

943.     Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

943.     **Answer**:  Paragraph 943 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 943 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

944.     Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

944.     **Answer**:  Paragraph 944 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 944 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 38

## VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT
### (OHIO REV. CODE ANN. § 1345.01 *ET SEQ.*)

945.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

945.    **Answer**:  Paragraph 945 does not require a substantive response.

946.    Plaintiffs Tahani Ibrahim and Ion Niculescu ("Plaintiffs" for the purposes of this section) bring this claim on behalf of Ohio purchasers who are members of the Class.

946.    **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

947.    Ohio Consumer Sales Practices Act (Ohio CSPA), OHIO REV. CODE ANN. § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  Specifically, and without limitation of the broad prohibition, the Act prohibits (1) representing that Polluting BMW Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Polluting BMW Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Polluting BMW Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.  OHIO REV. CODE ANN. § 1345.02.

947.    **Answer**:  Paragraph 947 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 947 of the FAC.  BMW AG denies the allegations in Paragraph 947 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

948.    The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Defendants in this Complaint, including but not limited to the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the

concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA.  These cases include, but are not limited to, the following:

a)    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

b)    *State ex rel. Betty D. Montgomery v. Volkswagen Motor Co.* (OPIF #10002123);

c)    *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

d)    *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

e)    *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

f)    *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

g)    *Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

h)    *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

i)    *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

j)    *Khouri v. Don Lewis* (OPIF #100001995);

k)    *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

l)    *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

m)    *Brown v. Spears* (OPIF #10000403).

948.    **Answer**:  Paragraph 948 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies that any of the cases listed in Paragraph 948 of the FAC apply to BMW AG.  BMW AG further denies all allegations in Paragraph 948 of the FAC insofar as those allegations refer to cases and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 948.

949.    BMW USA, BMW AG, and Bosch are "suppliers" as that term is defined in OHIO REV. CODE ANN. § 1345.01(C).

949.   **Answer**: Paragraph 949 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 949 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 949 of the FAC.

950.   Plaintiffs and the other Ohio Class members are "consumers" as that term is defined in OHIO REV. CODE ANN. § 1345.01(D), and their purchase or lease of one or more Polluting BMW Vehicles is a "consumer transaction" within the meaning of OHIO REV. CODE ANN. § 1345.01(A).

950.   **Answer**: Paragraph 950 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 950 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

951.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

951.   **Answer**: Paragraph 951 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 951 of the FAC.

952.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

952.   **Answer**: Paragraph 952 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 952 of the FAC.

953.    As a result of the foregoing wrongful conduct, Plaintiffs have been damaged in an amount to be proven at trial and seek all just and proper remedies, including but not limited to actual and statutory damages, an order enjoining Defendants' deceptive and unfair conduct, treble damages, court costs, and reasonable attorneys' fees, pursuant to OHIO REV. CODE ANN. § 1345.09 *et seq*.

953.    **Answer**: BMW AG admits that Paragraph 953 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 39

## FRAUDULENT CONCEALMENT
## BASED ON OHIO LAW)

954.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

954.    **Answer**: Paragraph 954 does not require a substantive response.

955.    This claim is brought by Plaintiffs on behalf of Ohio purchasers who are members of the Class.

955.    **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

956.    Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

956.    **Answer**: Paragraph 956 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 956 of the FAC. BMW AG denies the allegations in Paragraph 956 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

957. BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

957. **Answer**: Paragraph 957 of the FAC states legal conclusions and argument to which

BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations

in Paragraph 957 of the FAC. BMW AG denies the allegations in Paragraph 957 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

958. Defendants knew these representations were false when made.

958. **Answer**: BMW AG denies the allegations in Paragraph 958 of the FAC.

959. The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline- powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

959. **Answer**: Paragraph 959 of the FAC states legal conclusions and argument to which

BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations

in Paragraph 959 of the FAC. BMW AG denies the allegations in Paragraph 959 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their contents and context.

960.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

960.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

961.    As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

961.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

962.    The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiff and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

962.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

963.    Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

963.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

964.    BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

964.    **Answer**:  Paragraph 964 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 964 of the FAC.

965.    Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

965.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

966.    Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to

such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

966.   **Answer**: Paragraph 966 of the FAC states legal conclusions and argument to which

BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations

in Paragraph 966 of the FAC.

967.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiffs and Class members.

967.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

966 as if restated herein.

968.   Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

968.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

966 as if restated herein.

969.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

969.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph

966 as if restated herein.

970.   Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels

dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

970.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 966 as if restated herein.

971.    Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

971.    **Answer**:  Paragraph 971 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 971 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

972.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

972.    **Answer**:  Paragraph 972 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 972 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 40

## VIOLATION OF THE OREGON UNLAWFUL
## TRADE PRACTICES ACT
## (OR. REV. STAT. § 646.605 *ET SEQ.*)

973.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

973.    **Answer**:  Paragraph 973 does not require a substantive response.

974.     Plaintiff Tom Hoffman ("Plaintiff" for the purposes of this section) brings this claim on behalf of Oregon purchasers who are members of the Class.

974.     **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and

further denies that any putative class or subclasses may or should be certified in this action.

975.     The Oregon Unfair Trade Practices Act (Oregon UTPA) prohibits a person from, in the course of the person's business, doing any of the following:  representing that goods have characteristics uses, benefits, or qualities that they do not have; representing that goods are of a particular standard or quality if they are of another; advertising goods or services with intent not to provide them as advertised; and engaging in any other unfair or deceptive conduct in trade or commerce. OR. REV. STAT. § 646.608(1).

975.     **Answer**:  Paragraph 975 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 975 of the FAC.  BMW AG denies the allegations in Paragraph 975 of the FAC

insofar as those allegations refer to laws, regulations, and/or published emissions standards, and

refers to the applicable original source materials for a complete and accurate statement of their

contents and context.

976.     BMW USA, BMW AG, and Bosch are persons within the meaning of OR. REV. STAT. § 646.605(4).

976.     **Answer**:  Paragraph 976 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 976 of the FAC insofar as those allegations refer to a statute and refers to the original

source materials for a complete and accurate statement of their contents and context.  BMW AG

denies all remaining allegations in Paragraph 976 of the FAC.

977.     Each Polluting BMW Vehicle is a "good" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

977.   **Answer**: Paragraph 977 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 977 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 977 of the FAC.

978.   In the course of their business, Defendants failed to disclose that the Polluting BMW Vehicles (1) turn off or down emissions systems during common driving conditions resulting in massive amounts of NOx as compared to federal and state standards, (2) that absent the emissions manipulation these vehicles would not have passed emissions tests, (3) that fuel economy and towing capacity was achieved by turning down or off emissions systems; and (4) that emissions and fuel economy were far worse than a reasonable consumer would expect given the premium paid for these vehicles over a comparable gas-powered vehicle, and the estimated fuel and performance representation made about miles per gallon.

978.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

979.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

979.   **Answer**: Paragraph 979 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 979 of the FAC.

980.   Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages.  Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1).  Plaintiffs are also entitled to punitive damages because Defendants engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

980.   **Answer**: BMW AG admits that Paragraph 980 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

**COUNT 41**

**FRAUDULENT CONCEALMENT
(BASED ON OREGON LAW)**

981.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

981.     **Answer**:  Paragraph 981 does not require a substantive response.

982.     This claim is brought by Plaintiff on behalf of Oregon purchasers who are members of the Class.

982.     **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

983.     Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

983.     **Answer**: Paragraph 983 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 983 of the FAC.  BMW AG denies the allegations in Paragraph 983 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

984.     BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had

no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

984.    **Answer**: Paragraph 984 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 984 of the FAC.  BMW AG denies the allegations in Paragraph 984 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

985.    Defendants knew these representations were false when made.

985.    **Answer**: BMW AG denies the allegations in Paragraph 985 of the FAC.

986.    The Polluting BMW Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

986.    **Answer**: Paragraph 986 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 986 of the FAC.  BMW AG denies the allegations in Paragraph 986 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

987.    Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

987.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

988.    As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

988.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

989.    The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiff and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

989.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

990.    Plaintiff and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.  Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

990.    **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

991.    BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

991.   **Answer**: Paragraph 991 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 991 of the FAC.

992.   BMW's false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

992.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

993.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiff and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiff and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

993.   **Answer**: Paragraph 993 of the FAC states legal conclusions and argument to which

BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations

in Paragraph 993 of the FAC.

994.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean

diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiff and Class members.

994.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 993 as if restated herein.

995.    Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

995.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 993 as if restated herein.

996.    Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

996.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 993 as if restated herein.

997.    Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiff and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiff and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

997.    **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 993 as if restated herein.

998.    Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

998.    **Answer**: Paragraph 998 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 998 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

999.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

999.    **Answer**: Paragraph 999 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 999 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 42

### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 PA. CONS. STAT. § 201-1 *ET SEQ.*)

1000.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

1000.    **Answer**: Paragraph 1000 does not require a substantive response.

1001.    Plaintiff Gary Reising (for the purposes of this section, "Plaintiff") brings this action on behalf of himself and Pennsylvania purchasers who are members of the Class.

1001.    **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1002.    The Pennsylvania Unfair Trade Practices Act (Pennsylvania UTPA) prohibits unfair or deceptive acts or practices, including representing that goods or services have characteristics, benefits or qualities that they do not have; representing that goods or services are

373

of a particular standard, quality or grade if they are of another; advertising goods or services with intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.  73 PA. CONS. STAT. § 201-2.

1002.  **Answer**:  Paragraph 1002 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1002 of the FAC.  BMW AG denies the allegations in Paragraph 1002 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1003.  BMW USA, BMW AG, Bosch, Plaintiff, and Pennsylvania Class members are "persons" within the meaning of 73 PA. CONS. STAT. § 201-2(2).

1003.  **Answer**:  Paragraph 1003 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1003 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 1003 of the FAC.

1004.  All of the acts complained of herein were perpetrated by BMW USA, BMW AG, and Bosch in the course of trade or commerce within the meaning of 73 PA. CONS. STAT. § 201-2(3).

1004.  **Answer**:  Paragraph 1004 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1004 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 1004 of the FAC.

1005.  Defendants' conduct, as set forth above, occurred in the conduct of trade or commerce.  In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission

control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1005.   **Answer**:   Paragraph 1005 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1005 of the FAC.

1006.   Defendants' scheme and concealment of the true characteristics of the diesel X5 and 335d emission control system were material to Plaintiff and the Pennsylvania Class, as Defendants intended.   Had they known the truth, Plaintiff and the Pennsylvania Class would not have purchased or leased the Polluting BMW Vehicles, or—if the Polluting BMW Vehicles' true nature had been disclosed and mitigated, and the vehicles rendered legal to sell—would have paid significantly less for them.

1006.   **Answer**:   BMW AG incorporates by reference the answer set forth in Paragraph 1005 as if restated herein.

1007.   Plaintiff and Pennsylvania Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology.   Plaintiff and Pennsylvania Class members did not and could not unravel Defendants' deception on their own.

1007.   **Answer**:   BMW AG incorporates by reference the answer set forth in Paragraph 1005 as if restated herein.

1008.   Defendants had an ongoing duty to Plaintiff and the Pennsylvania Class to refrain from unfair and deceptive practices under the Pennsylvania UTPA CPA in the course of their business.   Specifically, Defendants owed Plaintiff and the Pennsylvania Class members a duty to disclose all the material facts concerning the diesel X5 and 335d emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff and the Pennsylvania Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1008.   **Answer**:   BMW AG incorporates by reference the answer set forth in Paragraph 1005 as if restated herein.

1009.   Plaintiff and the Pennsylvania Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1009.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1005 as if restated herein.

1010.   Defendants' violations present a continuing risk to Plaintiff and the Pennsylvania Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

1010.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1005 as if restated herein.

1011.   BMW is liable to Plaintiff for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs.  73 PA. CONS. STAT. § 201-9.2(a).  Plaintiff and the Pennsylvania Class also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding punitive damages given that BMW's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

1011.   **Answer**:  BMW AG admits that Paragraph 1011 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 43

### FRAUDULENT CONCEALMENT
### (BASED ON PENNSYLVANIA LAW)

1012.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1012.   **Answer**:  Paragraph 1012 does not require a substantive response.

1013.   This claim is brought by Plaintiff on behalf of Pennsylvania purchasers who are members of the Class.

1013.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1014.   Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

1014.   **Answer**:  Paragraph 1014 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1014 of the FAC.  BMW AG denies the allegations in Paragraph 1014 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1015.   BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1015.   **Answer**:  Paragraph 1015 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1015 of the FAC.  BMW AG denies the allegations in Paragraph 1015 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1016.   Defendants knew these representations were false when made.

1016.   **Answer**:  BMW AG denies the allegations in Paragraph 1016 of the FAC.

1017.   The Polluting BMW Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline- powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's

advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

1017.   **Answer**:  Paragraph 1017 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1017 of the FAC.  BMW AG denies the allegations in Paragraph 1017 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1018.   Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1018.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1019.   As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1019.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1020.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiff and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

1020.  **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1021.   Plaintiff and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.  Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

1021.  **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1022.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

1022.  **Answer**:  Paragraph 1022 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1022 of the FAC.

1023.   Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

1023.  **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1024.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to

emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiff and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiff and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

1024.   **Answer**:  Paragraph 1024 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1024 of the FAC.

1025.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiff and Class members.

1025.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1024 as if restated herein.

1026.   Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

1026.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1024 as if restated herein.

1027.   Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

1027.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1024 as if restated herein.

1028.   Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiff and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiff and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1028.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1024 as if restated herein.

1029.   Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

1029.   **Answer**:  Paragraph 1029 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1029 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1030.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1030.   **Answer**:  Paragraph 1030 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1030 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

**COUNT 44**

**VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT**
**(TENN. CODE ANN. § 47-18-101 *ET SEQ.*)**

1031.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

1031.    **Answer**:  Paragraph 1031 does not require a substantive response.

1032.    Plaintiff James Turner ("Plaintiff" for the purposes of this section) brings this claim on behalf of Tennessee purchasers who are members of the Class.

1032.    **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1033.    Defendants are "persons" within the meaning of TENN. CODE ANN. § 47-18-103(2).

1033.    **Answer**:  Paragraph 1033 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1033 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1033 of the FAC.

1034.    Defendants' conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19).

1034.    **Answer**:  Paragraph 1034 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1034 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1034 of the FAC.

1035.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to:  "Representing that goods or services have … characteristics, [or] … benefits … that they do not have…;" "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" "Advertising goods or services with intent not to sell them as advertised;" and "Engaging in any other act or practice which is deceptive to the consumer or any other person." TENN. CODE ANN. § 47-18-104.  In the course of Defendants' business, Defendants willfully failed to disclose and actively concealed that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Polluting BMW Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendants' advertising campaign, and that the Polluting BMW Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendants violated the Tennessee CPA by engaging in unfair or deceptive acts, including representing that the Polluting BMW Vehicles have characteristics or benefits that they did not have; representing that the Polluting BMW Vehicles are of a particular standard, quality, or grade when they are of another; advertising the Polluting BMW Vehicles with intent not to sell them as advertised; and engaging in acts or practices that are deceptive to consumers.

1035.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  BMW AG denies the allegations in Paragraph 1035 of the FAC.  BMW AG denies the allegations in Paragraph 1035 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1036.   Defendants intentionally and knowingly misrepresented material facts regarding the Polluting BMW Vehicles with intent to mislead Plaintiffs and the other Class members.

1036.   **Answer**:  Paragraph 1036 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1036 of the FAC.

1037.   Defendants knew or should have known that their conduct violated the Tennessee CPA.

1037.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1036 as if restated herein.

1038.   Defendants owed Plaintiff and the other Class members a duty to disclose the truth about its emissions systems manipulation because Defendants:

a)     Possessed exclusive knowledge that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions;

b)     Intentionally concealed the foregoing from Plaintiffs and the other Class members; and/or

c)     Made incomplete representations that it manipulated the emissions system in the Polluting BMW Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the other Class members that contradicted these representations.

1038.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1039.   Defendant had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles were defective, employed a "Defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on Defendants' material representations that the Polluting BMW Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1039.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1040.   Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1040.   **Answer**: Paragraph 1040 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1040 of the FAC.

1041.   Plaintiff and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiff and the other Class members overpaid for their Polluting BMW Vehicles and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1041.   **Answer**: BMW AG incorporates by reference the answer set forth in Paragraph 1040 as if restated herein.

1042.   Defendants' violations present a continuing risk to Plaintiff as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

1042.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1040 as if restated herein.

1043.   Pursuant to TENN. CODE ANN. § 47-18-109(a), Plaintiff and the Tennessee Class seek monetary relief against Defendants measured as actual damages in an amount to be determined at trial, treble damages as a result of Defendants' willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

1043.   **Answer**:  BMW AG admits that Paragraph 1043 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 45

### FRAUDULENT CONCEALMENT
### (BASED ON TENNESSEE LAW)

1044.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1044.   **Answer**:  Paragraph 1044 does not require a substantive response.

1045.   This claim is brought by Plaintiff on behalf of Tennessee purchasers who are members of the Class.

1045.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1046.   Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless

disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1046. **Answer**: Paragraph 1046 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1046 of the FAC. BMW AG denies the allegations in Paragraph 1046 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1047. BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1047. **Answer**: Paragraph 1047 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1047 of the FAC. BMW AG denies the allegations in Paragraph 1047 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1048. Defendants knew these representations were false when made.

1048. **Answer**: BMW AG denies the allegations in Paragraph 1048 of the FAC.

1049. The Polluting BMW Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline- powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

1049. **Answer**: Paragraph 1049 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the

allegations in Paragraph 1049 of the FAC.  BMW AG denies the allegations in Paragraph 1049 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1050.   Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiff and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1050.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1051.   As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1051.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1052.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiff and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

1052.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1053.   Plaintiff and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

1053.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1054.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

1054.   **Answer**:  Paragraph 1054 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1054 of the FAC.

1055.   Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

1055.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1056.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they

388

directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiff and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiff and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

1056.  **Answer**:  Paragraph 1056 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1056 of the FAC.

1057.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiff and Class members.

1057.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1056 as if restated herein.

1058.   Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

1058.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1056 as if restated herein.

1059.   Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

1059.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1056 as if restated herein.

1060.   Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the

actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiff and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect. Had Plaintiff and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1060.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1056 as if restated herein.

1061.   Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

1061.   **Answer**:  Paragraph 1061 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1061 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1062.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1062.   **Answer**:  Paragraph 1062 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1062 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 46
## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT
### (TEX. BUS. & COM. CODE § 17.4 *ET SEQ.*)

1063.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1063.  **Answer**:  Paragraph 1063 does not require a substantive response.

1064.  Plaintiffs Salomon Campos, Brian Hembling, Lukas Wildner, and Dean Werner ("Plaintiffs" for the purposes of this section) bring this claim on behalf of Texas purchasers who are members of the Class.

1064.  **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1065.  Plaintiffs and the Texas Class members are individuals with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets).  See TEX. BUS. & COM. CODE § 17.41.

1065.  **Answer**:  Paragraph 1065 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1065 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

1066.  The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") provides a private right of action to a consumer where the consumer suffers economic damage as the result of either (i) the use of false, misleading, or deceptive act or practice specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b); or (ii) "an unconscionable action or course of action by any person."  TEX. BUS. & COM. CODE § 17.50(a)(2) & (3).  The Texas DTPA declares several specific actions to be unlawful, including:  "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have"; "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(9) advertising goods or services with intent not to sell them as advertised."  An "unconscionable action or course of action" means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."  TEX. BUS. & COM. CODE § 17.45(5).  As detailed herein, Defendants have engaged in an unconscionable action or course of action and thereby caused economic damages to the Texas Class.

1066.  **Answer**:  Paragraph 1066 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1066 of the FAC.  BMW AG denies the allegations in Paragraph 1066 of

the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1067.   In the course of business, Defendants willfully failed to disclose and actively concealed the conduct discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.  Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Polluting BMW Vehicles.

1067.   **Answer**:  Paragraph 1067 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1067 of the FAC.

1068.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other Texas Class members, about the true performance of the Polluting BMW Vehicles, the devaluing of the environmental impacts of its vehicles at BMW, and the true value of the Polluting BMW Vehicles.

1068.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1067 as if restated herein.

1069.   Defendants intentionally and knowingly misrepresented material facts regarding the Polluting BMW Vehicles with intent to mislead Plaintiffs and the Texas Class.

1069.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1067 as if restated herein.

1070.   Defendants knew or should have known that their conduct violated the Texas DTPA.

1070.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1067 as if restated herein.

1071.   Defendants owed Plaintiffs and Texas Class members a duty to disclose the true environmental impact, performance, fuel mileage, and reliability of the Polluting BMW Vehicles, because Defendants:

a)   Possessed exclusive knowledge that they were selling and distributing Polluting BMW Vehicles throughout the United States that did not perform as advertised;

b)   Intentionally concealed the foregoing from Plaintiffs and the Texas Class; and/or

c)   Made incomplete representations about the environmental friendliness, fuel mileage, towing capacity, and performance of the Polluting BMW Vehicles while purposefully withholding material facts from Plaintiffs and the Texas Class that contradicted these representations.

1071.  **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1072.  Defendants' omissions and/or misrepresentations about the emissions treatment system of the Polluting BMW Vehicles were material to Plaintiffs and the Texas Class.

1072.  **Answer**:  Paragraph 1072 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1072 of the FAC.

1073.  Plaintiffs and the Texas Class suffered ascertainable loss caused by Defendants' misrepresentations and their concealment of and failure to disclose material information.  Class members who purchased the Polluting BMW Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all but for Defendants' violations of the Texas DTPA.

1073.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1072 as if restated herein.

1074.  Defendants had an ongoing duty to all BMW customers to refrain from unfair and deceptive practices under the Texas DTPA.

1074.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1072 as if restated herein.

1075.  Defendants' violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

1075.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1072 as if restated herein.

1076.   As a direct and proximate result of Defendants' violations of the Texas DTPA, Plaintiffs and the Texas Class have suffered injury-in-fact and/or actual damage.

1076.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1072 as if restated herein.

1077.   Plaintiffs seek monetary relief against BMW measured as actual damages in an amount to be determined at trial, treble damages for BMW's knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

1077.   **Answer**:  BMW AG admits that Paragraph 1077 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1078.   On March 21, 2018, and May 4, 2018, Plaintiffs sent letters complying with Tex. Bus. & Com. Code Ann. § 17.505 to Defendants.  Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Texas Class are entitled.

1078.   **Answer**:  BMW AG admits that Plaintiffs' counsel sent letters purporting to comply with the Texas statute on the dates alleged.  BMW AG also admits that Paragraph 1078 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG otherwise denies the allegations of Paragraph 1078.

## COUNT 47

### FRAUDULENT CONCEALMENT
### (BASED ON TEXAS LAW)

1079.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1079.   **Answer**:  Paragraph 1079 does not require a substantive response.

1080.   This claim is brought by Plaintiffs on behalf of Texas purchasers who are members of the Class.

1080.  **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any of the relief requested.  BMW AG denies that this action may or should be

maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims

is appropriate, and further denies that any putative class or subclasses may or should be certified

in this action.

1081.  Defendants intentionally omitted material facts concerning the NOx reduction
system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions,
that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher
level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would
expect in light of BMW's advertising campaign and the premium paid for the car, emitted high
levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had
decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless
disregard for the truth and denied Plaintiffs and the other Class members information that is highly
relevant to their purchasing decision.

1081.  **Answer**:  Paragraph 1081 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1081 of the FAC.  BMW AG denies the allegations in Paragraph 1081 of

the FAC insofar as those allegations refer to laws, regulations, and/or published emissions

standards, and refers to the applicable original source materials for a complete and accurate

statement of their contents and context.

1082.  BMW, with Bosch's knowledge and complicity, further affirmatively
misrepresented to Plaintiffs in advertising and other forms of communication, including standard
and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had
no significant defects, were low emission vehicles, complied with EPA regulations, and would
perform and operate properly when driven in normal usage.

1082.  **Answer**:  Paragraph 1082 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1082 of the FAC.  BMW AG denies the allegations in Paragraph 1082 of

the FAC insofar as those allegations refer to laws, regulations, and/or published emissions

standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1083.   Defendants knew these representations were false when made.

1083.   **Answer**:  BMW AG denies the allegations in Paragraph 1083 of the FAC.

1084.   The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline- powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

1084.   **Answer**:  Paragraph 1084 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1084 of the FAC.  BMW AG denies the allegations in Paragraph 1084 of

the FAC insofar as those allegations refer to laws, regulations, and/or published emissions

standards, and refers to the applicable original source materials for a complete and accurate

statement of their contents and context.

1085.   Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1085.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1086.   As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1086.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1087.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

1087.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1088.   Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.  Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

1088.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1089.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

1089.   **Answer**:  Paragraph 1089 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1089 of the FAC.

1090.   Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

1090.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1091.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

1091.   **Answer**:  Paragraph 1091 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1091 of the FAC.

1092.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiffs and Class members.

1092.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1091 as if restated herein.

1093.   Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

1093.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

1091 as if restated herein.

1094.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

1094.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

1091 as if restated herein.

1095.   Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1095.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

1091 as if restated herein.

1096.   Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1096.   **Answer**:  Paragraph 1096 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1096 of the FAC.  BMW AG denies that Plaintiffs or any member of the

proposed class is entitled to any relief.

1097.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct

warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1097.   **Answer**:  Paragraph 1097 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1097 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 48

## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
### (VA. CODE ANN. § 59.1-196 *ET SEQ.*)

1098.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1098.   **Answer**:  Paragraph 1098 does not require a substantive response.

1099.   This claim is brought by Plaintiff Alfredo Arias ("Plaintiff" for the purposes of this section) on behalf of Virginia purchasers who are members of the Class.

1099.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1100.   The Virginia Consumer Protection Act (Virginia CPA) lists prohibited "practices," which include "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."  VA. CODE ANN. § 59.1-200.

1100.   **Answer**:  Paragraph 1100 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1100 of the FAC.  BMW AG denies the allegations in Paragraph 1100 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1101.   BMW USA, BMW AG, and Bosch are "suppliers" under Va. Code Ann. § 59.1-198.

1101.   **Answer**:  Paragraph 1101 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1101 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1101 of the FAC.

1102.   Each sale and lease of a Polluting Vehicle was a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

1102.   **Answer**:  Paragraph 1102 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1102 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1102 of the FAC.

1103.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1103.   **Answer**:  Paragraph 1103 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1103 of the FAC.

1104.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1104.  **Answer**:  Paragraph 1104 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1104 of the FAC.

1105.  Pursuant to VA. CODE ANN. § 59.1-204, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff.  Because Defendants' conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each plaintiff, the greater of (a) three times actual damages or (b) $1,000.

1105.  **Answer**:  BMW AG admits that Paragraph 1105 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1106.  Plaintiffs also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under VA. CODE ANN. § 59.1-204 *et seq*.

1106.  **Answer**:  BMW AG admits that Paragraph 1106 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 49

## FRAUDULENT CONCEALMENT
## (BASED ON VIRGINIA LAW)

1107.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1107.  **Answer**:  Paragraph 1107 does not require a substantive response.

1108.  This claim is brought by Plaintiffs on behalf of Virginia purchasers who are members of the Class.

1108.  **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims

is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1109. Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1109. **Answer**: Paragraph 1109 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1109 of the FAC. BMW AG denies the allegations in Paragraph 1109 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1110. BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1110. **Answer**: Paragraph 1110 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1110 of the FAC. BMW AG denies the allegations in Paragraph 1110 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1111. Defendants knew these representations were false when made.

1111. **Answer**: BMW AG denies the allegations in Paragraph 1111 of the FAC.

1112.   The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline- powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

1112.   **Answer**:  Paragraph 1112 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1112 of the FAC.  BMW AG denies the allegations in Paragraph 1112 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1113.   Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1113.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1114.   As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1114.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1115.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions

requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

1115.  **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1116.  Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.  Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

1116.  **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1117.  BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

1117.  **Answer**:  Paragraph 1117 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1117 of the FAC.

1118.  Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

1118.  **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1119.  Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive

knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

1119.  **Answer**:  Paragraph 1119 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1119 of the FAC.

1120.  Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiffs and Class members.

1120.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1119 as if restated herein.

1121.  Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

1121.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1119 as if restated herein.

1122.  Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

them.  Plaintiffs' and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

    1122.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

1119 as if restated herein.

    1123.  Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

    1123.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

1119 as if restated herein.

    1124.  Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

    1124.  **Answer**:  Paragraph 1124 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1124 of the FAC.  BMW AG denies that Plaintiffs or any member of the

proposed class is entitled to any relief.

    1125.  Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

    1125.  **Answer**:  Paragraph 1125 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1125 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 50

### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
### (WASH. REV. CODE ANN. § 19.86.010 *ET SEQ*.)

1126.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1126.   **Answer**:  Paragraph 1126 does not require a substantive response.

1127.   This claim is brought by Plaintiffs Kyle Kern and John Saviano ("Plaintiffs" for the purposes of this section) on behalf of Washington purchasers who are members of the Class.

1127.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1128.   The Washington Consumer Protection Act (Washington CPA) broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  WASH. REV. CODE. ANN. § 19.96.010.

1128.   **Answer**:  Paragraph 1128 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1128 of the FAC.  BMW AG denies the allegations in Paragraph 1128 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1129.   Defendants committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of WASH. REV. CODE. ANN. § 19.96.010.

1129.   **Answer**:  Paragraph 1129 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1129 of the FAC insofar as those allegations refer to a statute and refers

to the original source materials for a complete and accurate statement of their contents and context.

BMW AG denies all remaining allegations in Paragraph 1129 of the FAC.

1130.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1130.   **Answer**:  Paragraph 1130 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1130 of the FAC.

1131.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1131.   **Answer**:  Paragraph 1131 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1131 of the FAC.

1132.   Defendants are liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under WASH. REV. CODE. ANN. § 19.86.090.

1132.   **Answer**:  BMW AG admits that Paragraph 1132 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

**COUNT 51**

**FRAUDULENT CONCEALMENT**
**(BASED ON WASHINGTON LAW)**

1133.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

409

1133.   **Answer**:  Paragraph 1133 does not require a substantive response.

1134.   This claim is brought by Plaintiffs on behalf of Washington purchasers who are members of the Class.

1134.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1135.   Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1135.   **Answer**:  Paragraph 1135 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1135 of the FAC.  BMW AG denies the allegations in Paragraph 1135 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1136.   BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1136.   **Answer**:  Paragraph 1136 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1136 of the FAC. BMW AG denies the allegations in Paragraph 1136 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1137. Defendants knew these representations were false when made.

1137. **Answer**: BMW AG denies the allegations in Paragraph 1137 of the FAC.

1138. The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline- powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

1138. **Answer**: Paragraph 1138 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1138 of the FAC. BMW AG denies the allegations in Paragraph 1138 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1139. Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1139. **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1140. As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving

conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1140.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1141.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

1141.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1142.   Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

1142.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1143.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

1143.   **Answer**:  Paragraph 1143 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1143 of the FAC.

1144.   Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew,

their customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

    1144.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

    1145.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

    1145.   **Answer**:  Paragraph 1145 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1145 of the FAC.

    1146.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiffs and Class members.

    1146.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

1145 as if restated herein.

1147.   Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

1147.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

1145 as if restated herein.

1148.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

1148.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

1145 as if restated herein.

1149.   Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1149.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

1145 as if restated herein.

1150.   Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1150.   **Answer**:  Paragraph 1150 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1150 of the FAC.  BMW AG denies that Plaintiffs or any member of the

proposed class is entitled to any relief.

1151.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1151.   **Answer**:  Paragraph 1151 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1151 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 52

## VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT
(WIS. STAT. § 110.18)

1152.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1152.   **Answer**:  Paragraph 1152 does not require a substantive response.

1153.   This claim is brought by Plaintiffs Erica Olson and Eric Stenglein ("Plaintiffs" for the purposes of this section) on behalf of Wisconsin purchasers who are members of the Class.

1153.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1154.   The Wisconsin Deceptive Trade Practices Act (Wisconsin DTPA) prohibits a "representation or statement of fact which is untrue, deceptive or misleading."  WIS. STAT. § 100.18(1).

1154.   **Answer**:  Paragraph 1154 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1154 of the FAC.  BMW AG denies the allegations in Paragraph 1154 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions

standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1155.   BMW USA, BMW AG, and Bosch are each a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).

1155.   **Answer**:   Paragraph 1155 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1155 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1155 of the FAC.

1156.   Plaintiffs and Wisconsin Class members are members of "the public" within the meaning of WIS. STAT. § 100.18(1).   Plaintiffs purchased or leased one or more Polluting BMW Vehicles.

1156.   **Answer**:   Paragraph 1156 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1156 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1156 of the FAC.

1157.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.   Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1157.   **Answer**:   Paragraph 1157 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1157 of the FAC.

1158.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.   Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased

their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1158.  **Answer**:  Paragraph 1158 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1158 of the FAC.

1159.  Plaintiffs are entitled to damages and other relief provided for under WIS. STAT. § 100.18(11)(b)(2).  Because Defendants' conduct was committed knowingly and/or intentionally, Plaintiffs are entitled to treble damages.

1159.  **Answer**:  BMW AG admits that Paragraph 1159 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1160.  Plaintiffs also seek court costs and attorneys' fees under WIS. STAT. § 110.18(11)(b)(2).

1160.  **Answer**:  BMW AG admits that Paragraph 1160 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 53

## FRAUDULENT CONCEALMENT (BASED ON WISCONSIN LAW)

1161.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1161.  **Answer**:  Paragraph 1161 does not require a substantive response.

1162.  This claim is brought by Plaintiffs on behalf of Wisconsin purchasers who are members of the Class.

1162.  **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any of the relief requested.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims

is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1163.   Defendants intentionally omitted material facts concerning the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions, that the Polluting BMW Vehicles had defective emission controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of BMW's advertising campaign and the premium paid for the car, emitted high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, had decreased fuel economy as a result of the emissions scheme, or Defendants acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1163.   **Answer**:  Paragraph 1163 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1163 of the FAC.  BMW AG denies the allegations in Paragraph 1163 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1164.   BMW, with Bosch's knowledge and complicity, further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Polluting BMW Vehicles it was selling had no significant defects, were low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1164.   **Answer**:  Paragraph 1164 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1164 of the FAC.  BMW AG denies the allegations in Paragraph 1164 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1165.   Defendants knew these representations were false when made.

1165.   **Answer**:  BMW AG denies the allegations in Paragraph 1165 of the FAC.

418

1166.   The Polluting BMW Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline- powered vehicles and at a much higher rate than a reasonable consumer would expect in light of BMW's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions.

1166.   **Answer**:  Paragraph 1166 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1166 of the FAC.  BMW AG denies the allegations in Paragraph 1166 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1167.   Defendants had a duty to disclose that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that these Polluting BMW Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than similar gasoline-powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations or omissions of fact that the Class Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1167.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1168.   As alleged in this Complaint, at all relevant times, BMW, with Bosch's knowledge and complicity, has held out the Class Vehicles to be reduced emissions and EPA-compliant. BMW disclosed certain details about the BMW Clean Diesel engine, but nonetheless, BMW, with Bosch's knowledge and complicity, intentionally failed to disclose the important facts that the NOx reduction system in the Polluting BMW Vehicles turns off or is limited during normal driving conditions and that the Polluting BMW Vehicles had defective emission controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1168.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1169.   The truth about the defective emission controls and Defendants' manipulations of those controls, high emissions, the "Defeat Device," and non-compliance with EPA emissions

requirements was known only to Defendants; Plaintiffs and the Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

1169.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1170.   Plaintiffs and Class members reasonably relied upon Defendants' deception.  They had no way of knowing that BMW's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.  Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Polluting BMW Vehicle emissions.

1170.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1171.   BMW, with Bosch's knowledge and complicity, also concealed and suppressed material facts concerning what is evidently the true culture of BMW—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel vehicles from BMW because they feel they are clean diesel vehicles.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Polluting BMW Vehicles are doing.

1171.   **Answer**:  Paragraph 1171 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1171 of the FAC.

1172.   Defendants' false representations were material to consumers, because they concerned the quality of the Polluting BMW Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendants well knew, their customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel vehicles with reduced emissions with improved fuel economy, and they paid accordingly.

1172.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1173.   Defendants had a duty to disclose the emissions defect, defective design of the emission controls, and violations with respect to the Polluting BMW Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive

knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  BMW also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel vehicles and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, BMW had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Polluting BMW Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  BMW represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission vehicles.

1173.  **Answer**:  Paragraph 1173 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1173 of the FAC.

1174.  Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect profits and to avoid the perception that BMW vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost BMW money, and it did so at the expense of Plaintiffs and Class members.

1174.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1173 as if restated herein.

1175.  Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of the referenced vehicles.

1175.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1173 as if restated herein.

1176.  Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel vehicles manufactured by BMW, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

them.  Plaintiffs' and Class members' actions were justified.  Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

1176.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1173 as if restated herein.

1177.  Because of the concealment and/or suppression of the facts and Defendants' failure to timely disclose the defect or defective design of the BMW Clean Diesel engine system, the actual emissions qualities and quantities of BMW-branded vehicles, and the serious issues engendered by BMW's corporate policies, Plaintiffs and Class members have sustained damage because they paid a premium for a "clean diesel" vehicle which actually polluted at levels dramatically higher than a reasonable consumer would expect.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Polluting BMW Vehicles, and Defendants' disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1177.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1173 as if restated herein.

1178.  Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1178.  **Answer**:  Paragraph 1178 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1178 of the FAC.  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1179.  Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that BMW made to them in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1179.  **Answer**:  Paragraph 1179 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1179 of the FAC.  BMW AG denies that Plaintiffs or any member of the

proposed class is entitled to any relief.

**C.      Claims brought on behalf of the other state classes by the named Plaintiffs.**

### COUNT 54

### VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES
### AND CONSUMER PROTECTION ACT
### (ALASKA STAT. ANN. § 45.50.471 *ET SEQ.*)

1180.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding
paragraphs of this complaint.

1180.   **Answer**:  Paragraph 1180 does not require a substantive response.

1181.   This claim is included here for notice purposes only.  Once the statutory notice
period has expired, Plaintiffs will amend their complaint to bring this claim on behalf of Alaska
purchasers who are members of the Class.

1181.   **Answer**:  Paragraph 1181 does not require a substantive response.  To the extent a

response is required, BMW AG admits that Paragraph 1181 outlines the action Plaintiffs purport

to take, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1182.   The Alaska Unfair Trade Practices and Consumer Protection Act (Alaska CPA)
declared unfair methods of competition and unfair or deceptive acts or practices in the conduct of
trade or commerce unlawful, including "using or employing deception, fraud, false pretense, false
promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with
intent that others rely upon the concealment, suppression or omission in connection with the sale
or advertisement of goods or services whether or not a person has in fact been misled, deceived or
damaged." ALASKA STAT. ANN. § 45.50.471.

1182.   **Answer**:  Paragraph 1182 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1182 of the FAC.  BMW AG denies the allegations in Paragraph 1182 of

the FAC insofar as those allegations refer to laws, regulations, and/or published emissions

standards, and refers to the applicable original source materials for a complete and accurate

statement of their contents and context.

1183.   Pursuant to ALASKA STAT. ANN. § 45.50.531, Plaintiffs will amend their Complaint to seek monetary relief against Defendants measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each plaintiff.

1183.   **Answer**: BMW AG admits that Paragraph 1183 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1184.   Plaintiffs also will amend to seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices pursuant to ALASKA STAT. ANN. § 45.50.535(b)(1), attorneys' fees, and any other just and proper relief available under the Alaska CPA.

1184.   **Answer**: BMW AG admits that Paragraph 1184 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1185.   On March 21, 2018, and May 4, 2018, Plaintiffs sent letters complying with ALASKA STAT. ANN. § 45.50.535(b)(1) to Defendants.

1185.   **Answer**:   BMW AG admits that Plaintiffs' counsel sent letters purporting to comply with the Alaska statute on the dates alleged but otherwise denies the allegations of Paragraph 1185.

## COUNT 55

### VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT (ARK. CODE ANN. § 4-88-101 *ET SEQ.*)

1186.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1186.   **Answer**: Paragraph 1186 does not require a substantive response.

1187.   This claim is brought by Plaintiffs on behalf of Arkansas purchasers who are members of the class.

1187.   **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

424

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1188.   The Arkansas Deceptive Trade Practices Act (Arkansas DTPA) prohibits "[d]eceptive and unconscionable trade practices," which include but are not limited to "[e]ngaging in any . . . unconscionable false, or deceptive act or practice in business, commerce, or trade." ARK. CODE ANN. § 4-88-107(a)(10).  The Arkansas DTPA also prohibits, in connection with the sale or advertisement of any goods, "(1) the act, use, or employment by any person of any deception, fraud, or pretense; or (2) the concealment, suppression, or omission of any material fact with intent that other rely upon the concealment, suppression, or omission."  ARK. CODE ANN. § 4-88-108.  Defendants failed to disclose (1) that the X5 vehicles turn off or down emissions systems during common driving conditions resulting in massive amounts of NOx as compared to federal and state standards, (2) that absent the emissions manipulation these vehicles would not have passed emissions tests, (3) that fuel economy and towing capacity was achieved by turning down or off emissions systems; and (4) that emissions and fuel economy were far worse than a reasonable consumer would expect given the premium paid for these vehicles over a comparable gas-powered vehicle, and the estimated fuel and performance representation made about miles per gallon.

1188.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  BMW AG denies the allegations in Paragraph 1188 of the FAC.  BMW AG denies the allegations in Paragraph 1188 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1189.   BMW USA, BMW AG, Bosch, Plaintiffs, and Class members are "persons" within the meaning of ARK. CODE ANN. § 4-88-102(5).

1189.   **Answer**:  Paragraph 1189 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1189 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 1189 of the FAC.

1190.   Each Polluting BMW Vehicle at issue constitutes "goods" within the meaning of ARK. CODE ANN. § 4-88-102(4).

1190.  **Answer**:  Paragraph 1190 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1190 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1190 of the FAC.

1191.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1191.  **Answer**:  Paragraph 1191 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1191 of the FAC.

1192.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1192.  **Answer**:  Paragraph 1192 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1192 of the FAC.

1193.   Plaintiffs seek monetary relief against Defendants in an amount to be determined at trial.  Plaintiffs also seek punitive damages because Defendants acted wantonly in causing Plaintiffs' and Class members' injuries, or with such a conscious indifference to the consequences that malice may be inferred.

1193.  **Answer**:  BMW AG admits that Paragraph 1193 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1194.   Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

1194.   **Answer**:  BMW AG admits that Paragraph 13 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 56

## VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (CONN. GEN. STAT. § 42-110A *ET SEQ.*)

1195.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1195.   **Answer**:  Paragraph 1195 does not require a substantive response.

1196.   This claim is brought by Plaintiffs on behalf of Connecticut purchasers who are members of the Class.

1196.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1197.   The Connecticut Unfair Trade Practices Act (Connecticut UTPA) provides:  "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  CONN. GEN. STAT. § 42-110b(a).

1197.   **Answer**:  Paragraph 1197 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1197 of the FAC.  BMW AG denies the allegations in Paragraph 1197 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1198.   Plaintiffs, Connecticut Class members, BMW USA, BMW AG, and Bosch are each a "person" within the meaning of CONN. GEN. STAT. § 42-110a(3).

1198.   **Answer**:  Paragraph 1198 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1198 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1198 of the FAC.

1199.   Defendants' challenged conduct, as set forth above, occurred in the conduct of "trade" or "commerce" within the meaning of CONN. GEN. STAT. § 42-110a(4).  In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1199.   **Answer**:  Paragraph 1199 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1199 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1199 of the FAC.

1200.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1200.   **Answer**:  Paragraph 1200 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1200 of the FAC.

1201.   Plaintiffs and Connecticut Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to CONN. GEN. STAT. § 42-110g.

1201.  **Answer**: BMW AG admits that Paragraph 1201 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

1202.  Defendants acted with reckless indifference to another's rights, or wanton or
intentional violation of another's rights, and otherwise engaged in conduct amounting to a
particularly aggravated, deliberate disregard for the rights of others.  Therefore, punitive damages
are warranted.

1202.  **Answer**: BMW AG admits that Paragraph 1202 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

## COUNT 57

### VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
### (DEL. CODE TIT. 6, § 2513 *ET SEQ.*)

1203.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding
paragraphs of this complaint.

1203.  **Answer**: Paragraph 1203 does not require a substantive response.

1204.  This claim is brought by Plaintiffs on behalf of Delaware purchasers who are
members of the Class.

1204.  **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and

further denies that any putative class or subclasses may or should be certified in this action.

1205.  The Delaware Consumer Fraud Act (Delaware CFA) prohibits the "act, use, or
employment by any person of any deception, fraud, false pretense, false promise,
misrepresentation, or the concealment, suppression, or omission of any material fact with intent
that others rely upon such concealment, suppression, or omission, in connection with the sale, lease
or advertisement of any merchandise, whether or nor any person has in fact been misled, deceived,
or damaged thereby."  DEL. CODE TIT. 6, § 2513(a).

1205.  **Answer**:  Paragraph 1205 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1205 of the FAC.  BMW AG denies the allegations in Paragraph 1205 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1206.   BMW USA, BMW AG, and Bosch are "persons" within the meaning of DEL. CODE TIT. 6, § 2511(7).

1206.  **Answer**:  Paragraph 1206 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1206 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1206 of the FAC.

1207.   Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.  In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1207.  **Answer**:  Paragraph 1207 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1207 of the FAC.

1208.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1208.   **Answer**:  Paragraph 1208 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1208 of the FAC.

1209.   Plaintiffs seek damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendants' unlawful conduct.  *See, e.g.*, *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1980).  Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

1209.   **Answer**:  BMW AG admits that Paragraph 1209 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1210.   Defendant engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

1210.   **Answer**:  BMW AG admits that Paragraph 1210 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 58

### VIOLATION OF FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (FLA. STAT. § 501.201 *ET SEQ.*)

1211.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1211.   **Answer**:  Paragraph 1211 does not require a substantive response.

1212.   This claim is brought by Plaintiffs on behalf of Florida purchasers who are members of the Class.

1212.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1213.   Plaintiffs and other Class members are "consumers" within the meaning of Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA"), FLA. STAT. § 501.203(7).

1213.   **Answer**:   Paragraph 1213 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1213 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

1214.   Defendants engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

1214.   **Answer**:   Paragraph 1214 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1214 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1214 of the FAC.

1215.   Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1).  Defendant participated in unfair and deceptive trade practices that violated the Florida UDTPA as described herein.  In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1215.   **Answer**:   Paragraph 1215 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1215 of the FAC.  BMW AG denies the allegations in Paragraph 1215 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1216.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1216.   **Answer**:  Paragraph 1216 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1216 of the FAC.

1217.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Polluting BMW Vehicles and did not receive the benefit of their bargain.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1217.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1216 as if restated herein.

1218.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1218.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1216 as if restated herein.

1219.   Accordingly, Defendants are liable to Plaintiffs and other Class members for damages in an amount to be proven at trial.

1219.   **Answer**:  BMW AG admits that Paragraph 1219 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 59

### VIOLATION OF THE HAWAII ACT § 480-2(A)
### (HAW. REV. STAT. § 480 *ET SEQ.*)

1220.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1220.   **Answer**:  Paragraph 1220 does not require a substantive response.

1221.   This claim is brought by Plaintiffs on behalf of Hawaii purchasers who are members of the Class.

1221.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1222.   HAW. REV. STAT. § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

1222.   **Answer**:  Paragraph 1222 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1222 of the FAC.  BMW AG denies the allegations in Paragraph 1222 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1223.   BMW USA, BMW AG, and Bosch are "persons" under HAW. REV. STAT. § 480-1.

1223.   **Answer**:  Paragraph 1223 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1223 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1223 of the FAC.

1224.   Plaintiffs and Hawaii Class members are "consumer[s]" as defined by HAW. REV. STAT. § 480-1, who purchased or leased the Polluting BMW Vehicles at issue.

1224.   **Answer**:  Paragraph 1224 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1224 of the FAC insofar as those allegations refer to a statute and refers

to the original source materials for a complete and accurate statement of their contents and context.

BMW AG denies all remaining allegations in Paragraph 1224 of the FAC.

    1225.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

    1225.   **Answer**:  Paragraph 1225 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1225 of the FAC.

    1226.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

    1226.   **Answer**:  Paragraph 1226 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1226 of the FAC.

    1227.   Pursuant to HAW. REV. STAT. § 480-13, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

    1227.   **Answer**:  BMW AG admits that Paragraph 1227 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

    1228.   Under HAW. REV. STAT. § 480-13.5, Plaintiffs seek an additional award against Defendants of up to $10,000 for each violation directed at a Hawaii elder.  Defendants knew or should have known that their conduct was directed to one or more Plaintiffs who are elders. Defendants' conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder.  Plaintiffs who are elders are substantially more vulnerable to Defendants' conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or

disability, and each of them suffered a substantial physical, emotional, or economic damage resulting from Defendants' conduct.

1228.   **Answer**: BMW AG admits that Paragraph 1228 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

## COUNT 60

## VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT (IDAHO CODE ANN. § 48-601 *ET SEQ.*)

1229.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1229.   **Answer**: Paragraph 1229 does not require a substantive response.

1230.   This claim is brought by Plaintiffs on behalf of Idaho purchasers who are members of the Class.

1230.   **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and

further denies that any putative class or subclasses may or should be certified in this action.

1231.   The Idaho Consumer Protection Act (Idaho CPA) prohibits deceptive business practices, including but not limited to (1) representing that the Polluting BMW Vehicles have characteristics, uses, and benefits which they do not have; (2) representing that the Polluting BMW Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Polluting BMW Vehicles with the intent not to sell them as advertised; (4) engaging in acts or practices which are otherwise misleading, false, or deceptive to the consumer; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce.  *See* IDAHO CODE ANN. § 48-603.

1231.   **Answer**: Paragraph 1231 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1231 of the FAC.  BMW AG denies the allegations in Paragraph 1231 of

the FAC insofar as those allegations refer to laws, regulations, and/or published emissions

standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1232.   BMW USA, BMW AG, and Bosch are "persons" under Idaho Code Ann. § 48-602(1).

1232.   **Answer**:  Paragraph 1232 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1232 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1232 of the FAC.

1233.   Defendants' acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code Ann. § 48-602(2).

1233.   **Answer**:  Paragraph 1233 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1233 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1233 of the FAC.

1234.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1234.   **Answer**:  Paragraph 1234 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1234 of the FAC.

1235.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1235.  **Answer**:  Paragraph 1235 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1235 of the FAC.

1236.  Pursuant to IDAHO CODE ANN. § 48-608, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each plaintiff.

1236.  **Answer**:  BMW AG admits that Paragraph 1236 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1237.  Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

1237.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1236 as if restated herein.

1238.  Plaintiffs also seek punitive damages against Defendants because Defendants' conduct evidences an extreme deviation from reasonable standards.  Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

1238.  **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1236 as if restated herein.

## COUNT 61

### VIOLATION OF THE IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE § 714H.1 *ET SEQ.*)

1239.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1239.  **Answer**:  Paragraph 1239 does not require a substantive response.

1240.  This claim is brought by Plaintiffs on behalf of Iowa purchasers who are members of the Class.

1240. **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief. BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1241. The Iowa Private Right of Action for Consumer Frauds Act (Iowa CFA) prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission in connection with the advertisement, sale, or lease of consumer merchandise." IOWA CODE § 714H.3.

1241. **Answer**: Paragraph 1241 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1241 of the FAC. BMW AG denies the allegations in Paragraph 1241 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1242. BMW USA, BMW AG, and Bosch are "persons" under IOWA CODE § 714H.2(7).

1242. **Answer**: Paragraph 1242 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1242 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1242 of the FAC.

1243. Plaintiffs and Iowa Class members are "consumers" as defined by IOWA CODE § 714H.2(3) who purchased or leased one or more Polluting BMW Vehicles.

1243. **Answer**: Paragraph 1243 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the

allegations in Paragraph 1243 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

1244.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1244.   **Answer**:  Paragraph 1244 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1244 of the FAC.

1245.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1245.   **Answer**:  Paragraph 1245 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1245 of the FAC.

1246.   Pursuant to IOWA CODE § 714H.5, Plaintiffs seek an order enjoining BMW's unfair and/or deceptive acts or practices, actual damages, statutory damages up to three times the amount of actual damages awarded as a result of BMW's willful and wanton disregard for the rights of others, attorneys' fees, and other such equitable relief as the court deems necessary to protect the public from further violations of the Iowa CFA.

1246.   **Answer**:  BMW AG admits that Paragraph 1246 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 62

## VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT
### (KAN. STAT. ANN. § 50-623 *ET SEQ.*)

1247.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1247.   **Answer**:  Paragraph 1247 does not require a substantive response.

1248.   This claim is brought by Plaintiffs on behalf of Kansas purchasers who are members of the Class.

1248.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1249.   The Kansas Consumer Protection Act (Kansas CPA) states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction."  KAN. STAT. ANN. § 50-626(a).  Deceptive acts or practices include but are not limited to "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact" and "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact."  KAN. STAT. ANN. § 50-626.

1249.   **Answer**:  Paragraph 1249 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1249 of the FAC.  BMW AG denies the allegations in Paragraph 1249 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1250.   Plaintiffs and Kansas Class members are "consumers" within the meaning of KAN. STAT. ANN. § 50-624(b) who purchased or leased one or more Polluting BMW Vehicles.

1250.   **Answer**:  Paragraph 1250 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1250 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

1251.   Each sale or lease of a Polluting Vehicle to Plaintiffs was a "consumer transaction" within the meaning of KAN. STAT. ANN. § 50-624(c).

1251.  **Answer**:  Paragraph 1251 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1251 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

1252.  In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1252.  **Answer**:  Paragraph 1252 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1252 of the FAC.

1253.  The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1253.  **Answer**:  Paragraph 1253 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1253 of the FAC.

1254.  Pursuant to Kan. Stat. Ann. § 50-634, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each plaintiff.

1254.  **Answer**:  BMW AG admits that Paragraph 1254 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1255.  Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under KAN Kan. Stat. Ann. § 50-623 *et seq*.

1255.  **Answer**:  BMW AG admits that Paragraph 1255 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 63

### VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT
### (ME. REV. STAT. ANN. TIT. 5, § 205-A *ET SEQ.*)

1256.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1256.  **Answer**:  Paragraph 1256 does not require a substantive response.

1257.  This claim is brought by Plaintiffs on behalf of Maine purchasers who are members of the Class.

1257.  **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1258.  The Maine Unfair Trade Practices Act (Maine UTPA) makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  ME. REV. STAT. ANN. TIT. 5, § 207.

1258.  **Answer**:  Paragraph 1258 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1258 of the FAC.  BMW AG denies the allegations in Paragraph 1258 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1259.  BMW USA, BMW AG, Bosch, Plaintiffs, and Maine Class members are "persons" within the meaning of ME. REV. STAT. TIT. § 5, 206(2).

1259.  **Answer**:  Paragraph 1259 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1259 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1259 of the FAC.

1260.  Defendants are engaged in "trade" or "commerce" within the meaning of ME. REV. STAT. ANN. TIT. § 5, 206(3).

1260.  **Answer**:  Paragraph 1260 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1260 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1260 of the FAC.

1261.  Pursuant to ME. REV. STAT. ANN. TIT. 5, § 213, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relied available under the Maine UTPA.

1261.  **Answer**:  BMW AG admits that Paragraph 1261 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1262.  On March 21, 2018, and May 4, 2018, Plaintiffs sent letters complying with ME. REV. STAT. ANN. TIT. 5, § 213(1-A) to Defendants.  Because Defendants failed to remedy their unlawful conduct within the requisite time period, the Maine Class members seek all damages and relief to which they are entitled.

1262.  **Answer**:  BMW AG admits that Plaintiffs' counsel sent letters purporting to comply with the Maine statute on the dates alleged.  BMW AG also admits that Paragraph 1262 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG otherwise denies the allegations of Paragraph 1262.

## COUNT 64

## VIOLATION OF THE MASSACHUSETTS GENERAL LAW CHAPTER 93(A)
## (MASS. GEN. LAWS CH. 93A, § 1 *ET SEQ.*)

1263.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1263.   **Answer**:  Paragraph 1263 does not require a substantive response.

1264.   Defendants and the Massachusetts Class members are "persons" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(a).

1264.   **Answer**:  Paragraph 1264 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1264 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1264 of the FAC.

1265.   Defendants are engaged in "trade" or "commerce" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(b).

1265.   **Answer**:  Paragraph 1265 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1265 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1265 of the FAC.

1266.   The Massachusetts consumer protection law ("Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS ch. 93A, § 2.

1266.   **Answer**:  Paragraph 1266 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1266 of the FAC.  BMW AG denies the allegations in Paragraph 1266 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions

standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1267.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1267.   **Answer**:  Paragraph 1267 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1267 of the FAC.

1268.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1268.   **Answer**:  Paragraph 1268 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1268 of the FAC.

1269.   Plaintiff and the Massachusetts State Class seek an order pursuant to MASS. GEN. LAWS ch. 93A, § 9 enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Massachusetts Act.

1269.   **Answer**:  BMW AG admits that Paragraph 1269 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1270.   On March 21, 2018, and May 4, 2018, Plaintiffs sent letters complying with MASS. GEN. LAWS CH. 93A, § 9(3) to Defendants.  Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Massachusetts Class are entitled.

1270.   **Answer**:  BMW AG admits that Plaintiffs' counsel sent letters purporting to comply with the Massachusetts statute on the dates alleged.  BMW AG also admits that Paragraph

1270 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member

of the proposed class is entitled to any relief.  BMW AG otherwise denies the allegations of

Paragraph 1270.

**COUNT 65**

**VIOLATION OF THE MICHIGAN
CONSUMER PROTECTION ACT
(MICH. COMP. LAWS § 445.903 *ET SEQ.*)**

1271.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding
paragraphs of this complaint.

1271.   **Answer**:  Paragraph 1271 does not require a substantive response.

1272.   This claim is brought by Plaintiffs on behalf of Michigan purchasers who are
members of the Class.

1272.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and

further denies that any putative class or subclasses may or should be certified in this action.

1273.   The Michigan Consumer Protection Act (Michigan CPA) prohibits "[u]nfair,
unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce,"
including "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the
consumer, and which fact could not reasonably be known by the consumer"; "[m]aking a
representation of fact or statement of fact material to the transaction such that a person reasonably
believes the represented or suggested state of affairs to be other than it actually is"; or "[f]ailing to
reveal facts that are material to the transaction in light of representations of fact made in a positive
manner." MICH. COMP. LAWS § 445.903(1).  Defendants failed to disclose (1) that the X5 vehicles
turn off or down emissions systems during common driving conditions resulting in massive
amounts of NOx as compared to federal and state standards, (2) that absent the emissions
manipulation these vehicles would not have passed emissions tests, (3) that fuel economy and
towing capacity was achieved by turning down or off emissions systems; and (4) that emissions
and fuel economy were far worse than a reasonable consumer would expect given the premium
paid for these vehicles over a comparable gas-powered vehicle, and the estimated fuel and
performance representation made about miles per gallon.

1273.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.  BMW AG avers that the Michigan Consumer Protection Act does

not apply to motor vehicle sales, which are transactions "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of [Michigan] or the United States." Mich. Comp. Laws § 445.904(1)(a). BMW AG denies the allegations in Paragraph 1273 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1273 of the FAC.

1274.   Plaintiffs and Michigan Class members are "person[s]" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d).

1274.   **Answer**:   Paragraph 1274 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1274 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

1275.   BMW USA, BMW AG, and Bosch are "person[s]" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and (g).

1275.   **Answer**:   Paragraph 1275 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1275 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1275 of the FAC.

1276.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles. Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1276.   **Answer**:   Paragraph 1276 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1276 of the FAC.

1277.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1277.   **Answer**:   Paragraph 1277 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1277 of the FAC.

1278.   Plaintiffs seek injunctive relief to enjoin Defendants from continuing their unfair and deceptive acts; monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each plaintiff; reasonable attorneys' fees; and any other just and proper relief available under MICH. COMP. LAWS § 445.911.

1278.   **Answer**:   BMW AG admits that Paragraph 1278 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1279.   Plaintiffs also seek punitive damages because Defendants carried out despicable conduct with willful and conscious disregard of the rights of others.   Defendants' conduct constitutes malice, oppression, and fraud warranting punitive damages.

1279.   **Answer**:   BMW AG admits that Paragraph 1279 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 66

## VIOLATION OF THE MISSOURI
## MERCHANDISING PRACTICES ACT
## (MO. REV. STAT. § 407.010, *ET SEQ*.)

1280.  Plaintiff (for purposes of all Missouri Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

1280.  **Answer**:  Paragraph 1280 does not require a substantive response.

1281.  This claim is brought by Plaintiffs on behalf of Missouri purchasers who are members of the Class.

1281.  **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1282.  Defendants, Plaintiffs and the Missouri Class are "persons" within the meaning of MO. REV. STAT. § 407.010(5).

1282.  **Answer**:  Paragraph 1282 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1282 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

1283.  Defendants engaged in "trade" or "commerce" in the State of Missouri within the meaning of MO. REV. STAT. § 407.010(7).

1283.  **Answer**:  Paragraph 1283 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1283 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1283 of the FAC.

1284.   The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." MO. REV. STAT. § 407.020. In the course of Defendants' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendants' advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Defendants used or employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce, in violation of the Missouri MPA. Defendants' conduct offends public policy; is unethical, oppressive, or unscrupulous; and presents a risk of, or causes, substantial injury to consumers.

1284.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein. BMW AG denies the allegations in Paragraph 1284 of the FAC. BMW AG denies the allegations in Paragraph 1284 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1285.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1285.   **Answer**: BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1286.   Plaintiffs and the other Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and the other Class members did not, and could not, unravel Defendants' deception on their own.

1286.   **Answer**: Paragraph 1286 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1286 of the FAC.

1287.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1287.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1286 as if restated herein.

1288.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1288.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1286 as if restated herein.

1289.   Defendants intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

1289.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1286 as if restated herein.

1290.   Defendants knew or should have known that their conduct violated the Missouri MPA.

1290.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1286 as if restated herein.

1291.   Defendants owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because Defendants:

    a)    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b)    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c)    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1291.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.

1292.   Defendants had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were

defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on Defendants' material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1292.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs

5 and 16 as if restated herein.

1293.   Defendants' conduct proximately caused injuries to Plaintiff sand the other Class members.

1293.   **Answer**:  Paragraph 1293 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1293 of the FAC.

1294.   Plaintiff sand the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1294.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph

1293 as if restated herein.

1295.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

1295.   **Answer**:   Same BMW AG incorporates by reference the answer set forth in

Paragraph 1293 as if restated herein.

1296.   Defendants are liable to Plaintiffs and the Missouri Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, and any other just and proper relief under MO. REV. STAT. § 407.025.

1296.   **Answer**:  BMW AG admits that Paragraph 1296 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

**COUNT 67**

**VIOLATION OF THE NEBRASKA
CONSUMER PROTECTION ACT
(NEB. REV. STAT. § 59-1601 *ET SEQ.*)**

1297.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1297.   **Answer**:  Paragraph 1297 does not require a substantive response.

1298.   This claim is brought by Plaintiffs on behalf of Nebraska purchasers who are members of the Class.

1298.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1299.   The Nebraska Consumer Protection Act (Nebraska CPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  NEB. REV. STAT. § 59-1602.

1299.   **Answer**:  Paragraph 1299 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1299 of the FAC.  BMW AG denies the allegations in Paragraph 1299 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1300.   BMW USA, BMW AG, Bosch, Plaintiffs, and Nebraska Class members are "person[s]" under NEB. REV. STAT. § 59-1601(1).

1300.   **Answer**:  Paragraph 1300 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1300 of the FAC insofar as those allegations refer to a statute and refers

to the original source materials for a complete and accurate statement of their contents and context.

BMW AG denies all remaining allegations in Paragraph 1300 of the FAC.

1301.   Defendants actions as set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT. § 59-1601(2).

1301.   **Answer**:  Paragraph 1301 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1301 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

BMW AG denies all remaining allegations in Paragraph 1301 of the FAC.

1302.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1302.   **Answer**:  Paragraph 1302 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1302 of the FAC.

1303.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1303.   **Answer**:  Paragraph 1303 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1303 of the FAC.

1304.  Because Defendants' conduct caused injury to Plaintiffs' property through violations of the Nebraska CPA, Plaintiffs seek recovery of actual damages as well as enhanced damages up to $1,000, an order enjoining Defendants' unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under NEB. REV. STAT. § 59-1609.

1304.   **Answer**:  BMW AG admits that Paragraph 1304 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

## COUNT 68

### VIOLATION OF THE NEVADA DECEPTIVE
### TRADE PRACTICES ACT
### (NEV. REV. STAT. § 598.0903 *ET SEQ.*)

1305.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding
paragraphs of this complaint.

1305.   **Answer**:  Paragraph 1305 does not require a substantive response.

1306.   This claim is brought by Plaintiffs on behalf of Nevada purchasers who are
members of the Class.

1306.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and

further denies that any putative class or subclasses may or should be certified in this action.

1307.   The Nevada Deceptive Trade Practices Act (Nevada DTPA) prohibits deceptive
trade practices.  NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade
practice" if, in the course of business or occupation, the person "[k]nowingly makes a false
representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods
or services for sale or lease or a false representation as to the sponsorship, approval, status,
affiliation or connection of a person therewith"; "[r]epresents that goods or services for sale or
lease are of a particular standard, quality or grade, or that such goods are of a particular style or
model, if he or she knows or should know that they are of another standard, quality, grade, style
or model"; "[a]dvertises goods or services with intent not to sell or lease them as advertised"; or
"[k]nowingly makes any other false representation in a transaction."  NEV. REV. STAT.
§§ 598.0915–598.0925.  Defendants failed to disclose that the Polluting BMW Vehicles (1) turn
off or down emissions systems during common driving conditions resulting in massive amounts
of NOx as compared to federal and state standards, (2) that absent the emissions manipulation
these vehicles would not have passed emissions tests, (3) that fuel economy and towing capacity
was achieved by turning down or off emissions systems; and (4) that emissions and fuel economy
were far worse than a reasonable consumer would expect given the premium paid for these vehicles
over a comparable gas-powered vehicle, and the estimated fuel and performance representation
made about miles per gallon.

1307.   **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  BMW AG denies the allegations in Paragraph 1307 of the FAC. BMW AG denies the allegations in Paragraph 1307 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1308.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1308.   **Answer**:  Paragraph 1308 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1308 of the FAC.

1309.   Accordingly, Plaintiffs seek their actual damages, punitive damages, an order enjoining Defendants' deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada DTPA. NEV. REV. STAT. § 41.600.

1309.   **Answer**:  BMW AG admits that Paragraph 1309 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 69

## VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
### (N.H. REV. STAT. ANN. § 358-A:1 *ET SEQ.*)

1310.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1310.   **Answer**:  Paragraph 1310 does not require a substantive response.

1311.   This claim is brought by Plaintiffs on behalf of New Hampshire purchasers who are members of the Class.

1311.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1312.   The New Hampshire Consumer Protection Act (New Hampshire CPA) prohibits a person, in the conduct of any trade or commerce, from "using any unfair or deceptive act or practice," including "but . . . not limited to, the following: . . . [r]epresenting that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade, . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised."  N.H. REV. STAT. ANN. § 358-A:2.

1312.   **Answer**:  Paragraph 1312 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1312 of the FAC.  BMW AG denies the allegations in Paragraph 1312 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1313.   BMW USA, BMW AG, Bosch, Plaintiffs, and New Hampshire Class members are "persons" under N.H. REV. STAT. ANN. § 358-A:1.

1313.   **Answer**:  Paragraph 1313 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1313 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.  BMW AG denies all remaining allegations in Paragraph 1313 of the FAC.

1314.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. REV. STAT. ANN. § 358-A:1.  In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1314.   **Answer**:   Paragraph 1314 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1314 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1314 of the FAC.

1315.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.   Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1315.   **Answer**:   Paragraph 1315 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1315 of the FAC.

1316.   Because Defendants' willful conduct caused injury to Plaintiffs' property through violations of the New Hampshire CPA, Plaintiffs seek recovery of actual damages or $1,000, whichever is greater; treble damages; costs and reasonable attorneys' fees; an order enjoining Defendants' unfair and/or deceptive acts and practices; and any other just and proper relief under N.H. REV. STAT. ANN. § 358-A:10.

1316.   **Answer**:   BMW AG admits that Paragraph 1316 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 70

## VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
## (N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)

1317.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1317.   **Answer**:   Paragraph 1317 does not require a substantive response.

1318.   This claim is brought by Plaintiffs on behalf of New Mexico purchasers who are members of the Class.

1318.  **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1319.   The New Mexico Unfair Trade Practices Act (New Mexico UTPA) makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. STAT. ANN. § 57-12-2(D).  Defendants failed to disclose that the Polluting BMW Vehicles (1) turn off or down emissions systems during common driving conditions resulting in massive amounts of NOx as compared to federal and state standards, (2) that absent the emissions manipulation these vehicles would not have passed emissions tests, (3) that fuel economy and towing capacity was achieved by turning down or off emissions systems; and (4) that emissions and fuel economy were far worse than a reasonable consumer would expect given the premium paid for these vehicles over a comparable gas-powered vehicle, and the estimated fuel and performance representation made about miles per gallon.

1319.  **Answer**:  BMW AG incorporates by reference the answers set forth in Paragraphs 5 and 16 as if restated herein.  BMW AG denies the allegations in Paragraph 1319 of the FAC. BMW AG denies the allegations in Paragraph 1319 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1320.   BMW USA, BMW AG, Bosch, Plaintiffs, and New Mexico Class members are "person[s]" under N.M. STAT. ANN. § 57-12-2.

1320.  **Answer**:  Paragraph 1320 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1320 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1320 of the FAC.

1321.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2.

1321.   **Answer**:   Paragraph 1321 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1321 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1321 of the FAC.

1322.   Plaintiffs also seek an order enjoining Defendants' unfair and/or deceptive acts or practices.

1322.   **Answer**:   BMW AG admits that Paragraph 1322 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1323.   Because Defendants' unconscionable, willful conduct caused actual harm to Plaintiffs, Plaintiffs seek recovery of actual damages or $100, whichever is greater; discretionary treble damages; punitive damages; and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. STAT. ANN. § 57-12-10.

1323.   **Answer**:   BMW AG admits that Paragraph 1323 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 71

### VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. CENT. CODE § 51-15-02)

1324.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1324.   **Answer**:   Paragraph 1324 does not require a substantive response.

1325.   This claim is brought by Plaintiffs on behalf of North Dakota purchasers who are members of the Class.

1325.   **Answer**:   BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.   BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1326.   The North Dakota Consumer Fraud Act (North Dakota CFA) makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise."  N.D. CENT. CODE § 51-15-02.

1326.   **Answer**:  Paragraph 1326 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1326 of the FAC.  BMW AG denies the allegations in Paragraph 1326 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1327.   BMW USA, BMW AG, Bosch, Plaintiffs, and North Dakota Class members are "persons" within the meaning of N.D. CENT. CODE § 51-15-02(4).

1327.   **Answer**:  Paragraph 1327 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1327 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1327 of the FAC.

1328.   BMW USA, BMW AG, and Bosch engaged in the "sale" of "merchandise" within the meaning of N.D. CENT. CODE § 51-15-02(3), (5).

1328.   **Answer**:  Paragraph 1328 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1328 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1328 of the FAC.

1329.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1329.   **Answer**:  Paragraph 1329 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1329 of the FAC.

1330.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1330.   **Answer**:  Paragraph 1330 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1330 of the FAC.

1331.   Defendants knowingly committed the conduct described above and therefore, under N.D. CENT. CODE § 51-15-09, Defendants are liable to Plaintiffs for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements.  Plaintiffs further seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

1331.   **Answer**:  BMW AG admits that Paragraph 1331 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 72

## VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT
(OKLA. STAT. TIT. 15, § 751 *ET SEQ.*)

1332.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1332.   **Answer**:  Paragraph 1332 does not require a substantive response.

1333.   This claim is brought by Plaintiffs on behalf of Oklahoma purchasers who are members of the Class.

1333.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1334.   The Oklahoma Consumer Protection Act (Oklahoma CPA) declares unlawful, *inter alia*, the following acts or practices when committed in the course of business:  making a "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person" and "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  OKLA. STAT. TIT. 15, §§ 752–753.

1334.   **Answer**:  Paragraph 1334 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1334 of the FAC.  BMW AG denies the allegations in Paragraph 1334 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1335.   Plaintiffs and Oklahoma Class members are "persons" under OKLA. STAT. TIT. 15, § 752.

1335.   **Answer**:  Paragraph 1335 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1335 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

1336.   BMW USA, BMW AG, and Bosch are a "person," "corporation," or "association" within the meaning of OKLA. STAT. TIT. 15, § 15-751(1).

1336.   **Answer**:  Paragraph 1336 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1336 of the FAC insofar as those allegations refer to a statute and refers

to the original source materials for a complete and accurate statement of their contents and context.

BMW AG denies all remaining allegations in Paragraph 1336 of the FAC.

1337.   The sale or lease of a Polluting Vehicle to Plaintiffs was a "consumer transaction" within the meaning of OKLA. STAT. TIT. 15, § 752 and Defendants' actions as set forth herein occurred in the conduct of trade or commerce.

1337.   **Answer**:  Paragraph 1337 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1337 of the FAC insofar as those allegations refer to a statute and refers

to the original source materials for a complete and accurate statement of their contents and context.

BMW AG denies all remaining allegations in Paragraph 1337 of the FAC.

1338.   Defendants' acts were made knowingly, intentionally, and with malice.  Defendants demonstrated a complete lack of care and were in reckless disregard for the rights of Plaintiffs and the other Class members.  Plaintiffs and the other Class members are therefore entitled to an award of punitive damages to the extent permitted under applicable law.

1338.   **Answer**:  BMW AG admits that Paragraph 1338 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

1339.   Defendants' conduct as alleged herein was unconscionable because (1) Defendants, knowingly or having reason to know, took advantage of consumers reasonably unable to protect their interests because of their ignorance of Defendants' fraudulent omissions and representations; (2) at the time the consumer transaction was entered into, BMW knew or had reason to know that price the consumers were charged grossly exceeded the price at which they would have paid if they had known of the Defendants' scheme; and (3) BMW knew or had reason to know that the transaction it induced the consumers to enter into was excessively one-sided in favor of BMW.

1339.   **Answer**:  Paragraph 1339 of the FAC states legal conclusions and argument to

which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1339 of the FAC.

1340.   Because Defendants' unconscionable conduct caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages, discretionary penalties up to $2,000 per violation, and reasonable

attorneys' fees, under OKLA. STAT. TIT. 15, § 761.1.  Plaintiffs further seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and any other just and proper relief available under the Oklahoma CPA.

1340.  **Answer**:  BMW AG admits that Paragraph 1340 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 73

### VIOLATION OF THE RHODE ISLAND
### UNFAIR TRADE PRACTICES
### AND CONSUMER PROTECTION ACT
### (R.I. GEN. LAWS § 6-13.1 *ET SEQ.*)

1341.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1341.  **Answer**:  Paragraph 1341 does not require a substantive response.

1342.  This claim is brought by Plaintiffs on behalf of Rhode Island purchasers who are members of the Class.

1342.  **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1343.  Rhode Island's Unfair Trade Practices and Consumer Protection Act (Rhode Island CPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," including "[e]ngaging in any act or practice that is unfair or deceptive to the consumer" and "[u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect."  R.I. GEN. LAWS § 6-13.1-1(6).

1343.  **Answer**:  Paragraph 1343 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1343 of the FAC.  BMW AG denies the allegations in Paragraph 1343 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions

standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1344.   BMW USA, BMW AG, Bosch, Plaintiffs, and Rhode Island Class members are "persons" within the meaning of R.I. GEN. LAWS § 6-13.1-1(3).

1344.   **Answer**:  Paragraph 1344 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1344 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1344 of the FAC.

1345.   BMW USA, BMW AG, and Bosch were engaged in "trade" and "commerce" within the meaning of R.I. GEN. LAWS § 6-13.1-1(5).

1345.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1344 as if restated herein.

1346.   Plaintiffs purchased or leased Polluting BMW Vehicles primarily for personal, family, or household purposes within the meaning of R.I. GEN. LAWS § 6-13.1-5.2(a).

1346.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1344 as if restated herein.

1347.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1347.   **Answer**:  Paragraph 1347 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1347 of the FAC.

1348.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased

their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1348.  **Answer**:  Paragraph 1348 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1348 of the FAC.

1349.  Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages.  Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to R.I. GEN. LAWS § 6-13.1-5.2(a).  Plaintiffs also seek punitive damages at the discretion of the Court.

1349.  **Answer**:  BMW AG admits that Paragraph 1349 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 74
## VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
### (S.C. CODE ANN. § 39-5-10 *ET SEQ.*)

1350.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1350.  **Answer**:  Paragraph 1350 does not require a substantive response.

1351.  This claim is brought by Plaintiffs on behalf of South Carolina purchasers who are members of the Class.

1351.  **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1352.  The South Carolina Unfair Trade Practices Act (South Carolina UTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. CODE ANN. § 39-5-20(a).

1352.  **Answer**:  Paragraph 1352 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the

allegations in Paragraph 1352 of the FAC.  BMW AG denies the allegations in Paragraph 1352 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1353.   BMW USA, BMW AG, and Bosch are "persons" under S.C. CODE ANN. § 39-5-10.

1353.   **Answer**:  Paragraph 1353 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1353 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1353 of the FAC.

1354.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1354.   **Answer**:  Paragraph 1354 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1354 of the FAC.

1355.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1355.   **Answer**:  Paragraph 1355 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1355 of the FAC.

1356.   Plaintiffs further allege that Defendants' malicious and deliberate conduct warrants an assessment of punitive damages because it carried out despicable conduct with willful and

conscious disregard of the rights of others.  Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

1356.   **Answer**: BMW AG admits that Paragraph 1356 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

1357.   Pursuant to S.C. CODE ANN. § 39-5-140(a), Plaintiffs seek monetary relief to recover their economic losses.  Because Defendants' actions were willful and knowing, Plaintiffs' damages should be trebled.  Plaintiffs further seek an order enjoining Defendants' unfair or deceptive acts or practices.

1357.   **Answer**: BMW AG admits that Paragraph 1357 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

### COUNT 75

### VIOLATION OF THE SOUTH DAKOTA DECEPTIVE
### TRADE PRACTICES
### AND CONSUMER PROTECTION LAW
### (S.D. CODIFIED LAWS § 37-24-6)

1358.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1358.   **Answer**: Paragraph 1358 does not require a substantive response.

1359.   This claim is brought by Plaintiffs on behalf of South Dakota purchasers who are members of the Class.

1359.   **Answer**: BMW AG denies that Plaintiffs or any member of the proposed class is

entitled to any relief.  BMW AG denies that this action may or should be maintained or properly

prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and

further denies that any putative class or subclasses may or should be certified in this action.

1360.   The South Dakota Deceptive Trade Practices and Consumer Protection Law (South Dakota CPL) prohibits deceptive acts or practices, which include "[k]nowingly act[ing], us[ing], or employ[ing] any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or

advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." S.D. CODIFIED LAWS §§ 37-24-6(1), 37-24-31.

1360. **Answer**: Paragraph 1360 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1360 of the FAC. BMW AG denies the allegations in Paragraph 1360 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1361. In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles. Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1361. **Answer**: Paragraph 1361 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1361 of the FAC.

1362. The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price. Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1362. **Answer**: Paragraph 1362 of the FAC states legal conclusions and argument to which BMW AG need not respond. To the extent a response is required, BMW AG denies the allegations in Paragraph 1362 of the FAC.

1363. Pursuant to S.D. CODIFIED LAWS § 37-24-31, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the South Dakota CPA.

1363.   **Answer**:  BMW AG admits that Paragraph 1363 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 76

## VIOLATION OF THE UTAH CONSUMER SALE PRACTICES ACT
## (UTAH CODE ANN. § 13-11-1 *ET SEQ.*)

1364.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1364.   **Answer**:  Paragraph 1364 does not require a substantive response.

1365.   This claim is brought by Plaintiffs on behalf of Utah purchasers who are members of the Class.

1365.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1366.   The Utah Consumer Sales Practices Act (Utah CSPA) makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction," including but not limited to indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; and "indicat[ing] that a specific price advantage exists, if it does not."  UTAH CODE ANN. § 13-11-4.

1366.   **Answer**:  Paragraph 1366 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1366 of the FAC.  BMW AG denies the allegations in Paragraph 1366 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1367.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1367.   **Answer**:  Paragraph 1367 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1367 of the FAC.

1368.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1368.   **Answer**:  Paragraph 1368 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1368 of the FAC.

1369.   Defendants knew, or had reason to know, that consumers would rely on their failure to disclose the defects in its emissions system.  Defendants therefore engaged in an unconscionable act within the meaning of Utah Code Ann. § 13-11-5.

1369.   **Answer**:  Paragraph 1369 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1369 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1369 of the FAC.

1370.   Pursuant to Utah Code Ann. § 13-11-4, Plaintiffs seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Plaintiff; reasonable attorneys' fees; and any other just and proper relief available under the Utah CSPA.

1370.   **Answer**:  BMW AG admits that Paragraph 1370 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 77

## VIOLATION OF THE VERMONT CONSUMER FRAUD ACT
## (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*)

1371.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1371.   **Answer**:  Paragraph 1371 does not require a substantive response.

1372.   This claim is brought by Plaintiffs on behalf of Vermont purchasers who are members of the Class.

1372.   **Answer**:  BMW AG denies that Plaintiffs or any member of the proposed class is entitled to any relief.  BMW AG denies that this action may or should be maintained or properly prosecuted as a class action, denies that class treatment of Plaintiffs' claims is appropriate, and further denies that any putative class or subclasses may or should be certified in this action.

1373.   The Vermont Consumer Fraud Act (Vermont CFA) makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." VT. STAT. ANN. TIT. 9, § 2453(a).

1373.   **Answer**:  Paragraph 1373 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1373 of the FAC.  BMW AG denies the allegations in Paragraph 1373 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1374.   BMW USA, BMW AG, and Bosch were sellers within the meaning of VT. STAT. ANN. TIT. 9, § 2451(a)(c).

1374.   **Answer**:   Paragraph 1374 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1374 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1374 of the FAC.

1375.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1375.   **Answer**:   Paragraph 1375 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1375 of the FAC.

1376.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1376.   **Answer**:   Paragraph 1376 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1376 of the FAC.

1377.   Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]," pursuant to VT. STAT. ANN. TIT. 9, § 2461(b).

1377.   **Answer**:   BMW AG admits that Paragraph 1377 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

## COUNT 78

## VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT
## (W. VA. CODE § 46A-1-101 *ET SEQ.*)

1378.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1378.   **Answer**:  Paragraph 1378 does not require a substantive response.

1379.   This claim is included here for notice purposes only.  Once the statutory notice period has expired, Plaintiffs will amend their complaint to bring this claim on behalf of West Virginia purchasers who are members of the Class.

1379.   **Answer**:  Paragraph 1379 does not require a substantive response.  To the extent a response is required, BMW AG admits that Paragraph 1379 outlines the action Plaintiffs purport to take, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1380.   BMW USA, BMW AG, and Bosch are "persons" under W. VA. CODE § 46A-1-102(31).

1380.   **Answer**:  Paragraph 1380 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1380 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1380 of the FAC.

1381.   Plaintiffs and West Virginia Class members are "consumers" as defined by W. VA. CODE §§ 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Polluting BMW Vehicles.

1381.   **Answer**:  Paragraph 1381 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1381 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context.

1382.   Defendants engaged in trade or commerce as defined by W. Va. Code § 46A-6-102(6).

1382.   **Answer**:   Paragraph 1382 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the allegations in Paragraph 1382 of the FAC insofar as those allegations refer to a statute and refers to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1382 of the FAC.

1383.   The West Virginia Consumer Credit and Protection Act (West Virginia CCPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."   W. Va. Code § 46A-6-104.   Without limitation, "unfair or deceptive" acts or practices include:

> (I)   Advertising goods or services with intent not to sell them as advertised; . . .
>
> (L)   Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;
>
> (M)   The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; [and]
>
> (N)   Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive.

W. Va. Code § 46A-6-102(7).

1383.   **Answer**:   Paragraph 1383 of the FAC states legal conclusions and argument to which BMW AG need not respond.   To the extent a response is required, BMW AG denies the

allegations in Paragraph 1383 of the FAC.  BMW AG denies the allegations in Paragraph 1383 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1384.   Pursuant to W. Va. Code § 46A-6-106, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the West Virginia CCPA for each Plaintiff.

1384.   **Answer**:  BMW AG admits that Paragraph 1384 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any relief.

1385.   Plaintiffs also seek punitive damages against Defendants because it carried out despicable conduct with willful and conscious disregard of the rights of others, subjecting Plaintiffs to cruel and unjust hardship as a result.

1385.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1384 as if restated herein.

1386.   Plaintiffs further seek an order enjoining Defendants' unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under W. Va. Code § 46A-5-101 *et seq.*, and any other just and proper relief available under the West Virginia CCPA.

1386.   **Answer**:  BMW AG incorporates by reference the answer set forth in Paragraph 1384 as if restated herein.

1387.   On March 21, 2018, and May 4, 2018, Plaintiffs sent letters complying with W. Va. Code § 46A-6-106(b) to Defendants.  Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the West Virginia Class are entitled.

1387.   **Answer**:  BMW AG admits that Plaintiffs' counsel sent letters purporting to comply with the West Virginia statute on the dates alleged.  BMW AG also admits that Paragraph 1387 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member

of the proposed class is entitled to any relief.  BMW AG otherwise denies the allegations of
Paragraph 1387.

## COUNT 79

### VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT
### (WYO. STAT. § 40-12-105 *ET SEQ.*)

1388.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding
paragraphs of this complaint.

1388.   **Answer**:  Paragraph 1388 does not require a substantive response.

1389.   Defendants and the Wyoming Class members are "persons" within the meaning of
Wyo. Stat. § 40-12-102(a)(i).

1389.   **Answer**:  Paragraph 1389 of the FAC states legal conclusions and argument to
which BMW AG need not respond.  To the extent a response is required, BMW AG denies the
allegations in Paragraph 1389 of the FAC insofar as those allegations refer to a statute and refers
to the original source materials for a complete and accurate statement of their contents and context.

1390.   The Polluting Vehicles are "merchandise" pursuant to Wyo. Stat. § 40-12-
102(a)(vi).

1390.   **Answer**:  Paragraph 1390 of the FAC states legal conclusions and argument to
which BMW AG need not respond.  To the extent a response is required, BMW AG denies the
allegations in Paragraph 1390 of the FAC insofar as those allegations refer to a statute and refers
to the original source materials for a complete and accurate statement of their contents and context.

1391.   Each sale or lease of a Polluting Vehicle to a Wyoming Class member was a
"consumer transaction" as defined by Wyo. Stat. § 40-12-1-2(a)(ii).  These consumer transactions
occurred "in the course of [Defendants'] business" under Wyo. Stat. § 40-12-105(a).

1391.   **Answer**:  Paragraph 1391 of the FAC states legal conclusions and argument to
which BMW AG need not respond.  To the extent a response is required, BMW AG denies the
allegations in Paragraph 1391 of the FAC insofar as those allegations refer to a statute and refers

to the original source materials for a complete and accurate statement of their contents and context. BMW AG denies all remaining allegations in Paragraph 1391 of the FAC.

1392.   The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits deceptive trade practices. Wyo. Stat. § 40-12-105(a).

1392.   **Answer**:   Paragraph 1392 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1392 of the FAC.  BMW AG denies the allegations in Paragraph 1392 of the FAC insofar as those allegations refer to laws, regulations, and/or published emissions standards, and refers to the applicable original source materials for a complete and accurate statement of their contents and context.

1393.   In the course of their business, Defendants concealed and suppressed material facts concerning the Polluting BMW Vehicles.  Defendants accomplished this by installing emission control devices in the Polluting BMW Vehicles that were concealed from regulators and consumers alike.

1393.   **Answer**:   Paragraph 1393 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1393 of the FAC.

1394.   The facts concealed and omitted by Defendants from Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Polluting BMW Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known of the true facts at the time they purchased or leased their Polluting BMW Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1394.   **Answer**:   Paragraph 1394 of the FAC states legal conclusions and argument to which BMW AG need not respond.  To the extent a response is required, BMW AG denies the allegations in Paragraph 1394 of the FAC.

1395.   Pursuant to WYO. STAT. § 40-12-108(a), Plaintiffs seek monetary relief against Defendants measured as actual damages in an amount to be determined at trial, in addition to any other just and proper relief available under the Wyoming Consumer Protection Act, WYO. STAT. § 45-12-105 et seq.  Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or

deceptive practices, attorneys' fees, and any other just and proper relief available under the Wyoming CPA.

1395.  **Answer**:  BMW AG admits that Paragraph 1395 outlines the relief which Plaintiffs

purport to seek, and denies that Plaintiffs or any member of the proposed class is entitled to any

relief.

1396.  On March 21, 2018, and May 4, 2018, Plaintiffs sent letters complying with WYO. STAT. § 45-12-109 to Defendants.  Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Wyoming Class are entitled.

1396.  **Answer**:  BMW AG admits that Plaintiffs' counsel sent letters purporting to

comply with the Wyoming statute on the dates alleged.  BMW AG also admits that Paragraph

1396 outlines the relief which Plaintiffs purport to seek, and denies that Plaintiffs or any member

of the proposed class is entitled to any relief.  BMW AG otherwise denies the allegations of

Paragraph 1396.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide RICO Class and State Classes, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

A.  Certification of the proposed Nationwide RICO Class and State Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B.  An order temporarily and permanently enjoining BMW USA, BMW AG, and Bosch from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.  Injunctive relief in the form of a recall or free replacement program;

D.  Restitution, including at the election of Class members, recovery of the purchase price of their Polluting BMW Vehicles, or the overpayment for their Polluting BMW Vehicles;

E.  Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial, except that monetary relief under certain consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

F.  An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorneys' fees; and

H.      Such other or further relief as may be appropriate.

## AFFIRMATIVE DEFENSES

BMW AG asserts the following affirmative defenses, based on information and belief, in response to the allegations contained in the FAC.  By setting forth these affirmative defenses, BMW AG does not assume the burden of proving any fact, issue, or element of a cause of action for which Plaintiffs bear the burden.  BMW AG reserves the right to amend these, or add additional, affirmative defenses.

## AS AND FOR A FIRST DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because the FAC fails to state a claim for which relief can be granted.  BMW AG asserts as a defense each and every ground set forth in previously filed motions to dismiss and all papers filed in support thereof pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(2), and 12(b)(6), as well as the renewed motion to dismiss  that will be filed as provided by this Court's opinion issued on May 11, 2021.  Dkt. No. 128.  All such motions are incorporated by reference.

## AS AND FOR A SECOND DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because they seek relief not available under applicable law, and because Plaintiffs failed to mitigate or cure their damages.

## AS AND FOR A THIRD DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because Plaintiffs lack standing to bring these claims and/or to seek relief requested on their own behalf or on behalf of putative class members.

### AS AND FOR A FOURTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because Plaintiffs lack Article III and/or prudential standing under the U.S. Constitution and/or the relevant federal or state statutory provisions to bring these claims on their own behalf or on behalf of putative class members.

### AS AND FOR A FIFTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because BMW AG either complied with all of its disclosure obligations under applicable law or had no duty to disclose allegedly-omitted information.

### AS AND FOR AN SIXTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because they purport to challenge nonactionable puffery in marketing materials. (For clarity, "marketing materials" as used in these affirmative defenses should be broadly construed to include advertisements, brochures, web-based content, press releases, and all other materials (whether described in the FAC, produced in discovery, or obtained by other means) that Plaintiffs now or shall claim were relevant to their decisions to acquire vehicles or are otherwise relevant their claims.)

### AS AND FOR A SEVENTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because marketing materials were not false or misleading, did not omit any required or material information, and did not constitute false or misleading statements made by BMW AG.

## AS AND FOR A EIGHTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because alleged misstatements or omissions are nonactionable expressions of opinion.

## AS AND FOR A NINTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because the representations and/or omissions and actions alleged by Plaintiffs were not material to Plaintiffs' decisions to purchase and/or lease the alleged Class Vehicles.

## AS AND FOR A TENTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because the Plaintiffs and putative class members did not reasonably rely on any alleged misstatements or omissions of material fact by BMW AG.

## AS AND FOR AN ELEVENTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because BMW AG is not responsible in law or in fact for any alleged misstatements or omissions of third parties or others for whom it cannot be held liable under principles of agency or other applicable law.

## AS AND FOR A TWELFTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because the representations and/or omissions and actions alleged by Plaintiffs did not cause any injury, loss, or other type of harm redressable through Plaintiffs' claims.

### AS AND FOR A THIRTEENTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because at all relevant times BMW AG relied in good faith on the representations, reports, expert opinions, certifications, and advice of others or that were obtained by others.

### AS AND FOR A FOURTEENTH DEFENSE

Some or all of Plaintiffs and putative class members failed to give reasonable, timely, sufficient, and adequate notice of the alleged liability, damage or injury, if any.

### AS AND FOR A SIXTEENTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because the purported class vehicles comply with all applicable laws, including the Clean Air Act, and all applicable regulation(s), industry standards and/or any applicable government codes or regulations.

### AS AND FOR A SEVENTEENTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because the allegedly undisclosed AECDs are not AECDs and/or "defeat devices" under applicable regulations and law, the AECDs did not reduce the effectiveness of the emissions control systems, and the allegedly undisclosed AECDs did not unnecessarily reduce emissions control effectiveness.

### AS AND FOR AN EIGHTEENTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because there is no defect in any of the vehicles, or, if there are defects in the vehicles, those defects do not impair the use, value, or safety of such vehicles.

## AS AND FOR A NINETEENTH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, to the extent they are moot.

## AS AND FOR A TWENTIETH DEFENSE

Some or all of Plaintiffs' claims and the claims of the putative class members are barred, in whole or in part, by the doctrine of laches.

## AS AND FOR A TWENTY-FIRST DEFENSE

Some or all of Plaintiffs' claims and the claims of the putative class members are barred, in whole or in part, by the doctrine of unclean hands.

## AS AND FOR A TWENTY-SECOND DEFENSE

Some or all of Plaintiffs' claims and the claims of the putative class members are barred, in whole or in part, by the terms of binding written contracts, including by releases, contractual limitations on lawsuits or limitations on liability, class action waivers and/or arbitration agreements.

## AS AND FOR A TWENTY-THIRD DEFENSE

Some or all of Plaintiffs' claims and the claims of the putative class members are barred, in whole or in part, because of any applicable express warranties and because BMW AG either did not have, or satisfied its, warranty obligations.

## AS AND FOR A TWENTY-FOURTH DEFENSE

Some or all of Plaintiffs' claims and the claims of the putative class members are barred, in whole or in part, because this action cannot be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or applicable state law.

## AS AND FOR A TWENTY-FIFTH DEFENSE

Some or all of Plaintiffs' claims and the claims of the putative class members are barred, in whole or in part, to the extent that trying this case as a class action would violate the U.S. Constitution and relevant state Constitutions.

## AS AND FOR A TWENTY-SEVENTH DEFENSE

Some or all of Plaintiffs' claims and the claims of the putative class members are barred, in whole or in part, to the extent that Plaintiffs have not suffered any injury proximately caused by conduct alleged in the FAC.

## AS AND FOR A TWENTY-EIGHTH DEFENSE

Some or all of Plaintiffs' claims and the claims of the putative class members are barred, in whole or in part, for failure sufficiently to allege privity.

## AS AND FOR A TWENTY-NINTH DEFENSE

Some or all of Plaintiffs' claims and the claims of the putative class members, are barred, in whole or in part, by inability to prove any loss, injury, and/or damages.

## AS AND FOR A THIRTIETH DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, to the extent plaintiffs seek damages, penalties, and/or remedies that would constitute duplicative recovery.

## AS AND FOR A THIRTY-FIRST DEFENSE

Some or all of Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, because the Michigan Consumer Protection Act does not apply to motor vehicle sales, which are transactions "specifically authorized under laws administered by a regulatory

board or officer acting under statutory authority of [Michigan] or the United States." MICH. COMP. LAWS § 445.904(1)(a).

## AS AND FOR A THIRTY-SECOND DEFENSE

BMW AG is entitled to, and claims the benefit of, all defenses and presumptions set forth in or arising under any rule of law or statute in this State and/or any other Statute that may be applicable, including but not limited to any affirmative defenses pleaded by another party in this action.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: June 10, 2021             Respectfully submitted,

LATHAM & WATKINS LLP

/s/ Kevin M. McDonough
Kevin M. McDonough
*kevin.mcdonough@lw.com*
Michael Lacovara (admitted *pro hac vice*)
*michael.lacovara@lw.com*
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

Arthur F. Foerster (admitted *pro hac vice*)
*arthur.foerster@lw.com*
Johanna Spellman (admitted *pro hac vice*)
*johanna.spellman@lw.com*
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700

*Attorneys for Bayerische Motoren Werke Aktiengesellschaft*