## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA HU, *et al.*, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA LLC, *et al.*,<br><br>          Defendants. | Civil Action No. 18-4363 (KM)(JBC) |

## JOINT STIPULATED PROTOCOL FOR THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS

The parties to the above-captioned litigation (the "action" or this "litigation"), through their counsel, have stipulated and agreed to give effect to this Joint Stipulated Protocol for Discovery of Electronically Stored Information and Hard Copy Documents ("ESI Protocol" or "Protocol"), to facilitate discovery in this litigation.

The parties shall make good-faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol and discovery in general. If a Producing Party, notwithstanding its good-faith efforts, does not comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be impossible or unreasonable, such party shall inform the Receiving Party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties.  All productions in this litigation are subject to the confidentiality order separately entered by the Court in this litigation.

Nothing in this ESI Protocol shall supersede the parties' obligations under the Federal Rules of Civil Procedure ("Federal Rules"), any Local Rules of the U.S. District Courts, or any Court order, as applicable.

## I.   DEFINITIONS.

1.      **"Document(s)"** shall have the same definition as set forth in Federal Rules of Civil Procedure 26 and 34.  A reference to "document(s)" shall include both ESI and hard-copy documents, as defined herein.

2.      **"Document Family"** refers to a group of related ESI that includes parent and child documents as maintained in the ordinary course of business (e.g., a parent email and any attachments thereto).

3.      **"Electronically stored information"** or **"ESI,"** as used herein, means, as referenced in the Federal Rules of Civil Procedure, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper).

4.      **"Extracted Text"** means the text extracted from an electronic document, and includes all header, footer and document body information when reasonably available.

5.       **"Hard Copy Document"** means a document collected from physical files (paper) and not from electronic sources.

6.       **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer or other device on which data is or was stored.

7.      **"Metadata"** is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced are listed in Exhibit 1.

2

8.      **"Native" or "Native Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

9.      **"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

10.     **"Producing Party"** means or refers to any party in the litigation from which production of ESI or hard copy documents are sought.

11.     **"Receiving Party"** means or refers to any party in the litigation seeking production of ESI or hard copy documents.

## II.    IDENTIFICATION AND COLLECTION OF DOCUMENTS

1.      The parties have agreed to meet and confer and exchange information regarding the following: (i) the identity and role of custodians from which documents will be obtained for production; (ii) the identity, scope and format of custodial and non-custodial sources (including but not limited to mobile devices) from which documents will be obtained for production; (iii) the identity and scope of sources of documents to be produced without the use of technology assisted review ("TAR") or search terms; (iv) applicable timeframe(s) for collection and review of documents; and (v) prioritization of documents to be collected, reviewed, and produced.  To the extent the Requesting Party believes additional sources should be searched, the parties will meet and confer on that topic.  If a dispute regarding the custodians and sources of documents cannot be resolved through the meet and confer process, the Producing Party or the Receiving Party may seek relief from the Court.

2.      Producing Parties shall produce documents in accordance with the Federal Rules of Civil Procedure.  The Producing Parties shall not withhold from production any documents actually known by counsel to be responsive to a discovery request solely because such

documents are not responsive to the search methodologies developed in accordance with this Protocol, unless Counsel specifically identifies the documents being withheld pursuant to a specific objection.

3.     Those portions of the parties' documents representing discrete folders or collections of information  (i.e., custodian-created desktop or email folders/sub-folders or shared storage repositories specifically labeled or otherwise identified) that are actually known by counsel to substantially contain documents responsive to a discovery request, such as substantially relevant folders of ESI that are identified or segregated by the Producing Party through the civil litigation process ("Substantially Relevant Discrete Collections"), shall be identified and collected without the use of search terms or any other content-based filtering to cull or limit the scope of Documents from the discrete set or grouping.  Notwithstanding a party's awareness that a Substantially Relevant Discrete Collection is likely to substantially contain responsive information, a Producing Party may, in good faith, withhold Documents from any such Substantially Relevant Discrete Collection based on responsiveness, confidentiality, privilege, or other protection(s) from disclosure or production.  The Parties will meet and confer in the event the Producing Party believes that unfiltered collection or review of a Substantially Relevant Discrete Collection would be unduly burdensome and disproportionate to the needs of the case.  During the meet and confer, the Producing Party shall disclose sufficient information regarding the Substantially Relevant Discrete Collection (e.g., number of documents, custodian, types of files, etc.) to allow the Receiving Party to properly evaluate the Producing Party's claims of burden and proportionality.  A Producing Party will additionally disclose to the Receiving Party all discrete folders or collections of information that contain documents actually known by counsel to be responsive.  A Receiving Party may request that the Parties meet and confer if it believes it has identified a deficiency in the productions and/or believes a discrete

folder or collection of information disclosed by the Producing Party should be subject to an unfiltered collection or review.  Nothing in this paragraph shall limit or alter obligations of the Parties to produce documents in accordance with paragraph 2 of this Section.

4.      If the Producing Party is filtering documents by using search terms to eliminate collected documents from review, the parties will meet and confer about search terms in English, German, and any other languages used in the Producing Party's documents, as well as parameters, filtering (e.g., date range), and methodologies.  The parties reserve the right to seek entry of a protocol governing search terms.  Prior to performing any pre-production review for responsiveness and/or privilege, the Producing Party will disclose the list of search terms, date filters, or other culling methods, and the Receiving Party may propose additional terms or culling parameters.  The Producing Party will ensure that its search methodology is effective, and will share information, including validation methods and results, about its validation of its search methodology with the Receiving Party in a timely manner, no later than 30 days after the Producing Party's second production of documents identified through a search methodology; if the Receiving Party proposes modifications to the search methodology promptly after receiving validation information, the Producing Party will not object on the basis that the proposal is untimely (but will retain all other objections).  A Producing Party will not, however, be required to share the sampling of nonresponsive documents with the Receiving Party.

5.      If the Producing Party plans to use TAR, including "predictive coding," to identify or cull documents to be reviewed or produced, the Producing Party will notify the Receiving Party sufficiently in advance of the Producing Party training the TAR software to allow for meet and confers, and Court intervention if necessary, on the Producing Party's TAR plan.

6.      Documents which are reasonably believed to be responsive to discovery requests and not subject to objections and for which text-based search technologies are fundamentally ineffective must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.

7.      Neither party needs to produce documents from sources not reasonably accessible because of undue burden or cost.  Fed. R. Civ. P. 26(b)(2)(B).  The parties do not at this time anticipate the need to attempt discovery of deleted or residual data.  Absent a showing of good cause, the parties shall not be required to conduct searches for these data or to use forensic collection and production techniques.

## III.    FORM OF PRODUCTIONS

1.      **Production of ESI-Format**

a)      All responsive ESI, except that which is produced in native format pursuant to paragraph 1(b) of this Section, shall be produced as black and white, single-page, 300 DPI, Group IV* TIFF files with corresponding extracted full text provided in document level text files, objective metadata fields pursuant to Exhibit 1.  Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image.  Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These *.tiff images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

b)      Responsive spreadsheets, presentations, audio/visual/multimedia, and other files that are not conducive to production in image format shall be produced in native format, except where such files are redacted pursuant to paragraph 19 of this Section.  The parties agree to meet and confer regarding producing other files in native format, if necessary and appropriate.  Responsive ESI produced in native format shall be produced with Metadata

described in Exhibit 1 that is contained in or associated with that file to the extent reasonably possible.  Each file produced in native format shall be assigned a unique Bates number, and for each a single page placeholder TIFF image stamped with this unique Bates number, the phrase "PRODUCED IN NATIVE FORMAT", and the corresponding confidentiality designation under the Confidentiality Order will be produced.  To the extent that it is available, the original document text shall be provided in a document-level UTF-8 text file; otherwise the text contained on the slipsheet language shall be provided in the *.txt file.  The relative file path to the native file in the document production shall be included in the NativePath metadata field in the *.dat file as outlined in Exhibit 1.  No party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any produced native format document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the document.

2. **Production of Hard Copy Documents – Format.**

a)    All documents originating in paper format will be produced as black-and-white or color (as applicable), single-page, 300 DPI, Group IV* TIFF images, with OCR Extracted Text provided in document level text files, objective metadata fields and load files pursuant to Exhibit 1.  The Producing Party will accommodate reasonable requests from a Requesting Party for production of specific images in color to the extent available.

b)    In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  If documents were scanned previous to this case, however, and are not logically unitized, they may be produced in the format in which they were

maintained.  In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately.  The parties will make their best efforts to unitize the documents correctly.

3.      **Digital Photos**. Where reasonably possible, all digital photos will be produced as full color image files in color TIFF, pdf or native format (such as .jpg).

4.      **Databases, Structured, Aggregated or Application Data**. The parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source if the Producing Party cannot produce the data in a reasonably useable format.  If the Producing Party produces responsive data prior to conferring with Receiving Party, then the Receiving Party may still request the production of responsive data in a different format subject to the Producing Party's objection.

5.      **Non-English Documents**.  To the extent that documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written and collected.  The Producing Party has no obligation to create a translation of the documents or any portion thereof, but a Producing Party must produce any identified English translation of Non-English documents of which it is actually aware other than translations made at the request of counsel.

6.      **Color**.  Documents containing color may but do not need to be produced in single-page color JPEG format initially.  If an original document contains color necessary to understand the meaning or content of the document, the Producing Party shall honor reasonable requests for a color image and/or native file of the document.  This includes, but is not limited to, Word documents containing redlining, and any charts (Excel, PowerPoint slides, or otherwise) where different colors are used to differentiate among the data being displayed in the document.

A Receiving Party requesting a color image and/or native file of any produced documents must specifically identify any such documents by Bates number.  If the parties cannot come to an agreement regarding whether a specific document identified by a particular Bates number must be produced in color, the good cause standard will govern the dispute. However, the Receiving Party does not have to make a good cause showing when it initially requests the document in color; instead, the Receiving Party may simply identify the document by individual starting Bates number.  If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Receiving Party.

7.      **Load File Formats**. ESI will be produced with a standard Concordance (*.dat) metadata load file format and an image load file that is in .OPT format.  The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

8.      **Metadata to be Produced**. The metadata fields detailed in Exhibit 1 should be produced for each document to the extent that such information is reasonably available and extractable, except that if a field contains privileged information or information otherwise protected from disclosure under order of Court, that information may be redacted and privileged information may be noted in a corresponding privilege log.

9.      **Extracted Text and OCR.**  Each document, whether produced in Native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR, as described herein:

a)      Extracted Text (Emails, Unredacted Native ESI, and Natively Redacted Spreadsheets).  All email, un-redacted ESI, and redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files.  Extracted text shall include all comments, track changes, and hidden content in Word documents and speaker's notes

and hidden content in PowerPoint files.  Text extracted from emails shall include all header

information that would be visible if the email was viewed in Outlook including: (1) the

individuals to whom the communication was directed ("To"), (2) the author of the email

communication ("From"), (3) who was copied and blind copied on such email ("CC" and

"BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email,

and where reasonably accessible through a party's ESI processing technology, (6) the names of

any attachments.

        b)    <u>OCR (Redacted Native ESI, Other ESI with No Extracted Text, and Hard</u>

<u>Copy Documents</u>). In the event a document, other than natively redacted spreadsheets, contains

text that is to be redacted, OCR text files should be provided for any un-redacted portions of the

documents.  OCR should also be provided for ESI with not extractable text but for which text is

likely to be contained in the document, including PDFs that do not have embedded text and

images that the Producing Party determines are likely to contain text.  OCR should also be

provided for produced hardcopy documents. Document-level OCR text files shall also be

provided for all hard copy scanned documents.  OCR software must be set to the highest quality

setting for any previously unscanned paper documents, and reasonable quality control measures

shall be used to ensure that the integrity of scanned copies of previously unscanned paper

documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or

obscured, etc.).  Documents containing foreign language text must be OCR'd using the

appropriate settings for that language (e.g., OCR of German documents must use settings that

properly capture umlauts and OCR of Asian language documents must properly capture the

relevant Asian characters).  Settings such as "auto-deskewing" and "auto-rotation" must be

turned on during the OCR process to maximize text recognition on any given page.

c)      Format of Extracted Text and OCR. The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 TXT files provided in a separate folder.  The number of TXT files per folder should be limited to 1,000 files.

10.      **Deduplication**. Global de-duplication is to be executed at the document Family level.  Deduplication shall be done on exact duplicate documents using hash values derived from industry standard hashing algorithms.

a)      No party shall remove near-duplicate documents.

b)      Standalone documents shall not be deduplicated against email attachments.

c)      No party shall identify and/or eliminate duplicates of hard-copy documents or ESI by manual review or some method other than by use of the technical comparison using industry standard hashing algorithms outlined above.

d)      For exact duplicate documents, the Producing Party will produce the metadata described in Exhibit 1 for the single production copy to the extent available.  If more than one custodian possesses a duplicate, the Producing Party shall populate a field of data that identifies each custodian who had a copy of the produced document (the "All Custodians" field) in addition to a separate field of data identifying the custodian whose document is produced.

e)      The original folder paths of a document prior to deduplication will be populated in the "All Paths" metadata field.

f)      Should the "All Custodians" or "All Paths" metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and folder paths for the affected documents will be provided prior to substantial completion of document production.

g)      If during the course of its review, the Producing Party identifies a large number of duplicate documents, the Parties may confer regarding a custom deduplication protocol.

11.     **Email Threading**. The parties will meet and confer regarding the appropriateness of email thread suppression techniques before they are applied in production, although such techniques may be used as a review tool.

12.     **Embedded Files**. Embedded files, except for images embedded in emails (e.g., logo images), are to be produced as family groups.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

13.     **Dynamic Fields**. If reasonably feasible, documents with dynamic fields for file name, dates, and times will be processed to show the field code (e.g., "Filename"), rather than the values for such fields existing at the time the file is processed.

14.     **Parent-Child Relationships.** For email families, the parent-child relationships (the association between emails and attachments) should be preserved.  All non-privileged email attachments should be consecutively produced with the parent email record.

15.     **Time Zone**. The time zone in which the data was processed will be disclosed by the Producing Party.

16.     **Bates Numbering**. Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number, or set of numbers, should be noted with a placeholder.  All attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.  In addition, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

17.     **Excluded File Types**. Absent a particularized need and good cause showing, the parties agree that there is no need to collect ESI from the following sources:

a)      Deleted, slack, fragmented, or other data only accessible by forensics;

b)      Random access memory (RAM), temporary files, or other data difficult to preserve without disabling the operating system;

c)      On-line access data such as temporary internet files, history, cache, cookies, and the like;

d)      Back-up data that is duplicative of data that can be collected elsewhere; and

e)      Server, system, or network logs.

18.     **Redactions**. Other than as permitted by this Protocol, the Confidentiality Order, any other order entered in this litigation, or consent of the parties, no redactions for relevance may be made within a produced document. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for that redaction, and a metadata field shall indicate that the document contains redactions.  Where a responsive family of documents contains both redacted and non-redacted content, or both produced and withheld documents, the parties shall produce the remainder of the non-redacted portions of the family of documents as TIFFs rather than natives, except for Excel spreadsheets, which may be redacted in native form, and with the text/OCR corresponding to the non-redacted portions.

19.     **Other Documents**. All TIFF images of redacted native files shall be processed to show and reveal track changes, comments, and hidden content in Word documents and speaker notes and hidden content in PowerPoint files.  Where reasonably possible, any occurrences of date/time auto field items, including in headers and footers, will be removed and replaced with

the term AUTODATE to prevent the current date from being printed.  Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged.  The production of a document in a redacted form does not affect the parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log.

20.     **Encryption**. To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted.  Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection.  In such cases, the parties shall transmit the encryption key or password to a Receiving Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

21.     **Exception Files**. The parties will use reasonable efforts and standard industry practices to address documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI where the document appears to contain relevant content).

## IV.     PROCESSING OF NON-PARTY DOCUMENTS

1.     A party that issues a non-party subpoena ("Issuing Party") must include a copy of this Protocol with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

2.     The Issuing Party is responsible for producing to all other parties any document(s) obtained pursuant to a subpoena to any non-party in the form in which the document(s) was/were produced by the non-party.  To the extent practical given the data volume and load time, productions by a non-party should be produced by the Issuing Party to all other parties within fourteen (14) calendar days of the non-party's production to the Issuing Party.

3.      For the avoidance of doubt, nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or non-parties to object to a subpoena.

## V.    PRIVILEGE LOGS

1.      The parties recognize that some documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, or other applicable privilege or immunity from disclosure (collectively, "privilege").  Absent further agreement by the parties, a Producing Party will produce a privilege log by the agreed deadline for substantial completion of document production that includes all withheld or redacted documents from productions that were made 30 days prior to that deadline.  For subsequent document productions, a Producing Party will produce a privilege log  no later than 30 days after the production.

2.      The rolling privilege logs from the Producing Party shall be in a searchable/sortable excel format.  For each responsive document withheld or redacted because of privilege, the parties agree to include the following information on the privilege log:

a)      Custodian or source (the name of the person(s) or non-custodial source from which the document was collected);

b)      Date of the document if available in the metadata or on the face of the document;

c)      Document Type (file extension or msg or similar indication of file type for email);

d)      Document Title (documents), if reasonably available and so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicated "Privileged";

e) Subject Line (email), if reasonably available and so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged";

f) For documents produced, but redacted on the ground of privilege, the starting and end Bates number and for other documents not produced, a numerical identifier;

g) Author(s);

h) Recipient(s), CC(s), BCC(s) (for email and hard-copy communications such as letters and internal memorandums);

i) General description of the nature and subject matter of the document that will enable other parties to assess the claim;

j) The basis for the privilege claim (e.g., attorney-client; work-product)

3. When a document appearing on a privilege log is an email thread containing one or more separate emails, the Producing Party may choose to log the thread as either a single entry or as multiple entries with an entry for each privileged communication and document in the thread. If the Producing Party chooses to log multiple communications in a thread as a single entry, the Date, Author and Recipient(s), CC(s) and BCC(s) fields on the log can be populated from the top line email, although the parties agree that in the event that such a thread is entirely withheld, any third parties included on any portion of the thread will be identified in the log entry. Each document within a family for which a party claims a privilege shall be separately logged. Where appropriate, the Producing Party may categorically log Protected Documents subject to agreement by the Receiving Party, which such agreement shall not be unreasonably withheld.

The parties agree that no party is required to conduct a search or prepare a privilege log for any discovery request or portion thereof to which non-privileged or non-work product

objections have been made until the non-privileged or non-work product objections have been

overruled and the right to object based on the attorney-client privilege or work product doctrine

is preserved until that time.  The parties further agree that there is no duty to log any litigation

files (e.g., internal research memorandums, notes from witness interviews, drafts of filings, etc.)

created or maintained by Plaintiffs' counsel or Defendants' in-house or outside counsel (or those

working under their direction or supervision), or communications involving Plaintiffs' counsel or

Defendants in-house or outside counsel (or those working under their direction or supervision),

in connection with this litigation only.  Responsive, privileged communications with any

regulator or government agency in connection with this litigation shall be logged, irrespective of

the involvement of counsel including outside counsel who were retained for this litigation.

## VI.   MISCELLANEOUS PROVISIONS

1.      **Document Storage**. During the pendency of this litigation, the parties shall make

reasonable efforts to preserve the originals of all hard copy and ESI documents produced to the

opposing parties and to preserve the original native format version of any ESI produced in non-

native format.

2.      **Effect of Order**. The parties' agreement to this Protocol is without prejudice to

the right of any party to seek an order from this Court to rescind or amend this order for good

cause shown.

**SO ORDERED.**

Dated: _____     _____
                                                 KEVIN McNULTY
                                                 United States District Court Judge

SO STIPULATED.

Dated: August 30, 2021        By: */s/ James E. Cecchi*
                                                 James E. Cecchi

Caroline F. Bartlett
Michael A. Innes
Donald A. Ecklund
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY
& AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Christopher A. Seeger
Christopher L. Ayers
Jennifer R. Scullion
SEEGER WEISS LLP
55 Challenger Road
Ridgefield Park, NJ 07660
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
cseeger@seegerweiss.com

Scott A. George
SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, NJ 07102
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
sgeorge@seegerweiss.com

Shauna Brie Itri
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102

Telephone: (215) 553-7981
Facsimile: (215) 851-8029
sitri@seegerweiss.com

*Attorneys for Plaintiffs and the Proposed Class*

Dated: August 30, 2021

By: */s/ Kevin M. McDonough*
Michael Lacovara (admitted *pro hac vice*)
Kevin M. McDonough
Marc S. Werner (admitted *pro hac vice*)
Elizabeth Parvis (admitted *pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
michael.lacovara@lw.com
kevin.mcdonough@lw.com
marc.werner@lw.com
elizabeth.parvis@lw.com

Arthur F. Foerster (admitted *pro hac vice*)
Johanna Spellman (admitted *pro hac vice*)
Kevin M. Jakopchek (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
arthur.foerster@lw.com
johanna.spellman@lw.com
kevin.jakopchek@lw.com

*Attorneys for Defendants Bayerische
Motoren Werke Aktiengesellschaft and
BMW of North America LLC*

Dated: August 30, 2021

By: */s/ Jeffrey A. Rosenthal*
Jeffrey A. Rosenthal
Lina Bensman (admitted *pro hac vice*)
Natalie A. Turchi
CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006
Tel.: (212) 225-2000
Fax: (212) 225-2086
jrosenthal@cgsh.com
lbensman@cgsh.com
nturchi@cgsh.com

Michael D. Critchley
Amy Danielle Luria
CRITCHLEY, KINUM & DENOIA, LLC
75 Livingston Avenue
Suite 303
Roseland, NJ 07068
(973) 422-9200
973-422-9700 (fax)
mcritchley@critchleylaw.com
aluria@critchleylaw.com

*Counsel for Defendant Robert Bosch LLC*

**EXHIBIT 1**

**FIELDS AND METADATA TO BE PRODUCED**

1.     The load files accompanying scanned paper documents and ESI will include the

following objective coding fields, to the extent applicable and reasonably available:

| Field | Category of Document for Population | Field Description |
|---|---|---|
| BEGBATES | All documents | First Bates identifier of item |
| ENDBATES | All documents | Last Bates identifier of item |
| BEGATTACH | All documents | Starting Bates number of a document family |
| ENDATTACH | All documents | Ending Bates number of a document family |
| PAGES | All documents | Number of pages |
| ATTACHCOUNT | All documents | Number of attachments embedded in a document |
| ATTACHNAMES | Email; Edocs | Name of all attachments embedded in document |
| APPLICATION | Email; Edocs | Type of application used to generate the document |
| DOCTYPE | Email; Edocs | The type of document |
| FILEPATH | Email; Edocs | (Optional; to be provided if primary custodian and filepath are stored in a separate field from duplicate custodian and filepaths) The file path from which the document was collected if it is feasible to collect for a particular set of data |
| ALLFILEPATHS | Email; Edocs | The locations where copies of the item were located at the time of collection |
| FILEEXT | Email; Edocs | The file extension of the document |
| REDACTED | All documents | (Y/N) field that identifies whether the document is redacted |
| TIMEZONE | Email; Edocs | The time zone in which the documents were processed |
| CUSTODIAN | All documents | (Optional; to be provided if primary custodian and filepath are stored in a separate field from duplicate custodian and filepaths) Original custodians of the document even if de-duplicated prior to production. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |

| ALLCUSTODIANS | All documents | All custodians of the document only if a Producing Party elects to de-duplicate across custodians. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
|---|---|---|
| CONFIDENTIALITY | All documents | Confidentiality designation |
| AUTHOR | eDocs | Document author from properties |
| FROM | Email | Sender of message |
| TO | Email | Recipient(s) of message |
| CC | Email | Copied recipient(s) of message |
| BCC | Email | Blind copied recipient(s) of message |
| SUBJECT | Email | Subject of message |
| DATESENT | Email | The sent date and time of the message in the format MM/DD/YYYY HH:MM |
| DATERECEIVED | Email | The received date and time of the message in the format MM/DD/YYYY HH:MM |
| FILENAME | Email; Edocs | Contents of this metadata field, or an equivalent |
| FILESIZE | Email; Edocs | Size of the file in bytes |
| HASH | Email; Edocs | Hash value of the document |
| MESSAGEID | Email | Unique message id |
| NATIVEPATH | Email; Edocs | Link to native file (if any) |
| TEXTPATH | All documents | Link to text file for the document |
| PLACEHOLDER | All documents | (Y/N) Field. Indicates if Document has a placeholder image |
| TITLE | eDocs | Title from the Metadata of the Native File |
| DATECREATED | eDocs | Date and time file was created; MM/DD/YYYY HH:MM |
| DATEMODIFIED | eDocs | Date and time file was last modified; MM/DD/YYYY HH:MM |
| LASTMODIFIEDBY | eDocs | Internal file property: the last person who modified the document |
| DATEPRINTED | eDocs | Date and time file was last printed; MM/DD/YYYY HH:MM |
| TRACKCHANGES | eDocs | (Y/N) Field. Identifies documents with track changes |
| HIDDENCONTENT | eDocs | (Y/N) Field. Identifies documents with hidden content (i.e. hidden rows, columns, sheets, or slides) |
| SPEAKERNOTES | eDocs | (Y/N) Field. Identifies documents with speaker notes |

Such metadata field values will be extracted from the native file and will be produced to

the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or Court order. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.