# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
### COUNSELLORS AT LAW

---

| | | | | |
|---|---|---|---|---|
| CHARLES C. CARELLA | DONALD F. MICELI | **5 BECKER FARM ROAD** | PETER G. STEWART | RAYMOND J. LILLIE |
| JAN ALAN BRODY | CARL R. WOODWARD, III | **ROSELAND, N.J.  07068-1739** | FRANCIS C. HAND | MEGAN A. NATALE |
| JOHN M. AGNELLO | MELISSA E. FLAX | **PHONE (973) 994-1700** | AVRAM S. EULE | GREGORY G. MAROTTA |
| CHARLES M. CARELLA | DAVID G. GILFILLAN | **FAX (973) 994-1744** | JAMES A. O'BRIEN, III | KEVIN G. COOPER |
| JAMES E. CECCHI | G. GLENNON TROUBLEFIELD | **www.carellabyrne.com** | JOHN G. ESMERADO | MARYSSA P. GEIST |
| | BRIAN H. FENLON | | STEVEN G. TYSON | JORDAN M. STEELE** |
| | LINDSEY H. TAYLOR | | MATTHEW J. CERES | ZACHARY A. JACOBS*** |
| | CAROLINE F. BARTLETT | | MARC D. MORY | WILLIAM H. WILLIAMS, X |
| | ZACHARY S. BOWER+ | | | MICHAEL K. BELOSTOCK |
| | DONALD A. ECKLUND | | OF COUNSEL | BRIAN F. O'TOOLE** |
| | CHRISTOPHER H. WESTRICK* | | | |
| | STEPHEN R. DANEK | | *CERTIFIED BY THE SUPREME COURT OF | |
| | MICHAEL A. INNES | | NEW JERSEY AS A CIVIL TRIAL ATTORNEY | |
| | | | +MEMBER FL BAR ONLY | |

December 20, 2021

**VIA ECF**

Honorable James B. Clark, III, U.S.M.J.
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

        Re: *Rickman v. BMW NA, et al.*, 2:18-cv-04363 (KM)(JBC)

Dear Judge Clark:

      We represent Plaintiffs and the proposed class in the above referenced action. Pursuant to the Pretrial Scheduling Order (ECF No. 143) and the subsequent Stipulation and Order (ECF No. 154), we write to raise discovery disputes related to the responses of BMW NA and BMW AG ("BMW" or the "BMW Defendants") to Plaintiffs' First Set of Requests for Production of Documents. After weeks of negotiations and several, good faith meet and confer discussions, the parties are at impasse with respect to BMW's responses to a discrete set of Requests, specifically Requests Nos. 1(a), (e), & (k), 39, 46, 73, 81, 83, and 84, as well as the Relevant Time Period. Attached as Exhibit A is a copy of Plaintiffs' First Request for Production of Documents to BMW and as Exhibit B is a copy of the Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents by BMW.[1] Mindful of the Court's guidance, the parties compromised and negotiated in good faith.[2] Plaintiffs' proposed time period and the remaining requests are indisputably relevant and proportionate to the case and should be ordered by the Court.

---

[1] For the current disputes, the Requests for Production served on each of the BMW defendants, and the Reponses, are identical. As a result, Plaintiffs are only submitting the Requests served on and Responses from BMW AG.

[2] The Parties exchanged several letters during the course of their conferrals. For the purposes of this letter, Plaintiffs attach only the letters exchanged on December 13, 2021, the date at which an impasse was reached. Attached hereto as Exhibit C is letter from Scott Alan George, counsel for Plaintiffs, and as Exhibit D the letter from Johanna Spellman, counsel for BMW.

Alternatively, Plaintiffs request the Court to direct further briefing. Plaintiffs detail the background of the dispute and their positions below.

*Background of the Litigation*

Plaintiffs are purchasers and lessees of BMW's model X5 (2009-2013) and 335d (2009-2011) "clean diesel" vehicles (the "Class Vehicles") that BMW promised delivered the fuel efficiency and performance of diesel engines, with reduced diesel emissions which are harmful to people and the environment.[3] In truth, BMW installed "defeat devices" which altered the Class Vehicle's emissions control system to run clean when tested by regulators, but otherwise emit emissions levels, including the greenhouse gases nitrous oxide and nitrogen dioxide (together NOx) and particulate matter, many times higher than their gasoline counterparts, what BMW advertised, and the maximum regulatory threshold.[4] As originally designed, developed, and manufactured, the Class Vehicles ran "dirty," the emissions systems turned off or limited the effectiveness in normal driving conditions; and, if the "defeat devices" are removed, and the engines advertised, fuel efficiency and performance would be sacrificed.[5] A key part of BMW's "defeat devices" was an electronic diesel control (EDC) component developed by Bosch, which BMW chose to program and have calibrate for these diesel vehicles. This Bosch EDC served as the centerpiece of the "defeat devices" implemented by, among others, Volkswagen as revealed by the "Dieselgate" scandal.[6]

*General Standard for Discovery*

It is "well recognized that the federal rules allow broad and liberal discovery." *Pacini v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999). Relevance is a broader inquiry at the discovery stage than at the trial stage and "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). When establishing the parameters of relevance for discovery, it is the claims and defenses of the parties, in the complaint and other pleadings, which set the guardrails for discoverable information. *Nat'lNat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co.*, 2019 WL 1771996, at *3 (D.N.J. Apr. 23, 2019). The burden is on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).

A court may deny a proper discovery request if "[a]fter assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, ... there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." *Salamone v. Carter's Retail, Inc.*, 2011 WL 310701, at *10 (D.N.J. Jan.

---

[3] *See, e.g.*, First Amended Consolidated Class Action Complaint ("Complaint") (ECF. No. 65), ¶¶ 1, 9, 102-104, 131-151.
[4] *See, e.g., id.* ¶¶ 2, 3, 10, 21, 92, 169-252.
[5] *See, e.g., id.* ¶¶ 9, 89, 95.
[6] *See, e.g., id.* ¶¶ 25, 253-284, 295-308.

December 20, 2021
Page 3

28, 2011), *aff'd,* 2011 WL 1458063 (D.N.J. Apr. 14, 2011). A party resisting discovery on the grounds of burden or expense bears the burden of showing specifically how the request is burdensome. *IQVIA, Inc. v. Veeva Sys., Inc.*, 2019 WL 3059805, at *6 (D.N.J. July 11, 2019). In considering proportionality, it merits emphasis that three other putative class actions involving diesel emissions have resulted in settlements in excess of ten billion dollars. A case involving such important issues and conduct over such a long period of time and, with such damages will naturally need discovery beyond that which might be "proportional' in the normal case.

*The Disputed Issues*

**Relevant Time Period.** While BMW's plans for development and marketing of the "clean diesel" Class Vehicles largely ended when the last of these vehicles rolled off the production line and were sold, subsequent events are relevant to this litigation. Specifically, after the VW "Dieselgate" scandal broke in 2015, it was in the interest of manufacturers who had worked with Bosch or otherwise installed "defeat devices" in their vehicles to reexamine their emission control systems and implement changes. For these reasons, Plaintiffs initially sought a document discovery end date as the start of this litigation, but agreed to shorten this end date to the end of 2016 to address BMW's concerns of burden. Still, BMW's proposal to limit the end date for discovery to 2013 for technical documents and 2014 for business and marketing documents, or in other words, dates associated with the end of BMW's development and marketing of the Class Vehicles falls far short. While BMW agreed to extend the end date for four Requests that may capture some of BMW's reactions and responses to "Dieselgate,"[7] it refuses to apply the 2016 end date to other Requests that are plainly relevant to how BMW reassessed and reformed its emission control systems.[8] Indeed, Bosch has agreed to a 2016 end date for the Relevant Time Period of discovery. Given the partial overlap of requested documents between the Requests BMW has agreed to respond with a 2016 end date, and those it maintains should be subject to 2013 or 2014 end dates, BMW has no credible claim of irrelevance or burden – the same custodial and non-custodial documents will need to be reviewed. BMW's proposed end date would almost assuredly leave Plaintiffs without access to the full extent of BMW's wrongdoing. A 2016 end date should govern all of BMW's discovery responses and an end date that precedes the revelation of "Dieselgate" is facially deficient.

**Request No. 1.** Request No. 1 sought a variety of categories of business and marketing documents related to the Class Vehicles. While the Parties have been able to agree on most of the categories, they could not agree on the scope of three categories: meeting minutes (Request No. 1(a)),

---

[7] The Requests BMW is allowing for as an exception include Nos. 12 (documents related to buy-backs), 32 (documents related generally to the emissions systems), 70 (documents related to *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*), and 79 (documents related to a 2014 industry association meeting regarding "clean diesel" and Bosch's technology).

[8] The wider Requests concerning the effect of "Dieselgate" include Nos. 25-27, 35-36, 41-45, and 50-51, which seek documents regarding BMW's assessments of the impact that removing a "defeat device" would have on the vehicles and on any revisions made by BMW after "Dieselgate" to particular functions of the emission control system.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

December 20, 2021
Page 4

competitor analyses (Request No. 1(e)), and business plans (Request No. 1(k)).  To address BMW's claims of burden, Plaintiffs agreed to limit the scope of these categories to those documents relevant to BMW's "clean diesel" technology in the Class Vehicles, which encompasses low emissions, fuel efficiency, and performance.  As alleged, each of these factors drove BMW's decisions concerning the marketing of the "clean diesel" technology, and BMW, moreover, would necessarily consider each of these factors, both collectively and separately, when studying and collecting data on the diesel market and setting its business plans for its "clean diesel" vehicles.  As such, it is critical that Plaintiffs receive marketing and business documents concerning all aspects of BMW's "clean diesel" technology, regardless of whether the documents specifically concern the Class Vehicles.  BMW, however, seeks to limit production of meeting and planning documents to the Class Vehicles only, and then only to documents that discuss emissions (and no documents that discuss only fuel economy or performance).  All relevant minutes, analyses, and plans which discuss "clean diesel" technology, regardless of whether they concern the Class Vehicles or touch on emissions, should be ordered to be produced.

**Request No. 39.**    Plaintiffs seek "all documents concerning the design, development, manufacture, validation, pre-production testing, performance, emissions compliance, and installation of the Emission Control Systems evaluated for use in the Class Vehicles."  While BMW has agreed to produce documents about the emissions system installed in the Class Vehicles, it refused to consider the production of any documents related to the other systems it had considered, but ultimately rejected.[9]  That said, BMW may argue that mere proof that "defeat devices" are in the Class Vehicles does not necessarily establish BMW's knowledge of them. Indeed, in the Answer to the Complaint, [10] BMW has claimed that "to the best of its knowledge, no BMW Vehicle was 'programmed'" with a "defeat device" (ECF Nos. 110 and 130, ¶16) and asserted as its Thirteenth Affirmative Defense that any wrongdoing was innocent because it has "relied in good faith on the representations reports, expert opinions, certifications, and advice of others."  Evidence of BMW being a knowledgeable consumer of emission control systems is directly in play in this litigation, including the systems it considered, its understanding of whether the considered systems could be characterized as "clean diesel" systems, its preferred specifications and characteristics, and any differences between the considered systems and the Bosch system it ultimately chose.  Defendants cannot seriously contend that this discovery is not proportional to the needs of the case or relevant. Production of documents about the emission control systems BMW considered should be ordered.

**Request No. 46.**    Plaintiffs seek "all documents relating to the testing, reverse-engineering, or analysis of diesel engines manufactured by automobile manufacturers other than [BMW]." During the meet and confer discussions, Plaintiffs offered to narrow this request to documents related to

---

[9] The BMW Defendants even refused to produce documents sufficient to identify such systems as a preliminary matter.

[10] *See* BMW of North America, LLC's Answer and Affirmative Defenses to Plaintiff First Amended Consolidated Class Action Complaint  (ECF No. 110) and Bayerische Motoren Werke Aktiengesellschaft's Answer and Affirmative Defenses to Plaintiffs' First Amended Consolidated Class Action Complaint (ECF. No. 130).

December 20, 2021
Page 5

emissions, fuel efficiency, and performance. Such documents would show not only what BMW knew about diesel engines and its emission control system generally, but also whether BMW followed or borrowed from the approach its competitors took in designing their diesel engines. BMW refuses to produce any documents except those that relate to lessons learned from the reverse engineering that were "directly incorporated into the final Emissions Control System in the Class Vehicles." Spellman Letter at 5. This blinkered approach ignores what was considered but did not end up, *as is*, in the Class Vehicles sold to consumers, and forecloses understanding BMW's general knowledge of diesel engines and what it focused on in examining the engines of its competitors, which are relevant to BMW's knowledge of a "defeat device" in the Class Vehicles and its defense that any wrongdoing was innocent because of its "good faith" reliance on others (*supra,* Request No. 39). Indeed, BMW's limitation would allow it to withhold documents which do not expressly mention the Class Vehicles or discuss technology that was not directly incorporated in the Class Vehicles, even if the technology incorporated was substantially similar to the technology used by another automobile manufacturer. Without these documents, BMW's claims of innocence could remain unrefuted, and they should be produced.

**Request No. 73**. Plaintiffs seek "all documents and communications concerning any policy or program related to the destruction, retention, or preservation of documents or things during the Relevant Period." BMW has refused to produce any documents responsive to this request, claiming that they are not relevant to any of Plaintiffs' claims and complaining that this Request is improper "discovery on discovery." Plaintiffs are not seeking a deep dive into BMW's document handling practices, only basic retention policies, which (as BMW is keenly aware) are a routine part of initial discovery. *See, e.g., Bourne-Miller v. BMW of North Am.* 2012 WL 7984646 (D.N.J. Aug. 15, 2012) (ordering production of document retention policies); *Sharma v BMW of N. Am. LLC*, 2016 WL 1019668, at * 12 (N.D. Cal. Mar. 15, 2016); *see also Barton v. RCI, LLC*, 2013 WL 1338235, at *20-21 (D.N.J. Apr. 1, 2013) (rejecting argument that document retention policies "have no bearing" on Plaintiffs' claims); *Fellner v. Tri_union Seafoods, LLC*, 2011 WL 13340570 (D.N.J. Mar. 11, 2011) (ordering production of document retention policies).

**Request No. 81.** Plaintiffs seek "all Documents Concerning your National Highway Traffic Safety Administration ('NHTSA') Corporate Average Fuel Economy ('CAFE') compliance." The CAFE regulations established fleet-wide fuel efficiency standards for manufacturers along with improved consumer labeling and disclosures about vehicle fuel efficiency.[11] BMW refuses to produce any documents responsive to this Request, asserting that it seeks irrelevant information. That is not so – CAFE compliance documents would allow Plaintiffs to establish how BMW determined the fuel efficiency for its "clean diesel" vehicles, evaluate the truth of its disclosures, and further understand the kinds of trade-offs BMW made with its "defeat devices."

**Request 83 & 84.** Plaintiffs seek "all documents concerning the human health impact of emissions from the Class Vehicles" and "all documents concerning the environmental impact of emissions

---

[11] NHTSA administers CAFE. Background information about CAFE, including its regulatory regimen, is available at https://www.nhtsa.gov/laws-regulations/corporate-average-fuel-economy#fuel-economy-and-environment-label (last visited Dec. 18, 2021). Plaintiffs also discuss CAFE in the operative complaint. ECF No. 65 at ¶¶ 96-100.

December 20, 2021
Page 6

from the Class Vehicles." BMW refuses to produce any documents responsive to these Requests, mainly arguing that neither human nor environmental health are relevant to this litigation. But BMW claimed such benefits when advertising its purportedly low emissions, fuel efficient "clean diesel" technology.[12] In denying BMW's motions to dismiss, the Court noted the importance BMW's knowledge of the falsity of its representations may have in the litigation, including as to Plaintiffs' claims of fraud as well as BMW's duty to disclose.[13] Moreover, along with BMW's denials of knowledge discussed above, BMW's Seventh and Eighth Affirmative Defenses are that its "marketing materials were not false or misleading, did not omit any required or material information" and that "alleged misstatements or omissions are nonactionable expressions of opinion."[14] Having placed the truth of these matters in dispute, the documents BMW has in its possession that support its defenses should be produced.

For the foregoing reasons, Plaintiff respectfully request the Court Order that Defendants respond to each of these requests and requiring an end date as requested by Plaintiffs, or grant leave to file briefing on these disputes.

Respectfully,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO

*/s/ James E. Cecchi*

JAMES E. CECCHI

---

[12] *See, e.g.*, ECF No. 65 at ¶¶ 10, 116, 129, 133, 139, 143, 146, 150, 314, 316.
[13] *See* ECF No. 79 at pp. 20-24.
[14] *See* ECF Nos. 110 and 130.