Kevin M. McDonough
Direct Dial: +1.212.906.1246
kevin.mcdonough@lw.com

1271 Avenue of the Americas
New York, New York  10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

**LATHAM & WATKINS** LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Moscow |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

December 20, 2021

**VIA ECF**

Hon. James B. Clark, III, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:  *Hu, et al. v. BMW of North America LLC, et al.*, Case No. 18-4363 (KM) (JBC) (D.N.J.)

Dear Magistrate Judge Clark:

We write on behalf of Defendants BMW of North America, LLC ("BMW NA") and Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") (together, the "BMW Defendants"). The parties have met and conferred regarding deficiencies in Plaintiffs' responses to the BMW Defendants' first set of discovery requests. While the parties have been able to resolve most of their disputes, several issues remain that require the Court's intervention. In accordance with this Court's September 16, 2021 Order (ECF No. 143), Local Civil Rule 37.1, and the Court's Judicial Preferences, the BMW Defendants submit this letter and respectfully request a conference with the Court to address the issues below.[1]

**I.   RELEVANT FACTUAL BACKGROUND**

Plaintiffs filed this action on March 27, 2018, asserting claims under RICO and various state consumer protection statutes on behalf of a putative nationwide class of persons who acquired model-year 2009-2013 BMW X5 xDrive 35d or 2009-2011 BMW 335d diesel vehicles (the "Subject Vehicles"). Plaintiffs' claims were premised on the allegation that the Subject Vehicles were equipped with so-called "defeat devices," which allegedly enabled the Subject Vehicles to detect when they were being subjected to emissions testing. *See* ECF No. 26, Compl. ¶¶ 4, 210-214. According to Plaintiffs, when the Subject Vehicles' engine control unit senses that the vehicles are not in a regulatory testing environment, the "defeat device" reduces the effectiveness of the emissions control system. *See id.* ¶ 4. After the BMW Defendants filed a motion to dismiss, on June 27, 2019, the Court dismissed Plaintiffs' complaint without prejudice, holding Plaintiffs

---

[1] The deadline for submission of unresolved discovery disputes related to discovery served before October 15, 2021 was extended by stipulation to December 20, 2021. *See* ECF No. 154 (Dec. 10, 2021 Stipulation and Order).

had failed plausibly to allege the existence of a defeat device in the Subject Vehicles.  *See* ECF No. 59, Opinion at 16.

On September 20, 2019, Plaintiffs filed their First Amended Consolidated Class Action Complaint (the "<u>FAC</u>").  ECF No. 65.  In the FAC, Plaintiffs added new allegations that their experts conducted testing on five Subject Vehicles and one BMW-branded gasoline vehicle, added dozens of paragraphs describing that testing, added allegations supporting the supposed reliability of their testing, and added allegations that their experts' analysis suggested the existence of defeat devices in the Subject Vehicles.  *See* FAC ¶¶ 17, 152-252.  Following a renewed motion to dismiss, the Court again dismissed Plaintiffs' RICO claims but held that Plaintiffs' new allegations regarding their experts' vehicle testing sufficed to permit their state-law fraud claims to proceed. ECF No. 79, Opinion at 13, 19.  Those claims center on allegedly false or misleading claims in unspecified marketing materials which did not disclose the supposed existence of defeat devices and contended that the BMW diesel engines were "cleaner" than they in fact were.

On July 28, 2021, the BMW Defendants served their First Set of Requests for Production (the "<u>First RFPs</u>") on Plaintiffs William Berbaum and Charles Chapman.  *See* **Exhibit 1** (Requests to Berbaum) and **Exhibit 2** (Requests to Chapman) (collectively, the "<u>First BMW Requests</u>"). Plaintiffs served their Responses and Objections to the First RFPs (the "<u>RFP R&O's</u>") on August 27, 2021.[2]  Since September 2021, the parties have met and conferred multiple times in an attempt to resolve their disputes over Plaintiffs' responses to the BMW Defendants' discovery requests, and have exchanged numerous letters outlining their respective positions.  Despite these efforts, the parties were unable to resolve their disagreement regarding several of Plaintiffs' responses.[3]

## II.     OUTSTANDING ISSUES

### A.    Discovery Related to the Vehicle Testing Discussed Extensively in the FAC (RFP Nos. 29, 58, 62-65, 67-69)[4]

Plaintiffs' claims are premised on emissions testing that their purported experts allegedly conducted on six BMW vehicles (the "<u>Tested Vehicles</u>").  *See, e.g.* FAC ¶¶ 169-252.  Plaintiffs have refused to produce documents related to this testing until, at earliest (if ever), the deadline for expert disclosures—over fifteen months from now.  *See, e.g.* Berbaum R&Os to RFP No. 62.  The BMW Defendants are entitled to information that will allow them to probe that factual cornerstone of Plaintiffs' claims during fact discovery, information that is relevant and proportional to the

---

[2] Copies of the RFP R&Os are attached hereto as **Exhibit 3** (Berbaum's RFP R&O's), **Exhibit 4** (Chapman's RFP R&O's).

[3] In addition to the Requests described below, Plaintiffs have refused to produce documents in response to RFP No. 14, which seeks information on Plaintiffs' use of their Subject Vehicles for business purposes. The parties have agreed that this RFP would not be subject to the December 20, 2021 deadline, and the parties will instead meet and confer regarding the scope of any response for those Plaintiffs whose interrogatory responses, served on November 29, 2021, reflect they used their vehicles for business purposes.  This approach will permit the Parties to have a more informed discussion about RFP No. 14 and potentially avoid the need to seek assistance from the Court.

[4] These RFPs generally seek protocols, settings, reports, analysis, memoranda, test results, correspondence, raw data, and other materials related to testing performed in connection with the FAC.

**LATHAM&WATKINS**LLP

needs of the case.  *See Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, 2019 WL 4877497, at *2 (D.N.J. Oct. 3, 2019) (production of environmental sampling and testing data was proportional where the case was "complex," the data was "critical for Plaintiff's affirmative claims and Defendants' defenses," the scope of the case was "significant," and the data being sought was "in Plaintiff's possession and [could] be produced without great burden.").[5]  For example, the requested factual information could lead to further discovery requests or lines of questioning at depositions.  That is the purpose of fact discovery, which would be thwarted if Plaintiffs could withhold factual information that forms the centerpiece of their claims until well after its close.

Indeed, Plaintiffs do not dispute the relevance of the testing information sought, nor do they argue producing the information would be disproportionate to the needs of the case.  Rather, in denying the BMW Defendants discovery on the factual predicate underlying Plaintiffs' claims, Plaintiffs asserted that responsive information is attorney work product and non-testifying expert information, protected by Fed. R. Civ. P. 26(b)(3)(A) and Fed R. Civ. P. 26(b)(4)(D).  *See* **Exhibit 5** (Oct. 6, 2021 Letter from P. Shaeffer, at 6-7).[6]  Those assertions are meritless.

***First***, Plaintiffs placed their vehicle testing front and center by featuring it in the FAC.  Indeed, the very first sentence of the FAC states that Plaintiffs' allegations are "based upon the investigation of counsel, a review of scientific papers, ***and the investigation of experts, which includes the testing of six vehicles with the use of a scientifically accepted PEMs device, and a rigorous and scientifically accepted testing protocol.***"  FAC, at 1.  In doing so, they made the work of their experts *facts* supporting the causes of action they sought to plead.  That paid consultants created those "facts" or might rely on them later neither immunizes them from ordinary discovery nor permits Plaintiffs to shield discovery of central *factual* matters until after expert reports are delivered in fifteen months.  Moreover, to the extent any expert-created material might be considered attorney work product, Plaintiffs waived the work product protection by discussing the testing in detail and at length in the FAC and by relying on it to survive Defendants' motions to dismiss.  *See In re Hum. Tissue Prod. Liab. Litig.*, 255 F.R.D. 151, 158 (D.N.J. 2008) ("[C]ourts have found an implied waiver of the … attorney work product privilege where a client affirmatively places otherwise privileged information at issue in the case.").[7]  Plaintiffs curiously claim that they "disclosed and relied only on the information necessary to survive a pleading attack—the conclusion of the testing data," (**Exhibit 5**, Oct. 6, 2021 Letter from P. Shaeffer, at 7), a suggestion belied by even a casual read of the FAC, which devotes more than one hundred paragraphs to describing vehicle testing conducted by Plaintiffs' experts, (*see, e.g.* FAC ¶¶ 152 – 252).  Those paragraphs not only describe testing *results*; they describe testing *methods and*

---

[5] Unless stated otherwise, all emphasis is supplied and all citations and internal quotation marks are omitted from quoted material.

[6] After meeting and conferring, Plaintiffs agreed to produce: (i) raw data and associated procedures and manuals from testing detailed in the FAC (*see* **Exhibit 5,** Oct. 6, 2021 Letter from P. Shaeffer, at 7); (ii) Vehicle Identification Numbers for the Tested Vehicles (*see* **Exhibit 6,** Nov. 5, 2021 Letter from P. Shaeffer, at 3); and (iii) their maintenance/repair history (*see id.*).  Plaintiffs have refused to produce testing protocols or non-privileged notes, summaries, and analyses regarding the testing or the test data detailed in the FAC.  *See* **Exhibit 7** (Oct. 22, 2021 Letter from P. Shaeffer, at 4).  The BMW Defendants do not know with particularity what other materials Plaintiffs may be withholding.

[7] Fairness considerations also require complete disclosure of this information.  *See* Fed. R. Evid. 502.

*routines* in significant detail (*see, e.g.* FAC ¶¶ 169-195). Plaintiffs are attempting to use the privilege as both a sword and a shield, "to prevent disclosure of the very materials that [they have] repeatedly invited the [Court] to rely upon." *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 473 (S.D.N.Y. 1996). That is improper.

**Second**, Plaintiffs cannot delay production of factual materials for fifteen months on the basis that those facts may be analyzed in later expert disclosures. The BMW Defendants are not seeking early disclosure of Plaintiffs' expert reports or opinions—they are seeking the information underlying the factual allegations in the FAC. Plaintiffs claim a right to withhold production of these materials during fact discovery under Rule 26(b)(4)(D), but "by its express terms, Rule 26(b)(4)(D) only precludes discovery of the expert's facts and opinions 'by interrogatories or deposition[.]'" *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2019 WL 13046984, at *2 n. 3 (S.D.N.Y. Feb. 25, 2019). It does not apply to document requests. *See id*.

And even if Rule 26(b)(4)(D) might have applied, "like work-product protection generally, parties may waive Rule 26(b)(4)(D) protections." *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2021 WL 2481835, at *4 (S.D.N.Y. June 17, 2021) (citing cases); *Murray v. S. Route Mar., S.A.*, 2014 WL 1671581, at *1 (W.D. Wash. Apr. 28, 2014) (same). Plaintiffs cannot use their experts' analysis to their advantage by making that analysis a central factual underpinning for their case, but then shield other materials on the same subject matter from production under Rule 26(b)(4)(D). *See In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2019 WL 13046984, at *3 (holding plaintiffs waived work product protection when complaints included "statistical results that provide support for their allegations" and where "**Plaintiffs' statistical presentation was central to the Court's decision that Plaintiffs have plausibly alleged**" antitrust violations); *see also In re Morning Song Bird Food Litig.*, 2015 WL 12791470, at *7 (S.D. Cal. Jan. 23, 2015) (ordering production of documents relating to reports prepared by defendants' consulting experts, where defendants had "voluntarily disclosed the contents of the reports" to third parties, "electing to use the analyses and conclusions to their advantage.").

**B.     Discovery Related to Plaintiffs' Vehicle Ownership (RFP Nos. 4, 35-36, 39-44, 46-49 )**

Central to the claims remaining in the action is Plaintiffs' allegation that they considered certain vehicle characteristics material to their decisions to acquire the Subject Vehicles, specifically, the "lower emissions, fuel economy, and performance" of those vehicles. *See* FAC ¶ 400. They also allege that they relied on the BMW Defendants' advertisements and representations about these characteristics when "select[ing] and ultimately purchas[ing] [their] vehicles," and that they "would not have purchased the vehicles or would have paid less for them" without these alleged representations. *See id.* ¶ 52 (Berbaum); ¶ 53 (Chapman). Thus, Plaintiffs have placed their expectations and considerations regarding vehicle purchases at issue.

The BMW Defendants accordingly seek information about vehicles owned by Plaintiffs and members of their households, other than the BMW X5 and 335d diesel vehicles ( "Non-Subject Vehicles"). This includes, for example, documents pertaining to Plaintiffs' decisions to acquire Non-Subject Vehicles (*see, e.g.* RFP No. 4, 35), how Non-Subject Vehicles were operated and

maintained (*see, e.g.* RFP Nos. 36, 42), the fuel economy of Non-Subject Vehicles (*see, e.g.* RFP Nos. 39, 40), and vehicle emissions testing and inspections for Non-Subject Vehicles (*see, e.g.* RFP Nos. 46, 47, 48). Plaintiffs have refused to produce any documents in response to these RFPs, citing relevance and proportionality concerns. Neither excuse has merit.

***First***, the documents sought are relevant. *See Occidental*, 2019 WL 4877497, at *3 (scope of discovery "encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case"). The information sought by these RFPs bears on the credibility of Plaintiffs' alleged expectations and material decision-making factors when they acquired the Subject Vehicles. If Plaintiffs made vehicle purchasing and ownership decisions inconsistent with characteristics they allege were important to them when acquiring the Subject Vehicles—for example, if they purchased vehicles known to have significant emissions, or if they operated their vehicles in ways that would reduce the effectiveness of those vehicles' emissions controls—that would cast doubt on the allegations that they relied on the BMW Defendants' representations about those characteristics. *See* **Exhibit 8** (Nov. 2, 2021 Letter from J. Spellman, at 2-3). Such doubt would be relevant not only to the merits of Plaintiffs' claims generally, but also to the fitness of particular Named Plaintiffs to serve as representatives of the proposed Class.

***Second***, Plaintiffs have failed to demonstrate the burden associated with responding, stating only that the timeframe (1995 - present) is overbroad, and that requests pertaining to vehicles owned by other members of Plaintiffs' households are burdensome. For most consumers, vehicles are not everyday household purchases. They tend to be infrequent (thus justifying the need for a relatively long time frame), and they are often decided jointly among members of a household (thus justifying a scope extending beyond vehicles directly owned by Named Plaintiffs). However, in the interest of compromise, the BMW Defendants offered to significantly narrow the scope and time period of these RFPs,[8] but Plaintiffs have still refused to produce any documents in response. *See* **Exhibit 6** (Nov. 5, 2021 Letter from P. Shaeffer, at 2).

****

The BMW Defendants respectfully request a conference with the Court to address the issues just discussed. We appreciate the Court's attention to this matter.

Respectfully submitted,

*/s/ Kevin M. McDonough*
Kevin M. McDonough
of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF)

---

[8] The BMW Defendants offered to limit the scope of these RFPs to: (1) documents pertaining to either (a) vehicles purchased, leased, or otherwise acquired by each Plaintiff from the year 2000 until the present; or (b) the last three vehicles purchased, leased, or otherwise acquired by each Plaintiff prior to acquiring their Subject Vehicle(s); and (2) vehicles (a) for which each Plaintiff was financially responsible; or (b) that Plaintiff used on a regular basis. **Exhibit 8** (Nov. 2, 2021 Letter from J. Spellman), at 1-2.