Kevin M. McDonough
Direct Dial: +1.212.906.1246
kevin.mcdonough@lw.com

1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

**LATHAM & WATKINS** LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Moscow |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

March 25, 2022

**VIA ECF**

Hon. James B. Clark, III, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:   *Hu, et al. v. BMW of North America LLC, et al.*,
Case No. 18-4363 (KM) (JBC) (D.N.J.)

Dear Judge Clark:

We write on behalf of Defendants BMW of North America, LLC and Bayerische Motoren Werke Aktiengesellschaft (together, the "BMW Defendants"). On December 20, 2021, the BMW Defendants raised by letter Plaintiffs' refusal to produce documents related to Plaintiffs' pre-complaint vehicle emissions testing. Plaintiffs' allegations regarding their testing, and the conclusions and results derived therefrom, are the factual cornerstone for Plaintiffs' claims. Plaintiffs, however, refused to produce the bulk of their testing documents on privilege grounds. At the January 12, 2022 status conference, the Court ordered Plaintiffs to produce responsive testing-related documents and a privilege log of materials being withheld. The Court also ordered the parties to meet and confer further regarding Plaintiffs' privilege claims. *See* Jan. 18, 2022 Order (ECF No. 167) (the "January 18 Order"), at 2.

Plaintiffs have not complied with the Court's January 18 Order. First, Plaintiffs refuse to provide a log identifying specific documents being withheld, proposing only a categorical log that contravenes the parties' joint stipulation on the format of privilege logs. Second, Plaintiffs have not produced all the testing documents they agreed to provide. Plaintiffs have delayed for more than six weeks, depriving the parties adequate time to meet and confer about the withheld testing documents before the April 20, 2022 status conference. Pursuant to Local Civil Rule 37.1 and the Court's Judicial Preferences, the BMW Defendants submit this letter and respectfully request that the Court order Plaintiffs to produce the required itemized log, and set a date certain for production of the remaining testing documents.

**I.   RELEVANT BACKGROUND**

Plaintiffs filed this action on March 27, 2018, claiming that model-year 2009-2013 BMW X5 xDrive 35d and 2009-2011 BMW 335d diesel vehicles (the "Subject Vehicles") are equipped with so-called "defeat devices," which allegedly enable the Subject Vehicles to detect when they are being subjected to emissions testing. *See* ECF No. 26, Compl. ¶¶ 4, 210-214. The BMW Defendants moved to dismiss, and the Court agreed, holding Plaintiffs had failed to plausibly allege the existence of a defeat device. *See* ECF No. 59, Opinion at 16.

**LATHAM&WATKINS**LLP

      Plaintiffs filed an amended complaint (the "FAC"), adding new factual allegations regarding testing their experts conducted on five Subject Vehicles and one BMW-branded gasoline vehicle, dozens of paragraphs describing that testing and its supposed reliability, and allegations that their experts' analysis and conclusions from the data demonstrate the existence of defeat devices. *See* ECF No. 65, FAC ¶¶ 17, 152-252. The Court held that these new allegations sufficed to permit the state-law claims to proceed. ECF No. 79, Opinion at 13, 19.

      Although Plaintiffs' pre-complaint testing is the factual premise for their claims, Plaintiffs initially refused to produce any such documents until (at earliest) the deadline for expert disclosures. *See, e.g.* **Ex. 1** (Pl. Berbaum R&O's to RFP No. 62). Plaintiffs later agreed to a limited production of "raw data and associated procedures and manuals from testing detailed in the FAC." *See* **Ex. 2** (Oct. 6, 2021 Ltr. from P. Shaeffer), at 7. In *October 2021*, the BMW Defendants requested that Plaintiffs produce these documents in short order (*see* **Ex. 3** (Oct. 15, 2021 Ltr. from J. Spellman), at 3), and Plaintiffs responded they would "work to produce the documents without unnecessary delay." **Ex. 4** (Oct. 22, 2021 Ltr. from P. Shaeffer), at 4.[1]

      Because Plaintiffs refused to produce all pre-complaint testing-related documents, the BMW Defendants raised the dispute with the Court. *See* Dec. 20 Ltr. Motion (ECF No. 156), at 2-4. At the January 12 conference, the Court directed the parties to continue meeting and conferring. *See* Jan. 12, 2022 Hearing Transcript ("Tr.") 34:3-9. The Court noted that if the parties could not resolve the privilege dispute, it would need to be the subject of a motion. *See id*. The BMW Defendants emphasized that to meet and confer meaningfully, Plaintiffs should "produce a log that describes *with specificity* the materials that they are withholding[.]" *See* Tr. 34:16-23 (J. Spellman). The Court ordered Plaintiffs to "produce responsive materials along with a privilege log," and "[i]f disputes arise regarding materials withheld on the basis of privilege, the parties are directed to meet and confer." *See* January 18 Order, at 2.

      The BMW Defendants attempted to resume the meet-and-confer process, requesting on January 21 that Plaintiffs produce by January 31 the testing-related documents they had agreed to provide, and to produce their privilege log by March 2. *See* **Ex. 5** (Jan. 21 Ltr. from J. Spellman), at 5. Plaintiffs responded that they would produce the documents and log "in a reasonable time to allow the parties to meet and confer in advance of the next status hearing in April." **Ex. 6** (Jan. 26 Ltr. from P. Shaeffer), at 6. On a February 11 call, Plaintiffs stated the parties would need to meet and confer about the format of the log. On February 23, having received no documents and in a gesture of good faith, the BMW Defendants requested that Plaintiffs produce the testing materials and provide their proposal for the format of the log by March 1. *See* **Ex. 7** (Feb. 23 Ltr. from J. Spellman), at 4.

      On March 4—six weeks after being ordered to produce the log itself—Plaintiffs finally provided a proposal for its format. *See* **Ex. 8**, at 3-4 (March 4 Email from P. Shaeffer). Plaintiffs proposed only a categorical log limited to "general description[s]" of: (i) categories of documents relating to pre-complaint testing data and results; (ii) categories of documents relating to impressions, conclusions, and opinions concerning the testing; (iii) communications between

---

[1] Plaintiffs subsequently agreed to produce VINs and maintenance/repair records for the vehicles tested and disclosed in the FAC. *See* Dec. 22, 2021 Ltr. from J. Cecchi to the Court (ECF No. 160), at 2.

counsel and the consulting expert; and (iv) communications between the consulting expert and non-counsel. *Id.* The BMW Defendants informed Plaintiffs their proposal was insufficient, and that the parties would not be able to meet and confer productively without a log "describing each document withheld (and the basis for doing so)." *See id.* at 2-3 (March 8 Email from N. Hazen). Plaintiffs responded that an itemized log would not be produced. *See* **Ex. 9** (March 10 Ltr. from P. Shaeffer), at 5.

On March 14, the BMW Defendants requested another meeting. Plaintiffs agreed, but—reversing their previous commitment to produce testing documents and the log "in a reasonable time to allow the parties to meet and confer in advance of the next status hearing in April"—stated that they "do not believe it is necessary to accelerate or limit the time to reach an agreement in order to meet the deadline to raise a dispute with the Court for the next conference." **Ex. 8**, at 1 (March 16, 2022 Email from D. Ecklund). The parties met and conferred on March 22, during which Plaintiffs maintained that a categorical log was appropriate. On March 24, Plaintiffs wrote that they would consider "additional fields or categor[ies]" to be included in their categorical log, but did not agree to provide an itemized log. *See* **Ex. 10** (March 24 Email from D. Ecklund), at 3.

## II. PLAINTIFFS SHOULD BE COMPELLED TO PROVIDE AN ITEMIZED LOG IN THE FORMAT SET FORTH IN THE DOCUMENT DISCOVERY ORDER

Plaintiffs have the burden of establishing their privilege claims for each document they seek to withhold. *See United States v. Rockwell Int'l.,* 897 F.2d 1255, 1265 (3d Cir. 1990) ("[C]laims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion."). Courts in this District order production of itemized privilege logs, absent undue burden. *See, e.g., Tyco Healthcare Grp. LP v. Mut. Pharm. Co.,* 2012 WL 1585335, at \*4 (D.N.J. May 4, 2012) (ordering individualized log and rejecting claim that logging around "3,000 documents" would be unduly burdensome). For the first time on March 24, Plaintiffs made a cursory assertion of burden, *see* **Ex. 10** (March 24 Email from D. Ecklund, at 2), but they have not substantiated any such claim as they are required to do. *See id*. There is no undue burden here.

Moreover, the required format of privilege logs already has been agreed-upon by the parties in a joint stipulation governing document discovery, which the Court signed and entered. *See* Joint Stipulated Protocol for the Discovery of ESI and Hard Copy Documents (the "<u>Document Discovery Order</u>") (ECF No. 142). As set forth therein, privilege logs must be produced in a searchable/sortable excel format and must include certain enumerated information for "*each* responsive document" withheld or redacted for privilege.[2] *Id.* at 15-16. In short, Plaintiffs are required to produce a document-by-document itemized log and should be compelled to comply.

Plaintiffs suggest that a categorical approach is consistent with the Court's statement at the January 12 conference that the log should give Defendants "the general idea" of what documents are being withheld. *See* **Ex. 9** (March 10 Ltr. from P. Shaeffer), at 5. The Court, however, gave

---

[2] Privilege logs must specify: (a) custodian or source; (b) date; (c) document type; (d) document title; (e) subject line; (f) starting and end Bates number or numerical identifier; (g) author; (h) recipient, CC, or BCC; (i) general description of the nature and subject matter of the document to enable other parties to assess the privilege claim; and (j) the basis for the privilege claim. *See* Document Discovery Order, at 15-16.

LATHAM&WATKINS LLP

no indication it intended to change the stipulated format for logging.[3] In fact, the Court's statement is consistent with the Document Discovery Order, which requires a "*[g]eneral description* of the nature and subject matter of the document [being withheld] that will enable other parties to assess the claim [of privilege]." Document Discovery Order, at 16. Plaintiffs are not entitled to disregard the January 18 Order and the Document Discovery Order by unilaterally deciding to produce a categorical privilege log.

### III. A CATEGORICAL LOG WILL NOT PERMIT THE PARTIES TO MEET AND CONFER PRODUCTIVELY

As noted at the January 12 conference, the BMW Defendants cannot evaluate Plaintiffs' privilege and work product assertions based on the generalized information Plaintiffs offer.[4] For example, Plaintiffs offer to provide a "[g]eneral description of categories of documents relating to data and results collected during the pre-complaint testing." *See* **Ex. 8**, at 3 (March 4 Email from P. Shaeffer). Such a description would omit, among other things, the author, recipients, and date of individual documents.[5] Understanding the author and recipient of each document is necessary to determine whether such documents were created or received by third-parties outside the scope of privilege. The date of each document is equally necessary, as for instance, documents may have been created before counsel was retained by any Plaintiffs.

Plaintiffs also offer to provide a "[g]eneral description of categories . . . relating to the consulting expert's mental impressions, conclusions, and opinions concerning the pre-complaint testing." *Id.* As set forth in the December 20 Letter Motion, Plaintiffs waived any protections over their experts' conclusions and opinions by disclosing them in the FAC and relying on them to survive motions to dismiss. *See* ECF No. 156, at 2-4. To the extent documents reflecting these conclusions and opinions relate to facts disclosed in the FAC, the BMW Defendants would challenge assertions of privilege or work-product protection. To do so, it is necessary to understand what specific documents are being withheld and the subject matter of each document.

Plaintiffs also offer to provide general descriptions of communications (i) between counsel and consulting experts, and (ii) between the consulting experts and non-counsel. *See* **Ex. 8**, at 3 (March 4 Email from P. Shaeffer). This included a limited offer to identify "non-counsel with whom the consulting expert communicated," but would not identify the consulting experts or other

---

[3] On a March 22 call, Plaintiffs cited their own comments at the hearing—that the Court-ordered log was a "carveout from what [the parties] agreed in the [Document Discovery Order]" (*see* Tr. 35:14-21)—to suggest that the log need not conform to the Order's requirements. But as Plaintiffs subsequently confirmed, this statement meant only that, absent the Court's January 18 Order, they would not otherwise be required to log these materials. *See* **Ex. 6** (Jan. 26 Ltr. from P. Shaeffer, at 6). There was no discussion at the January status hearing of a categorical privilege log, nor any indication that the agreed-upon privilege log format would not apply—let alone Court endorsement of either concept.

[4] Tr. 34:16-23 (J. Spellman) ("I think what might be helpful in this process is . . . if plaintiffs would produce a log that describes with specificity the materials that they are withholding on the basis of [privilege]. It's difficult for us to meet and confer meaningfully without knowing what documents they're withholding.").

[5] Plaintiffs later agreed to provide some additional information (*e.g.* author, recipient, and date range), but only on a categorical basis. *See* **Ex. 10** (March 24 Email from D. Ecklund), at 3. Divorcing this information from the individual documents will not allow the BMW Defendants to evaluate Plaintiffs' privilege claims.

non-counsel with whom Plaintiffs' counsel communicated. *Id*. But the BMW Defendants cannot anticipate what other types of responsive communications may have occurred, nor evaluate whether they would be protected from discovery, without receiving an itemized log.

### IV. PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE THE DOCUMENTS THEY ALREADY AGREED TO PROVIDE BY A DATE CERTAIN

The Court ordered the parties to meet and confer to determine whether motion practice would be necessary to resolve the dispute over the pre-complaint testing materials. The BMW Defendants understood that the parties should be in a position to update the Court on that issue by the April 20 status conference, and have attempted to work towards that goal. Despite repeated requests, however, Plaintiffs have produced only some of the testing documents they agreed to provide, and none before March 4. The BMW Defendants identified deficiencies in Plaintiffs' initial production, *see* **Ex. 11** (March 14 Ltr. from J. Spellman, at 3-4), and Plaintiffs responded that it was not "necessary to accelerate or limit the time to reach an agreement in order to meet the deadline to raise a dispute with the Court for the next conference." **Ex. 8**, at 1 (March 16 Email from D. Ecklund). On March 22, Plaintiffs stated that their production may not be complete even before the April 20 status. Two days later, they backtracked further, writing they would only provide "raw data" and asserting "Defendants are not entitled to" any other responsive information. *See* **Ex. 10** (March 24 Email from D. Ecklund), at 1-2. It appears that Plaintiffs are now also refusing to provide the "associated procedures and manuals" that they had previously agreed, and were ordered, to produce.

Plaintiffs' reversal of their prior commitment to produce the Court-ordered materials with sufficient time to meet and confer before the April 20 status conference seems designed to prevent the BMW Defendants from probing during fact discovery the testing-related allegations at the core of this case. *See* Dec. 20 Ltr. Motion (ECF No. 156), at 2-4. It is now more than five months since the BMW Defendants first asked Plaintiffs to produce the responsive testing-related materials they agreed to produce. *See* **Ex. 3** (Oct. 15, 2021 Ltr. from J. Spellman), at 3. Plaintiffs should not be permitted to delay this process any further, and should be ordered to complete their production by a date certain.

****

Plaintiffs' actions are inconsistent with the January 18 Order and have unnecessarily delayed the meet-and-confer process ordered by the Court. Plaintiffs touted their experts' vehicle testing in the FAC—so why the reluctance to produce documents and information about that testing? This discrete set of documents should have been easy to produce or log months ago. The BMW Defendants respectfully request that the Court order Plaintiffs to produce forthwith the required itemized log in the format on which the parties agreed in the Document Discovery Order and set a date certain for production of the remaining testing documents. We appreciate the Court's attention to this matter.

                                                    Respectfully submitted,

                                                    */s/ Kevin M. McDonough*
                                                    Kevin M. McDonough
                                                    of LATHAM & WATKINS LLP

cc:      All Counsel of Record (via ECF)