| | |
|---|---|
| Kevin M. McDonough<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, NY 10020<br>(212) 906-1200 | Arthur F. Foerster (*pro hac vice*)<br>Johanna Spellman (*pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>330 N. Wabash Avenue, Suite 2800<br>Chicago, IL 60611<br>(312) 876-7700 |

*ATTORNEYS FOR DEFENDANTS BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT AND BMW OF NORTH AMERICA, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSHUA HU, *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA LLC, *et al.*,<br><br>  Defendants. | Civil Action No. 2:18-cv-4363-KM-JBC<br><br>Hon. Kevin McNulty<br><br>**\*\*\* ORDER \*\*\*** |

**STIPULATED ORDER REGARDING THE DISPOSITION AND INSPECTION OF SUBJECT VEHICLES**

The parties hereby stipulate that the following procedures shall be adopted with respect to the disposition and inspection of all Subject Vehicles, as defined in the First Amended Consolidated Class Action Complaint, ECF No. 65, owned or leased by any Named Plaintiff in this action as of the date of this Order.[1]

---

[1] The parties reserve their positions regarding disposition of a Subject Vehicle before entry of this Order.

1

    **A.**    **Disposition**

    1.    Absent a COVID-19 pandemic-related emergency (*e.g.*, financial difficulties leading to sale, termination of lease, or other disposition or relinquishment of the Subject Vehicle), if a Named Plaintiff intends to sell, terminate the lease, or otherwise dispose or relinquish possession of any Subject Vehicle, Plaintiffs' counsel shall notify Defendants' counsel, via e-mail, of such intention at least thirty (30) days before the proposed sale, lease termination, and/or other disposition of the Subject Vehicle(s). Plaintiffs shall notify Defendants of any circumstances that they believe give rise to the type of "emergency" that would trigger a shorter notice period as soon as possible after learning about such circumstances.[2]

    2.    Absent a COVID-19 pandemic-related emergency of the type described in Paragraph 1, if a Named Plaintiff intends to sell, terminate the lease, or otherwise dispose or relinquish possession of any Subject Vehicle, Plaintiffs agree to use all reasonable efforts to produce responses to discovery requests, including the production of documents in the Named Plaintiff's possession, custody and control, concerning the maintenance and modification history for that Subject Vehicle and/or related to the installation or removal of a tuner or other after-market emissions modification at the time notice is given pursuant to Paragraph 1, and in any event, at least three (3) days before a scheduled inspection.

    3.    If Defendants intend to inspect any Subject Vehicle for which proper notice has been provided in accordance with Paragraph 1, *supra*, Defendants must notify Plaintiffs'

---

[2] As of the date of submission of this Protocol, Plaintiffs (and their counsel) represent that no Named Plaintiff's Subject Vehicle was the subject of expert emissions testing for purposes of this litigation.  The parties reserve their positions and rights as to whether Plaintiffs' counsel are under a duty to preserve all Subject Vehicles that are the subject of expert emission testing for purposes of litigation, including a Named Plaintiff's Subject Vehicle that may be tested in the future, and/or any other Subject Vehicle that has been and/or will be tested by Plaintiffs' counsel and/or its experts and agents.

counsel, via e-mail and within ten (10) days from Defendants' counsel's receipt of the notice required in Paragraph 1, of Defendants' intent to inspect the Subject Vehicle.

       4.       If Defendants notify Plaintiffs' counsel of their intent to inspect a Subject Vehicle pursuant to Paragraph 3, *supra*, the parties agree to use all reasonable efforts to schedule the inspection of the Subject Vehicle in good faith on a mutually agreeable date within thirty (30) days from the date of notice provided in Paragraph 1. Any Named Plaintiff reserves the right to sell or terminate any applicable lease associated with the Subject Vehicle after thirty (30) days from the date of providing notice in accordance with Paragraph 1, or if the parties schedule the inspection more than thirty (30) days from the date of providing notice in accordance with Paragraph 1, after the scheduled inspection is completed.

       5.       Within 30 days from the Court's entry of a vehicle inspection protocol, any Named Plaintiff in this action who does not consent to the vehicle inspection protocol may move to voluntarily dismiss their claim. For any Named Plaintiffs who move for voluntary dismissal pursuant to this Paragraph, before or at the time such motion(s) for voluntary dismissal is made, Plaintiffs' counsel must disclose to Defendants whether any of those Named Plaintiffs have installed a tuner or otherwise modified the emissions control systems in their Subject Vehicles in a way that could have the effect of degrading or defeating the emissions control systems.

       6.       Plaintiffs' Position: A Named Plaintiff seeking voluntary dismissal under Paragraph 5 may be dismissed without prejudice upon notice and without being compelled to present the Subject Vehicle for an inspection.  The purpose of Paragraph 5 is to allow a Named Plaintiff who objects to the terms of the inspection protocol to voluntarily dismiss his or her claims and leave the litigation.  Requiring a Named Plaintiff who moves for voluntary dismissal due to the terms of the inspection protocol to preserve the Subject Vehicle for purposes of a

potential inspection would effectively erase the purpose and provision of Paragraph 5.

Defendants' Position: Defendants disagree and assert that the disposition of a Subject Vehicle before any dismissal constitutes spoliation, even if the Named Plaintiff is ultimately voluntarily dismissed, unless Defendants are first provided the notice set forth in Paragraph 1 and a reasonable opportunity to inspect that Subject Vehicle. Defendants reserve all rights to seek relief from the Court, including an adverse inference, if the Subject Vehicle is disposed of without such notice and opportunity to inspect prior to disposition and/or dismissal. Defendants also reserve the rights to oppose any motion for voluntary dismissal and to move to compel an inspection.

7. The parties agree to use their best efforts to schedule an inspection pursuant to Paragraphs 3 and 4, *supra*, at a date, time, and location that is convenient to the parties, including reasonable efforts to schedule any inspection of any Subject Vehicle at an authorized BMW dealership within a twenty-five-mile radius of the Plaintiff's residence. If the parties are unable to schedule the inspection at a BMW dealership within such a radius, the parties shall meet and confer in good faith to identify a mutually agreeable location for the inspection.

8. Absent good cause, Defendants, collectively, shall be entitled to a single inspection of a Named Plaintiff's Subject Vehicle pursuant to Paragraphs 3 and 4, *supra*, and Defendants shall coordinate in performing any inspection. Defendants shall be responsible for reasonable costs arising out of and necessitated by the inspection request (*e.g.*, arranging and paying for the Subject Vehicle to be towed to the place of the inspection if the vehicle is inoperable).

### B. Inspection Logistics

9. For any vehicle inspection noticed and scheduled in accordance with Section A of this protocol regarding vehicle disposition, Defendants must provide to Plaintiffs' counsel, at least seven (7) days before the inspection date, or if the inspection is scheduled sooner than seven (7) days from Defendants' notice pursuant to Paragraph 3, then as soon as reasonable practicable, the name and contact information of an individual at the appointed BMW dealership or other agreed-upon location who will accept the Subject Vehicle from the Named Plaintiff for purposes of the inspection.

10. The following persons may attend and participate in the vehicle inspection: (a) Defendants and their counsel (including paralegals or other employees of counsel); (b) any experts, consultants, or representatives engaged by the Defendants or their counsel; (c) employees of Defendants; and (d) if applicable, representative(s) from the BMW dealership or other agreed-upon location where the inspection occurs. Any of the above-listed persons may also attend on behalf of Plaintiffs, but shall not interfere with the inspection, except with respect to the conduct expressly permitted in this Order. The Named Plaintiff that owns or leases the Subject Vehicle need not be present at the inspection.

11. If Plaintiffs' counsel or representative present at the inspection believes in good faith that certain conduct deviates from the agreed-upon inspection actions Defendants may take as detailed in this protocol, including acts that would constitute destructive testing to which Plaintiffs do not consent, as outlined in Paragraph 15, he or she shall inform Defendants' counsel or representative of such conduct. The parties agree to use all reasonable efforts to reach agreement regarding such conduct during the inspection. If no agreement is reached, the parties will complete the inspection without Defendants undertaking the objected-to action. Any re-

inspection related to the objected-to action must have good cause, and the parties agree to discuss a potential re-inspection in good faith, including Plaintiffs' consideration of Defendants' good cause rationale and agree to use all reasonable efforts to reschedule the inspection in good faith on a mutually agreeable date. Such discussions regarding the rescheduling of the inspection must occur within twenty-one (21) days from the date of the initial inspection. A Named Plaintiff may not sell, terminate the lease, materially alter, or otherwise dispose or relinquish possession of a Subject Vehicle until after this twenty-one (21) day period and any rescheduled inspection is completed. The parties will reserve all rights in the event Plaintiffs' counsel or representative object to any action taken by Defendants during the inspection.

12. Defendants, Plaintiffs, and/or any of their representatives, experts, consultants, or employees may not communicate with the other parties during the inspection without the authorization of their respective counsel. This paragraph shall not bar employees of the BMW dealership or other agreed-upon location, or any representatives of Defendants from communicating with the Named Plaintiff and Plaintiffs' counsel, representatives, experts, or consultants regarding purely logistical issues concerning the inspection, such as providing directions to the BMW dealership or other agreed-upon location, or directing the parties to the location of the inspection at the dealership or other agreed-upon location.

13. The parties may download any data or information from the Subject Vehicle that they deem relevant so long as it does not modify the software or firmware of the Subject Vehicle's computer systems or otherwise cause damage to the vehicle. Each party agrees to produce to the other parties complete copies of any data or information downloaded from the Subject Vehicle within thirty (30) days of the inspection.

14. The parties or their representatives may take photographs and video recordings during the inspection and agree to produce to one another copies of any such photographs and video recordings taken during the inspection within thirty (30) days of such inspection. As a courtesy, any person taking video recordings during the inspection must notify all participants prior to initiating recording. The parties may not record any internal conversations held between another party and their respective representatives, experts, or consultants.

15. Plaintiffs consent to the temporary removal, inspection, and subsequent reinstallation of the parts and systems listed in Paragraph 24, *infra*. In the event that a Plaintiff believes there is good cause to refuse the temporary removal, inspection, and subsequent reinstallation of those parts and systems, Plaintiffs' counsel must notify Defendants at the time of Plaintiffs' notice pursuant to Paragraph 1 or when the parties schedule an inspection, whichever is earlier, and the parties will promptly thereafter meet and confer in good faith to resolve the issue. No destructive testing will be permitted unless there is consent by all parties. Subject to the parties' meet and confer, Defendants bear responsibility for any damage to the Subject Vehicle caused by the removal of any part or component from the vehicle during the inspection. In the event Plaintiffs contend that the inspection has materially damaged the Subject Vehicle, Plaintiffs shall provide prompt notice of the alleged damage and any documents or photos supporting the contention, and the parties will promptly thereafter meet and confer to resolve the issue.

16. Defendants may conduct test drive(s) of the Subject Vehicle during the course of the inspection. In light of the COVID-19 pandemic, and the need for social distancing, the parties and their representatives agree to use appropriate precautions during a test drive of the Subject Vehicle, including wearing masks, using disinfectants, rolling down windows, and conducting

7

multiple test drives to minimize the number of individuals present in the Subject Vehicle at any one time. Unless the parties agree that the test drive(s) can be safely accomplished with all defense inspector(s) needed to gather the data and one additional person each from Defendants and Plaintiffs, as identified in Paragraph 10, present in the vehicle, then only the defense inspector(s) may be present in the vehicle during any test drive. In such circumstances, Plaintiffs' and Defendants' counsel who are present at the inspection may record, in accordance with Paragraph 14, and watch a live video feed of the interior and frontal exterior of the Subject Vehicle utilizing a dashboard camera or other device capable of transmitting a live video feed, so long as one is supplied by Plaintiffs at the inspection, and receive a live audio feed of the interior of the Subject Vehicle during the test drive (*e.g.* via a cellphone conference line or an audio stream from the dashboard camera or other device). If a technical issue arises with the live feed (*e.g.* poor cellular network service), the parties agree to use all reasonable efforts to reach agreement in good faith on a resolution and may agree to temporarily halt the test drive to correct the issue. If a test drive(s) is interrupted or halted due to such issues or otherwise, the below distance and time limitations for test drive(s) shall restart or otherwise be modified to account for any delay. Any persons identified in Paragraph 10 may use a separate vehicle to follow the Subject Vehicle during the test drive(s). In any test drive of a Subject Vehicle during the inspection, the Subject Vehicle shall be operated by Defendants' representative(s), consultant(s), inspector(s), or expert(s). Defendants will replace any non-negligible quantity of fuel consumed during its inspection of the Subject Vehicle. The test drive(s) may not exceed a total of 100 miles in driving distance and four hours in duration.

17. An inspection of a Subject Vehicle conducted under the terms of this Order must be completed within eight hours.

18. Upon request from Plaintiffs' counsel, Defendants must provide the Named Plaintiff with a loaner or rental vehicle at Defendants' expense for as long as their Subject Vehicle is at the BMW dealership or other agreed-upon location.

**C.      Scope of Inspection**

19. The scope of any inspection of a Subject Vehicle shall be limited to actions set forth in Paragraphs 20-27 below.

20. Visual inspection:

a. The Subject Vehicle will be made available for non-destructive internal and external inspection, measurement, and photographic documentation. All vehicle compartments including, but not limited to, the engine compartment, passenger compartment, luggage and storage compartments, as well as the undercarriage may be examined so long as it does not damage the vehicle. A Named Plaintiff may remove all personal belongings that do not relate to the ordinary operation or the emissions control systems of the Subject Vehicle in advance of the inspection.

21. Fluid level checking and sampling:

a. Vehicle fluid levels may be checked.

b. The parties may collect fluid samples, including engine oil, diesel fuel, and diesel exhaust fluid from the Subject Vehicle at any time during the inspection so long as it does not damage the vehicle.

c. Any party that collects fluid samples from a Subject Vehicle for measurement or testing must produce the results of such measurement or testing to the other parties within thirty (30) days of the measurement or testing.

    d.  If any substantial quantity of fluid is removed from the vehicle during sampling, then the same quantity of removed fluid will be replaced with new fluid that meets BMW's specifications.

  22.  Vehicle Powertrain Control Module /Engine Control Unit Inspection:

    a.  Scan tools may be used to communicate with the Subject Vehicle's Powertrain Control Module (PCM)/Engine Control Unit (ECU), including but not limited to any stored diagnostic trouble codes (DTCs), monitoring Parameter ID's (PID's), or running diagnostic tests, so long as it does not modify or install any software or firmware in the Subject Vehicle's PCM or ECU or otherwise damage the vehicle.

    b.  Any party that wishes to connect to the Subject Vehicle's PCM or ECU must document the software version of the PCM or ECU at the beginning and the end of the inspection.

    c.  Any party collecting data using a scan tool must produce that data to the other parties within thirty (30) days of the inspection. That data must include the DTCs and the software version of the Subject Vehicle's PCM and/or ECU at the start and end of the inspection.

  23.  Vehicle test drive:

    a.  If Defendants conduct a test drive of the Subject Vehicle pursuant to Paragraph 16, *supra*, a scan tool may be connected to the vehicle's computers to collect data collected during the test drive. Said data will be provided in accordance with Paragraph 22(c).

  24.  Vehicle component disassembly and examination:

    a.  Subject to Paragraph 15, *supra,* a party may temporarily remove the following list of parts or systems from the Subject Vehicle only if the removed part or system

can be reinstalled in the vehicle in materially the same condition it was removed without damaging the part, system, or vehicle:

    i.    Covers, trim pieces, and/or protective plates;

    ii.    Air system;

    iii.    Fuel system;

    iv.    Emissions control and exhaust system, including but not limited to, any EGR, DPF, SCR or DOC systems or components;

    v.    Emissions system sensors;

    vi.    Diesel exhaust fluid tank;

    vii.    Diesel exhaust fluid injector assembly;

    viii.    Exhaust pipe(s);

    ix.    Electrical connectors; and

    x.    Wheels/tires.

    b.    All parties present shall be notified before any parts of the vehicle are disassembled or removed. Any part of the vehicle beyond the parts listed in Paragraph 24(a) may be removed, inspected, and re-installed during an inspection with consent from Plaintiffs' counsel, and Plaintiffs' counsel may withhold consent only if there is good cause.

    c.    Tools may be used to temporarily remove parts of the Subject Vehicle that impede a complete examination of the vehicle's componentry, so long as the tools do not damage the vehicle and the removed parts can be reinstalled in the vehicle in materially the same condition it was removed without damaging the vehicle. Such parts may include, but are not limited to, covers, trim pieces or protective plates, and the parts listed in Paragraph 24(a).

25.    Non-destructive testing:

11

    a.    All parties present shall be notified before any non-destructive testing is performed on the vehicle.

    b.    A party may engage in non-destructive testing of the Subject Vehicle so long as it does not cause any damage to the vehicle. Permissible non- destructive testing of vehicle componentry may include, but is not limited to:

        i.    Electrical testing (e.g. electrical multimeter testing of voltages, currents or resistances);

        ii.    Mechanical testing (e.g. pressure testing, measurements of bolt tightness, smoke testing of intake and exhaust systems); and

        iii.    Performance testing (e.g. battery testing, monitoring vehicle while idling or accelerating engine).

    c.    Any party that performs non-destructive testing must produce the results of such testing to the other parties within thirty (30) days of the testing.

26.    Laboratory imaging and testing of vehicle components:

    a.    Subject to Paragraph 15, *supra*, a party may collect select parts of the Subject Vehicle for analysis and/or testing in a laboratory environment only if it is necessary for the inspection, consented by all parties present at the inspection, and the collected part can be reinstalled in the vehicle in materially the same condition it was removed without damaging the vehicle. The results of any laboratory testing or analysis of the collected part must be shared with all the parties within thirty (30) days of receiving results of the laboratory testing or analysis of vehicle components.

    b.    Subject to Paragraph 15, *supra*, if Defendants collect a part of the Subject Vehicle for laboratory testing or analysis at a different location than the vehicle inspection and/or

on a later date, Defendants must install an Original Equipment Manufacturer (OEM) replacement part of similar or better quality in the Subject Vehicle during the inspection, and the replacement part must not have any materially adverse impact on the vehicle's performance, operability, or value. Upon completion of the laboratory testing or analysis, the Named Plaintiff may elect to either keep the replacement part or have Defendants or their representatives reinstall the removed part.

        c.      The collected components may be inspected using a light optical microscope, metallograph, x-ray, CT scanner, scanning electron microscope, or any other scientific equipment. Energy dispersive x-ray spectroscopy, fourier-transform infrared spectroscopy, optical emission spectroscopy, or any other scientific equipment may be used for testing.

27.     By the end of the inspection, the Subject Vehicle must be restored to materially the same condition it was in before the inspection, excluding any negligible changes as to odometer mileage, fuel level, etc.  Any damage or other loss of value caused by the inspection shall be paid for by the party responsible for such damage, which will be determined through good faith discussion by the parties.  The fact that the damage was caused by conduct or a procedure contemplated by the protocol will not excuse, justify, or mitigate the damage or a party's responsibility therefore.

28.     If the inspection of a Subject Vehicle requires additional actions that are not listed in this Order, the parties shall meet and confer to agree on a procedure before proceeding with any such action.

29.     The parties agree that the Subject Vehicle to be inspected will be presented in "as is" condition, which shall be materially the same condition the Subject Vehicle was in as of the

date this Order is entered by the Court, including, to the extent applicable, the preservation of any alterations or modifications (even if removable) made to the emissions control system of the Subject Vehicle, or that degrade or defeat the emissions control system. This requirement does not include mileage, fuel, ordinary depreciation, ordinary maintenance, or good cause for other changes to condition.

### D. Use of Information Obtained During Inspection

30. Any and all information, including documents, photographs, video recordings, and sound recordings, obtained by any party during an inspection under the terms of this Protocol shall be designated "CONFIDENTIAL" in the first instance in accordance with the Confidentiality Order entered in this action at ECF No. 150. For any documents arising from the inspection and designated as "CONFIDENTIAL," absent consent from Plaintiffs' counsel—which consent shall not be unreasonably withheld—no party or other person, including any BMW dealership, may use any information obtained during an inspection of a Subject Vehicle for any purpose other than to prosecute or defend against the claims asserted in this lawsuit, or to comply with a court order or reporting obligation to a governmental regulator.  Each party reserves the right to challenge any confidentiality designation in accordance with the procedures provided in the Confidentiality Order entered at ECF No. 150.  No dissemination of information obtained during the inspection to individuals not permitted to review "CONFIDENTIAL" material under the terms of the Confidentiality Order may occur until the information is produced to each party and any challenges to the confidential designations are resolved.

31. By presenting a Subject Vehicle for inspection, no party waives any objection to the relevance, admissibility, or use, of any information, including documents, photographs, video

recordings, and sound recordings, obtained by any party during an inspection under the terms of this Order.

**SO ORDERED.**

Dated:  **April 20, 2022**          /s/ Kevin McNulty
                                                   HON. KEVIN McNULTY
                                                   United States District Court Judge

SO STIPULATED.

Dated:  April 19, 2022          By: */s/ Kevin M. McDonough*
                                                 Kevin M. McDonough
                                                 Elizabeth Parvis (admitted *pro hac vice*)
                                                 LATHAM & WATKINS LLP
                                                 1271 Avenue of the Americas
                                                 New York, NY 10020
                                                 Telephone:  (212) 906-1200
                                                 kevin.mcdonough@lw.com
                                                 elizabeth.parvis@lw.com

                                                 Arthur F. Foerster (admitted *pro hac vice*)
                                                 Johanna Spellman (admitted *pro hac vice*)
                                                 Kevin M. Jakopchek (admitted *pro hac vice*)
                                                 LATHAM & WATKINS LLP
                                                 330 N. Wabash Avenue, Suite 2800
                                                 Chicago, IL 60611
                                                 Telephone: (312) 876-7700
                                                 arthur.foerster@lw.com
                                                 johanna.spellman@lw.com
                                                 kevin.jakopchek@lw.com

                                               *Attorneys for Defendants Bayerische Motoren Werke Aktiengesellschaft and BMW of North America LLC*

Dated:  April 19, 2022          By: */s/ James E. Cecchi*
                                                 James E. Cecchi
                                                 Caroline F. Bartlett
                                                 Donald A. Ecklund
                                                 CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

5 Becker Farm Road
Roseland, NJ 07068
Telephone:  (973) 994-1700
Facsimile:  (973) 994-1744
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com
decklund@carellabyrne.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Christopher A. Seeger
Christopher L. Ayers
Jennifer R. Scullion
SEEGER WEISS LLP
55 Challenger Road
Ridgefield Park, NJ 07660
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
cseeger@seegerweiss.com
cayers@seegerweiss.com
jscullion@seegerweiss.com

Scott A. George
SEEGER WEISS LLP
550 Broad Street, Suite, 920
Newark, NJ 07102
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
sgeorge@seegerweiss.com

Shauna Brie Itri
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 553-7981
Facsimile: (215) 851-8029
sitri@seegerweiss.com

*Attorneys for Plaintiffs and the Proposed Class*

16

Dated: April 19, 2022

By: */s/ Jeffrey A. Rosenthal*
Jeffrey A. Rosenthal
Lina Bensman (admitted *pro hac vice*)
Michael Taddei (admitted *pro hac vice*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Fax: (212) 225-2086
jrosenthal@cgsh.com
lbensman@cgsh.com
mtaddei@cgsh.com

Michael D. Critchley
Amy Danielle Luria
CRITCHLEY, KINUM & LURIA, LLC
75 Livingston Avenue
Suite 303
Roseland, NJ 07068
Telephone: (973) 422-9200
Fax: (973) 422-9700
mcritchley@critchleylaw.com
aluria@critchleylaw.com

*Counsel for Defendant Robert Bosch LLC*

- This Certificate of Service.

I hereby certify under the penalty of perjury that the foregoing is true and correct.

Dated: April 19, 2022
New York, NY

Respectfully submitted,

*/s/ Kevin M. McDonough*
Kevin M. McDonough
LATHAM & WATKINS LLP
