**Kevin M. McDonough**
Direct Dial: +1.212.906.1246
kevin.mcdonough@lw.com

1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Moscow |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

April 25, 2022

**VIA ECF**

Hon. James B. Clark, III, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:   *Hu, et al. v. BMW of North America LLC, et al.*, Case No. 18-4363 (KM) (JBC) (D.N.J.)

Dear Judge Clark:

Pursuant to the Court's March 29, 2022 Order [Dkt. No. 174], the parties respectfully submit this joint letter (i) updating the Court on recent developments related to the issues raised in the BMW Defendants' March 25 Letter [Dkt No. 172], and (ii) describing the outstanding discovery issues on which the parties have been unable to reach agreement and which require the Court's intervention.

## I. PLAINTIFFS' PRE-COMPLAINT TESTING DOCUMENTS AND LOG

**Joint Statement**: On March 25, the BMW Defendants informed the Court of Plaintiffs' proposed categorical approach to the Court-ordered log of pre-complaint testing-related materials being withheld. *See* Dkt. No. 172. The Court directed the parties to meet and confer. *See* March 29 Order [Dkt. No. 174], at 3. Plaintiffs produced a categorical log on April 4. On April 15, Plaintiffs agreed to provide an itemized privilege log and to produce certain categories of documents that were described on the April 4 categorical log. In light of this development, the parties have agreed to meet and confer further following Plaintiffs' production of additional documents and the log.

## II. OUTSTANDING DISCOVERY DISPUTES

### A. 21 Named Plaintiffs Have Failed to Respond to Written Discovery Requests

**Issue**: Twenty-one Plaintiffs (the "Non-Responding Plaintiffs")[1] have not provided responses to the BMW Defendants' Interrogatories (the "ROGs") and Requests for Admission (the "RFAs") served on October 15, 2021, resting solely on objections.[2]

**BMW Defendants' Position**: The BMW Defendants first raised this issue with Plaintiffs on December 23, 2021.[3] Since then, Plaintiffs have only provided four additional sets of responses, and have refused to commit to a date certain when all remaining Plaintiffs will respond. The failure

---

[1] A list of the Non-Responding Plaintiffs is provided at **Appendix A**.

[2] *See generally* **Ex. 1**; **Ex. 2**. An index of all exhibits cited herein is provided at **Appendix B**.

[3] *See* **Ex. 3**, at 1-2.

to respond to discovery requests served more than six months ago violates the Federal Rules and is prejudicial to Defendants, as full responses are needed for Defendants to schedule depositions and to test the factual allegations in the First Amended Consolidated Class Action Complaint ("FAC") [Dkt. No. 65]. The BMW Defendants respectfully request that the Court enter an order compelling the Non-Responding Plaintiffs to provide responses within 30 days of the entry of such an order.

**Plaintiffs' Position**: The BMW Defendants' request is premature. The case is still early in discovery, as the parties have only recently agreed on search terms to be applied to both Plaintiffs' and BMW NA's ESI, and no depositions have been noticed. Moreover, although the parties have agreed to a protocol governing the inspection of Plaintiffs' vehicles, there remains one provision in dispute that requires guidance from the Court.[4] Plaintiffs' counsel are continuing good-faith efforts to finalize discovery responses from the Non-Responding Plaintiffs. With fact discovery closing in December 2022, there is no prejudice to the BMW Defendants or the progress of the litigation, and accordingly no action is appropriate now.

### B. Interrogatory No. 12

**Issue**: This ROG seeks information regarding lawsuits, arbitrations, or complaints to administrative agencies to which each Plaintiff has been a party. **Ex. 4** (ROG No. 12). Plaintiffs have agreed to identify actions in which they served as class representatives or that involve the Subject Vehicles or any claim of fraud on the part of Plaintiffs. The BMW Defendants seek responses that would include actions involving any claims of fraud or false advertising, as well as any automotive-related claims.

**BMW Defendants' Position**: Plaintiffs' involvement in other litigation is relevant to Plaintiffs' credibility and adequacy to serve as class representatives, particularly to the extent such litigation involved similar claims (*i.e.* false advertising) or similar subject matter (*i.e.* automobiles) to this case.[5]

**Plaintiffs' Position**: The credibility and adequacy of Plaintiffs to serve as class representatives will be shown in the information Plaintiffs agreed to provide related to their prior service as class representatives, involvement in litigation concerning the Subject Vehicles, and involvement in litigation involving claims of fraud against them. Compelling anything more will unduly burden and harass Plaintiffs.

---

[4] Specifically, the parties disagree whether a named Plaintiff who seeks voluntary dismissal under Paragraph 5 of the protocol must preserve the Subject Vehicle if Defendants oppose the voluntary dismissal and seek a motion to compel an inspection. *See* Dkt. No. 175. On April 20, 2022, the Court entered the inspection protocol without resolving the competing provisions. *See* Dkt. No. 176. The parties will follow up with the Court regarding this unresolved dispute.

[5] *See, e.g.*, *Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports & Recreation*, 165 F.R.D. 108, 111 (M.D. Fla. 1996) (plaintiff's litigation history relevant where "extensive experience and involvement in similar lawsuits may result in unique defenses" bearing on adequacy to represent proposed class).

LATHAM&WATKINS LLP

      C.      **Request for Admission Nos. 8-23**

**Issue**: These RFAs seek admissions regarding whether certain conditions[6] impact NOx emissions and/or fuel economy.  See **Ex. 5** (RFA Nos. 8-23).  Plaintiffs have not provided admissions or denials, resting on objections and responding that they "den[y] any implication that the Class Vehicles produced excessive emissions primarily due to factors other than a Defeat Device."  *See, e.g.* **Ex. 6** (Response to RFA No. 8).

**BMW Defendants' Position**:  Plaintiffs' responses fail to provide admissions or denials, as is required under Fed. R. Civ. P. 36(a)(4).  The RFAs seek straightforward admissions or denials regarding the impact of certain conditions on NOx emissions and fuel economy, and Plaintiffs need not provide any explanation regarding the nature or extent of any such impact.  Plaintiffs should be compelled to admit or deny the RFAs.

**Plaintiffs' Position**: RFA Nos. 8-23 seek "yes or no" responses to questions where the accurate answer is "it depends," as the "impact" of certain conditions on NOx emissions and fuel economy depends on a wide range of variables and factors not accounted for in the RFAs.  "Impact," moreover, is defined as "a significant or major effect."[7]  Based on this definition, whether certain conditions have an "impact" on emissions and fuel economy is arguably a matter in dispute and not a suitable statement to admit or deny in an RFA.  *See Hayes v. Bergus*, 2015 WL 5666128, at *6 (D.N.J. Sept. 24, 2015) (noting that RFAs should "'eliminate issues over facts that are not in dispute'").

      D.      **Request for Admission Nos. 29-30**

**Issue**:  These RFAs seek admissions or denials regarding whether Plaintiffs can identify marketing or advertising materials from diesel equipment industry groups that they viewed or heard before acquiring their Subject Vehicle(s).  See **Ex. 5**  (RFA Nos. 29-30).  Plaintiffs responded that they "lack[] knowledge of [] all the advertising and marketing that may have originated from" these groups, and therefore cannot provide admissions or denials.  *See, e.g.* **Ex. 6** (Responses to RFA Nos. 29-30).

**BMW Defendants' Position**:  Plaintiffs' responses fail to provide admissions or denials, as is required under Fed. R. Civ. P. 36(a)(4).  These RFAs seek straightforward admissions regarding whether Plaintiffs *are able to identify* marketing or advertising materials from the referenced groups that they viewed or heard, not whether they may have unknowingly viewed or heard marketing or advertising from those groups.[8]  Plaintiffs are capable of admitting or denying these facts based on their current knowledge, and they should be compelled to do so.

---

[6] Specifically, the RFAs seek admissions or denials regarding whether NOx emissions and fuel economy are impacted by driving conditions, vehicle maintenance, ambient temperature, road grade, driving behavior or style, altitude, humidity, and topology.

[7] *See impact*, Merriam-Webster, https://www.merriam-webster.com/dictionary/impact (last visited Apr. 25, 2022).

[8] The referenced groups are not randomly selected by the BMW Defendants—in fact, those groups were cited by Plaintiffs in the FAC.  *See, e.g.* FAC ¶¶ 293, 309-14.

LATHAM&WATKINS LLP

**Plaintiffs' Position**: RFA Nos. 29-30 requires Plaintiffs to know whether the advertisements they reviewed originated from the referenced trade association groups. Plaintiffs simply do not know the genesis of each advertisement—nor could they as authorship is not necessarily revealed in advertisements—and have framed their answers to the RFAs accordingly. Plaintiffs also objected because RFA Nos. 29-30 sought admission before substantial documentary evidence had been collected, reviewed, and produced. Depending on what each Plaintiff's investigation reveals, including whether they have ads from the referenced groups in their possession, custody, or control, Plaintiffs can amend their responses appropriately.

### E. Request for Production No. 89

**Issue**: This request seeks communications with the International Council on Clean Transportation ("ICCT"), West Virginia University ("WVU"), and authors of the ICCT 2017 White Paper cited in Paragraph 332 of the FAC. *See* **Ex. 7** (RFP No. 89). Plaintiffs agreed to provide responsive documents relating to the Subject Vehicles, methods of emissions testing Plaintiffs performed on vehicles for purposes of this litigation, and general discussions regarding diesel emissions analysis involving PEMs testing. At issue is whether Plaintiffs will produce additional documents and communications regarding the method of emissions testing (other than PEMS) that Plaintiffs have performed on any vehicles.[9]

**BMW Defendants' Position**: In the FAC, Plaintiffs described the ICCT and WVU as authoritative sources regarding diesel emissions analysis. *See* FAC ¶¶ 168, 188, 332. Plaintiffs' communications with those entities regarding the merits of different types of emissions testing thus bear upon the emissions testing Plaintiffs conducted for this case, regardless of whether those discussions occurred for the purpose of this particular litigation or with respect to any specific car manufacturer. For example, Plaintiffs' counsel or experts may have communicated with the ICCT or WVU regarding testing methods to be used in diesel emissions litigation generally, without specific reference to this case. Such materials are relevant and should be produced.

**Plaintiffs' Position**: This litigation is about specific vehicles, and how these vehicles operated one way when in specific regulatory testing environments and another way in the real world. ICCT and WVU provided no services to Plaintiffs in this litigation and played no direct role in the testing performed by Plaintiffs' experts. To the extent they exist, Plaintiffs have offered to provide the BMW Defendants with all relevant documents and communications exchanged with these entities that pertain to the Subject Vehicles or reflect general discussions about PEMs testing. Discussions about other method of emissions testing performed by Plaintiffs on any vehicle with no connection to this litigation are beyond the bounds of relevance.

### F. Start Date for ESI Collection and Production

**Issue**: Plaintiffs propose a general start date of two years prior to each Plaintiffs' acquisition of their Subject Vehicle(s). The BMW Defendants seek a start date of 2009 for RFPs pertaining to marketing/advertising-related materials Plaintiffs viewed or heard in connection with their decision to acquire their Subject Vehicle(s) (RFP Nos. 1, 2, 3), correspondence related to Plaintiffs' Subject Vehicles (RFP No. 56), and Plaintiffs' views or expectations concerning the

---

[9] The parties also disagree about the Relevant Time Period for this Request, as described below.

Subject Vehicles (RFP No. 72, 91). For requests pertaining to Plaintiffs' communications with third-parties (RFP Nos. 70-71, 88-89), Plaintiffs propose a start date of March 2016, whereas the BMW Defendants seek a start date of March 2015.[10]

**BMW Defendants' Position**: Plaintiffs' general two-year proposal is too narrow for the requests specified above. First, the remaining claims in this case center on alleged marketing and advertising representations for vehicles that were introduced to the U.S. market between 2009 and 2013. If Plaintiffs intend to rely on marketing and advertising representations from the time when the Subject Vehicles were first marketed and advertised, then the BMW Defendants are entitled to discovery on whether Plaintiffs were exposed to those materials, as well as the views and expectations they formed about the Subject Vehicles as a result.

For requests relating to communications with third-parties (*i.e.* regulatory authorities, the ICCT, and WVU), Plaintiffs' production should date back to March 2015 in order to encompass the initiation of the first diesel defeat device matters in 2015 (*i.e.* the Notice of Violation ("NOV") issued to Volkswagen, and related events leading up to that NOV). Plaintiffs describe the Volkswagen defeat device matter at length in the FAC (*see, e.g.* FAC ¶¶ 7, 12-14, 25), and assert that regulatory authorities, the ICCT, and WVU are authorities on vehicle emissions testing (*see id.* ¶¶ 168, 188, 332). The BMW Defendants are therefore entitled to discover Plaintiffs' communications with those authorities—which likely date back to the Volkswagen emissions matter—as they may bear on the testing Plaintiffs performed for this case.

**Plaintiffs' Position**: The BMW Defendants make no attempt to establish the proportionality or relevance for documents dated as early as 2009. Certain individual Plaintiffs purchased the Class Vehicles as late as 2017 and 2018 (*see, e.g.*, FAC ¶¶ 33, 34, 44, 50), meaning that under the BMW Defendants' proposal, they would need to collect and review documents dated as early as nine years *prior* to the purchase of the Class Vehicle. That is not proportional. As for relevance, the BMW Defendants base the proposed start date on when BMW started its marketing campaign. Such a fact is relevant for discovery on the BMW Defendants, but as it pertains to Plaintiffs, what matters is what *they* knew, what *they* heard, and what *they* were looking for at the time they acquired the Subject Vehicle and were injured— and Plaintiffs will provide the BMW Defendants a *two year* look-back from the date of acquisition for such discovery. Similarly, what matters for discovery into Plaintiffs' communications with third-parties is the date they brought the suit, not the start of "Dieselgate" in 2015, and Plaintiffs will produce documents dated two years before the start of this litigation in March 2018.

### G. End Date for ESI Collection and Production

**Nature of the Issue**: The BMW Defendants generally seek responsive documents through the present, but have agreed to an end date of September 2019 for certain RFPs.[11] Plaintiffs have

---

[10] For RFPs other than those cited in this letter and certain other RFPs where the parties have reached agreement on the start date, the BMW Defendants are willing to accept Plaintiffs' proposed two-year start date, reserving the right to seek production of additional information. This excludes documents relating to Plaintiffs' pre-complaint testing, which Plaintiffs have agreed to search without a date limitation.

[11] RFP Nos. 1, 2, 3, 6, 8, 53, 80, 81, 87, and 90.

**LATHAM&WATKINS**LLP

agreed to run search terms over each Plaintiffs' ESI to the present, but have proposed a general end date of September 2019 for responsiveness of documents.[12] At issue is the relevant "responsiveness end date" for documents relating to the ownership and maintenance of the Subject Vehicles, Plaintiffs' expectations as vehicle consumers, Plaintiffs' satisfaction with their Subject Vehicles, and communications with third-party entities.

**BMW Defendants' Position**: Documents relating to Plaintiffs' ownership (including sale or other disposition, for example) and maintenance (including installation of tuners or other modifications) of their Subject Vehicles (*e.g.* RFP Nos. 7, 9, 10, 12, 13, and 20), their expectations as vehicle consumers (*e.g.* RFP Nos. 72, 91), and their satisfaction with their Subject Vehicles (*e.g.* RFP No. 56) are relevant through the present. Plaintiffs' actions or views after the filing of the FAC could undermine the core allegations regarding Plaintiffs' alleged expectations when acquiring the Subject Vehicles (for example, if they operated or modified their vehicles in ways inconsistent with their alleged emissions-related expectations), as well as their alleged harm resulting from the BMW Defendants' marketing and advertising (for example, if they later expressed satisfaction with the Subject Vehicles).

Communications with third parties described in RFP Nos. 70-71 and 88-89 should also be produced through present. In the FAC, Plaintiffs compared their own vehicle emissions testing methods to those used by regulatory agencies (*see, e.g.* FAC ¶¶ 4, 6), and alleged that post-complaint regulatory actions in other emissions cases "essentially confirm[ed] the work of Plaintiffs' counsel and expert testing." *See* FAC ¶ 14. Thus, communications with third-parties after Plaintiffs made public their allegations about the Subject Vehicles are relevant to Plaintiffs' testing-related allegations.

**Plaintiffs' Position**: As alleged in the FAC, Plaintiffs were injured when they acquired the Subject Vehicles. ESI relating to the maintenance of the Subject Vehicles or Plaintiffs' "satisfaction" with the Subject Vehicles dated after the acquisition have little to offer to the merits of the litigation, including Plaintiffs' expectations when they acquired the Subject Vehicles. The BMW Defendants, however, seek an unduly burdensome end-date to the present, which for some Plaintiffs would mean collecting and reviewing documents that cover an eleven- (FAC ¶¶ 36, 53) or twelve- (FAC ¶ 59) year period. In contrast, Plaintiffs' proposal of a September 2019 end-date for ESI relating to ownership, maintenance, and satisfaction is proportional to the needs of the case in light of the timing of Plaintiffs' injuries.

For Plaintiffs' third-party communications, Plaintiffs' proposal captures such communications over a four-year period, March 2016 to March 2020. This period covers two years after Plaintiffs filed the initial complaint and six months after Plaintiffs filed the FAC. Additional communications with third-parties, if any, dated after March 2020 offer little to the merits of the claims and defenses in this case.

---

[12] For RFPs 71 and 89 (communications with regulatory authorities and other third-parties), Plaintiffs proposed an end date of six months after the filing of the FAC in September 2019.

LATHAM&WATKINS LLP

Respectfully submitted,

*/s/ Kevin M. McDonough*

Kevin M. McDonough
of LATHAM & WATKINS LLP

*Counsel for Defendants BMW of North America, LLC and Bayerische Motoren Werke Aktiengesellschaft*

Jeffrey A. Rosenthal
of CLEARY GOTTLIEB STEEN & HAMILTON LLP

Amy Luria
of CRITCHLEY, KINUM & LURIA, LLC

*Counsel for Defendant Robert Bosch LLC*

James E. Cecchi
of CARELLA,BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

Steve W. Berman
of HAGENS BERMAN SOBOL SHAPIRO LLP

Christopher A. Seeger
of SEEGER WEISS LLP

E. Powell Miller
of THE MILLER LAW FIRM PC

Richard M. Hagstrom
of HELLMUTH & JOHNSTON, PLLC

David K. Bryson
of WHITFIELD BRYSON & MASON LLP

Gregory F. Coleman
of GREG COLEMAN LAW PC

*Counsel for Plaintiffs and the Proposed Class*

cc: All Counsel of Record (via ECF)