<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSHUA HU, et al.,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>BMW OF NORTH AMERICA LLC, et al.,<br><br>　　Defendants. | Civil Action No. 18-4363 (EP) (JBC)<br><br>**MEMORANDUM AND ORDER** |

Plaintiffs, on behalf of themselves and a putative class, allege that Defendants sold "clean diesel" cars with "defeat devices" aimed at fooling emissions tests (and consumers) into thinking that the cars polluted less than their gasoline counterparts. The parties agreed on a mechanism for Defendants to inspect the cars, and for Plaintiffs to dispose of them. But they disagree on whether certain Plaintiffs can leave the case without prejudice *and* without Defendants inspecting those Plaintiffs' cars. They cannot, for the reasons below.

Plaintiffs and putative class members are owners of 2009-2013 BMW X5 xDrive35d (the "X5s") and 2009-2011 BMW 335d (the "335ds," together the "Cars") cars, marketed as "clean diesel" vehicles. BMW of North America, LLC ("BMW NA") and BMW Aktiengesellschaft ("BMW AG," together the "BMW Defendants") manufactured and sold the Cars. Plaintiffs allege that they purchased their Cars based on their lower emissions, when in reality BMW Defendants and Robert Bosch LLC and/or parent Robert Bosch GmbH (collectively "Bosch"),[1] allegedly created and installed "defeat devices" aimed at fooling vehicle inspections into registering

---

[1] Bosch GmbH was dismissed for lack of personal jurisdiction. D.E.s 128, 129. Similar allegations were also levied against Bosch in the Volkswagen "Dieselgate" litigation.

compliance with regulatory standards while emitting more pollutants than their gasoline-powered counterparts.

The parties ask the Court to resolve a conflict regarding the Stipulated Order Regarding the Disposition and Inspection of Subject Vehicles." D.E. 176 (the "Stipulation"); D.E. 201. During the discovery process, Defendants sought to inspect the Named Plaintiffs' Cars. D.E. 201 at 1. Plaintiffs, in turn, sought a mechanism to dispose of some Cars, if desired. *Id.* The parties spent months negotiating the Stipulation, which the Court signed. D.E. 176.

At the heart of the dispute are Paragraphs 5 and 6. Paragraph 5 provides a timeline and mechanism for Plaintiffs to voluntarily dismiss and avoid inspection of the Cars:

> Within 30 days from the Court's entry of a vehicle inspection protocol, any Named Plaintiff in this action who does not consent to the vehicle inspection protocol may move to voluntarily dismiss their claim. For any Named Plaintiffs who move for voluntary dismissal pursuant to this Paragraph, before or at the time such motion(s) for voluntary dismissal is made, Plaintiffs' counsel must disclose to Defendants whether any of those Named Plaintiffs have installed a tuner or otherwise modified the emissions control systems in their [Cars] in a way that could have the effect of degrading or defeating the emissions control systems.

And Paragraph 6 provides the parties' dueling interpretations of Paragraph 5. According to Plaintiffs, dismissal pursuant to Stipulation Paragraph 5 should be without prejudice and without the need for inspection:

> A Named Plaintiff seeking voluntary dismissal under Paragraph 5 may be dismissed without prejudice upon notice and without being compelled to present the [Car] for an inspection. The purpose of Paragraph 5 is to allow a Named Plaintiff who objects to the terms of the inspection protocol to voluntarily dismiss his or her claims and leave the litigation. Requiring a Named Plaintiff who moves for voluntary dismissal due to the terms of the inspection protocol to preserve the [Car] for purposes of a potential inspection would effectively erase the purpose and provision of Paragraph 5.

(¶ 6.)

2

Conversely, Defendants argue that any dismissal without inspection would constitute spoliation:

> [T]he disposition of a [Car] before any dismissal constitutes spoliation, even if the Named Plaintiff is ultimately voluntarily dismissed, unless Defendants are first provided the notice set forth in Paragraph 1 and a reasonable opportunity to inspect that [Car]. Defendants reserve all rights to seek relief from the Court, including an adverse inference, if the [Car] is disposed of without such notice and opportunity to inspect prior to disposition and/or dismissal. Defendants also reserve the rights to oppose any motion for voluntary dismissal and to move to compel an inspection.

(*Id.*)[2]

As the impasse continued, Defendants reiterated their own interpretation of Paragraph 5, and added an argument: that Plaintiffs had failed to move to voluntarily dismiss the claims within the 30-day window contemplated by Paragraph 5. Plainstiffs argue that the 30-day window never ran because Paragraph 5 was unclear, and therefore not operative.

The parties briefed the issues to the Magistrate Judge, who referred the matter to the undersigned due to potentially dispositive implications. D.E.s 188, 189. By then, the dispute was no longer theoretical—two Named Plaintiffs, Ion Niculescu and Razmir Avic, now seek to voluntarily dismiss their claims pursuant to the Stipulation, without prejudice and without inspection pursuant to Plaintiffs' interpretation of Paragraph 5. D.E.s 201.

Defendants are correct that Paragraph 5's 30-day window has passed. Whatever the parties' interpretations of Paragraph 5's dismissal and inspection implications, its timeline is clear: "*Within 30 days* from the Court's entry of a vehicle inspection protocol, any Named Plaintiff in this action who does not consent to the vehicle inspection protocol may move to voluntarily dismiss their claim" (emphasis added).

---

[2] Elsewhere, the parties explicitly reserved their positions regarding the Cars' disposition. Stipulation 1, n.1.

The Court signed the protocol (the Stipulation) on April 20, 2022. D.E. 176. The 30-day window expired on May 20, 2022, without any motion to voluntarily dismiss having been filed.[3] Plaintiffs did not ask the Court for clarification until June 15, 2022, D.E. 188, and did not seek the dismissal of Niculescu and Avic until August 25, 2022. D.E. 201 at 2. Thus, even if Plaintiffs' interpretation of Paragraph 5 were correct, the time expired without Plaintiffs seeking to dismiss without inspection, extend the deadline, or clarify the Stipulation.

But more importantly, the Stipulation explicitly noted that the parties did not agree on how dismissal would work—with prejudice or without, inspection or not.[4] They did not agree on its mechanism. And where a stipulation does not chart the procedural course, Fed. R. Civ. P. 41(a)(2) controls. Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Dismissal, even if likely, is not automatic. *Dysthe v. Basic Rsch., L.L.C.*, 273 F.R.D. 625, 628 (C.D. Cal. 2011) (citing *Hamilton v. Firestone Tire & Rubber Co.,* 679 F.2d 143, 145 (9th Cir. 1982)). Thus, the question here is whether Plaintiffs can dismiss, and on what conditions.

Defendants provide no reason, and this Court cannot identify, why Niculescu and Avic should not be dismissed. But Plaintiffs' argument that Niculescu and Avic's dismissal exempts them from discovery as absent class members puts the cart before the horse. They have not yet been dismissed, and thus are not yet "absent." And before dismissal, the Court must consider conditions.

---

[3] Defendants also note—and Plaintiffs do not dispute—that Defendants "extended the stipulated timeline and offered Plaintiffs until June 10, 2022…to decide if they would either consent to the [Stipulation] or move for voluntary dismissal with prejudice in order to forego inspection." D.E. 189 at 3 (emphasis in original).

[4] This Order should not be read as striking or undermining any part of the Stipulation, the remainder of which the parties agreed upon.

Plaintiffs acknowledge that "Niculescu and Avic understood that they had certain obligations as Named Plaintiffs in the case," including document production and written responses to Defendants' discovery requests. D.E. 201 at 2. But Plaintiffs nevertheless argue that Niculescu and Avic's Cars need not be inspected because they will become "absent class members." *Id.*

"[T]he Federal Rules of Civil Procedure neither explicitly forbids nor authorizes discovery to be propounded to absent class members." *Robin Drug Co. v. PharmaCare Mgmt. Servs., Inc.*, No. CV 03-3397, 2006 WL 8445130, at *2 (D. Minn. July 5, 2006). It is true, however, that most courts have found that "discovery from absent class members is not forbidden but rather is disfavored." *Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18CV2017, 2022 WL 597261, at *6 (N.D. Ohio Feb. 28, 2022) (citing 3 Newberg on Class Actions, § 9.11 (5th ed.)) and collecting cases).

But Niculescu and Avic, even if they are no longer Named Plaintiffs, are not ordinary, absent class members. Even absent class members can be subject to discovery if they were once named plaintiffs, provided the discovery is relevant and not unduly burdensome. *See Dysthe v. Basic Rsch., L.L.C.*, 273 F.R.D. 625, 629 (C.D. Cal. 2011) (holding that plaintiff in consumer class action relating to weight-loss product was still subject to deposition, even after dismissal, where the plaintiff was a named plaintiff throughout the litigation, parties had discussed deposition, and defendants had properly noticed the deposition) (citing *In re FedEx Ground Package System, Inc.*, 2007 WL 733753 (N.D. Ind. March 5, 2007) (holding that defendants were not seeking testimony of proposed absent class member to harass or burden them); *see also Mehl v. Canadian Pac. Ry.*, 216 F.R.D. 627, 631 (D.N.D. 2003) (collecting authority permitting discovery of absent class members).

5

Here, Plaintiffs argue (and Defendants flatly deny) that the Cars had defeat devices installed which were designed to fool emissions inspections. The Cars are the case. Certainly, then, inspecting the cars is "relevant to the party's claim or defense." *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 1001 (N.D. Ohio 2016) (directing mandatory, non-rebuttable adverse inference instruction against party found to have spoliated car batteries); *see also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 592 (4th Cir. 2001) (dismissing product liability action for failure to preserve material evidence (car) in anticipation of litigation or notify defendant manufacturer of the evidence's availability).

Additionally, an ongoing dispute highlights the importance of ensuring discovery compliance: only about 22 of the 43 Named Plaintiffs timely served individualized discovery responses and objections. D.E. 196 at 2; D.E. 203.[5] Thereafter, Plaintiff's counsel moved to withdraw as counsel for ten of those non-responsive Named Plaintiffs. D.E. 207. That about half of Named Plaintiffs have become nonresponsive should underscore for any remaining Named Plaintiffs, including Niculescu and Avic, the importance of their obligation to ensure that any Cars will remain available for inspection when the time comes. Accordingly, while dismissal without prejudice is appropriate, it is appropriate to condition that dismissal upon inspection.

**IT IS,** this  **21st**   day of **October**, 2022, having considered the submissions of the parties (D.E.s 188, 189, 201) and all other relevant docket entries,

**ORDERED** that Niculescu and Avic shall be voluntarily dismissed as Named Plaintiffs, and that dismissal shall be without prejudice subject to their compliance with the Stipulation's inspection protocol; and it is further

---

[5] Only eighteen initially responded, and an additional four thereafter.

Case 2:18-cv-04363-EP-JBC   Document 212   Filed 10/21/22   Page 7 of 7 PageID: 8112

**ORDERED** that Niculescu or Avic's failure to comply with the Stipulation and protocol may, upon proper motion, result in sanctions including dismissal against Niculescu and/or Avic *with* prejudice, or whatever other sanction may be fair and just; and it is further

**ORDERED** that the parties shall, within 60 days of this order, update the Court on the status of the inspection of Niculescu and Avic's Cars.

_____
Evelyn Padin, U.S.D.J.